IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **JEREMY BRADEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 08-3109-CV-S-GAF |
| | ) | |
| **WAL-MART STORES, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

Presently before the Court is Defendants Wal-Mart Stores, Inc. ("Wal-Mart"), Stanley Gault, Betsy Sanders, Don Soderquist, Jose Villarreal, Stephen R. Hunter, and Debbie Davis Campbell's (collectively "Defendants") Motion to Dismiss Plaintiff Jeremy Braden's ("Plaintiff") Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) ("Rule 12(b)(1)") and 12(b)(6) ("Rule 12(b)(6)"). (Doc. #29). Plaintiff filed this action, claiming Defendants breached various fiduciary duties in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* (Doc. #2). Having read and considered the suggestions presented by the parties, the Court finds this matter appropriate for disposition without a hearing. For reasons stated below, Defendants' Motion to Dismiss is GRANTED.

## DISCUSSION

**I. Facts**

The present case arises from the alleged failure of Defendants, as fiduciaries, to act solely in the interest of the participants and beneficiaries of the Wal-Mart Profit Sharing and 401(k) Plan ("the Plan") and to exercise the required skill, care, prudence, and diligence in administering the

1

Plan and the Plan's assets from January 31, 2002 to the present ("the period in dispute").[1] More specifically, Plaintiff alleges Defendants breached fiduciary duties in violation of various ERISA sections by imprudently choosing fund options with excessive fees, failing to inform plan participants of material information, engaging in prohibited transactions, failing to monitor the Plan's fiduciary appointees, and failing to prevent co-fiduciaries from breaching their duties of prudence and loyalty. Plaintiff asserts the combination of these breaches resulted in the Plan's participants losing "tens of millions of dollars" of retirement savings.

The Plan is a retirement plan sponsored by Wal-Mart for its employees and is both an "employee pension benefit plan" and an "individual account plan" as defined by ERISA. In number of participants, the Plan is one of the largest in the United States; as of January 31, 2007, it had 1,062,033 participants, with net assets of $9.89 billion.[2] Initially, Wal-Mart had two plans: a profit-sharing plan and a retirement saving plan. Effective October 31, 2003, Wal-Mart merged the two predecessor plans, creating the Plan. The Plan retains the functions of both predecessor plans and thereby includes a profit-sharing component and a 401(k) component. At issue in this case is the 401(k) component.

The 401(k) component is comprised of individual 401(k) accounts for each of the Plan's participants. Each individual 401(k) account holds some or all of the following: (1) the participant's contributions to the Plan and earnings on those contributions; (2) Wal-Mart's contributions to this portion of the Plan and earnings on those contributions; and (3) contributions a participant rolled

---

[1]Facts are from Plaintiff's Complaint unless otherwise indicated.

[2]*See* Wal-Mart Plan 2006 Form 5500 Annual Return/Report of Employee Benefit Plan, line 7(d) and Schedule H, line 1(l).

2

over from other qualified retirement plans and earnings on those contributions. A participant becomes immediately vested in these contributions and directs how they will be invested. All eligible Wal-Mart employees[3] may participate in the Plan. Regardless of whether a participant contributes to the Plan, he will receive a portion of Wal-Mart's Qualified Non-Elective contributions so long as he completed at least 1,000 hours of service during the Plan year for which the contributions are made, as well as be employed on the last day of that Plan year.

Plaintiff began working for Wal-Mart in May, 2002 and continues his employ to the present. He became eligible for participation in the Plan in June, 2003; however, he did not enroll in the Plan until October 28, 2003, with his first contribution made on October 31, 2003.[4] Plaintiff continues to participate in the Plan within the meaning of ERISA §3(7), 29 U.S.C. §1002(7). During the period in dispute, Merrill Lynch & Co., Inc.[5] ("Merrill Lynch") held the Plan's assets in trust.

