UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

JEREMY BRADEN,

                    Plaintiff,

v.

WAL-MART STORES, INC., et al.,

                    Defendants.

CIVIL ACTION
No. 08-CV-3109-GAF

(Judge Gary A. Fenner)

## SUGGESTIONS OF LAW IN SUPPORT OF
## THE MERRILL LYNCH DEFENDANTS'
## MOTION TO DISMISS AMENDED COMPLAINT

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ...............................................................................................1

II.     BACKGROUND ................................................................................................2

        A.      The Plan ................................................................................................2

        B.      Summary of the Complaint..................................................................5

III.    ARGUMENT ....................................................................................................6

        A.      Standard of Review...............................................................................6

        B.      Counts VI, VII And VIII Should Be Dismissed Because the Merrill Lynch
                Defendants Have No Fiduciary Status Relevant to the Asserted Claims ..............7

                1.      ML & Co. Is Not An ERISA Fiduciary. ....................................7

                2.      ML Trust Is Not a Fiduciary With Respect to the Conduct Challenged in
                        the Complaint...............................................................................9

                3.      ML Pierce Is Not a Fiduciary With Respect to the Conduct Challenged in
                        the Complaint.............................................................................13

        C.      Count IX Should Be Dismissed Because Plaintiff Has Failed to State a Plausible
                Claim Against Any of the Merrill Lynch Defendants for Co-Fiduciary Liability17

        D.      Count X Should Be Dismissed Because ERISA Does Not Authorize Plaintiff's
                "Common Law" Unjust Enrichment Claim.......................................20

        E.      Count XI Should Be Dismissed Because It Seeks Relief That Is Unavailable
                Under ERISA § 502(a)(3)...................................................................21

IV.     CONCLUSION................................................................................................23

10 1v0 Filing

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Lockheed Martin Corp.*,
  No. 06-cv-0701-MJR, 2009 WL 839099 (S.D.Ill. Mar. 31, 2009)........................................... 19

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009)............................................................................................................ 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................................ 6

*Braden v. Wal-Mart Stores, Inc.*,
  588 F.3d 585 (8th Cir. 2009) ......................................................................................... 11, 12, 19

*Calhoon v. TWA*,
  400 F.3d 593 (8th Cir. 2005) ............................................................................................... 22

*Chicago District Counsel of Carpenters Welfare Fund v. Caremark, Inc.*,
  474 F.3d 463 (7th Cir. 2007) ................................................................................................16

*Columbia Air Services, Inc. v. Fidelity Mgmt. Trust Co.*,
  No. 07-11344-GAO, 2008 WL 4457861 (D. Mass. Sept. 30, 2008)....................................... 15

*DiFelice v. US Airways, Inc.*,
  397 F. Supp. 2d 735 (E.D.Va. 2005) ..................................................................................... 17

*Drobnak v. Andersen Corp.*,
  561 F.3d 778 (8th Cir. 2009) ................................................................................................. 6

*Eckelkamp v. Beste*,
  201 F. Supp. 2d 1012 (E.D. Mo.), *aff'd*, 315 F.3d 863 (8th Cir. 2002)...................................... 9

*Flanagan Lieberman Hoffman & Swaim v. Transamerica Life and Annuity Co.*,
  228 F. Supp. 2d 830 (S.D. Ohio 2002) .................................................................................... 15

*Great-West Life & Annuity Ins. Co. v. Knudson*,
  534 U.S. 204 (2002).......................................................................................................... 20, 22

*Gryl ex rel. Shire Pharms. Group PLC v. Shire Pharms. Group PLC*,
  298 F.3d 136 (2nd Cir. 2002) ................................................................................................. 2

*Hecker v. Deere & Co.*,
  556 F.3d 575 (7th Cir. 2009) ....................................................................... 11, 15, 16, 19, 23

*Jordan v. Federal Express Corp.*,
  116 F.3d 1005 (3rd Cir. 1997) ................................................................................................ 21

*Kalda v. Sioux Valley Physician Partners, Inc.*,
  481 F.3d 639 (8th Cir. 2007) ................................................................................................. 12

*Kannapien v. Quaker Oats Co.*,
  433 F. Supp. 2d 895 (N.D. Ill. 2006) ...................................................................................... 8

*Keach v. U.S. Trust Co.*,

10 1v0 Filing

240 F. Supp. 2d 840 (C.D. Ill. 2002) ................................................................. 18

*Kerns v. Benefit Trust Life Ins. Co.,*
992 F.2d 214 (8th Cir. 1993) ...................................................................... 16

*Kerr v. Charles F. Vatterott & Co.,*
184 F.3d 938 (8th Cir. 1999) ...................................................................... 21

*Knieriem v. Group Health Plan, Inc.,*
434 F.3d 1058 (8th Cir. 2006) .................................................................... 22

*Kushner v. Beverly Enters.,* Inc.,
317 F.3d 820 (8th Cir. 2003) ...................................................................... 2

*Livick v. Gillette Co.,*
524 F.3d 24 (1st Cir. 2008) ........................................................................ 16

*Maniace v. Commerce Bank,*
*N.A.,* 40 F.3d 264 (8th Cir. 1994) .......................................................... 9, 10

*Martin v. Feilen,*
965 F.2d 660 (8th Cir. 1992) ...................................................................... 17

*Massachusetts Mutual Life Ins. Co. v. Russell,*
473 U.S. 134 (1985).................................................................................... 20

*Mattes v. ABC Plastics, Inc.,*
323 F.3d 695 (8th Cir. 2003) ...................................................................... 2

*Mertens v. Hewitt Associates,*
508 U.S. 248 (1993).......................................................................... 18, 20, 21

*Pegram v. Herdrich,*
530 U.S. 211 (2000).............................................................................. 9, 17

*Pension Fund-Mid Jersey Trucking Indus. Local 701 v. Omni Funding Group,*
731 F. Supp. 161 (D.N.J. 1990) ................................................................. 17

*Protective Life Ins. Co. v. Kemp,*
No. 4:06-CV-112, 2006 U.S. Dist. LEXIS 35328 (E.D. Mo. May 31, 2006) .......................... 20

*Renfro v. Unisys Corp.,*
No. 07-2098, 2010 WL 1688540 (E.D.Pa. Apr. 26, 2010)................................................. 10

*Romine v. Acxiom Corp.,*
296 F.3d 701 (8th Cir. 2002) ...................................................................... 6

*Roth v. Sawyer-Cleator Lumber Co.,*
16 F.3d 915 (8th Cir. 1994) ........................................................................ 19

*Ruppert v. Principal Life Ins. Co.,*
No. 4:07-cv-003442009 U.S. Dist. LEXIS 124387 (S.D. Iowa  Nov. 5, 2009) ...................... 11

*Schulist v. Blue Cross,*
717 F.2d 1127 (7th Cir. 1983) .................................................................... 11

10 1v0 Filing

*Seaway Food Town, Inc. v. Med. Mut.*,
   347 F.3d 610 (6th Cir. 2003) .................................................................................. 11

*Shea v. Esenten*,
   107 F.3d 625 (8th Cir. 1997) .................................................................................. 12

*Taylor v. United Techs. Corp.*,
   No. 06-1494, 2009 U.S. Dist. LEXIS 19059 (D. Conn. Mar. 3, 2009) ............................ 12, 19

*Tibble v. Edison Intern.*,
   639 F.Supp.2d 1074 (C.D.Cal., July 16, 2009) ....................................................... 15

*Travelers Casualty v. IADA Services, Inc.*,
   497 F.3d 862 (8th Cir. 2007) ................................................................................. 20

*Zongker v. J.P. Morgan Chase Bank, N.A.*,
   No. 07-0778, 2008 U.S. Dist. LEXIS 84479 (D. Ariz. Oct. 20, 2008) ........................... 16

**Statutes**

26 U.S.C. § 401(k) ....................................................................................................... 2

ERISA § 3(21)(A); 29 U.S.C. § 1002(21)(A) ................................................................. 7, 8, 9,16

ERISA §§ 101-11; 29 U.S.C. §§ 1021-31 ..................................................................... 11

ERISA § 401(b)(1); 29 U.S.C. § 1101(b)(1) ................................................................. 11, 23

