UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| JEREMY BRADEN, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br> v.<br><br>WAL-MART STORES, INC., MERRILL LYNCH, PIERCE, FENNER & SMITH INC., MERRILL LYNCH TRUST COMPANY OF AMERICA, MERRILL LYNCH & CO. INC., JAMES W. BREYER, JOHN A. COOPER, JR., STANLEY C. GAULT, FREDERICK S. HUMPHRIES, DAWN G. LEPORE, ELIZABETH A. (BETSY) SANDERS, DONALD G. SODERQUIST, JOSE H. VILLARREAL, JOHN T. WALTON, STEPHEN R. HUNTER, DEBBIE DAVIS CAMPBELL, JEFF AMOS, BILL AYERS, TERRI BERTSCHY, ELIZABETH BRANIGAN-EVANS, FRED DISCH, LARRY DUFF, SAM DUNN, DON ETHEREDGE, ROBIN FORBIS, SHARON GARMON, ERIN GONZALEZ, ROB HEY, GREG JOHNSTON, DAVID MCBRIDE, PHYLLIS MOREY, CLIFF PARKER, ARVETTA POWELL, CHARLES RATELIFF, DAVE REIFF, DAVID SCOGIN, DONNA SPRADLIN, J.P. SUAREZ, JENIFER TERRELL, KEVIN TURNER, ERIN WEITZEL, JEREMY WILSON, JIMMY WRIGHT, and JOHN AND JANE DOES 1-10,<br><br>      Defendants. | No. 08-03109-GAF<br><br>**CLASS ACTION**<br><br>**SUGGESTIONS OF LAW IN OPPOSITION TO THE MERRILL LYNCH DEFENDANTS' MOTION TO DISMISS** |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................. 1

II. BACKGROUND ................................................................................................. 2

III. ARGUMENT ..................................................................................................... 6

    A. Applicable Legal Standard.................................................................... 6

    B. Plaintiff Has Plausibly Alleged that the Merrill Lynch Defendants
        Are Fiduciaries and Proper Parties to this Action................................. 7

        1. Braden's Allegations Satisfy ERISA's Standard for
            Fiduciary Status. .................................................................. 7

        2. The Merrill Lynch Defendants Are Proper Defendants......................... 11

            a. Merrill Lynch, Pierce, Fenner & Smith is an ERISA
                Fiduciary. ................................................................. 13

            b. Merrill Lynch Trust Company of America is an
                ERISA Fiduciary....................................................... 15

            c. Merrill Lynch & Company is an ERISA Fiduciary. ................... 18

        3. The Merrill Lynch Defendants Influenced Other
            Fiduciaries............................................................................ 19

    C. Plaintiff's Co-Fiduciary Liability Claim (Count IX) Is Sufficiently
        Pled. ..................................................................................................... 19

    D. Plaintiff's Unjust Enrichment Claim (Count X) Is Sufficiently
        Pled. ..................................................................................................... 22

    E. Plaintiff's Non-Fiduciary Claim for Knowing Participation in a
        Fiduciary Breach (Count XI) Is Well-Pled. ......................................... 23

IV. CONCLUSION................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Acosta v. Pac. Enters.*,
    950 F.2d 611 (9th Cir. 1991) ............................................................................ 25

*Am. Cleaners & Laundry Co. v. Textile Processors Union Local 161*,
    482 F. Supp. 2d 1103 (E.D. Mo. 2007) .......................................................... 23

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) .................................................................................... 6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................ 6

*Blatt v. Marshall & Lassman*,
    812 F.2d 810 (2d Cir. 1987) ......................................................................... 14

*Braden v. Wal-Mart Stores, Inc.*,
    588 F.3d 585 (8th Cir. 2009) ................................................................. passim

*Calhoon v. TWA, Inc.*,
    400 F.3d 593 (8th Cir. 2005) ........................................................................ 24

*Charters v. John Hancock Life Ins. Co.*,
    583 F. Supp. 2d 189 (D. Mass. 2008) ....................................................... 9, 10

*Columbia Air Servs., Inc., v. Fidelity Mgmt. Trust Co.*,
    No. 07-11344, 2008 WL 4457861 (D. Mass. Sept. 30, 2008) ....................... 8

*Concha v. London*,
    62 F.3d 1493 (9th Cir. 1995) ....................................................................... 24

*Consol. Beef Indus. v. New York Life Ins. Co.*,
    949 F.2d 960 (8th Cir. 1991) .......................................................................... 7

*Erickson v. Pardus*,
    551 U.S. 89 (2007) .......................................................................................... 7

*Felber v. Estate of Regan*,
    117 F.3d 1084 (8th Cir. 1997) ...................................................................... 23

*FirsTier Bank, N.A. v. Zeller*,
    16 F. 3d 907 (8th Cir. 1994) .................................................................. 16, 20

*Garman v. Griffin*,
666 F.2d 1156 (8th Cir. 1981) ........................................................ 23, 25

*George v. Kraft Foods Global, Inc.*,
674 F. Supp. 2d 1031 (N.D. Ill 2009) .................................................. 12

*Great-West Life & Annuity Ins. Co. v. Knudson*,
534 U.S. 204 (2002).......................................................................... 24

*Haddock v. Nationwide Fin. Servs. Inc. ("Haddock I")*,
419 F. Supp. 2d 156 (D. Conn. 2006).............................................. 8, 9, 25

*Haddock v. Nationwide Fin. Servs. Inc. ("Haddock II")*,
262 F.R.D. 97 (D. Conn. 2009)............................................................. 9

*Harris Trust & Savings Bank v. Salomon Smith Barney Inc.*,
530 U.S. 238 (2000)........................................................................... 24

*Hecker v. Deere & Co.*,
556 F.3d 575 (7th Cir. 2009) ......................................................... 19, 22

*In re Beacon Assoc. Litig.*,
No. 09-777, ---F. Supp. 2d ---, 2007 WL 3895582 (S.D.N.Y. Oct. 5, 2010) ...................... 10

*In re Elec. Data Sys. Corp. ERISA Litig.*,
305 F. Supp. 2d 658 (E.D. Tex. 2004)................................................. 12

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
284 F. Supp. 2d 511 (S.D. Tex. 2003) ................................................ 20

*In re Marsh ERISA Litig.*,
No. 04-8157, 2006 WL 3706169 (S.D.N.Y. Dec. 14, 2006) ............................ 12

*In re Pfizer Inc. ERISA Litig.*,
No. 04-10071, 2009 WL 749545 (S.D.N.Y. Mar. 20, 2009)............................ 22

*In re Polaroid ERISA Litig.*,
362 F. Supp. 2d 461 (S.D.N.Y. 2005).................................................. 21

*In re Worldcom, Inc. ERISA Litig.*,
354 F. Supp. 2d 423 (S.D.N.Y. 2005)........................................... 16, 20, 21

*In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig.*,
312 F. Supp. 2d 1165 (D. Minn. 2004)................................................ 11

*John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*,
510 U.S. 86 (1993)............................................................................ 17

*Kalda v. Sioux Valley Physician Partners, Inc.*,
481 F.3d 639 (8th Cir. 2007) ......................................................... 14

*Kerns v. Benefit Trust Life Ins. Co.*,
992 F.2d 214 (8th Cir. 1993) ......................................................... 15

*Knieriem v. Group Health Plan, Inc.*,
434 F.3d 1058 (8th Cir. 2006) ................................................... 24, 25

*Leimkuehler v. American United Life Ins. Co.*,
No. 10-333, 2010 WL 4291128 (S.D. Ind. Oct. 22, 2010) ................. 19

*Maniace v. Commerce Bank, N.A.*,
40 F.3d 264 (8th Cir. 1994) ........................................................... 16

*Martin v. Feilen*,
965 F.2d 660 (8th Cir. 1992) ......................................................... 23

*Mertens v. Hewitt Assocs.*,
508 U.S. 248 (1993).......................................................................... 24

*Mohamed v. Kerr*,
53 F.3d 911 (8th Cir. 1995) ........................................................... 22

*Parke v. First Reliance Standard Life Ins. Co.*,
368 F.3d 999 (8th Cir. 2004) ......................................................... 25

*Patelco Credit Union v. Sahni*,
262 F.3d 897 (9th Cir. 2001) ......................................................... 25

*Pegram v. Herdrich*,
530 U.S. 211 (2000)......................................................................... 7

*Phones Plus, Inc. v. Hartford Fin. Servs. Grp., Inc.*,
No. 06- 1835, 2007 WL 3124733 (D. Conn. Oct. 23, 2007) ......... 14, 24

*Rankin v. Rots*,
278 F. Supp. 2d 853 (E.D. Mich. 2003)...................................... 11, 12

*Schaefer v. Arkansas Med. Soc'y*,
853 F.2d 1487 (8th Cir. 1988) ......................................................... 8

*Shea v. Esensten*,
107 F.3d 625 (8th Cir. 1997) ......................................................... 14

*Shirk v. Fifth Third Bancorp*,
No. 05-049, 2008 WL 4449024 (S.D. Ohio Sept. 26, 2008) ............. 25

*Shulist v. Blue Cross of Iowa*,
    717 F.2d 1127 (7th Cir. 1983) ........................................................................ 17

*Silverman v. Mut. Benefit Life Ins. Co.*,
    138 F.3d 98 (2d Cir. 1998)............................................................................... 21

*Spano v. Boeing Co.*,
    No. 06-743, 2007 WL 1149192 (S.D. Ill. Apr. 18, 2007).................................. 12