Defendant Wal-Mart is the Plan's Administrator and therefore is charged with fiduciary duties with respect to the Plan and its participants and beneficiaries. Specifically, Wal-Mart must communicate information regarding the Plan and its assets to participants. In addition, Wal-Mart can hire, appoint, terminate, and replace employees serving as fiduciaries for the Plan, thus making Wal-Mart responsible for these fiduciaries' activities under principles of agency and *respondeat*

---

[3]All employees who were participants in the predecessor plans prior to the October 31, 2003 merger continue as Plan participants as long as they continue to be eligible employees. An employee who was not a Plan participant prior to October 31, 2003 becomes eligible after completing 1,000 hours of service in a consecutive 12-month period.

[4]*See* Light Decl., ¶¶5-6.

[5]Merrill Lynch & Co. Inc., together with its subsidiaries, including Merrill Lynch Bank & Trust Co., FSB (formerly known as Merrill Lynch Trust Co., FSB) and its Global Wealth Management business segment (formerly known as Merrill Lynch Investment Managers LLC).

*superior* liability. Wal-Mart is imputed with any knowledge other Defendants possessed regarding breaches of fiduciary duty alleged pursuant to basic tenants of corporate law.

Defendants Gault, Sanders, Soderquist, and Villarreal ("the Compensation Committee Defendants") served as members of the Compensation and Nominating Committee at relevant times during the period in dispute and had certain fiduciary duties with respect to the Plan, including appointment and oversight responsibilities of the Retirement Plans Committee ("the RPC"). Defendants Hunter and Davis Campbell ("the VP Retirement Plan Defendants") served as Vice Presidents for Wal-Mart with appointment and oversight responsibilities over the RPC. Both the Compensation Committee Defendants and the VP Retirement Plan Defendants had the duty to monitor and/or remove members of the RPC.

The RPC consisted of persons appointed by either the Compensation Committee Defendants or the VP Retirement Plan Defendants and is the "Named Fiduciary" of the Plan. As Named Fiduciary, the RPC managed, interpreted, and administered the Plan. More specifically, the RPC's duties included determining which employees were eligible for participation, establishing procedures for allocation of responsibilities among fiduciaries of the Plan and the trust in which the Plan's assets were held, establishing a written investment policy to be reviewed by an independent advisor at least annually, determining the amount of benefits payable to participants, and performing any other function or taking any action required by the Plan or necessary or advisable to accomplish the purpose of the Plan. The Plan authorized the RPC to select investment managers and investment options for the Plan. The RPC also communicated ERISA-required disclosures and information regarding the Plan's assets. At this time, the identities of the RPC members are not ascertained and the RPC members are not parties to this Motion.

4

Throughout the period in dispute, the RPC selected various mutual funds, a common/collective trust, Wal-Mart common stock, and a stable value fund as investment options for the Plan and made them available to its participants for investment of their retirement savings. The 401(k) marketplace was highly competitive and many options were available for the RPC to choose from. The RPC's selection of investment options was discretionary, subject to the fiduciary duty requirements of ERISA. Ten mutual funds[6] within the Plan ("the Ten Funds") are at issue in this case.

Aspects of each of the Ten Funds increased the expense of administering and managing the Plan. All of the Ten Funds are Retail Class shares, which are generally more expensive than Institutional Class shares available to large retirement plans. The Ten Funds are predominately actively-managed[7] rather than passively-managed,[8] resulting in higher expenses. Seven of the Ten

---

[6](1) PIMCO Total Return Fund (Administrative Class); (2) Davis New York Venture Fund (Class A); (3) Merrill Lynch Equity Index Trust (Tier 1); (4) Massachusetts Investors Growth Stock Fund (Class A); (5) Ariel Fund; (6) Franklin Small-Mid Cap Growth Fund (Class A); (7) Merrill Lynch Small Cap Index Trust (Tier 1); (8) AIM International Growth Fund (Class A); (9) American EuroPacific Growth Fund (Class R4); and (10) Allianz RCM Technology Fund (Class A).