ERISA § 403(a); 29 U.S.C. § 1103(a) ......................................................................... 10, 17

ERISA § 404; 29 U.S.C. § 1104 .................................................................................. 5, 18

ERISA § 404(a); 29 U.S.C. § 1104(a) ......................................................................... 7

ERISA § 405; 29 U.S.C. § 1105 .................................................................................. 6, 18

ERISA § 405(a); 29 U.S.C. § 1105(a) ......................................................................... 5, 16, 17

ERISA § 405(a)(1); 29 U.S.C. § 1105(a)(1) ................................................................. 17, 18

ERISA § 405(a)(2); 29 U.S.C. § 1105(a)(2) ................................................................. 18

ERISA § 405(a)(3); 29 U.S.C. § 1105(a)(3) ................................................................. 17, 18

ERISA § 406; 29 U.S.C. § 1106 .................................................................................. 5

ERISA § 406(a); 29 U.S.C. § 1106(a) ......................................................................... 7

ERISA § 409; 29 U.S.C. § 1109(a) .............................................................................. 21

ERISA § 502(a)(2); 29 U.S.C. § 1132(a)(2) ................................................................. 19, 20, 21

ERISA § 502(a)(3); 29 U.S.C. § 1132(a)(3) ................................................................. 1, 6, 19, 20, 21

**Regulations**

29 C.F.R. § 2509.75-8 D-2 .......................................................................................... 16

29 C.F.R. §§ 2520.101-1, *et seq.* ................................................................................. 11

10 1v0 Filing

**Legislative Materials**

H.R. Rep. 93-1280 (1974), *reprinted in* 1974 U.S.C.C.A.N 5038 ............................................. 18

**Miscellaneous**

Brief Of The Secretary of Labor, Elaine L. Chao, As Amicus Curiae In Support Of Plaintiffs-
Appellants, *Braden v. Wal-Mart Stores, Inc.,* No. 0803798 (8th Cir. Mar. 16, 2009) ............ 11

-iv-

# I.     **INTRODUCTION**

The gist of plaintiff's claims in his Amended Complaint ("Complaint" or "Compl.") is that the fiduciaries of the Wal-Mart Profit Sharing and 401(k) Plan (the "Plan") breached duties under ERISA[1] by causing the Plan to invest in allegedly imprudent and expensive investment options.  Originally leveling this charge solely against Wal-Mart entities and personnel, plaintiff now also seeks liability against three Merrill Lynch entities—the Plan's current recordkeeper Merrill Lynch, Pierce, Fenner & Smith Incorporated ("ML Pierce"), the Plan's directed trustee Merrill Lynch Trust Company of America ("ML Trust"), and their parent corporation Merrill Lynch & Co., Inc. ("ML & Co.") (collectively, the "Merrill Lynch Defendants").

The addition of these new defendants was pointless, however, as none of them had fiduciary responsibility over the investment decisions that plaintiff challenges.  One of the Merrill Lynch Defendants—ML & Co.—has no fiduciary relationship whatsoever with the Plan, while the other two have only narrow fiduciary roles that do not include the selection of the Plan's investment options or any of the other Plan-related actions that plaintiff contends were inadequately or improperly performed.

Plaintiff also seeks liability against the Merrill Lynch Defendants for non-fiduciary liability, but these claims too go nowhere.  The first such claim—which asks the Court to construct a wholly new cause of action under federal common law—flies in the face of repeated Supreme Court warnings against judicial tampering with ERISA's carefully-crafted enforcement scheme.  And, while plaintiff purports to assert a claim for non-fiduciary liability under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the monetary relief he seeks is not available under that provision.  For these reasons, the Court should dismiss plaintiff's claims against the Merrill Lynch Defendants in their entirety.

---

[1]     Employee Retirement Income Security Act of 1974, as amended.

## II. <u>BACKGROUND</u>

Plaintiff Jeremy Braden purports to bring this action as a class action on behalf of current, former and future participants and beneficiaries in the Plan. (Compl. ¶ 293.)

### A. The Plan

The Plan was formed, effective October 31, 2003, by the merger of the Wal-Mart Stores, Inc. Profit Sharing Plan (the "Wal-Mart Profit Sharing Plan") and the Wal-Mart Stores, Inc. 401(k) Retirement Savings Plan (the "Wal-Mart 401(k) Plan" or "Plan"). (Compl. ¶ 49.) Wal-Mart is the Plan's sponsor and administrator. (Compl. ¶¶ 46; Plan § 9.5.)[2] The Wal-Mart Retirement Plans Committee (the "Wal-Mart Committee") is the Plan's "Named Fiduciary." (Plan § 9.1(b).)

Eligible employees of Wal-Mart may—as permitted by § 401(k) of the Internal Revenue Code, 26 U.S.C. § 401(k)—contribute a portion of their pre-tax earnings to a 401(k) account within the Plan. (Compl. ¶ 53.) In addition, Wal-Mart makes company-funded annual contributions to the Plan, both to each employee's 401(k) account and to separate profit sharing accounts, consisting primarily of Wal-Mart stock. (Compl. ¶¶ 51, 54.) Participating employees are able to direct that contributions to their respective 401(k) accounts be invested among a menu of investment options selected by the Wal-Mart Committee. (Compl. ¶ 56; Plan § 4.2(c).)

---

[2]    References to the Plan in these Suggestions are to the Wal-Mart Profit Sharing and 401(k) Plan, effective October 31, 2003, attached hereto as Exhibit A to the Declaration of Edward V. Hickey ("Hickey Decl."), which is the version referenced in the Complaint. (Compl. ¶ 49. ) The Plan was restated in 2009, and a copy of the restated version is attached as Exhibit B to the Declaration of Tami M. Cunningham ("Cunningham Decl.") for the Court's convenience.

    The Court may consider the Plan and other materials referenced and centrally relied upon in the Complaint without converting this Motion into a motion for summary judgment. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 n.4 (8th Cir. 2003), *citing Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003). *See also Gryl ex rel. Shire Pharms. Group PLC v. Shire Pharms. Group PLC*, 298 F.3d 136, 140 (2nd Cir. 2002) (considering documents "whose terms and effect are relied upon by the plaintiff in drafting the complaint"). Such other materials include Forms 5500 for the Plan (Compl. ¶¶ 1, 81), Servicing Agreements between Wal-Mart and ML Pierce (*id.* ¶¶ 40, 82-83), and the Trust Agreements between Wal-Mart and ML Trust (*id.* ¶¶ 41, 81).

Historically, those investment options have included a variety of mutual funds, among other investment vehicles. *Id.*

In 1997, Wal-Mart engaged ML Pierce to provide recordkeeping and related administrative services to one of the Plan's predecessors, the Wal-Mart 401(k) Plan. (Hickey Decl., Ex. C (1997 Servicing Agmt. at WAL059226-60)); (Cunningham Decl., Ex. D (2001 Servicing Agmt.).) Since the formation of the Plan in 2003, ML Pierce has maintained this same role for the newly formed Plan. (Compl. ¶ 40; Cunningham Decl., Ex. E (2003 Servicing Agmt.).)[3] Pursuant to the terms of its Servicing Agreement, ML Pierce also agreed to act as the Plan's agent in purchasing shares of Wal-Mart stock for the Plan and acknowledged that it acts as a fiduciary in carrying out that limited function. (Hickey Decl., Ex. C (1997 Servicing Agmt. at §14 (WAL059236), Attachment B (WAL059243-45)).) Outside of that narrow role, however, the Servicing Agreement makes clear that ML Pierce is not intended to assume any fiduciary responsibilities but is instead to perform only ministerial functions at the direction of the "Named Administrative Fiduciary"—the Wal-Mart Committee. (Hickey Decl., Ex. C (1997 Servicing Agmt. at §§ 3(b) (WAL059230), 11 (WAL059236)).)[4]

As the Servicing Agreement recognizes, ML Pierce is compensated for its services both through fees invoiced directly to Wal-Mart or the Plan, and through payments ML Pierce is authorized to receive from the Plan's mutual fund investment options. (Compl. ¶ 83; Hickey Decl., Ex. C (1997 Servicing Agmt. at §§ 4(a)-(c) (WAL059231)).) Principal among the invoiced fees is a flat fee charged for each Plan participant. (Hickey Decl., Ex. C (1997

---

[3]    For the purposes of these Suggestions, unless otherwise indicated, references to the Servicing Agreement are to the 1997 Servicing Agreement, attached as Exhibit C to the Declaration of Edward V. Hickey, which is the version principally relied on in the Complaint.