*Stufflebeam v. Harris*,
    521 F.3d 884 (8th Cir. 2008) ............................................................................. 6

*Travelers Cas. & Sur. Co. of Am. v. IADA Servs. Inc.*,
    497 F.3d 862 (8th Cir. 2007) ........................................................................... 22

*Tussey v. ABB, Inc.*,
    No. 06-04305, 2008 WL 379666 (W.D. Mo. Feb. 11, 2008) ...................... passim

*UIU Severance Pay Trust Fund v. Local Union No. 18-U, United Steelworkers of
    Am.*,
    998 F.2d 509 (7th Cir. 1993) ........................................................................... 23

*United States v. Glick*,
    142 F.3d 520 (2d Cir. 1998).............................................................................. 14

*Varity Corp. v. Howe*,
    516 U.S. 489 (1996)......................................................................................... 14

*Will v. Gen. Dynamics Corp.*,
    No. 06-698, 2009 WL 3835883 (S.D. Ill. Nov. 14, 2009).................................. 24

*Young America, Inc. v. Union Central Life Insurance Co.*,
    101 F.3d 546 (8th Cir. 1996) ........................................................................... 23

## **Statutes**

ERISA § 3(14), 29 U.S.C. § 1002 (14) ..................................................................... 5

ERISA § 3(21)(A), 29 U.S.C. § 1002 (21)(A)............................................................ 7

ERISA § 402(a)(1), 29 U.S.C. § 1102 (a)(1) ............................................................. 7

ERISA § 404(a)(1)(A), 29 U.S.C. § 1104 (a)(1)(A) ................................................... 8

ERISA § 404(a)(1)(B), 29 U.S.C. § 1104 (a)(1)(B) ................................................... 8

ERISA § 404(a)(1), 29 U.S.C. § 1104 (a)(1) ...................................................... 14, 20

ERISA § 404(a),  29 U.S.C. § 1104 (a) .................................................................. 16

ERISA § 405(a)(3), 29 U.S.C. § 1105 (a)(3) .................................................................. 21

ERISA § 405(a), 29 U.S.C. § 1105 (a) .......................................................... 17, 20, 21

ERISA § 406, 29 U.S.C. § 1106 .......................................................... 17, 24

**Rules**

Fed. R. Civ. P. 8 .......................................................................................................... 6

**Regulations**

29 C.F.R. § 2509.75-5 .............................................................................................. 21

# I.    INTRODUCTION

Plaintiff Jeremy Braden amended his Complaint in July 2010 to add six claims against the Merrill Lynch Defendants[1] based on preliminary discovery establishing Merrill Lynch's role as a fiduciary to the Plan[2] involved in the selection and monitoring of Plan Investment Options, as well as participant communications, and breach of its duties in these roles.  The Amended Complaint provides detailed factual content that supports these allegations.  In addition to a description of precisely how Merrill Lynch participated in and influenced the selection and monitoring of Plan Investment Options, and engaged in misleading fiduciary communications, the Amended Complaint details Merrill Lynch's excessive compensation and undisclosed fees.  Indeed as to the latter, Braden describes Wal-Mart's investigation of Merrill Lynch after this lawsuit was initiated, through which Wal-Mart determined that, contrary to abundant misrepresentations, Merrill Lynch collected substantial fees from various Plan funds, which were not disclosed to the Wal-Mart Defendants[3] or to participants.  AC ¶¶ 129-132.  Wal-Mart itself now believes that Merrill Lynch collected $10-$20 million in undisclosed fees during the Class Period.  AC ¶¶ 129, 134-135.  Furthermore, it remains uncertain whether Merrill Lynch received other compensation as well, as a result of its control over Plan assets as the Plan Trustee and service provider.  AC ¶¶ 130-131.

Merrill Lynch's response to these detailed allegations is a mix of obfuscation and distortion of the actual allegations of the Amended Complaint.  Merrill Lynch engages in a shell game with corporate forms, relying on descriptions of the different forms' functions to create the fiction that Merrill Lynch did not have any relevant or material fiduciary responsibilities.  However, Merrill Lynch simply ignores that Braden alleges specific conduct by Merrill Lynch that is fiduciary in nature and adequate to support a claim that the ML Defendants had and exercised

---

[1] The Merrill Lynch Defendants (hereinafter "ML Defendants" or "Merrill Lynch") are Merrill Lynch, Pierce, Fenner & Smith Inc. ("ML Pierce"), Merrill Lynch Trust Company of America ("ML Trust"), and Merrill Lynch & Co. Inc. ("ML & Co."), each of which is defined more fully in paragraphs 40-42 of Plaintiff's Amended Complaint (Dkt. No. 107) ("AC").  Plaintiff also named five Merrill Lynch "Doe" Defendants in the Amended Complaint.  AC ¶ 43.  Because they are not addressed by Merrill Lynch's Motion to Dismiss (Dkt. No. 156) or the Suggestions in support thereof (Dkt. No. 157) ("ML Br."), the Merrill Lynch "Doe" Defendants are not the subject of further discussion.

[2] The "Wal-Mart Plan" or "Plan" is the Wal-Mart Profit Sharing and 401(k) Plan.  Its predecessor, the Wal-Mart Stores, Inc. 401(k) Retirement Savings Plan was established in 1997.  *See* AC ¶¶ 46-58 (describing Plan features).

[3] The Wal-Mart Defendants (collectively "Wal-Mart") are those defendants named in the Amended Complaint associated with Wal-Mart Stores, Inc., who collectively filed a separate Motion to Dismiss (Dkt. No. 158).

discretionary authority and control over Plan assets.  Merrill Lynch cannot prevail on its motion to dismiss by disputing or ignoring the Amended Complaint's factual content.

Furthermore, Merrill Lynch is wrong about the law in a variety of respects, and is not entitled to dismissal based on its stilted interpretation of ERISA.  Contrary to Merrill Lynch's argument, ERISA does not allow it to engineer the selection of unduly expensive investment options for the Plan that provide excessive compensation to Merrill Lynch to the detriment of the Plan, and conceal the total amount of its compensation from Plan participants and Wal-Mart. Braden's claims are well-pled.  Thus, Merrill Lynch's motion to dismiss should be denied.

## II.    BACKGROUND

Throughout the Class Period, the Defendants selected and offered to Plan participants unreasonably expensive funds—mostly retail class, actively managed funds that charged 12b-1 fees and paid vast sums of revenue sharing and other fees to Merrill Lynch—despite the ready availability of reasonably priced investment options, particularly for a massive Plan like Wal-Mart's with tremendous potential to leverage economies of scale.  AC ¶¶ 5, 88-128.  At Merrill Lynch's urging and as a result of Merrill Lynch's exercise of authority and control over Plan assets, concerns for Merrill Lynch's profits tainted the entire process of selecting funds for the Wal-Mart Plan.  AC ¶¶ 81-87, 139-142.  The Wal-Mart Defendants may have considered funds that would have provided lower profits to Merrill Lynch or that were not on Merrill Lynch's list of favored funds, but, in the end, Merrill Lynch made it clear that it would offer only more expensive funds, thus ensuring a minimum threshold of revenue sharing income.  AC ¶ 140-141.  Wal-Mart acquiesced in this scheme by consistently choosing funds that Merrill Lynch made part of its "alliance," along with proprietary Merrill Lynch Funds.  AC ¶¶ 85, 141, 265, 274.

Defendant ML Pierce—the Plan's recordkeeper and service provider—entered into agreements with Wal-Mart regarding administrative and recordkeeping services for the Plan.  AC ¶ 40.  These agreements set forth Merrill Lynch's fee structure, along with restrictions on which funds Wal-Mart could add to the Plan without being obligated to pay additional fees to Merrill Lynch.  If funds are outside Merrill Lynch's "alliance"—paying less generous revenue sharing and

other fees to Merrill Lynch—their inclusion has the potential to more than triple Wal-Mart's expenses associated with the Plan. AC ¶¶ 83, 85.[4]

The Servicing Agreements also provide that ML Pierce has the *unilateral* right to amend or modify the mutual funds on the list offered to Plan participants by the Plan. AC ¶¶ 82-83.[5] Thus, as the ML Defendants acknowledge, ML Pierce "retains the right to amend or modify [the] list of fund families" from which Plan investment options may be chosen. ML Br. at 4. ML Pierce also has the absolute right to refuse to offer a fund requested by Wal-Mart that does not enter into a satisfactory fee agreement with ML Pierce.[6] With Merrill Lynch's authority thus established, Wal-Mart could not—and did not—maintain control or independence over fund selection. AC ¶¶ 84-87. ML Pierce both had fiduciary authority with respect to the menu of investment options and exercised it—by constraining the funds available for selection and by actively participating in the fund selection process. *See* AC ¶¶ 83-87, 139-142; *see also* AC ¶¶ 218-226 (Count VI).

The Servicing Agreements specifically set forth that the per-participant flat fees were to cover *all* expenses and fees related to Plan administration, including recordkeeping and trustee fees, leaving nothing for revenue sharing or other fees to fund. AC ¶¶ 126-127.[7] Thus, the ML Defendants received carte blanche profits apparently unrelated to Plan administration, recordkeeping, or trustee activities. They did not stop there, however, drawing fees that not even Wal-Mart knew about, until this litigation. Indeed, Merrill Lynch—not Wal-Mart—controlled how much revenue sharing and other fees the fund companies paid during the Class Period.