[7]Actively-managed funds have an investment adviser who actively researches, monitors, and trades the holdings of the fund to seek a higher return than the market as a whole. Employee Benefits Security Administration, *Understanding Retirement Plan Fees and Expenses* ("*Understanding Fees*") 9 (2004), http://www.dol.gov/ebsa/pdf/undrstndgrtrmnt.pdf.

[8]Passively-managed funds seek to obtain the investment results of an established market index, such as the Standard and Poor's 500, by duplicating the holdings included in the index. *Understanding Fees* at 9.

5

Funds[9] charge 12b-1 fees,[10] collecting over $26 million in 12b-1 fees over the period in dispute from all participants. Comparable options were available that did not charge 12b-1 fees. The Ten Funds' fees also include a revenue sharing fee.[11] Plaintiff provides comparison charts in his Complaint between the Ten Funds and alternative options from the same Morningstar[12] category available in the 401(k) market at the time, listing their respective expense ratios and the estimated losses to the Plan as a whole. Plaintiff does not note any services or other characteristics of the Ten Funds and their allegedly comparable alternatives. Plaintiff asserts the Plan lost between $62 million and $92 million due to excessive fees and expenses charged by the Ten Funds.

In addition, Defendants allegedly did not communicate the following to the Plan's participants: fees charged by the Ten Funds were paid directly from the Plan's assets; excessive fees have a devastating impact on the total retirement savings of the Plan's participants; prudent selection of reasonably priced, high-quality fund options is of paramount importance to prudent plan management and administration; Defendants chose Retail Class shares rather than Institutional Class

---

[9]Funds charging 12b-1 fees are (1) PIMCO Total Return Fund (Administrative Class); (2) Davis New York Venture Fund (Class A); (3) Massachusetts Investors Growth Stock Fund (Class A); (4) Ariel Fund; (5) Franklin Small-Mid Cap Growth Fund (Class A); (6) AIM International Growth Fund (Class A); and (7) American EuroPacific Growth Fund (Class R4).

[10]12b-1 fees are ongoing fees paid out of fund assets and used to pay commissions to brokers and other salespersons, to pay for advertising and other costs of promoting the fund to investors, and to pay various service providers to a plan pursuant to a bundled services arrangement. *Understanding Fees* at 7.

[11]Revenue sharing is a practice in which companies providing investment options to a retirement plan transfer fees deducted from investment returns of the option to the trustee or manager of the plan to cover administrative costs. *Understanding Fees* at 3.

[12]Morningstar categories aid investors and investment professionals in making meaningful comparisons between funds by categorizing funds according to their portfolio statistics and compositions over the past three years. Morningstar Category, http://www.mornigstar.com/InvGlossary/morningstar_category.aspx (last visited Oct. 23, 2008).

shares; seven of the Ten Funds charged 12b-1 fees when comparable options in the market did not; and the amount received by Merrill Lynch from revenue sharing fees.

**II.     Standard**

A motion to dismiss is the proper method to test the legal sufficiency of a complaint. *Schuer v. Rhodes*, 416 U.S. 232, 236 (1974). When considering a motion to dismiss, the court treats all well-pled facts as true and grants all reasonable inferences therefrom in favor of the non-moving party. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). However, the Court is not required to accept the pleader's legal conclusions. *Id.*

Pursuant to Rule 12(b)(1), a cause of action may be dismissed for lack of subject-matter jurisdiction. If Plaintiff lacks standing, the Court has no subject matter jurisdiction. *See Faibisch v. Univ. of Minnesota*, 304 F.3d 797, 801 (8th Cir. 2002). Plaintiff bears the burden of establishing standing in this case. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). To determine if standing exists, the Court may consider matters outside the pleadings. *See Satterlee v. United States*, 432 F. Supp. 2d 941, 945 (W.D. Mo. 2006), *aff'd*, 252 F. App'x 117 (8th Cir. 2007).