[4]    The Servicing Agreements define the "Named Administrative Fiduciary" by reference to the Trust Agreement, which, in turn, states that the term refers to the party identified in the Plan as being responsible for the Plan's administration and operation. (Hickey Decl., Ex. C (1997 Servicing Agmt. at § 2(c) (WAL059226)); Cunningham Decl., Ex. G (2003 Trust Agmt. at § 2.01 (WAL002481-82).) Under the Plan, that party is the Wal-Mart Committee. (Hickey Decl., Ex. A (2003 Plan at § 9.1(b)).)

-3-

Servicing Agmt. at Attachment C (WAL059258-59)).) The amount of this fee was set at a maximum $2 per participant but was contingent on an assumed Plan investment lineup. (*Id.* at WAL059258.) The Service Agreement provides that the Wal-Mart Committee can alter the Plan's lineup without affecting the $2 rate by selecting additional investment options from a defined universe of fund families with which ML Pierce has an "alliance relationship." (*Id.*) ML Pierce retains the right to amend or modify that list of fund families. (*Id.*)

But the list of fund families does not restrict the Wal-Mart Committee's selection of investment options. Rather, the Servicing Agreement recognizes that the Wal-Mart Committee is free to select investment options outside the fund families with which ML Pierce has an alliance relationship. (*Id.*) In such event, however, ML Pierce would be entitled to make up for its possible loss in fund revenues by charging a higher per participant fee of up to $7 per participant. (*Id.*; Compl. ¶83.)

Wal-Mart also entered into Trust Agreements with ML Trust to serve as trustee for the Wal-Mart 401(k) Plan (in 1997) and the Wal-Mart Profit Sharing Plan (in 2003), and ML Trust has continued in that role for the current Plan since the merger of those predecessor plans.[5] (Compl. ¶ 81; Cunningham Decl., Ex. F (1997 Trust Agmt.); Hickey Decl., Ex. G (2003 Trust Agmt.).)[6] Under the terms of the Trust Agreement, ML Trust is a "non-discretionary" or directed trustee, meaning that it is authorized to carry out its Plan-related functions solely at the direction of other fiduciaries or Plan participants. (Hickey Decl., Ex. G (2003 Trust Agmt. at §§ 5.01 (WAL002486-87), 5.04 (WAL002488), 7.01 (WAL002490)).) In particular, the Trust

---

[5]     The Merrill entity that served as the Plan's initial trustee has been merged into a series of successor entities. (Compl. ¶ 41.) For the purposes of these Suggestions, the Merrill Lynch Defendants have adopted plaintiff's use of "ML Trust" to refer generically to each of these entities.

[6]     Unless otherwise indicated, references to the Trust Agreement in these suggestions are to the 2003 Trust Agreement, attached as Exhibit G to the Declaration of Edward V. Hickey, which is the version principally relied on in the Complaint. The terms of the 1997 and 2003 Trust Agreements are the same in all respects material to the current Motion.

10 1v0 Filing

Agreement gives ML Trust "no discretionary control over, nor any other discretion regarding, the investment or reinvestment of any asset" in the trust. (*Id.* § 5.01 (WAL002486-87) (emphasis added).) The Trust Agreement does not set forth any explicit fee schedule but, like the Servicing Agreement, expressly authorizes the receipt by ML Trust and its affiliates of payments from mutual funds or collective trusts offered through the Plan. (*Id.* § 4.04 (WAL002484-85).)

###### B.    Summary of the Complaint

The Complaint alleges that defendants breached fiduciary duties they owed to the Plan and its participants, by causing the Plan to incur excessive fees through certain of the Plan's investment options. Plaintiff brings a total of eleven counts based on this contention, but only six are asserted against the Merrill Lynch Defendants. Four of these counts seek liability against the Merrill Lynch Defendants as Plan fiduciaries. Count VI asserts that the Merrill Lynch Defendants breached ERISA fiduciary duties under ERISA § 404, 29 U.S.C. § 1104, by imprudently causing the Plan's investment lineup to include unduly expensive funds, which in turn made "revenue sharing payments" to Merrill entities that were unreasonable in light of the services provided to the Plan. (Compl. ¶¶ 218-26.) Count VII asserts that the Merrill Lynch Defendants engaged in prohibited transactions under ERISA § 406, 29 U.S.C. § 1106, primarily by causing the Plan to enter into contracts and other arrangements with ML Trust that allowed the Merrill Lynch Defendants to receive payments from the Plan's investment options. (*Id*. ¶¶ 227-237.) Count VIII alleges that the Merrill Lynch Defendants breached ERISA fiduciary duties by failing to provide complete and accurate information about the Plan's fees and expenses. (*Id*. ¶¶ 238-249.) Count IX seeks to hold the Merrill Lynch Defendants liable under

ERISA § 405, 29 U.S.C. § 1105, as co-fiduciaries for the Wal-Mart Defendants' conduct.  (*Id.* ¶¶ 250-261.)

In addition, plaintiff asserts two counts that are not based on the assertion that the Merrill Lynch Defendants were fiduciaries.  Count X purports to state a claim for "common law unjust enrichment under ERISA," on grounds that the Merrill Lynch Defendants received compensation that allegedly exceeded the value of the services they performed for the Plan.  (*Id.* ¶¶ 262-270.)  And Count XI asserts that the Merrill Lynch Defendants are liable as non-fiduciaries under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), for knowingly participating in alleged fiduciary breaches by the Wal-Mart Defendants.  (*Id.* ¶¶ 271-278.)

## III.   <u>ARGUMENT</u>

### A.   <u>Standard of Review</u>

Dismissal is required if the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible only if the factual allegations are "enough to raise a right to relief above the speculative level."  *Drobnak v. Andersen Corp.,* 561 F.3d 778, 783 (8th Cir. 2009) (quotation omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129 S. Ct. at 1949.  Rather, a complaint that tenders only "labels and conclusions" or "naked assertion[s] devoid of further factual enhancement" warrants dismissal.  *Id.* (quotation omitted).  If the well-pleaded facts raise only a possibility of misconduct, the complaint must be dismissed.  *Id.* at 1950.  Dismissal is also appropriate if the facts in the complaint contradict each other, or if the complaint refers to documents that refute those facts.  *See Romine v. Acxiom Corp.*, 296 F.3d 701, 705-06 (8th Cir.

-6-

2002) (affirming dismissal where plaintiffs claimed that defendant violated GAAP accounting, but SEC filings referenced in the complaint showed GAAP compliance).

### B. Counts VI, VII And VIII Should Be Dismissed Because the Merrill Lynch Defendants Have No Fiduciary Status Relevant to the Asserted Claims.

Counts VI through VIII of the Complaint seek liability on grounds that the Merrill Lynch Defendants breached fiduciary obligations to the Plan. Counts VI and VIII allege violations of general fiduciary duties imposed under ERISA § 404(a) (Compl. ¶¶ 221, 223-24, 240-43), while Count VII alleges violations of ERISA § 406(a), which precludes fiduciaries from engaging in "prohibited transactions." (Compl. ¶¶ 228-30.) These claims fail because none of the Merrill Lynch Defendants were fiduciaries with respect to the conduct challenged in the Complaint.

#### 1. ML & Co. Is Not An ERISA Fiduciary.

Under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), a person is a fiduciary of a plan:

> to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

Because ML & Co. does not meet this definition, it is not a fiduciary and is not subject to suit under Count VI through VIII.