Wal-Mart and ML Trust—the Plan's Trustee, *see* AC ¶ 41—contractually agreed that Wal-Mart would conceal from Plan participants the amount of revenue sharing paid to Merrill Lynch by the mutual fund companies whose funds comprise the Plan Investment Options. AC ¶ 146 (quoting Trust Agreement). ML Trust thus ensured that even the fees that it did disclose to Wal-

---

[4] *See also* May 9, 1997 Servicing Agreement, Attach. C, § IX.A., at 13, WAL059226-60, at WAL059258 (Defs.' Ex. C) ("1997 Servicing Agreement"); July 29, 2003 Amendment to Servicing Agreement, Attach. C, § IX.A., at 13, WAL050721-44, at WAL050740 (Defs.' Ex. I) ("2003 Am. to Servicing Agreement").

[5] *See also* 1997 Servicing Agreement, at WAL059258; 2003 Am. to Servicing Agreement, at WAL050740.

[6] *See* 1997 Servicing Agreement § 2(v), at WAL059229; *see also* November 1, 2003 Servicing Agreement § 2(u) (Defs.' Ex. E) ("2003 Servicing Agreement").

[7] *See also* 1997 Servicing Agreement, at WAL059259; 2003 Am. to Servicing Agreement, at WAL050741.

Mart would not be known by Plan participants. Mirroring the Trust Agreements, the Servicing Agreements between Wal-Mart and ML Pierce also included a contractual agreement that Wal-Mart would conceal from Plan participants the revenue sharing paid to Merrill Lynch.[8] Merrill Lynch also ensured that neither Plan participants nor Wal-Mart would know about at least $10-20 million in undisclosed fees. AC ¶¶ 129-135. Participants' lack of knowledge regarding Merrill Lynch's collection of hidden fees thwarted their abilities to make informed decisions about investment options and to adequately plan for retirement. AC ¶ 147.

Not only was nondisclosure to participants a central tenet between Merrill Lynch and Wal-Mart, Braden alleges that Merrill Lynch drafted incomplete and misleading participant communications. AC ¶¶ 148, 150. At any point, Merrill Lynch could have drafted communications that disclosed the fees it was collecting. Yet, to Braden's knowledge, Merrill Lynch never did so. Participants were actually required to contact Merrill Lynch directly to request Wal-Mart 401(k) Plan "Fees" documents. AC ¶ 149. To Braden's knowledge, even when participants requested such documents, Merrill Lynch never volunteered accurate information about fees. Instead, documents either leave revenue sharing entirely undisclosed or include only opaque references to revenue sharing, while implying that participant fees are "minimal." AC ¶ 150; Obrist Decl. Ex. A (2005 Wal-Mart Profit Sharing and 401(k) Plan Fees document) and Ex. B (2007 Wal-Mart Profit Sharing and 401(k) Plan Fees document). Nowhere were participants informed that Merrill Lynch was retaining excess profits for itself, instead of using those funds to lower costs borne by participants. AC ¶ 150. And of course, nowhere did Merrill Lynch reveal that it charged fees that were not even disclosed to Wal-Mart.

All of the Defendants knew or should have known the true cost to Plan participants of investing in high-priced mutual funds over time: significantly reduced retirement savings. AC ¶¶ 111-124, 144. While all Defendants knew that expensive funds—which would pay increasing revenue sharing to Merrill Lynch over time—would disproportionally eat away at Plan assets, Merrill Lynch's inadequate and misleading disclosures (and omissions) to Plan participants are

---

[8] *See* 1997 Servicing Agreement § 4(c), at WAL059231; 2003 Servicing Agreement § 4(c), at 7.

particularly egregious because Merrill Lynch was collecting more than even the Wal-Mart Defendants knew. AC ¶¶ 125-133. Moreover, not only did Merrill Lynch fail to disclose to Plan participants the extent of its fee collection, by concealing from Wal-Mart these figures, Merrill Lynch also participated in and knew about the Wal-Mart Defendants' ERISA breaches. AC ¶¶ 151-152; *see also* ¶¶ 163-171 (Count I, against the Wal-Mart Prudence Defendants).

Plaintiff's claims against the ML Defendants are as follows:

- **The Excessive-Fee Claim:** Braden alleges that the ML Defendants exercised authority in the selection of investment options for the Plan and acted imprudently and disloyally in violation of ERISA §§ 404(a)(1)(A) and (B) by failing to implement or maintain a prudent process for evaluating fund options and by selecting or recommending unreasonably expensive funds, thereby causing the Plan to incur excessive fees and expenses that substantially diminished the retirement savings of Plan participants. AC ¶¶ 153-154, 218-226 (Count VI).

- **The Prohibited-Transaction Claim:** Braden alleges that the ML Defendants, Plan fiduciaries, violated ERISA § 406(a) by causing the Plan to engage in prohibited transactions with Merrill Lynch entities, whereby the Plan assets were transferred to and used for the benefit of the ML Defendants, parties in interest.[9] AC ¶¶ 157-158, 227-237 (Count VII).

- **The Disclosure Claim:** Braden alleges that the ML Defendants violated ERISA § 404(a)(1)(A) and (B) by failing to provide complete and accurate information to Plan participants regarding the impact that the mutual funds' excessive fees have on their retirement savings, the influence that revenue sharing had on fund selection, and the availability of far less expensive options in the marketplace. Moreover, the ML Defendants concealed from participants *and the Wal-Mart Defendants* the true nature and amount of fees they received over time, preventing the Wal-Mart Defendants from making complete and accurate disclosures to Plan participants. AC ¶¶ 153-154, 238-249 (Count VIII).

- **The Co-Fiduciary Liability Claim:** Braden alleges that the ML Defendants breached their duties and responsibilities as co-fiduciaries by failing to prevent breaches by other fiduciaries (the Wal-Mart Prudence Defendants) of their duties of prudent and loyal management, complete and accurate communications, and adequate monitoring in violation of ERISA § 405(a). Moreover, the ML Defendants *concealed* the amount of revenue sharing and other kickback payments that they received as a result of their authority and control of Plan assets. AC ¶¶ 155-156, 250-261 (Count IX).

---

[9] The ML Defendants do not dispute that they are "parties in interest," which ERISA defines, in relevant part, as: (A) any fiduciary (including, but not limited to, any administrator, officer, trustee, or custodian), counsel, or employee of such employee benefit plan; (B) a person providing services to such plan; (C) an employer any of whose employees are covered by such plan; and (D) an employee organization any of whose members are covered by such plan. ERISA § 3(14), 29 U.S.C. § 1002(14).

- **The Unjust Enrichment Claim:** Braden alleges that the ML Defendants were unjustly enriched as a result of their roles as service provider, Trustee, and recordkeeper for the Plan. Specifically, the ML Defendants steered Plan fiduciaries to select funds with which the ML Defendants had or could establish an "alliance" relationship, through which they would receive additional revenue sharing and other kickback payments—many of which were not disclosed to the Wal-Mart Defendants—based on Plan assets and investment positions. These payments far exceeded the reasonable value of services the Merrill Lynch Defendants provided, amounting to unreasonable and excessive compensation. Under the federal common law of ERISA, the Plan and its participants are entitled to equitable restitution from the ML Defendants, regardless of their fiduciary status. AC ¶¶ 262-270 (Count X).

- **The Non-Fiduciary Claim for Knowing Participation in a Fiduciary Breach:** To the extent that any of the ML Defendants is found to lack fiduciary status for Counts VI, VII, VIII, and IX, they nevertheless knowingly participated in the breaches of those Defendants who were fiduciaries and acted in a fiduciary capacity. The ML Defendants had knowledge of fiduciary duties and took specific action to induce, encourage, and participate in the breaches by other fiduciaries, particularly the Wal-Mart Defendants. Under ERISA § 502(a)(3), the Plan is entitled to equitable restitution from the ML Defendants for the excess amounts paid and disgorgement of ill-gotten gains. AC ¶¶ 271-278 (Count XI).

## III.  ARGUMENT

### A.  Applicable Legal Standard.

Federal Rule of Civil Procedure 8 requires that a complaint present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint will survive a Rule 12(b)(6) motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *Iqbal* and *Twombly* do not impose a "probability requirement." *Iqbal*, 129 S. Ct. at 1949. Rather, a complaint states a plausible claim for relief if the factual allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Moreover, all inferences are to be drawn in the plaintiff's—not the defendant's—favor on a motion to dismiss. *Id.*; *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009); *Stufflebeam v. Harris*, 521 F.3d 884, 886 (8th Cir. 2008). A plaintiff is not required to plead "'specific facts' explaining precisely how the defendant's conduct was unlawful." *Braden*, 588 F.3d at 595 (quoting *Erickson*

*v. Pardus*, 551 U.S. 89, 93 (2007)). A complaint "should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Id.* at 594. This approach is particularly important in ERISA cases, where a plaintiff's allegations concern the fiduciary decision-making process. *Id.* at 597-98. Because ERISA's remedial purpose is to prevent "misuse and mismanagement of plan assets," an ERISA plaintiff's "limited access to crucial information" regarding facts that "tend systemically to be in the sole possession of defendants" mandates a "holistic evaluation of an ERISA complaint's factual allegations." *Id.* (quotation omitted).

**B.    Plaintiff Has Plausibly Alleged that the Merrill Lynch Defendants Are Fiduciaries and Proper Parties to this Action.**

**1.    Braden's Allegations Satisfy ERISA's Standard for Fiduciary Status.**

To state an ERISA claim for breach of fiduciary duty, Plaintiff must allege that (1) the defendant was a fiduciary with respect to the Plan; (2) Defendants' acts or omissions constituted a breach of duty; and (3) the breach caused harm. *Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000). The ML Defendants' *only* challenge to Plaintiff's Excessive-Fee Claim (Count VI), Prohibited-Transaction Claim (Count VII), and Disclosure Claim (Count VIII) is to the first of these three elements—fiduciary status.

ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under § 402(a)(1), 29 U.S.C. § 1102(a)(1), but also any other persons who in fact perform fiduciary functions—*i.e.*, *de facto* fiduciaries. A person is a fiduciary to the extent:

> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). Under ERISA, "[t]he term fiduciary is to be broadly construed." *Consol. Beef Indus. v. New York Life Ins. Co.*, 949 F.2d 960, 964 (8th Cir. 1991). A fiduciary may be "named," but there is no requirement of this formality for a finding of fiduciary status under ERISA. Rather, ERISA utilizes a functional test that depends on the activities of

persons or entities and measures whether those activities rise to the level of fiduciary conduct. *Tussey v. ABB, Inc.*, No. 06-04305, 2008 WL 379666, at *6 (W.D. Mo. Feb. 11, 2008). Whether named or *de facto*, fiduciaries must adhere to ERISA's mandates of prudence and loyalty.[10]

       As described in more detail *infra*, Braden has plausibly alleged that the ML Defendants were *de facto* fiduciaries, because of their involvement in the fund selection process, disclosures, and prohibited transactions, wherein they exercised discretionary authority, control, and/or responsibility over the management of Plan assets, as well as the administration of the Plan. Other Plan fiduciaries also regularly consulted the ML Defendants for "investment advice" within the meaning of ERISA. *See* AC ¶¶ 60-62; 81-87; 139-142; 218-226.

       In an ERISA excessive fee case, *de facto* fiduciary status typically arises out of fund selection and fee-setting activity. For example, where an entity "exercises authority or control over plan assets by determining and altering which mutual funds are available for the Plans' and the participants' investment," that entity is a fiduciary under ERISA. *Haddock v. Nationwide Fin. Servs. Inc. ("Haddock I")*, 419 F. Supp. 2d 156, 166 (D. Conn. 2006); *see also Tussey*, 2008 WL 379666, at *6-7. The mere fact that an entity "ha[s] the power to remove all funds that refuse[] to share revenue from the list of permissible investments and substitute only funds agreeing to share revenue" is "sufficient discretionary authority over its own compensation such that it could be an ERISA fiduciary." *Columbia Air Servs., Inc., v. Fidelity Mgmt. Trust Co.*, No. 07-11344, 2008 WL 4457861, at *5 (D. Mass. Sept. 30, 2008). An actor with only *indirect* authority or control over the disposition of plan assets may be deemed a fiduciary. *Haddock I*, 419 F. Supp. 2d at 165 (citing cases). Moreover, an entity may be a fiduciary even if it never exercises its power over plan assets. In *Tussey*, the court held *on summary judgment* that Fidelity Trust was a fiduciary with discretionary control even if it "never exercised its veto authority" vis-à-vis participant

---

[10] The duty of prudence requires a fiduciary to act with such "care, skill, prudence, and diligence" as would a "prudent man acting in a like capacity and familiar with such matters." ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B). Under the prudence standard, "a fiduciary is obligated to investigate all decisions that will affect the pension plan, and must act in the best interests of the beneficiaries." *Schaefer v. Arkansas Med. Soc'y*, 853 F.2d 1487, 1491 (8th Cir. 1988). The closely related duty of loyalty requires that a fiduciary act "solely in the interest of the participants and beneficiaries" of a plan and for the "exclusive purpose" of providing benefits and paying expenses. ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

investment options.  *Tussey v. ABB, Inc.*, No. 06-4305, Summary Judgment transcript (W.D. Mo. Dec. 7, 2009) ("*Tussey* SJ Tr."), at 5 (Obrist Decl. Ex. C).  *See also Haddock v. Nationwide Fin. Servs. Inc. ("Haddock II")*, 262 F.R.D. 97, 108 (D. Conn. 2009) (finding it "irrelevant whether Nationwide actually exercised its authority to remove or replace mutual funds").

In *Haddock I*, the court found that Nationwide's control, though "limited to deleting and substituting mutual funds from a list of funds approved by the Plans" was sufficient to sustain an allegation of fiduciary status.  419 F. Supp. 2d at 166 n.6.  Removing from the list of options "all mutual funds that refused to share revenue with it" would mean that "only those mutual funds that had agreed to make revenue-sharing payments would be available to the Plans and participants," thus creating a genuine issue regarding the exercise of control or authority.  *Id.*  Braden's allegations regarding ML Pierce's control over the list of "alliance" funds from which the Plan's investment options were selected are similarly sufficient to plead fiduciary status.

The Department of Labor has opined that a plan trustee may have discretionary authority or control over plan assets if it has the right to add or remove "families" of mutual funds that it makes available to plans.  DOL Op. 97-15A, 1997 WL 277980, at *3 (May 22, 1997) ("Frost DOL Op.").  Not only does the Frost DOL Opinion support Braden's allegations of fiduciary status insofar as the ML Defendants caused the Plan to invest in mutual funds that paid them fees and retained the right to unilaterally add or remove funds from the "alliance" list, additional fee disclosure and offset provisions described in Frost are wholly absent here.[11]  Instead, the ML Defendants collected undisclosed fees and did not credit the Plan with any excess fees collected.

Further, the built-in fee penalties Wal-Mart would suffer for veering off of Merrill Lynch's approved list meant that Wal-Mart "did not have a meaningful opportunity to reject substitutions." *Charters v. John Hancock Life Ins. Co.*, 583 F. Supp. 2d 189, 199 (D. Mass. 2008).  This case is analogous to *Charters*:

---

[11] Significantly, the Frost DOL Opinion assumes that the terms of the trustee's "fee arrangements with the mutual fund families will be fully disclosed to the Plans" and "any 12b-1 or subtransfer agent fees received by Frost that are attributable to the Plan's investment in a mutual fund will be used to benefit the Plan."  *Id.* at *2.  Moreover, "Frost will offset such fees, on a dollar-for-dollar basis, against the trustee fee that the Plan is obligated to pay Frost or against the recordkeeping fee . . .  or . . . credit the Plan directly with the fees it receives based on the investment of Plan assets in the mutual fund."  *Id.*  The Plan would be entitled to any excess fees received by the trustee.  *Id.*

> Charters' ability to reject Hancock's substitutions was, however, more limited than the arrangement considered by the DOL in the Aetna letter. If Charters sought to reject a substitution and maintain his investment in the replaced fund, his only option was to terminate the Contract and select a different service provider offering that fund. In exercising that right, *Charters would be subject to a termination fee of up to 2% of the assets invested with Hancock by the Plan. Cf.* DOL Op. 97-16A, 1997 WL 277979, at *2, 5 (May 22, 1997) (plan fiduciaries could terminate the arrangement without penalty). Charters would also be subject to administrative charges for transferring assets to another sub-account.

583 F. Supp. 2d at 198-99. Similarly, Wal-Mart did not retain an unfettered right to reject substitutions made by Merrill Lynch in the "alliance" list of funds. On the contrary, Wal-Mart would pay an additional fee at Merrill Lynch's option, an increase that could have resulted in Wal-Mart paying *three and a half times* the rate it was guaranteed if it stayed within the Merrill Lynch "alliance."[12] For the same reason that the *Charters* court found Hancock's ability to substitute investment options "rendered it a fiduciary of the Plan," the ML Defendants' ability to control substitution of investment options rendered them fiduciaries.

Finally, "[i]t has long been the view of the Department [of Labor] that the act of making individualized recommendations of particular investment managers to plan fiduciaries may constitute the provision of investment advice within the meaning of section 3(21)(A)." 74 Fed. Reg. 3822, 3824 (Jan. 21, 2009). And recommendations to a plan regarding the advisability of investing in particular securities give rise to fiduciary status. 75 Fed. Reg. 65263, 65264 (Oct. 22, 2010) (setting forth *current* regulation governing "investment advice" within the meaning of ERISA § 3(21)(A)(ii) in Proposed Rule to modify same).[13] Not only did Merrill Lynch steer the Wal-Mart Plan to funds (and therefore fund managers) available in the "alliance," Merrill Lynch representatives regularly attended meetings and consulted with the Committee in making fund selection decisions—resulting in the selection of actively managed retail funds that paid revenue sharing to Merrill Lynch. Merrill Lynch's advice was actively sought out by Wal-Mart and the

---

[12] 1997 Servicing Agreement, Attach. C, § IX.A., at WAL059258; 2003 Am. to Servicing Agreement, Attach. C, § IX.A., at WAL050740.

[13] *See also In re Beacon Assoc. Litig.*, No. 09-777, ---F. Supp. 2d ---, 2007 WL 3895582, at *27-31 (S.D.N.Y. Oct. 5, 2010) (applying current rule and analyzing elements); Brief of the Secretary of Labor as Amicus Curiae in Support of Plaintiffs at 8, *In re Beacon Sec. Litig.*, No. 09- 777 (S.D.N.Y. Oct. 1, 2010) ("[M]aking recommendations that a plan employ particular investment mangers is tantamount to making recommendations as to the advisability of particular investments.").