Rule 12(b)(6) provides that a cause of action may be dismissed for failing to state a claim upon which relief may be granted. A complaint need not contain detailed factual allegations; however, a plaintiff must provide more than "labels and conclusions" or a "formulaic recitation" of the elements of the cause of action. *See Bell Atl. Corp. v. Twombly*, – U.S. –, 127 S.Ct. 1955, 1964-65 (U.S. 2007). Factual allegations, when taken as true, must raise more than a speculative right to relief. *Id.* at 1965. However, Plaintiff need only plead enough facts to "nudge[ his] claim across the line from conceivable to plausible." *Id.* at 1974. When considering a motion to dismiss under Rule 12(b)(6), "[t]he Court may consider, in addition to the pleadings, materials embraced by the

7

pleadings and materials that are part of the public record." *In re K-tel Int'l, Inc. Sec. Litig.,* 300 F.3d 881, 889 (8th Cir. 2002) (internal citations omitted).

**III. Analysis**

*A. Lack of Subject-Matter Jurisdiction: Constitutional Standing*

The Article III standing requirements are well established. Plaintiff must have an injury-in-fact causally connected to the conduct complained of, which the Court can redress. *See Lujan*, 504 U.S. at 560-61. An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Harley v. 3M*, 284 F.3d 901, 906 (8th Cir. 2002) (quotation omitted). A participant is authorized to bring suit on behalf of the Plan when breach of a fiduciary duty is alleged. *See* 29 U.S.C. §§ 1109(a), 1132(a)(2)-(3). Under ERISA, a fiduciary relationship does not exist towards potential participants in a plan and such potential participants have no standing to sue for misrepresentation and breach of fiduciary duty. *Coleman v. Gen. Elec. Co.*, 643 F. Supp. 1229, 1235 (E.D. Tenn. 1986), *aff'd*, 822 F.2d 59 (6th Cir. 1987). Prior to October 31, 2003, Plaintiff did not contribute any assets to the Plan and thus was only a potential participant. Therefore, he can have no injury-in-fact for any purported breach of fiduciary duty by Defendants prior to this date.[13] Accordingly, Defendants' Motion to Dismiss is GRANTED for all claims occurring prior to October 31, 2003.

*B. Failure to State a Claim for which Relief can be Granted*

*Count I: Failure to Prudently and Loyally Manage the Plan and Plan Assets*

---

[13]Plaintiff suggests in his opposition brief that this suit is a class action. However, no motion for class certification has been filed with the Court to date. Even if this case was certified as a class action, the purported class period must begin on October 31, 2003 as the class representative must have standing to sue in his own capacity for claims alleged. *See Hall v. Lhaco, Inc.*, 140 F.3d 1190, 1196-97 (8th Cir. 1998).

Plaintiff alleges in Count I that Wal-Mart and the RPC breached ERISA's fiduciary duties of prudence and loyalty by failing to implement a prudent and adequate procedure for selecting and monitoring funds, continuing to offer investment options throughout the period in dispute which were unreasonably expensive in comparison to alternatives, and permitting the Ten Funds to pay revenue sharing and alleged "kickbacks" to Merrill Lynch. Fiduciaries of retirement plans must discharge their duties to a plan as a "prudent man acting in a like capacity and familiar with such matters...." 29 U.S.C. § 1104(a)(1)(B). The prudent person standard is an objective one, "focus[ing] on the fiduciary's conduct preceding the challenged decision." *Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 917-18 (8th Cir. 1994). The Court must examine whether the fiduciary "employed the appropriate methods to investigate the merits of the investment and to structure the investment." *Id.* at 918 *citing Katsaros v. Cody*, 744 F.2d 270, 279 (2d. Cir. 1984). "[A] fiduciary is obligated to investigate all decisions that will affect the pension plan, and must act in the best interests of the beneficiaries." *Id. citing Schaefer v. Arkansas Med. Soc'y*, 853 F.2d 1487, 1491 (8th Cir. 1988).