Plaintiff attempts to establish otherwise by treating all three Merrill Lynch Defendants as a single entity, referring to them collectively as "Merrill Lynch." (Compl. ¶¶ 44, 81-87.) Relying on this fiction, plaintiff erroneously suggests that all three Merrill entities have acknowledged fiduciary status and that all three assumed fiduciary responsibilities by virtue of servicing agreements to which only ML Pierce was a party. (*Compare* Compl. ¶¶ 81-83; *with* Hickey Decl., Ex. G (2003 Trust Agmt. at § 6.03 (WAL002489)); Cunningham Decl., Ex. F

-7-

(1997 Trust Agmt. at § 6.03 (WAL001023)); Hickey Decl., Ex. H (2003 Form 5500, WAL004282-460 at WAL004457); Hickey Decl., Ex. I (July 29, 2003 Am. to Servicing Agmt., WAL050721-44, at WAL050740); Hickey Decl., Ex. C (1997 Servicing Agmt. at Attachment C (WAL059258).) But the effort is hollow. As the Complaint elsewhere states, the three Merrill Lynch Defendants are distinct corporations (Compl. ¶¶ 40-42), and plaintiff alleges no grounds for disregarding their separate corporate forms.

When one strips away those allegations applicable solely to other Merrill Lynch Defendants, it becomes readily apparent that the Complaint offers no basis for concluding that ML & Co. is a Plan fiduciary. Contrary to plaintiff's suggestion, ML & Co. did ***not*** acknowledge fiduciary status in either the Trust Agreement or the Plan's Form 5500—it in fact appears in neither. (*Compare* Compl. ¶ 81 *with* (Hickey Decl., Ex. G (2003 Trust Agmt.) and Ex. H (2003 Form 5500).) Nor was ML & Co. a party to the Servicing Agreement that forms the remaining basis for the Merrill Lynch Defendants' alleged fiduciary status. (*Compare* Compl. ¶ 82-84 *with* Hickey Decl., Ex. I (July 29, 2003 Am. to Servicing Agmt. at WAL050740) *and* Hickey Decl., Ex. C (1997 Servicing Agmt. at WAL059258).)

Plaintiff's only allegations concerning ML & Co. itself—other than those establishing its corporate status—are that ML & Co. was the parent company to other Merrill entities and that the Servicing Agreement allows ML Pierce to assign its duties to other ML & Co. subsidiaries or affiliates. (Compl. ¶ 42.) But simply being a corporate parent satisfies none of the factors set forth in ERISA § 3(21)(A)—it involves no inherent discretionary authority whatsoever with respect to the Plan. *See, e.g.*, *Kannapien v. Quaker Oats Co.*, 433 F. Supp. 2d 895, 906-07 (N.D. Ill. 2006) (holding that parent company was not fiduciary with respect to subsidiary's ERISA plan). And while the Servicing Agreement authorizes the assignment of ML Pierce's rights and

obligations to other ML & Co. subsidiaries, the contract does not authorize the assignment of

such rights and duties to ML & Co. itself.  (Hickey Decl., Ex. C (1997 Servicing Agmt. at § 13

(WAL059236)).)[7]   Accordingly, plaintiff's fiduciary duty claims against ML & Co. should be

dismissed in their entirety.

> ### 2. ML Trust Is Not a Fiduciary With Respect to the Conduct Challenged in the Complaint.

Unlike ML & Co., ML Trust does have a limited fiduciary role with respect to the Plan,

but that role does not involve any of the conduct challenged in the Complaint.  It is well settled

that ERISA makes an entity a fiduciary only "to the extent" that entity performs fiduciary

functions.  ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A); *Pegram v. Herdrich*, 530 U.S. 211,

225-26 (2000).  Thus, an entity that is a plan fiduciary as to one function is not a fiduciary with

respect to other functions under the plan.  *Pegram*, 530 U.S. at 225-26; *Maniace v. Commerce

Bank, N.A.*, 40 F.3d 264, 267 (8th Cir. 1994) (holding that a plan trustee is not necessarily a

fiduciary for all plan purposes); *Eckelkamp v. Beste*, 201 F. Supp. 2d 1012, 1022 (E.D. Mo.)

(citing *Maniace* for the proposition that a court must "inquire as to whether a person is a

fiduciary with respect to the particular transaction or conduct at issue"), *aff'd,* 315 F.3d 863 (8th

Cir. 2002).

As the Complaint alleges, ML Trust is the Plan's trustee, which is an inherently fiduciary

role.  But ML Trust's authority in that role is strictly confined.  The Trust Agreement establishes

that ML Trust serves only as a "nondiscretionary trustee", and to invest the Plan's assets and

carry out other Plan-related functions solely at the direction of other fiduciaries or Plan

participants.  (Hickey Decl., Ex. G (2003 Trust Agmt. at §§ 5.01 (WAL002486-87), 5.04

(WAL002488), 7.01 (WAL002490)).)  As the Eighth Circuit has recognized, the fiduciary

---

[7]        Notably, the Complaint does not allege that ML Pierce actually assigned its rights or duties—fiduciary or
otherwise—to any other Merrill entities.

responsibilities of directed trustees such as ML Trust are more limited than those of other fiduciaries. ERISA § 403(a), 29 U.S.C. § 1103(a); *Maniace*, 40 F.3d at 268 (noting that obligations of a directed trustee are "something less than that owed by typical fiduciaries").

### a. **Count VI.**

ML Trust's limited fiduciary responsibilities do not include the conduct challenged by plaintiff in Count VI - selection of the Plan's investment options. (*See* Compl. ¶ 222.) The Plan instead expressly provides, "[t]he [Wal-Mart] Committee shall have the sole discretion to determine the different investment fund choices to be made available to Participants and Former Participants[.]" (Hickey Decl., Ex. A (2003 Plan § 4.2(c)).) While plaintiff nonetheless contends that the Service Agreement gave "Merrill Lynch" control over investment selection (Compl. ¶ 82), that argument fails as to ML Trust. ML Trust is not party to that agreement; ML Pierce is. As such, ML Trust did not assume the contractual rights that plaintiff contends gave rise to relevant fiduciary status. The Trust Agreement, to which ML Trust is a party, contains no similar provisions.[8]

### b. **Count VII.**

Nor did ML Trust act as a fiduciary in negotiating and entering into the Trust Agreement—which is what plaintiff contends as his basis for Count VII.[9] The Trust Agreement

---

[8] The Trust Agreement does allow ML Trust to limit the "categories of assets in which the Trust Fund may be invested" under limited circumstances. (Hickey Decl., Ex. G (2003 Trust Agmt. at § 5.01 (WAL002486-87)).) This, however, did not give ML Trust control over the investment lineup. As reflected in Section 3.03 of the Trust Agreement, Wal-Mart is free to retain additional trustees and form separate trust funds to maintain the assets of any investment options ML Trust is unwilling or unable to trustee. *See Renfro v. Unisys Corp.*, No. 07-2098, 2010 WL 1688540, at *4 (E.D.Pa. Apr. 26, 2010) (holding that directed trustee's right to refuse services for new investment options did not give it fiduciary authority over selection of plan's investments where plan sponsor was free to establish additional trusts).

[9] *See, e.g.*, (Compl. ¶ 230 ("Specifically, the Merrill Lynch Prohibited Transaction Defendants approved, authorized and caused the Plan to enter into a contract and other arrangements with Merrill Lynch, the Plan Trustee, a party in interest, through and as a result of which Merrill Lynch obtained revenue sharing and other kickback payments from the Plan Investment Options companies . . . and contracted with Wal-Mart to conceal the amount of such payments from Wal-Mart employees and, thus, Plan participants."); *see also id.* ¶¶ 232-33.) The Trust Agreement is the only contract or arrangement between ML Trust and the Plan identified in the Complaint, and

was the mechanism by which Wal-Mart retained ML Trust to act as Plan's trustee. As a matter

of law, a party does not act as a fiduciary in negotiating the terms of its own retention by a plan.