Committee, and Merrill Lynch was paid vast fees incident to the fund selection process. Accordingly, the ML Defendants are fiduciaries for this additional reason.[14]

### 2. The Merrill Lynch Defendants Are Proper Defendants.

The ML Defendants attack Braden's collective treatment of the three Merrill Lynch entities in the Amended Complaint as a "fiction," ML Br. at 7, and seek the opposite extreme—surgical separation of the three ML Defendants. The ML Defendants ignore instances where they acted in tandem and suggest that each cannot be held responsible for the actions of its agents, employees, or representatives. This approach ignores the facts pled by Plaintiff regarding their *de facto* fiduciary status. Braden has pled what is clear on the face of the available Servicing and Trust Agreements and after diligent investigation of the yet limited facts to which he has access, as well as the overt characteristics of the expensive Plan Investment Options that paid revenue sharing and other undisclosed payments to Merrill Lynch. Indeed, even the lines the ML Defendants wish to draw are blurry. The Servicing Agreement—to which ML Pierce is a party—refers to "trustee" services—presumably in the purview of ML Trust. 2003 Servicing Agreement, at 1. Thus, in light of the facts alleged, these three entities were plausibly involved with fiduciary functions and are therefore the proper defendants in this matter.

While discovery may reveal that not all of the ML Defendants were equally involved in Plan activities, the *degree* of their involvement is a question of fact not suited to disposition on a motion to dismiss. *Tussey*, 2008 WL 379666, at *9 (finding it "[in]appropriate to dismiss a party whose involvement may or may not be supported by evidence," because "further discovery will be needed to untangle the relationship between" defendants). The ML Defendants' intertwined roles with respect to the Plan remain "'something of a black box,'" because discovery is far from complete. *Id.*, at *7 (quoting *Rankin v. Rots*, 278 F. Supp. 2d 853, 879 (E.D. Mich. 2003)).[15]

---

[14] Moreover, "advising that plan assets be invested in mutual funds that pay additional fees to the advising fiduciary generally" would constitute a prohibited transaction. Frost DOL Op., 1997 WL 277980, at *3.

[15] *See also In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig.*, 312 F. Supp. 2d 1165, 1181 (D. Minn. 2004) (noting that fiduciary status under ERISA is to be liberally construed, and finding that "it would be 'premature to determine a defendant's fiduciary status at the motion to dismiss stage of the proceedings,' because a determination of fiduciary status based on function is a 'mixed question of law and fact'") (quoting *In re Elec. Data Sys. Corp. ERISA Litig.*, 305 F. Supp. 2d 658, 665 (E.D. Tex. 2004)); *George v. Kraft Foods Global, Inc.*, 674 F. Supp. 2d

Indeed, in discovery, Defendants have, when it suits them, availed themselves of the very "fiction" they criticize. For example, the ML Defendants' own Initial Disclosures (served after the Amended Complaint was filed) treat the three entities collectively, listing employees with titles that do not specify which Merrill Lynch entity the person works for. *See* Obrist Decl. Ex. D. Instead, the Initial Disclosures provide vague descriptions such as: "Services provided by the Merrill Lynch Defendants or affiliates to the Plan and invoices." *Id.* at 3-4. In responding to Plaintiff's First Set of Interrogatories, the ML Defendants again responded collectively, despite Plaintiff's explicit instruction that they each answer separately. *See* Obrist Decl. Ex. E (Response to Interrogatory No. 1, at 9) ("In addition to the compensation sources identified in Appendix A, *Merrill Lynch entities* have received compensation attributable to Plan-related services from the investment managers of the Plan Investment Options.") (emphasis added). While Defendants' further identification of relevant individuals' entity affiliation will develop the factual record, the information provided to date is nevertheless insufficient to resolve the issue of fiduciary status and the ML Defendants' distinct roles in the improper and illegal conduct alleged, much less insulate the ML Defendants from Braden's allegations that they are the proper defendants.

As a result, Braden has scant information regarding, for example: which Merrill Lynch entities were represented at meetings of the other Plan fiduciaries; which entities' employees recommended funds, were engaged in the fund selection process, were responsible for negotiating the fees that Plaintiff has alleged are excessive, a misuse of assets of the Plan, and a source of unjust enrichment to the ML Defendants; or which Merrill Lynch entities profited from those fees or other kickbacks. Plaintiff has alleged "Merrill Lynch" took certain actions, because, at the pleading stage, the specific identities of decision-makers and actors within the Merrill Lynch corporate web are not in Braden's hands. The ML Defendants should not be permitted to continue to obfuscate the distinctions between themselves that they claim are so important, but use them as a sword to attack the sufficiency of Braden's claims. In any event, Braden has sufficiently pled

1031, 1049-50 (N.D. Ill 2009); *Will v. Gen. Dynamics Corp.*, No. 06- 698, 2009 WL 3835883, at *2 (S.D. Ill. Nov. 14, 2009) (citing cases); *Phones Plus, Inc. v. Hartford Fin. Servs. Grp., Inc.*, No. 06- 1835, 2007 WL 3124733, at *4 (D. Conn. Oct. 23, 2007); *Spano v. Boeing Co.*, No. 06-743, 2007 WL 1149192, at *3 (S.D. Ill. Apr. 18, 2007); *In re Marsh ERISA Litig.*, No. 04-8157, 2006 WL 3706169, at *5 (S.D.N.Y. Dec. 14, 2006).

fiduciary status for each of the three ML Defendants.

          **a.**        **Merrill Lynch, Pierce, Fenner & Smith is an ERISA Fiduciary.**

ML Pierce may have a "limited" *explicit* fiduciary role, *see* ML Br. at 13, but it nevertheless far exceeded these constraints in its actual behavior, becoming a *de facto* fiduciary. Braden alleges that ML Pierce—along with potentially other ML entities—exercised discretion in the selection of the Plan Investment Options available to participants. Under the Servicing Agreements, ML Pierce "unilaterally" decided which funds would be in the Merrill Lynch "alliance," and could impose additional fees on Wal-Mart if the Wal-Mart Defendants rejected proposed funds. ML Pierce could also reject funds Wal-Mart requested if the funds would not pay Merrill Lynch sufficient fees. On this motion to dismiss, the ML Defendants are not entitled to any favorable inference regarding their contra-allegation that Wal-Mart had the final say, *see* ML Br. at 14-15. Braden alleges that ML Pierce determined how much compensation Merrill Lynch entities (which may have included more than ML Pierce) would receive from the funds. While discovery may reveal that these negotiations were undertaken with the aid of other Merrill Lynch entities, it is clear from the fact that *undisclosed fees* were collected that the *Wal-Mart Defendants* likely did not participate in fee-setting between the funds and Merrill Lynch.

The *Tussey* court reviewed allegations similar to Braden's. There, despite Fidelity Management's arguments about other fiduciaries having "sole power to select the Plan's investment options," the *Tussey* court found that the plaintiff's allegations could not be resolved at the pleading stage. 2008 WL 379666, at *8. Indeed, the *Tussey* court found sufficient allegations of "indirect" exercise of discretion over plan assets because an affiliate of the defendant was paid to steer the Plan toward specific funds. *Id.* Here, the allegations are even more straightforward to the extent that the *same* entity—ML Pierce—both collected fees and steered fund selection, a matter that must await development of a factual record for resolution.

Significantly, while Merrill Lynch argues based on the terms of Servicing Agreements that Wal-Mart had the "final say" on fund selection, even if true, this is not a bar to finding that ML Pierce was *also* a fiduciary. *Id.*, at *7 ("Even if Fidelity Trust is not the final arbiter of Plan

13

decisions, it may still be a fiduciary with respect to choosing funds."); *see also United States v. Glick*, 142 F.3d 520, 527-28 (2d Cir. 1998) (finding "sufficient control over at least part of the [plan] assets to create a fiduciary relationship" due to "full discretion" in setting commissions). Thus, discretionary authority or control by one fiduciary does not preclude a finding of discretionary authority or control with respect to another—multiple fiduciaries can and often do co-exist with overlapping functions. *Blatt v. Marshall & Lassman*, 812 F.2d 810, 812 (2d Cir. 1987) ("An entity need not have *absolute* discretion with respect to a benefit plan in order to be considered a fiduciary." (emphasis added)); *Phones Plus*, 2007 WL 3124733, at *4 (holding that a "plan sponsor's power over the ultimate decision is only one factor . . . it is not by itself dispositive of the question of a service provider's fiduciary status. Regardless of whether Phones Plus has the power to make the 'ultimate decision' about Hartford's changes to the fund menu, a reasonable fact finder could still conclude . . . that the change notification procedures are inadequate or that the time provided in which to make such a decision is unreasonably short, and that as a result Hartford is an ERISA fiduciary."). This much Braden has alleged. AC ¶¶ 82-87.

Nor does the argument that ML Pierce is absolved of disclosure obligations hold water. ML Br. at 16. It is well established that the duty of loyalty under ERISA § 404(a) requires fiduciaries to speak truthfully to participants and to disclose material information that participants need to know in order to protect their retirement benefits. Indeed, the Eighth Circuit in this case has already set forth the governing law regarding disclosures to participants pursuant to ERISA's duty of loyalty, ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1):

> It is uncontroversial that the duty of loyalty requires fiduciaries to "deal fairly and honestly with all plan members," *Shea v. Esensten*, 107 F.3d 625, 628 (8th Cir. 1997), *cert. denied*, 522 U.S. 914, 118 S.Ct. 297, 139 L.Ed.2d 229 (1997), and it is a breach of this duty affirmatively to mislead a participant or beneficiary. *See Kalda* [*v. Sioux Valley Physician Partners, Inc.*], 481 F.3d [639,] 644 [(8th Cir. 2007)]; *Varity Corp. v. Howe*, 516 U.S. 489, 506, 116 S. Ct. 1065, 134 L. Ed. 2d 130 (1996). Moreover, in some circumstances fiduciaries must on their own initiative "disclose any material information that could adversely affect a participant's interests." *Kalda*, 481 F.3d at 644 (citing *Shea*, 107 F.3d at 628).