As fiduciaries, Wal-Mart and the RPC were expected to "defray[] reasonable expenses of administering the plan...," 29 U.S.C. § 1104(a)(1), by establishing a prudent process to select the Plan's investment options and evaluate the merits of those investments. Here, Plaintiff makes no factual allegations regarding the fiduciaries' conduct. Instead, Plaintiff states the expense ratios and fees were unreasonable and that alternatives were available. None of these allegations show Wal-Mart and the RPC did not investigate all decisions that would affect the Plan. Plaintiff makes conclusory allegations that fiduciaries did not analyze options or use a proper process to investigate the merits and structure of the Plan without any factual support. Wal-Mart and the RPC could have chosen funds with higher fees for any number of reasons, including potential for higher return, lower

9

financial risk, more services offered, or greater management flexibility. Plaintiff's dissatisfaction with fees or earnings does nothing to establish a colorable claim that Wal-Mart and the RPC did not properly investigate available options before making a decision. In addition, the Department of Labor ("the DOL") "does not believe that revenue sharing involves inherent ERISA violations." Testimony of Robert J. Doyle, Director of Regulations and Interpretations, Employee Benefits Security Administration, Before the Working Group at 5 (July 11, 2007) (Def. Sugg., Ex. 13). Plaintiff must allege some facts showing Wal-Mart and the RPC failed to conduct research, consult appropriate parties, conduct meetings, or consider other relevant information. No such allegations are set forth here. Therefore, Defendants' Motion with regard to Count I is GRANTED.

*Count III: Breach of Fiduciary Duty for Failing to Provide Complete and Accurate Information to the Plan's Participants and Beneficiaries*

Plaintiff alleges Wal-Mart and the RPC breached their fiduciary responsibility to provide material information to the Plan's participants.[14] Under the general fiduciary duty provision of ERISA, "a fiduciary has a duty to inform when it knows that silence may be harmful, and cannot remain silent if it knows or should know that the beneficiary is laboring under a material misunderstanding of plan benefits." *Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639, 644 (8th Cir. 2007) (internal citations omitted). "The duty of loyalty requires a fiduciary to disclose any material information that could adversely affect a participant's interests." *Id.* Information is material "if there is a substantial likelihood that it would mislead a reasonable employee in the

---

[14]Plaintiff does not assert Wal-Mart and the RPC failed to provide the mandatory ERISA disclosures to the Plan's participants, but rather asserts material information was not disclosed pursuant to the general fiduciary duty provision, Section 404(a), 29 U.S.C. § 1104(a).

process of making an adequately informed decision regarding benefits to which she might be entitled." *Id.* (citation omitted).

Here, the information Plaintiff seeks does not meet this material information standard. Plaintiff bases his allegation that fees were excessive by comparing each of the Ten Funds with an alternative option. However, these comparisons do not show Wal-Mart and the RPC did not disclose material information that could be harmful to participants. On the contrary, participants were free to make their own comparisons, to determine whether the fees were unreasonable, and to choose other options outside the Plan. Further, Plaintiff cannot transfer its burden to show a breach of fiduciary duty by requiring Wal-Mart and the RPC to justify the minutiae of their investment decisions. Instead, as stated under Count I, Plaintiff has the burden to allege some improper method or investigation on the part of Defendants.

Plaintiff also alleges Wal-Mart and the RPC should have disclosed the revenue sharing payments made to Merrill Lynch. A recent Western District of Missouri decision highlights the weakness in Plaintiff's argument for disclosure of revenue sharing payments. "Based on Eighth Circuit precedent, the Court agrees the ... [d]efendants had no duty to disclose ... revenue sharing agreements." *Tussey v. ABB, Inc.*, 2008 WL 379666, *2-3 (W.D. Mo. Feb. 11, 2008) (analyzing Eighth Circuit ERISA cases and the DOL's recent consideration to amend its regulations to require disclosure of revenue sharing, and finding revenue sharing need not be disclosed under today's ERISA). Following the Court's logic in *Tussey*, Wal-Mart and the RPC did not breach their fiduciary duty by failing to disclose a portion of the expense fees was attributable to revenue sharing. Therefore, the Court GRANTS Defendants' Motion to Dismiss Count III.