*See, e.g., Schulist v. Blue Cross*, 717 F.2d 1127, 1131-32 (7th Cir. 1983) (holding that defendant

insurer did not act as a fiduciary in negotiating or renegotiating the terms of its own retention);

*Seaway Food Town, Inc. v. Med. Mut.,* 347 F.3d 610, 618-19 (6th Cir. 2003) (citing *Schulist* with

approval).[10]

### c. **Count VIII.**

Finally, ML Trust had no fiduciary obligation to disclose the fee and expense information

that plaintiff claims in Count VIII was improperly withheld from participants. Under ERISA,

fiduciary responsibility for participant communications is not assigned to a plan's directed

trustee, but instead to the plan's administrator, which in this case is Wal-Mart. (Hickey Decl.,

Ex. A (2003 Plan at § 9.5)); ERISA §§ 101-11, 29 U.S.C. §§ 1021-31; 29 C.F.R. §§ 2520.101-1,

*et seq.* And, while plaintiff nonetheless asserts that "Merrill Lynch" was responsible for

"deficient communications," he expressly relies on the Servicing Agreement for this allegation.

(Compl. ¶ 148.) Again, ML Trust is not a party to that agreement, and the agreement does not

purport to assign ML Trust any role or responsibility whatsoever for participant communications.

---

plaintiff's allegation that ML Trust "contracted with Wal-Mart" to conceal information is likewise a reference to the Trust Agreement's terms. (*See* Compl. ¶ 146 (citing Hickey Decl., Ex. G (2003 Trust Agmt. at § 4.04 (WAL002484-85).)

[10]     Plaintiff also alleges in Count VII that the revenue sharing payments allegedly received by ML Trust from the Plan's mutual fund options constituted "Plan assets." (Compl. ¶¶ 234-35.) Plaintiff's assertion is wrong as a matter of law. Under ERISA, the assets of a mutual fund in which a plan invests are not plan assets. *See* ERISA § 401(b)(1), 29 U.S.C. § 1101(b)(1). And, as the Seventh Circuit (the only circuit court to address the issue) explained in *Hecker*, "[o]nce the fees are collected from the mutual fund's assets and transferred to one of the [service provider] entities, they become [the service provider's]—again, not the assets of the Plans." 556 F.3d at 584; *see also Ruppert v. Principal Life Ins. Co.,* No. 4:07-cv-00342009, U.S. Dist. LEXIS 124387 at *56-57 (S.D. Iowa Nov. 5, 2009) (adopting the *Hecker* position). The Department of Labor (the government agency primarily responsible for enforcing ERISA) has similarly taken the position that revenue sharing payments are not plan assets, including in this very case. (Brief Of The Secretary of Labor, Elaine L. Chao, As Amicus Curiae In Support Of Plaintiffs-Appellants, *Braden v. Wal-Mart Stores, Inc.,* No. 0803798 (8th Cir. Mar. 16, 2009), at 26 n. 12 ("It is the Secretary's view that the revenue sharing payments described in the complaint do not constitute plan assets for purposes of section 406(a)(1)(D), see 29 U.S.C. § 1101(b)(1).").) Thus, to the extent that plaintiff relies on this allegation to argue ML Trust has relevant fiduciary status, the argument fails.

-11-

Nor has plaintiff alleged sufficient facts to state a claim under his theory that ML Trust breached a general fiduciary duty to disclose information that it knew or had reason to know would be material to the Plan's participants. (Compl. ¶¶ 151-52.) The Eighth Circuit has held that plaintiff has alleged sufficient facts "to support an inference that nondisclosure of details about the fees charged by the Plan funds and the amounts of the revenue sharing payments" could have misled a participant. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 599-600 (8th Cir. 2009). But that is not enough for plaintiff to state a claim against ML Trust. Rather, plaintiff must also allege facts sufficient to show that ML Trust ***knew or should have known*** that material information was being withheld. *See Kalda v. Sioux Valley Physician Partners, Inc.,* 481 F.3d 639, 644 (8th Cir. 2007) ("[A] fiduciary has a duty to inform when it knows that silence may be harmful[.]"); *Shea v. Esenten*, 107 F.3d 625, 628 (8th Cir. 1997) (same). And the Complaint fails in that regard.

Plaintiff's primary contention is that ML Trust knew participants were not receiving revenue sharing information because the terms of the Trust Agreement precluded Wal-Mart from disclosing the details of ML Trust's fee reports. (Compl. ¶¶ 146, 151.) But this argument would only make sense if the details of revenue sharing arrangements were ***inherently*** material, such that knowledge of their nondisclosure was necessarily knowledge of a material omission. They are not. Instead, the Eighth Circuit held that the materiality of such information is subject to "a fact and context sensitive inquiry." *Braden,* 588 F.3d at 600 ("[W]e agree that there may be no per se duty to disclose such [revenue sharing] payments[.]").[11] And while it may be reasonable

---

[11]    Notably, other courts have concluded that revenue sharing information was wholly immaterial to participant decision-making. *See, e.g., Hecker*, 556 F.3d at 586; *Taylor v. United Techs. Corp.,* No. 06-1494, 2009 U.S. Dist. LEXIS 19059, 35-36 (D. Conn. Mar. 3, 2009). Those opinions cannot, of course, override the Eighth Circuit's holding on materiality in this case. But the fact that other courts have objectively reached such conclusions directly counters any inference that the mere awareness of revenue sharing information should have caused ML Trust to believe that failure to disclose the information would mislead participants in making investment decisions under the Plan.

to infer that the fiduciaries responsible for participant disclosures had sufficient knowledge of the surrounding facts to make that inquiry, the same inference is not reasonable as to ML Trust—which, as discussed above, has no legal or contractual responsibility for participant communications.[12]

>   3.   **ML Pierce Is Not a Fiduciary With Respect to the Conduct Challenged in the Complaint.**

Like ML Trust, ML Pierce does have a limited fiduciary role, but its role has nothing to do with any of plaintiff's fiduciary duty claims. ML Pierce agreed to serve as the Plan's agent in purchasing Wal-Mart stock, and has acknowledged that it acts as a fiduciary in carrying out those purchases. (Hickey Decl., Ex. C (1997 Servicing Agmt. at §14 (WAL059236), Attachment B (WAL059243-45)).) Nowhere in the Complaint, however, does plaintiff allege that ML Pierce acted improperly in purchasing Wal-Mart stock. And plaintiff does not even attempt to relate that narrow fiduciary role to any of the conduct that is challenged in the Complaint.

Instead, plaintiff asserts that the Servicing Agreement provides ML Pierce fiduciary control over the selection of Plan investment options by giving ML Pierce the "unilateral right to amend or modify the mutual funds offered to Plan participants by the Plan." (Compl. ¶ 82.) The Servicing Agreement does nothing of the sort. Rather, the agreement provides that ML Pierce will charge a maximum fee of $2 per participant for plan administrative services, but the $2 amount is contingent on the Plan's investment options being limited to funds offered by a defined group of fund families with which ML Pierce has an "alliance relationship." (Hickey Decl., Ex. C (1997 Servicing Agmt. at Attachment C (WAL059258-59)); Hickey Decl., Ex. I

---

[12]   Plaintiff also argues that "Merrill Lynch" concealed the nature and amount of its income from Wal-Mart and thereby knew that participants were not receiving complete and accurate information. (Compl. ¶ 152.) But this argument makes no sense. If, as plaintiff alleges, the Trust Agreement prevented Wal-Mart from disclosing ML Trust's fee reports to plan participants (Compl. ¶¶ 146-47), then there would be no reason for ML Trust to believe that errors in those reports would have any effect on participant communications.