*Braden*, 588 F.3d at 598. In upholding Braden's previous disclosure claim, the Eighth Circuit held: "ERISA's duty of loyalty may require a fiduciary to disclose latent conflicts of interest

which affect participants' ability to make informed decisions about their benefits."  *Id.* at 600.

ML Pierce nevertheless relies on *Kerns v. Benefit Trust Life Ins. Co.*, 992 F.2d 214, 218 (8th Cir. 1993), for the proposition that "preparation of employee communications at the direction and approval of others does not make one an ERISA fiduciary."  ML Br. at 16.  However, *Kerns* involved "courtesy" letters prepared by an insurance broker notifying employees of the termination of insurance coverage, followed by an alleged failure to provide a follow up communication to the plaintiff.  *Id.* at 215-16.  Such an attenuated relationship by an individual employee is far from the situation at issue in the instant case.  Here, ML Pierce has a far more significant relationship to participants, its disclosure obligations were set forth in the Servicing Agreements, and its actual communications were misleading, as described *supra*.

Contrary to the ML Defendants' assertions, ML Br. at 15, nowhere does Braden allege that *negotiating* the Servicing Agreements is what created ML Pierce's fiduciary status.  What happened thereafter—already discussed at length herein—is the basis for fiduciary status.[16]  *See also infra* subsection III.B.2.b (discussion of ML Trust's erroneous reliance on *Shulist*).

Finally, while ML Pierce may wish to deflect attention from its concealment of millions of dollars in fees, ML Br. at 15, Braden is not alleging that the nondisclosure *created* fiduciary status.  Rather, ML Pierce's fiduciary status was the result of its participation in the selection and monitoring of Plan Investment Options, ability to unilaterally change available funds on the "alliance" list, impose fees on Wal-Mart for straying away from that list, and engineer the inclusion of funds that maximized profit to Merrill Lynch.  Merrill Lynch cannot argue in earnest that these allegations are insufficient at the pleading stage to establish fiduciary status.  The subsequent nondisclosures were breaches of existing duties.

### b.    Merrill Lynch Trust Company of America is an ERISA Fiduciary.

ML Trust emphasizes that it is merely a "directed" trustee and so cannot be a fiduciary for

---

[16] While negotiating terms of retention is not a fiduciary act, Merrill Lynch's conflicted negotiation of its own compensation is.  In assessing its original proposal to require disclosures of a service provider's "ability to affect its own compensation," the DOL noted that such actions are *already* prohibited transactions, and to the extent that a service provider who is not otherwise a fiduciary exercises discretion over its own compensation, acknowledged that this "likely would constitute *a fiduciary act* resulting in a separate prohibited transaction."  75 Fed. Reg. 41600, 41610 (July 16, 2010) (emphasis added).

Counts VI, VII, and VIII. However, because a directed trustee has "residual fiduciary responsibility for determining whether a given direction is proper and whether following the direction would result in a violation of ERISA," the Department of Labor's view is that "a directed trustee necessarily will perform fiduciary functions" within the meaning of ERISA § 3(21)(A). Frost DOL Op. at n.6. The DOL has further advised that a "trustee . . . will, by definition, always be a 'fiduciary' under ERISA as a result of its authority or control over plan assets." U.S. Dep't of Labor, Field Assistance Bulletin 2004-03 (Dec. 17, 2004). Numerous courts have also held that directed trustees (including ML Trust) are ERISA fiduciaries. *See In re Worldcom, Inc. ERISA Litig.*, 354 F. Supp. 2d 423, 443-44 (S.D.N.Y. 2005) (collecting cases).

Moreover, while ML Trust may be "only" a directed trustee for some purposes, it does not follow that ML Trust did not exercise fiduciary discretion for other purposes, thereby broadening its fiduciary function. Thus, that a party is a directed trustee for some purposes does not end the inquiry as to *de facto* fiduciary status. *Tussey*, 2008 WL 379666, at *6. Indeed, the *Tussey* court held that "[g]iven ERISA's expansive definition of fiduciary, the Court cannot say on this record that Fidelity Trust is not a fiduciary." *Id.* ML Trust relies on *Maniace v. Commerce Bank, N.A.*, 40 F.3d 264, 267 (8th Cir. 1994), for the uncontroversial proposition that a functional test governs fiduciary status inquiries. Moreover, *Maniace* upheld a *summary judgment* finding that the plaintiffs had failed to *establish* that the directed trustee exceeded its formal grant of responsibilities. *Cf. FirsTier Bank, N.A. v. Zeller*, 16 F. 3d 907, 911 (8th Cir. 1994) (expanding directed trustee's fiduciary status because "an ERISA trustee who deals with plan assets in accordance with proper directions of another fiduciary is not relieved of its fiduciary duties to conform to the prudent man standard of care, *see* 29 U.S.C. § 1104(a); to attempt to remedy known breaches of duty by other fiduciaries, *see* 29 U.S.C. § 1105(a); and to avoid prohibited transactions, *see* 29 U.S.C. § 1106"). As the Eighth Circuit noted in *FirsTier*:

> [ERISA § 3(21)(A)] imposes fiduciary duties only if one exercises *discretionary* authority or control over plan *management*, but imposes those duties *whenever* one deals with plan assets. This distinction is not accidental—it reflects the high standard of care trust law imposes upon those who handle money or other assets on behalf of another. *See John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav.*

*Bank*, 510 U.S. 86, [96] (1993) (1993) ("Congress commodiously imposed fiduciary standards on persons whose actions affect the amount of benefits retirement plan participants will receive").

*Id.*

As in *Tussey*, factual issues raised in Braden's Amended Complaint regarding ML Trust's "discretion over Plan assets and related conflicts of interest" make dismissal inappropriate at the pleading stage. *Id.* at *7. The "strictly confined" nature of ML Trust's authority on paper, *see* ML Br. at 9, is not the end of the inquiry. Rather, ML Trust's fiduciary status with respect to Braden's allegations depends on what *actions* that entity took bearing on fund selection, fee negotiation, fee collection, and Plan administration, including those which were at the direction of other fiduciaries but in violation of ERISA. The Amended Complaint alleges with detailed factual support that ML Trust went far beyond the bounds of the "directed trustee" duties outlined in the Trust Agreements, and therefore, dismissal is inappropriate. Once discovery is completed, Merrill Lynch will have ample opportunity to present its merits-based summary judgment arguments, and Plaintiff, of course, will have the opportunity to do the same.

Defendants rely on *Shulist v. Blue Cross of Iowa*, 717 F.2d 1127, 1131-32 (7th Cir. 1983), for the proposition that "a party does not act as a fiduciary in negotiating the terms of its own retention by a plan." ML Br. at 11. Yet, as the court in *Tussey* held, "*Shulist* . . . does not apply to the fiduciary's future conduct which may violate ERISA." *Tussey*, 2008 WL 379666, at *7. While the Trust Agreement purports to grant only "nondiscretionary" authority, it is not without exceptions, some of which incorporate the terms of other Merrill Lynch contracts. *See* 1997 Trust Agreement § 5.01 (Defs.' Ex. F); 2003 Trust Agreement § 5.01, at WAL002486 (Defs.' Ex. G). Under well-established ERISA law, ML Trust's conduct may form the basis of fiduciary status. Plaintiff's Amended Complaint "raises factual questions" as to all the ML Defendants' "discretion over Plan assets and related conflicts of interest," including those of ML Trust. *Tussey*, 2008 WL 379666, at *7.

As with ML Pierce, ML Trust cannot prevail by pointing out that the Wal-Mart Defendants are "final" decision makers, because ML Trust may still be a fiduciary with respect to choosing

the Plan Investment Options, setting fees, or any number of other tasks described in the Amended Complaint. *See supra* subsection III.B.2.a (discussion of multiple fiduciaries).

With respect to disclosures, the Eighth Circuit has already found that materiality is a fact and context sensitive inquiry. *Braden*, 588 F.3d at 600. The ML Defendants' argument, ML Br. at 12, that because revenue sharing is not "inherently" material, Braden's disclosure claim is implausible turns the 12(b)(6) standard on its head. Braden cannot determine from the face of the Plan Fee documents *which* Merrill Lynch entity prepared them, and in any event, he has alleged that the ML Defendants knew or should have known that participant communications failed to disclose a multitude of material facts. Moreover, Braden's allegations regarding omissions by ML Trust pertaining to self-dealing, conflicts of interest, and excessive or undisclosed compensation are plausible, *particularly* because materiality cannot be resolved as a matter of law.

Finally, the ML Defendants' argument, ML Br. at 13 n.12, that the provision in the Trust Agreements (also in the Servicing Agreements) prohibiting Wal-Mart's disclosure of Merrill Lynch's fees to participants somehow insulates Merrill Lynch from the impact on participant communications of its unlawful concealment of fees to Wal-Mart is absurd. A fiduciary cannot protect itself from liability to participants by contractually agreeing with another fiduciary to hide fees from participants and then claim "no harm no foul" when it lies to the other fiduciary, ensuring that neither participants nor the other fiduciary will have accurate information.