*Count V: Prohibited Transactions Regarding Revenue Sharing Payments*

11

Plaintiff alleges Wal-Mart and the RPC breached their duties of loyalty, exclusive purpose, and prudence by engaging in prohibited transactions involving revenue sharing and alleged kickback payments. Under Section 406(a)(1), a fiduciary "shall not cause the plan to engage in a transaction ... constitut[ing] a direct or indirect ... (C) furnishing of ... services ... between the plan and a party in interest..." or "(D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan...." 29 U.S.C § 1106(a)(1). Section 408 provides an exemption for transactions prohibited under Section 406(a)(1). 29 U.S.C. §§ 1106(a), 1108. "Reasonable compensation" may be paid to a party in interest for "services necessary for the establishment or operation of the plan." 29 U.S.C. § 1108(b)(2).

Plaintiff's opinion that fees were excessive fails to properly allege unreasonable compensation. Plaintiff makes no showing the revenue sharing fees were unreasonable in relation to the services provided. In addition, the Complaint is void of any factual allegation that Merrill Lynch received kickbacks from the Ten Funds. Instead, Plaintiff provides charts comparing the expense ratios of Ten Funds and their alternatives with no mention of the services provided by the respective options. The availability of less expensive options is insufficient because Defendant could have chosen the more expensive plans for a variety of legitimate and sound reasons. Defendants' Motion is therefore GRANTED with regard to Count V.[15]

*Count II: Failure to Monitor Fiduciaries*

Plaintiff alleges the Compensation Committee Defendants and the VP Retirement Plans Defendants ("Count II Defendants") breached their fiduciary duty to appoint, monitor, and remove

---

[15]The Court does not address whether Defendants violated Section 406(a)(1) because, even if they did, Plaintiff did not state a plausible claim that the revenue sharing fees are not exempted by Section 408.

members of the RPC. Count II is a derivative claim of Counts I, III, and V. Where an underlying claim fails, Count II must also fail. *See, e.g., Ward v. Avaya, Inc.*, 487 F. Supp. 2d 467, 481 (D.N.J. 2007); *In re Syncor ERISA Litig.*, 410 F. Supp. 2d 904, 913 (C.D. Cal. 2006) ("because the duty to monitor is derivative of the duty of prudence, [Defendants] as appointing fiduciaries cannot be held liable for failing to monitor the Committee Members when the Committee Members themselves have committed no breach of fiduciary duty"). Because Plaintiff failed to state a claim for relief in Counts I, III, and V, any purported breach of fiduciary duty by the Count II Defendants in appointing, monitoring, and retaining the RPC members also fails. Therefore, the Court GRANTS Defendants' Motion to Dismiss Count II.

*Count IV: Co-Fiduciary Liability*

Plaintiff alleges all Defendants breached their duties of loyalty, exclusive purpose, and prudence by failing to remedy breaches made by co-fiduciaries which he or she knowingly participated in, enabled, or knew of. Count IV is a derivative claim of Counts I, III, and V. Where one of those claims fail, Count IV must also fail. *See In re RadioShack Corp. ERISA Litig.*, 547 F. Supp. 2d 606, 615 (N.D. Tex. 2008) (dismissing co-fiduciary liability claim when underlying fiduciary duty claims were dismissed). Thus, Defendants do not bear any co-fiduciary liability because Counts I, III, and V fail for the reasons discussed above. Accordingly, Defendants' Motion to Dismiss Count IV is GRANTED.

## **CONCLUSION**

Plaintiff suffered no injury-in-fact prior to October 31, 2003 and therefore has no standing to assert claims for alleged injuries prior to that date. Plaintiff failed to state a plausible claim for relief under Counts I, III, and V. Because Counts II and IV are derivative of Counts I, III, and V,

13

Counts II and IV must also fail. For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss.

**IT IS SO ORDERED.**

s/ Gary A. Fenner
Gary A. Fenner, Judge
United States District Court

DATED:   October 28, 2008