(July 29, 2003 Am. to Servicing Agmt. at WAL050740).)  The agreement then assigns ML

Pierce the right to modify or amend that list of fund families.  (Hickey Decl., Ex. C (1997

Servicing Agmt. at Attachment C (WAL059258-59)); Hickey Decl., Ex. I (July 29, 2003 Am. to

Servicing Agmt. at WAL050740).)[13]

But that right does not give ML Pierce any control over the range of possible Plan

investment options.  To the contrary, the Servicing Agreement identifies the "Plan's Named

Administrative Fiduciary" (*i.e.*, the Wal-Mart Committee), as the party responsible for selecting

the Plan's investment copies, and expressly recognizes that the Committee may decide to offer

"investment funds . . . outside the fund families with which Merrill Lynch has or can establish an

alliance relationship."  (Hickey Decl., Ex. I (July 29, 2003 Am. to Servicing Agmt. at

WAL050740).)  The Servicing Agreement specifies that, in such event, ML Pierce is entitled to

charge a higher per participant fee for its plan administrative services, but it does not give ML

Pierce any discretion to reject the new fund.  Rather, the Service Agreement only allows ML

Pierce to decline to provide recordkeeping services where it ***cannot*** provide them because it is

unable, despite best efforts, to reach an appropriate operating agreement with the fund, which

plaintiff does not allege ever occurred.  (*Id.*; Hickey Decl., Ex. C (1997 Servicing Agmt. at §

2(v) (WAL059229)).)

Thus, the real import of the provisions cited by plaintiff is merely to establish ML

Pierce's right to compensation under various contingencies.  The parties negotiated a per

participant fee based on the understanding that the Plan's lineup would include investment funds

with which ML Pierce had alliance relationships and from which Merrill Lynch entities receive

---

[13]     The October 31, 2003 Servicing Agreement cited in plaintiff's Complaint ¶ 40 and attached hereto as
Exhibit E to the Declaration of Tami M. Cunningham omits the provision that plaintiff alleges provided ML Pierce
fiduciary control over investment selection.  The Merrill Defendants nonetheless assume, for the purposes of the
current Motion, that the relevant provision remained in force, as the Complaint itself suggests.

revenue sharing payments.[14]  If that understanding changes, ML Pierce is entitled to make up for its lost revenue by charging a higher per participant fee—which is also negotiated under the terms of the Servicing Agreement.

As discussed *supra* at (II)(B)(2)(b), a party does not act as an ERISA fiduciary in negotiating the terms of its own retention.  Indeed, other courts have held as much in dismissing similar cases where recordkeepers had conditioned their rates—or their willingness to perform services at all—on a plan sponsor's agreement to limit a plan's investment lineup to a defined range of funds.  *See Hecker v. Deere & Co.*, 556 F.3d at 583 (holding that plan recordkeeper and directed trustee did not act as a fiduciary in negotiating terms in trust agreement limiting plan sponsor's selection of plan investment options); *Columbia Air Services, Inc. v. Fidelity Mgmt. Trust Co.,* No. 07-11344-GAO, 2008 WL 4457861, at *1, 4 (D. Mass. Sept. 30, 2008) (same).  Thus, ML Pierce did not act as a fiduciary in negotiating compensation terms that were contingent on the makeup of an investment lineup ML Pierce had no discretion to select.

Nor did ML Pierce assume relevant fiduciary status by allegedly inaccurately reporting its revenue sharing income to Wal-Mart.  (Compl. ¶ 86.)  While the Servicing Agreement requires ML Pierce to provide revenue sharing information to Wal-Mart upon written request, "not every contractual duty, even when related to an ERISA plan, gives rise to a fiduciary duty." *Flanagan Lieberman Hoffman & Swaim v. Transamerica Life and Annuity Co.*, 228 F. Supp. 2d 830, 846 (S.D. Ohio 2002).  The mere obligation to report its income upon request does not give ML Pierce any authority or control over the Plan or the Plan's assets and so—by the plain terms

---

[14]        As courts have noted, ERISA does not prohibit the use of revenue sharing arrangements, along with invoiced fees, to compensate plan service providers.  *See, e.g., Hecker v. Deere & Co.*, 556 F.3d 575, 585 (7th Cir. 2009); *Tibble v. Edison Intern.*, 639 F.Supp.2d 1074, 1113 (C.D.Cal., July 16, 2009) ("The Court agrees with the Seventh Circuit that there is nothing inherently wrong with using revenue sharing from mutual funds in order to offset some of the administrative costs that might otherwise be borne by the plan sponsor.").

of ERISA §3(21)(A)—does not confer on it any fiduciary status.[15]  It likewise follows that any

errors ML Pierce allegedly committed in carrying out its non-fiduciary reporting obligations

were non-fiduciary in nature as well.[16]

Finally, plaintiff's suggestion that the Servicing Agreement assigned ML Pierce fiduciary

responsibility for participant communications (Compl. ¶ 148) is inconsistent with established

law.  While the Servicing Agreement requires that ML Pierce prepare participant

communications, it does not give ML Pierce discretionary control over their content or

distribution.  Rather, the agreement unequivocally states that "[a]ll Participant communications

must be approved by [Wal-Mart]" and "shall be distributed at the times and in the manner

directed by" Wal-Mart or the Wal-Mart Committee.  (Hickey Decl., Ex. C (1997 Servicing

Agmt. at § 2(e) (WAL059227)).)  As Eighth Circuit law and Department of Labor regulations

make clear, such preparation of employee communications at the direction and approval of

others does not make one an ERISA fiduciary.  *See Kerns v. Benefit Trust Life Ins. Co.,* 992 F.2d

214, 218 (8th Cir. 1993) ("[A] person who prepares 'employee communications material ...

within a framework of policies, interpretations, rules, practices and procedures made by other

persons is not a fiduciary.'") (quoting 29 C.F.R. § 2509.75-8 D-2).

Plaintiff will presumably argue that ML Pierce nonetheless had a duty to disclose

information to participants because it knew or should have known that the existing

communications were inadequate.  But, as with ML Trust, plaintiff has failed to allege sufficient

---

[15]     This is all the more so because the payments from Plan investment options that plaintiff contends ML
Pierce failed to accurately disclose were, by their very nature, not Plan assets.  *See Hecker,* 556 F.3d at 584 ("Once
the fees are collected from the mutual fund's assets and transferred to one of the Fidelity entities, they become
Fidelity's assets-again, not the assets of the Plans."); *Chicago District Counsel of Carpenters Welfare Fund v.
Caremark, Inc.,* 474 F.3d 463, 476 n.6 (7th Cir. 2007) (rebates paid by manufacturers to plan service provider based
on sales to ERISA plans were "its own assets," not "plan assets").

[16]     *See, e.g.,* Livick v. Gillette Co., 524 F.3d 24, 29 (1st Cir. 2008) (holding that calculation of benefits by
employee was a ministerial act, such that errors did not create ERISA liability); *Zongker v. J.P. Morgan Chase
Bank, N.A.,* No. 07-0778, 2008 U.S. Dist. LEXIS 84479, at *4 (D. Ariz. Oct. 20, 2008) (communication of
inaccurate benefits information by non-fiduciary personnel not considered a fiduciary act).

10 1v0 Filing

facts to support this theory. While ML Pierce is involved in creating participant communications, its non-fiduciary role did not obligate it to assess whether the communications sent to participants were, in the aggregate, sufficient to convey all material information necessary to avoid misleading participants concerning their Plan-related investment decisions. Nor did ML Pierce's narrow and unrelated fiduciary responsibility for purchasing Wal-Mart stock give it any reason to perform that analysis.

Accordingly, Counts VI through VIII should be dismissed against ML Pierce.

### C. Count IX Should Be Dismissed Because Plaintiff Has Failed to State a Plausible Claim Against Any of the Merrill Lynch Defendants for Co-Fiduciary Liability.

In addition to his direct breach of fiduciary duty claims in Counts VI through VIII, plaintiff seeks in Count IX to hold the Merrill Lynch Defendants liable as co-fiduciaries for each other's alleged breaches pursuant to ERISA § 405(a), 29 U.S.C. § 1105(a). By the terms of the statute, however, co-fiduciary liability only applies to parties who are themselves plan fiduciaries and so does not apply to non-fiduciary ML & Co. Accordingly, Count IX should be dismissed against that defendant.