### c.   Merrill Lynch & Company is an ERISA Fiduciary.

Defendant ML & Co. is the parent of Defendants ML Pierce and ML Trust. Because discovery is incomplete, Plaintiff has not determined the full extent of ML & Co.'s involvement in the facts of this case, including the extent to which ML & Co. profited from the excessive or undisclosed fees at issue. For this reason alone, ML & Co. should not be dismissed.

The ML Defendants acknowledge that the Servicing Agreements authorize assignment of ML Pierce's rights and obligations to other ML & Co. subsidiaries or affiliates. ML Br. at 8-9. The ML Defendants criticize Plaintiff for not alleging that such assignments were made, but at this stage of the litigation, Plaintiff has no way of knowing whether such assignments—to ML & Co.

or its subsidiaries or affiliates—occurred. The ML Defendants do not *deny* such assignments, and even if they did, they would not be entitled to a favorable inference. In any event, given the opacity of the role ML & Co. played, Braden plausibly alleges that it is a proper defendant. If discovery does not bear this out, ML & Co. will be voluntarily dismissed at the appropriate time.

### 3. The Merrill Lynch Defendants Influenced Other Fiduciaries.

Plaintiff's allegation of undisclosed revenue sharing by the Merrill Lynch fiduciaries supports a plausible prudence claim, because full disclosure of revenue sharing and other information about compensation to service providers affects other fiduciaries' decision making. *See Leimkuehler v. American United Life Ins. Co.*, No. 10-333, 2010 WL 4291128, at *9 (S.D. Ind. Oct. 22, 2010) (where plan trustee sued service provider for collecting revenue sharing from fund advisors and managers without disclosing it to the plans or crediting the plans with revenues collecting in excess of the cost of services, court relied on *Braden*, 588 F.3d at 596 & n.6, distinguished *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009), and found that disclosure of AUL's compensation to the other plan fiduciaries could have been "material to the Trustee when negotiating over the expenses AUL would charge the Plan . . . [or to] evaluating the propriety of the funds that AUL selected for the participants"). Merrill Lynch's failure to disclose the fees it collected was an independent prudence violation that also inhibited Wal-Mart's ability to make prudent decisions with respect to the overall fee structure of the Plan. Thus, the ERISA claims against Merrill Lynch are amply supported by factual content.

### C. Plaintiff's Co-Fiduciary Liability Claim (Count IX) Is Sufficiently Pled.

ERISA's provision for "Liability for Breach by Co-Fiduciary," provides:

In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

(1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

(2) if, by his failure to comply with section 404(a)(1), 29 U.S.C. § 1104(a)(1), in the administration of his specific responsibilities which give rise to his status as a

fiduciary, he has enabled such other fiduciary to commit a breach; or

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

ERISA § 405(a), 29 U.S.C. § 1105(a).  Even if a fiduciary merely knows of a breach, a breach he

had no connection with, he must take steps to remedy it:

[I]f a fiduciary knows that another fiduciary of the plan has committed a breach, and the first fiduciary knows that this is a breach, the first fiduciary must take reasonable steps under the circumstances to remedy the breach. . . .  [T]he most appropriate steps . . . may be to notify the plan sponsor of the breach, or to proceed to an appropriate Federal court for instructions, or bring the matter to the attention of the Secretary of Labor.  The proper remedy is to be determined by the facts and circumstances of the particular case, and it may be affected by the relationship of the fiduciary to the plan and to the co- fiduciary, the duties and responsibilities of the fiduciary in question, and the nature of the breach.

H.R. Rep. No. 93-1280, at 42 (Conf. Rep.), *reprinted in* 1974 U.S.C.C.A.N. 5038, 5080, 1974 WL

11542.  Under the co-fiduciary provisions of ERISA, fiduciaries cannot stand idly by while their

co-fiduciaries act against participants' interests, and cannot avoid responsibility for the impact of

their failures on co-fiduciaries' satisfaction of their respective duties.  *In re Enron Corp. Sec.,*

*Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 581 (S.D. Tex. 2003) ("Under Department of

Labor Interpretive Bulletin, 29 C.F.R. § 2509.75-5 [at] FR-10, a fiduciary must take all legal and

reasonable steps to prevent or remedy a breach by a co-fiduciary, including taking legal action

against the co-fiduciary or informing the Department or the plan sponsor.").  Indeed, "[a]s the

Eighth Circuit has observed, 'an ERISA trustee who deals with plan assets in accordance with

proper directions of another fiduciary is not relieved of its fiduciary duties . . . to attempt to

remedy known breaches of duty by other fiduciaries.'"  *Worldcom*, 354 F. Supp. 2d at 445

(quoting *FirsTier*, 16 F. 3d at 911).

The ML Defendants' argument seeking to dismiss Braden's Co-Fiduciary Liability Claim

is premised on the assumption that ML & Co. is not a fiduciary and that ML Trust and ML Pierce

are only limited fiduciaries with no *de facto* fiduciary status.  Because Braden has alleged

fiduciary status for each of these entities, *see supra*, the ML Defendants' argument fails.

In addition, the ML Defendants are incorrect in arguing, ML Br. at 17-18, that the scope of

their co-fiduciary liability is limited by their own fiduciary roles. On the contrary, the scope of co-fiduciary liability is limited *only* by the text of the statute. That is, if any fiduciary participates in, enables, or has knowledge of a breach, that fiduciary "shall be liable for a breach of *fiduciary responsibility of another fiduciary*." Courts agree. *See, e.g., Silverman v. Mut. Benefit Life Ins. Co.*, 138 F.3d 98, 106 (2d Cir. 1998) (Jacobs, J., concurring) ("Section 1105(a)(3) provides for extraordinarily broad liability for co-fiduciaries because it requires only that the defendant be a fiduciary of the same *plan* as the breaching fiduciary . . . ."); *In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 480 (S.D.N.Y. 2005) ("[F]iduciaries may be liable under § 1105(a) even if their cofiduciary's breach is beyond the scope of their own discretionary authority." (citing, *inter alia*, *WorldCom*, 354 F. Supp. 2d at 445)).

Moreover, Defendants' argument that Braden cannot *prove* "actual knowledge," ML Br. at 18, is premature and inappropriate at the motion to dismiss stage, where the contours of the parties' knowledge are questions of fact that have yet to be determined. The ML Defendants are not entitled to an inference that they did *not* know that other fiduciaries were breaching their duties. In any event, Braden has alleged actual knowledge by the ML Defendants, regarding, specifically, the imprudence of the investments that paid kickbacks to the ML Defendants, the fees that Merrill Lynch entities collected, and the fact that the funds paid revenue sharing to the ML Defendants. AC ¶¶ 255, 257. Braden has also alleged that the ML Defendants participated in and influenced the fund selection process. AC ¶¶ 81-87; 139-142; 218-226. Accordingly, the ML Defendants' argument that they had no "insight whatsoever into the Wal-Mart Defendants' decision-making process," ML Br. at 20, is baseless and cannot justify dismissing this claim.

Defendants' "actual knowledge" arguments are also irrelevant. While actual knowledge may be required[17] for co-fiduciary liability under ERISA § 405(a)(1) and (a)(3), it is not required under ERISA § 405(a)(2), which "provides for liability if a fiduciary's failure to comply with its duties under ERISA *enabled* another's breach." *In re Pfizer Inc. ERISA Litig.*, No. 04-10071, 2009 WL 749545, at *14 (S.D.N.Y. Mar. 20, 2009) (emphasis added). Here, the Amended

---

[17] While any findings of fact are inappropriate at this stage of the litigation, a factfinder may *infer* actual knowledge based on circumstantial evidence. *Silverman*, 138 F.3d at 104-05.

Complaint sufficiently alleges breach of the co-fiduciary duty based on all three subsections of ERISA § 405(a), including the ERISA § 405(a)(2) enabling prong. AC ¶¶ 155-156, 250-261.

Finally, contrary to the ML Defendants' argument, Braden *has* alleged inaccuracies in the communications authored by Merrill Lynch. Further, the ML Defendants' assertion that knowledge is "particularly implausible" here, given differing "materiality" conclusions among the courts, is plainly incorrect. The Eighth Circuit has already found *in this case* that "materiality is a fact and context sensitive inquiry" and that "Braden's disclosure claims cannot be decided as a matter of law." *Braden*, 588 F. 3d at 600. Unfortunately for the ML Defendants, neither *Hecker*, 556 F.3d at 586, nor the district court opinions they cite, Def. Br. at 19 n.17, control.

## D.    Plaintiff's Unjust Enrichment Claim (Count X) Is Sufficiently Pled.

Merrill Lynch argues on the one hand that Plaintiff has no statutory causes of action under ERISA, and, on the other, that Plaintiff has no cause of action for unjust enrichment because his claims are covered by ERISA. ML Br. at 20-21. Catch-22 may be a winning literary theme, but it is a losing legal argument.[18] As the Eighth Circuit has held, if ERISA's statutory enforcement scheme does not extend to the Plan's recovery of Merrill Lynch's ill-gotten gains, federal common law applies "interstitially." *Travelers Cas. & Sur. Co. of Am. v. IADA Servs. Inc.*, 497 F.3d 862, 865 (8th Cir. 2007). That is, where "no cause of action was stated under an ERISA provision, and the parties are not claiming that a particular ERISA section expressly governs the issue . . . , [courts] are compelled to look to federal common law." *Mohamed v. Kerr*, 53 F.3d 911, 913 (8th Cir. 1995), *abrogated on other grounds by Kennedy v. Plan Adm'r for DuPont Sav. and Inv. Plan*, 192 S. Ct. 865 (2009). Thus, if this Court holds that Braden's claims against any one of the ML Defendants are not covered by ERISA, then he has a common law claim for unjust enrichment; if the Court holds (correctly, in Plaintiff's view) that there is an ERISA cause of action against *all three* ML Defendants, then his unjust enrichment claim is unnecessary because disgorgement of

---

[18] Joseph Heller's *Catch-22* was ranked as the seventh best English language novel of the 20th Century by the Modern Library. http://www.modernlibrary.com/top-100/100-best-novels/.

ill-gotten gains is available against fiduciaries under ERISA § 502(a)(3).[19]  In the meantime,

alternative pleading is permitted.  *Garman v. Griffin*, 666 F.2d 1156, 1157 n.1 (8th Cir. 1981).