With respect to ML Trust and ML Pierce, nothing in § 405 circumvents the rule that a person who performs limited fiduciary functions does not become a fiduciary for all purposes. *See Pegram*, 530 U.S. at 226. Consistent with this rule, courts have refused to impose § 405 liability absent a meaningful connection between a defendant's fiduciary role and the alleged breach of a co-fiduciary. *See, e.g.*, *DiFelice v. US Airways, Inc.*, 397 F. Supp. 2d 735, 757 (E.D.Va. 2005) ("[C]o-fiduciary liability, like the general fiduciary liability from which it derives, is not an all or nothing proposition. A limitation on a directed trustee's duties under ERISA § 403(a) would have little effect if the directed trustee's co-trustee liability was not similarly limited."); *Pension Fund-Mid Jersey Trucking Indus. Local 701 v. Omni Funding*

-17-

*Group*, 731 F. Supp. 161, 176 (D.N.J. 1990) ("ERISA does not contemplate that every plan fiduciary become an insurer of the entire plan."). As explained above, the Complaint fails to establish any significant nexus between ML Trust's and ML Pierce's limited fiduciary roles and the challenged conduct, including the alleged breaches of the other defendants. As such, plaintiff has failed to state a claim against ML Trust or ML Pierce under § 405.

In addition, plaintiff has failed to allege sufficient facts to establish liability under any of § 405(a)'s three subsections. Plaintiff's theory under § 405(a)(2) fails because, by its terms, that provision only imposes liability on a fiduciary that has itself breached its fiduciary duties under § 404 and has thereby enabled a breach by a co-fiduciary. 29 U.S.C. §1105(a)(2). Thus, to assert a § 405(a)(2) claim against a particular defendant, plaintiff must first establish that that defendant breached its own fiduciary duties. For the reasons discussed in connection with Counts VI through VIII, that is something plaintiff has failed to do as to any Merrill Defendant.

Subsections 405(a)(1) and (a)(3), in turn, require that the defendant fiduciary have actual "knowledge" that another fiduciary's conduct constitutes a breach of its fiduciary duty. 29 U.S.C. § 1105(a)(3); *see Martin v. Feilen*, 965 F.2d 660, 664 (8th Cir. 1992) ("The ERISA fiduciary … is liable for known breaches of co-fiduciaries, § 1105."); *Keach v. U.S. Trust Co.*, 240 F. Supp. 2d 840, 844 (C.D. Ill. 2002) ("It is well established that actual knowledge by a fiduciary is required for co-fiduciary liability to attach under § 405(a)."). The standard of *actual* knowledge requires more than proof that the fiduciary *should* have known that its co-fiduciary's conduct breached its duties—the defendant must actually "know that it was a breach." H.R. Rep. No. 93-1280, at 308 (1974), *reprinted in* 1974 U.S.C.C.A.N. 5038, 5080. Plaintiff has failed to meet that standard under either subsection.

With respect to § 405(a)(1), plaintiff contends that the Merrill Lynch Defendants "knowingly participated in and undertook to conceal" the Wal-Mart Defendants' alleged fiduciary breaches by negotiating the Trust Agreement's nondisclosure provision and by "knowing the Plan communications provided incomplete and inaccurate information" regarding the Merrill Lynch Defendants' fees. (Compl. ¶ 257.) Plaintiff, however, fails to cite any information in any Plan communication that he contends is inaccurate, much less offer any facts to suggest that the Merrill Lynch Defendants were aware of the supposed inaccuracy. Nor does plaintiff provide any plausible basis for the Court to infer that ML Trust and ML Pierce—neither of which had a fiduciary role in participant communications—performed the comprehensive factual and legal analysis necessary to determine if the information provided to participants was, in the aggregate, sufficiently "complete" in light ERISA's fiduciary standards. *See* discussion *supra* at 11-13 and 15-17.[17]

As to § 405(a)(3), plaintiff contends that the Merrill Lynch Defendants knew that the Wal-Mart Defendants had failed to prudently manage the Plan's assets because there were "available fund options in the marketplace that charge substantially lower fees and expenses with comparable and better performance . . . ." (Compl. ¶ 255.) As the Eighth Circuit has held, however, ERISA's "prudent person standard is not concerned with results" but is instead "an objective standard . . . that focuses on the fiduciary's conduct preceding the challenged decision." *Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 917-18 (8th Cir. 1994). Plaintiff does not

---

[17]    Plaintiff's assertion that the Merrill Lynch Defendants *knew* that the Wal-Mart Defendants had breached their fiduciary duties by failing to provide complete information to participants is particularly implausible given that the courts have themselves reached differing conclusions as to the potential materiality of revenue sharing information to participant decision-making. *Compare Braden* 588 F.3d at 599-600 *with Hecker*, 556 F.3d at 586; *Abbott v. Lockheed Martin Corp.*, No. 06-cv-0701-MJR, 2009 WL 839099, *4 (S.D.Ill. Mar. 31, 2009) ("[B]ecause the total fee is the critical figure, the omission of information about the revenue-sharing arrangement is not material."); *Taylor*, 2009 U.S. Dist. LEXIS 19059, 35-36 (noting that several courts in the Second Circuit "have concluded that sub-transfer agent fees do not affect the share price and therefore are not material to an objectively reasonable investor.").

allege that the Merrill Lynch Defendants had any insight whatsoever into the Wal-Mart Defendants' decision-making process, let alone sufficient knowledge of the process to deem it inadequate under ERISA's fiduciary standards. Absent such factual allegations, plaintiff has failed to assert a plausible claim against any of the Merrill Lynch Defendants under § 405(a)(3).

Accordingly, Count IX should be dismissed in its entirety.

**D.** **Count X Should Be Dismissed Because ERISA Does Not Authorize Plaintiff's "Common Law" Unjust Enrichment Claim.**

In Count X, plaintiff abandons all pretense of fitting his claims within ERISA's carefully-crafted enforcement scheme and instead seeks to fashion a new federal common law ERISA cause of action for "unjust enrichment". The Court should reject this effort.

"Despite the authority to develop federal common law under ERISA, the Supreme Court has emphasized time and again that the statute's carefully crafted and detailed enforcement scheme provides strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." *Travelers Casualty v. IADA Services, Inc.*, 497 F.3d 862, 865 (8th Cir. 2007) (internal quotations omitted) (quoting *Mertens v. Hewitt Associates*, 508 U.S. 248, 254 (1993).) Accordingly, courts should be "especially 'reluctant to tamper with [the] enforcement scheme' embodied in the statute by extending remedies not specifically authorized by its text." *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 209 (2002) (quoting *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985)).[18]

Judicial expansion of ERISA's detailed enforcement scheme is particularly inappropriate where, as here, Congress has already specifically addressed the types of harms plaintiff is alleging. ERISA §§ 502(a)(2) and 502(a)(3) already authorize claims by plan participants

---

[18]    *See also Protective Life Ins. Co. v. Kemp*, No. 4:06-CV-112, 2006 U.S. Dist. LEXIS  35328, *8 (E.D. Mo. May 31, 2006) (quoting same in dismissing federal common law claim for unjust enrichment).

10 1v0 Filing

against parties who allegedly cause plan losses or profit at a plan's expense.[19]  Indeed, plaintiff

has availed himself of both provisions.  (Compl. ¶¶ 237, 249, 261, 278); *Jordan v. Federal

Express Corp.*, 116 F.3d 1005, 1018 (3rd Cir. 1997) ("Because Jordan brought a claim under §

502(a)(3), the district court correctly dismissed his federal common law 'unjust enrichment'

claim because it was not needed to 'fill in interstices of ERISA.'").  In crafting those provisions,

however, Congress chose to restrict them in ways that doom plaintiff's claims under them

against the Merrill Lynch Defendants—confining § 502(a)(2) to claims against breaching

fiduciaries and limiting § 503(a)(3) to claims for "appropriate equitable relief."

Plaintiff's proposed common law claim is thus nothing more than an attempt to evade

limitations that Congress has expressly set.  That is precisely the type of tampering with

ERISA's enforcement scheme that the Supreme Court has warned against, and Count X should

be dismissed accordingly.

E.     **Count XI Should Be Dismissed Because It Seeks Relief That Is Unavailable Under ERISA § 502(a)(3).**

Count XI purports to seek relief against the Merrill Lynch Defendants under ERISA §

502(a)(3) for alleged non-fiduciary participation in a breach of fiduciary duty.  The claim

necessarily fails, because plaintiff does not seek the kind of relief available under that provision.