Contrary to the ML Defendants' suggestion, Plaintiff's unjust enrichment claim is

supported by Eighth Circuit case law.  For example, *Young America, Inc. v. Union Central Life*

*Insurance Co.*, 101 F.3d 546, 548 (8th Cir. 1996), held that an employer had a federal common

law action for restitution of mistaken payments to an ERISA plan.  Other Circuit courts have

agreed, finding "traditional concerns of equity" paramount.  *UIU Severance Pay Trust Fund v.*

*Local Union No. 18-U, United Steelworkers of Am.*, 998 F.2d 509, 513 (7th Cir. 1993); *see also*

*Young Am.*, 101 F.3d at 548 (collecting circuit court cases); *Am. Cleaners & Laundry Co. v.*

*Textile Processors Union Local 161*, 482 F. Supp. 2d 1103, 1115-16 (E.D. Mo. 2007) (upholding

unjust enrichment claim in context of ERISA plan to remedy overpayments to defendants).

Finally, because unjust enrichment is a viable claim in the absence of adequate ERISA

claims to redress the harms to Braden and the Class resulting from the ML Defendants' conduct,

Plaintiff's unjust enrichment claim should stand until such time that the Court decides that

Plaintiff has established the ML Defendants' fiduciary status—and thus their ERISA exposure.

## E.    Plaintiff's Non-Fiduciary Claim for Knowing Participation in a Fiduciary Breach (Count XI) Is Well-Pled.

Braden's non-fiduciary claim under ERISA § 502(a)(3) is for equitable restitution.  The

ML Defendants' attempt to recast Plaintiff's claim as one for "legal" restitution by chiding

Braden's inability to "trace" the funds that the ML Defendants wrongfully collected as a result of

their position with respect to the Plan is a cynical plea that should be rejected.  The ML

Defendants seek to take advantage of the opaque fee arrangements that Merrill Lynch had with the

fund companies and the indisputable fact that Merrill Lynch entities collected fees that they

wrongfully failed to disclose to Wal-Mart and the Plan Committee.  Regardless, the funds at issue

*are* traceable to monies received by Merrill Lynch entities for their roles with the Plan—through

---

[19] Braden notes that the ML Defendants do *not* seek dismissal of his ERISA § 502(a)(3) claim against them *as fiduciaries*, under which he also seeks disgorgement of the ML Defendants' ill-gotten gains.  AC ¶¶ 22, 161-162, 291.  It is well established that fiduciaries must disgorge ill-gotten profits gained from their fiduciary breaches.  *See Martin v. Feilen*, 965 F.2d 660, 671-72 (8th Cir. 1992); *Felber v. Estate of Regan*, 117 F.3d 1084 (8th Cir. 1997).

records that Plaintiff has yet to fully receive in discovery. The ML Defendants' refusal to provide the documentation that would detail this trail of money—a trail that the Wal-Mart defendants are aggressively seeking to track down—does *not* render the funds "not traceable."[20] At a minimum, there exists a factual dispute about whether the funds are traceable, which precludes dismissal of this claim at the pleading stage. *Tussey*, 2008 WL 379666, at *6.

The ML Defendants' unjust profits from their manipulation of Plan assets underpins Braden's equitable claim. *See Harris Trust & Savings Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 254 (2000) (holding equitable action for restitution against a non-fiduciary transferee of tainted plan assets is available under § 502(a)(3)); *see also Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 215-16 (2002) (acknowledging availability of equitable restitution under the *Harris Trust* doctrine; distinguishing such from the legal restitution sought by Great-West); *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) (non-fiduciary service providers "must disgorge assets and profits obtained through participation as parties-in-interest in transactions prohibited by [29 U.S.C. § 1106]"); *Concha v. London*, 62 F.3d 1493, 1503-04 (9th Cir. 1995) (upholding claim for participation in prohibited transactions by non-fiduciaries who profited from those transactions); *Phones Plus*, 2007 WL 3124733, at *5 (upholding claim for knowing participation in a fiduciary breach); *Will v. Gen. Dynamics Corp.*, 2009 WL 3835883, at *3-5 (same).

The ML Defendants' reliance on *Knieriem v. Group Health Plan, Inc.*, 434 F.3d 1058, 1064 (8th Cir. 2006), and *Calhoon v. TWA, Inc.*, 400 F.3d 593, 597 (8th Cir. 2005), is misplaced. In *Knieriem*, the plaintiff sought payment of a claim and *acknowledged* the claim was for money damages. 434 F.3d at 1060. In *Calhoon*, the plaintiffs sought damages measured by losses to themselves, not ill-gotten gains amassed by the defendants. 400 F.3d at 598. Indeed, the *Knieriem* court held that the core inquiry surrounds the nature of equitable restitution, which "seeks to punish the wrongdoer by taking his ill-gotten gains, thus, removing his incentive to

_____

[20] Indeed, discovery has revealed that Wal-Mart has been amassing money, withheld to offset the fees that Merrill Lynch entities collected but wrongfully failed to disclose to Wal-Mart. This is but one means of tracing Merrill Lynch's ill-gotten gains. Many more likely will be revealed in further discovery.

perform the wrongful act again." 434 F.3d at 1061. This is precisely what Braden is seeking to accomplish here: Braden seeks a constructive trust and an accounting for profits that the Merrill Lynch Defendants earned as a result of their participation in the fiduciary breaches of the Wal-Mart Defendants, AC ¶ 278, both of which are allowed under ERISA § 503(a)(3). *See Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999, 1008 (8th Cir. 2004).

The ML Defendants argue that the unjust compensation received by them is not subject to ERISA § 503(a)(3) because, in their view, the compensation "did not come from Plan assets." ML Br. at 22. The Complaint, however, sufficiently alleges otherwise.[21] Moreover, whatever the outcome of the dispute over whether these payments satisfy the technical definition of "plan asset" under ERISA, there is no question that Braden alleges that the ML Defendants extracted fees directly and indirectly as a result of their *control over* Plan assets and roles as the Plan Trustee and service provider that were excessive, and unjustified. Under the circumstances, equitable restitution under ERISA § 503(a)(3) is appropriate.

Finally, Braden's equitable restitution claim against the ML Defendants as "non-fiduciaries" is permissibly pled in the alternative. *Garman*, 666 F.2d at 1157 n.1.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff Jeremy Braden requests that the Court deny the ML Defendants' Motion to Dismiss in its entirety. Braden further requests Oral Argument.

Respectfully submitted this 22nd day of December, 2010.

KELLER ROHRBACK L.L.P.
/s/ Gretchen S. Obrist
Lynn Lincoln Sarko, WSBA #16569
Michael Woerner, WSBA #15452
Derek W. Loeser, WSBA #24274
Gretchen Freeman Cappio, WSBA #29576
Gretchen S. Obrist, WSBA #37071

---

[21] Contrary to Merrill Lynch's suggestion, ML Br. at 11 n.10, the issue of whether revenue sharing or other payments from funds to Merrill Lynch constitute indirect transfers of *plan assets* is a question of fact that cannot be resolved on a motion to dismiss. *See Tussey* SJ Tr. at 18. The term "plan asset" "should be construed broadly in order to effectuate Congress's overriding concern with the protection of plan participants and beneficiaries." *Patelco Credit Union v. Sahni*, 262 F.3d 897, 908 (9th Cir. 2001); *see also Shirk v. Fifth Third Bancorp*, No. 05-049, 2008 WL 4449024, at *16 (S.D. Ohio Sept. 26, 2008) (discussing *Patelco* functional approach); *Haddock I*, 419 F. Supp. 2d at 170 (plan assets are held upon "exercise of fiduciary discretion or authority" and "at the expense of plan participants or beneficiaries" (adopting *Acosta v. Pac. Enters.*, 950 F.2d 611, 620 (9th Cir. 1991)).

1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900
Fax: (206) 623-3384
lsarko@kellerrohrback.com
mwoerner@kellerrohrback.com
dloeser@kellerrohrback.com
gcappio@kellerrohrback.com
gobrist@kellerrohrback.com

ALESHIRE ROBB P.C.
Gregory W. Aleshire, MOBAR #38691
William R. Robb, MOBAR #43322
2847 S. Ingram Mill Rd., Suite A-102
Springfield, Missouri 65804
Telephone: (417) 869-3737
Fax: (417) 869-5678
arslaw@arslaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following: William C. Martucci, Katherine R. Sinatra, Kristen A. Page, Morgan D. Hodgson, Paul J. Ondrasik, Jr., Eric Serron, Shannon Barrett, Amy Longo, Robert N. Eccles, Richard N. Bien, James V. Moloney, and Robyn L. Anderson. There are no non CM/ECF participants.

DATED this 22nd day of December, 2010.

/s/Linda J. Vandiver
Linda J. Vandiver, Legal Assistant