By its terms, § 502(a)(3) authorizes a court to remedy violations of statutory or plan

provisions by granting an injunction or "other appropriate equitable relief."  As the Supreme

Court has noted, such relief means "*something* less than *all* relief."  *Mertens v. Hewitt Assocs.*,

508 U.S. 248, 259 n.8 (1993) (emphasis in original); *see also Kerr v. Charles F. Vatterott & Co.*,

184 F.3d 938, 943 (8th Cir. 1999) ("section [502(a)(3)] is not a limitless free-for-all").  In

particular, the Supreme Court has recognized that, "almost invariably," suits "seeking (whether

---

[19]      *See,* 29 U.S.C. § 1132(a)(2)-(3); 29 U.S.C. § 1109(a).

10 1v0 Filing

by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' [which] are, of course, the classic form of *legal* relief.'" *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 210 (2002) (citations omitted).

While plaintiff attempts to frame the monetary relief he seeks as "equitable restitution" (Compl. ¶ 278), invocation of that term is insufficient to state a claim under § 502(a)(3). *See Knieriem v. Group Health Plan, Inc.*, 434 F.3d 1058, 1064 (8th Cir. 2006) ("Merely re-labeling the relief sought as 'restitution' or 'surcharge' does not alter the nature of a remedy from monetary to equitable."). As the Supreme Court explained in *Great-West,* restitution exists in equity, as opposed to law, "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." 534 U.S. at 213.[20] The relief plaintiff seeks does not fall within the category.

Plaintiff does not seek the return of any particular *res* of traceable funds. He instead demands the recovery of "excess amounts" that the Merrill Lynch Defendants received "directly or indirectly" from the Plan. (Compl. ¶ 278.) The very nature of such relief precludes the specific identification of ill-gotten funds. Even if plaintiff could identify fees in the Merrill Lynch Defendants' possession that could be traced back to Plan assets, plaintiff would have no basis for contending that those assets, as opposed to fees acquired through other channels, constitute the supposedly "excess" portion of the Merrill Lynch Defendants' fees.

Further, the Complaint makes clear that the compensation that plaintiff claims was improper did not come from—and is not traceable to—the Plan's assets. Plaintiff's criticism of the Merrill Lynch Defendants' income—beyond the generalized assertion that it was "excessive"—is that the Merrill Lynch Defendants' allegedly received "revenue sharing and

---

[20]     *See also Calhoon v. TWA*, 400 F.3d 593, 597 (8th Cir. 2005) (holding that monetary relief is equitable only where the money sought is "specifically identifiable" and can "clearly be traced to particular funds or property in the defendant's possession") (citing *Great-West*).

other kickback payments from the Plan Investment Options." (*See, e.g.*, Compl. ¶¶ 274-75.)

Once the Plan's assets are invested in one of those funds, the amounts cease to be specifically identifiable assets but instead become part of a commingled pool. Moreover, when the Plan acquires shares in mutual fund options—which are the primary focus of plaintiff's Complaint (*see, e.g.,* Compl. ¶¶ 5, 93-98, 100-103, 128, 146)—the monies invested in the funds cease to be Plan assets as a matter of law. *See* ERISA 401(b)(1), 29 U.S.C. § 1101(b)(1); *Hecker,* 556 F.3d at 584 (citing same). Accordingly, fees paid by the funds to the Merrill Lynch Defendants cannot be traced to the Plan's assets—any more than payments from a corporation can be traced to assets of a particular stockholder.

In sum, contrary to plaintiff's labels, the relief he seeks is not equitable, and Court XI should therefore be dismissed.

## IV.    **CONCLUSION**

For the foregoing reasons, the Merrill Lynch Defendants respectfully request that the Court dismiss all claims asserted against them in plaintiff's Amended Complaint for Violations of the Employee Retirement Income Security Act (ERISA).

Dated: October 1, 2010

Respectfully submitted,

By: /s/ Shannon M. Barrett

Richard N. Bien, MO #31398
LATHROP & GAGE L.C.
2345 Grand Boulevard, Suite 2800
Kansas City, Missouri 64108-2684
Tel.: (816) 292-2000
Facsimile: (816) 292-2001

Robert N. Eccles  (*pro hac vice*)
Gary S. Tell (*pro hac vice*)
Shannon M. Barrett (*pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C.  20006
Tel.: (202) 383-5300
Facsimile: (202) 383-5414

*Counsel for Defendants Merrill Lynch, Pierce, Fenner & Smith Incorporated, Merrill Lynch Trust Company of America, Merrill Lynch & Co., Inc.*

-24-

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of October, 2010, the foregoing was filed and service made by the Court's Electronic Case Filing (ECF) system to:

| | |
|---|---|
| KELLER ROHRBACK L.L.P.<br>Lynn Lincoln Sarko, WSBA #16569<br>Michael Woerner, WSBA #15452<br>Derek W. Loeser, WSBA #24274<br>Gretchen Freeman Cappio, WSBA #29576<br>Gretchen S. Obrist, WSBA #37071<br>1201 Third Avenue, Suite 3200<br>Seattle, WA 98101-3052<br>Telephone: (206) 623-1900<br>Facsimile: (206) 623-3384<br>lsarko@kellerrohrback.com<br>mwoerner@kellerrohrback.com<br>dloeser@kellerrohrback.com<br>gcappio@kellerrohrback.com<br>gobrist@kellerrohrback.com<br><br>ALESHIRE ROBB P.C.<br>Gregory W. Aleshire, MOBAR #38691<br>William R. Robb, MOBAR #43322<br>2847 S. Ingram Mill Rd., Suite A-102<br>Springfield, Missouri 65804<br>Telephone: (417) 869-3737<br>Facsimile: (417) 869-5678<br>arslaw@arslaw.com<br><br>*Attorneys for Plaintiff* | SHOOK, HARDY & BACON, LLP<br>William C. Martucci, #28237<br>Kristen A. Page, KS #20605<br>Katherine R. Sinatra, MO #51181<br>Grand Boulevard<br>Kansas City, MO 64108<br>Telephone: 816-474-6550<br>Facsimile: 816-421-5547<br>wmartucci@shb.com<br>kpage@shb.com<br>ksinatra@shb.com<br><br>STEPTOE & JOHNSON, LLP<br>Paul J. Ondrasik, Jr. (*pro hac vice*)<br>Eric G. Serron (*pro hac vice*)<br>Morgan D. Hodgson (*pro hac vice*)<br>1330 Connecticut Avenue, NW<br>Washington, DC 20036<br>Telephone: (202) 429-3000<br>Facsimile: (202) 429-3902<br>pondrasik@steptoe.com<br>eserron@steptoe.com<br>mhodgson@steptoe.com<br><br>*Attorneys for Wal-Mart Stores, Inc., James W. Breyer, John A. Cooper, Jr., Stanley C. Gault, Frederick S. Humphries, Dawn G. Lepore, Elizabeth A. (Betsy) Sanders, Donald G. Soderquist, Jose H. Villarreal, Stephen R. Hunter, Debbie Davis Campbell, Jeff Amos, Bill Ayers, Terri Bertschy, Elizabeth Branigan-Evans, Fred Disch, Larry Duff, Sam Dunn, Don Etheredge, Robin Forbis, Sharon Garmon, Erin Weitzel Gonzalez, Rob Hey, Greg Johnston, David McBride, Phyliss Morey, Cliff Parker, Arvetta Powell, Charles Rateliff, Dave Reiff, David Scogin, Donna Spradlin, J.P. Suarez, Jenifer Terrell, Kevin Turner, Jeremy Wilson, and Jimmy Wright* |

10 1v0 Filing

/s/ Richard N. Bien
Richard N. Bien
LATHROP & GAGE L.C.
Richard N. Bien, MO #31398
2345 Grand Boulevard, Suite 2800
Kansas City, Missouri 64108-2684
Phone: (816) 292-2000
Fax: (816) 292-2001
rbien@lathropgage.com
*Counsel for Defendants Merrill Lynch, Pierce, Fenner & Smith Incorporated, Merrill Lynch Trust Company of America, and Merrill Lynch & Co., Inc.*