UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

JEREMY BRADEN,

                 Plaintiff,

v.

WAL-MART STORES, INC., et al.,

                 Defendants.

CIVIL ACTION
No. 08-CV-3109-GAF

(Judge Gary A. Fenner)

**REPLY SUGGESTIONS OF LAW IN FURTHER SUPPORT OF
THE MERRILL LYNCH DEFENDANTS'
<u>MOTION TO DISMISS AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

I.  INTRODUCTION .................................................................................................. 1

II. ARGUMENT ...................................................................................................... 2

    A.  Counts VI, VII And VIII Should Be Dismissed Because the Merrill
        Defendants Have No Fiduciary Status Relevant to the Asserted Claims .............. 2

        1.  ML & Co. Is Not An ERISA Fiduciary .................................................... 4

        2.  ML Trust Is Not a Fiduciary With Respect to the Conduct
              Challenged in the Complaint ................................................................... 5

        3.  ML Pierce Is Not a Fiduciary With Respect to the Conduct
              Challenged in the Complaint ................................................................... 7

        4.  Plaintiff's Argument That The Merrill Defendants "Influenced
              Other Fiduciaries" Has No Bearing on Fiduciary Status ......................... 10

    B.  Count IX Should Be Dismissed Because Plaintiff Has Failed to State a
        Plausible Claim Against the Merrill Defendants for Co-Fiduciary Liability ...... 10

    C.  Count X Should Be Dismissed Because ERISA Does Not Authorize
        Plaintiff's "Common Law" Unjust Enrichment Claim ....................................... 12

    D.  Count XI Should Be Dismissed Because It Seeks Relief That Is
        Unavailable Under ERISA § 502(a)(3) ............................................................. 13

III. CONCLUSION .................................................................................................. 15

# TABLE OF AUTHORITIES

Page

**Cases**

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009) .................................................................................. 5

*Calhoon v. TWA, Inc.,*
400 F.3d 593 (8th Cir. 2005) ...................................................................... 15

*Chaganti v. Ceridian Benefits Servs.,*
208 F. App'x 541 (9th Cir. 2006) ................................................................. 9

*Chao v. Unique Mfg. Co.,*
649 F. Supp. 2d 827 (N.D. Ill. 2009) ........................................................... 9

*Charters v. John Hancock Life Ins. Co.,*
583 F. Supp. 2d 189 (D. Mass. 2008) .......................................................... 8

*Columbia Air Services, Inc. v. Fidelity Mgmt. Trust Co.,*
No. 07-11344-GAO, 2008 WL 4457861 (D. Mass. Sept. 30, 2008) ................. 4, 5

*DiFelice v. US Airways, Inc.,*
397 F. Supp. 2d 735 (E.D. Va. 2005) ......................................................... 11

*Finkel v. Romanowicz,*
577 F.3d 79 (2d Cir. 2009) .......................................................................... 9

*Great-West Life & Annuity Ins. Co. v. Knudson,*
534 U.S. 204 (2002) ......................................................................... 12, 13, 14

*Haddock v. Nationwide Fin. Servs. Inc.,*
262 F.R.D. 97 (D. Conn. 2009) ................................................................... 8

*Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.,*
530 U.S. 238 (2000) ................................................................................... 13

*Hecker v. Deere & Co.,*
556 F.3d 575 (7th Cir. 2009) ............................................................... 4, 5, 14

*Johnson v. Georgia-Pacific Corp.,*
19 F.3d 1184 (7th Cir. 1994) ....................................................................... 9

*Kannapien v. Quaker Oats Co.,*
433 F. Supp. 2d 895 (N.D. Ill. 2006) ........................................................... 4

*Kerns v. Benefit Trust Life Ins. Co.,*
992 F.2d 214 (8th Cir. 1993) ..................................................................... 10

*Knieriem v. Group Health Plan, Inc.,*
434 F.3d 1058 (8th Cir. 2006) .............................................................. 14, 15

*Kolbe & Kolbe Health and Welfare Ben. Plan v. Med. College of WI., Inc.,*
690 F. Supp. 2d 778 (W.D. Wis. 2010) ....................................................... 13

i

*Leimkuehler v. American United Life Ins. Co.*,
   No. 10-333, 2010 WL 4291128 (S.D. Ind. Oct. 22, 2010) .................................... 10

*Livick v. The Gillette Co.*,
   524 F.3d 24 (8th Cir. 2008) ........................................................................... 10

*Marks v. Independence Blue Cross*,
   71 F. Supp. 2d 432 (E.D. Pa. 1999) ............................................................... 10

*Mertens v. Hewitt Assocs.*,
   508 U.S. 248 (1993) ....................................................................................... 12

*Mohamed v. Kerr*,
   53 F.3d 911 (8th Cir. 1995) ........................................................................... 13

*Provident Life & Acc. Ins. Co. v. Cohen*,
   423 F.3d 413 (4th Cir. 2005) ......................................................................... 13

*Renfro v. Unisys Corp.*,
   No. 07-2098, 2010 WL 1688540 (E.D. Pa. Apr. 26, 2010) .............................. 4, 5

*Sharp Elecs. Corp. v. Metro. Life Ins. Co.*,
   578 F.3d 505 (7th Cir. 2009) ........................................................................... 5

*Silverman v. Mut. Ben. Life Ins. Co.*,
   138 F.3d 98 (2d Cir. 1998) ............................................................................. 11

*Travelers Cas. & Sur. Co. of Am. v. IADA Servs.*,
   497 F.3d 862 (8th Cir. 2007) ......................................................................... 12

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996) ......................................................................................... 9

*Walsh v. Principal Life Ins. Co.*,
   266 F.R.D. 232 (S.D. Iowa Mar. 24, 2010) ..................................................... 10

*Young Am., Inc. v. Union Central Life Ins. Co.*,
   101 F.3d 546 (8th Cir. 1996) ......................................................................... 13

*Zang v. Paychex, Inc.*,
   No. 08-CV-60461, 2010 WL 30219109 (W.D.N.Y. Aug. 2, 2010) .................... 9

**Statutes**

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) ...................................................... 2

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A)(i) .................................................. 9

ERISA § 401(b)(1), 29 U.S.C. § 1101(b)(1) ..................................................... 14

ERISA § 403(a), 29 U.S.C. § 1103 .................................................................. 11

ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2) ..................................................... 11

ERISA § 405, 29 U.S.C. § 1105 ...................................................................... 10

**Page(s)**

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) ................................................................ 13

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) ........................................................... 1, 13

**Rules**

29 C.F.R. § 2509.75-8 D-2 ........................................................................................ 10

29 C.F.R. § 2510.3-21 ................................................................................................. 2

Definition of the Term "Fiduciary", 75 Fed. Reg. 65263, 65270 (Oct. 22, 2010) ......................... 3

**Other Authorities**

*Brief Of The Secretary of Labor, Elaine L. Chao, As Amicus Curiae In Support Of Plaintiffs-Appellants*, *Hecker v. Deere & Co.*, No. 07-3605 (7th Cir. April 2, 2008) ............................. 14

Case 6:08-cv-03109-GAF   Document 190   Filed 01/28/11   Page 5 of 22

# I.     INTRODUCTION

The purpose of an opposition brief is not to re-write a complaint.   Nonetheless, Plaintiff's Suggestions of Law in Opposition to the Merrill Lynch Defendants' Motion to Dismiss ("Opposition" or "Opp.") ignore allegations in his Complaint that doom his claims in favor of a re-framed case against the Merrill Defendants.

After taking pains to rely on the contractual agreements between Wal-Mart and the Merrill Defendants to allege the Merrill Defendants' fiduciary status, Plaintiff's Opposition now seeks to run away from the agreements' terms.  The reason is simple.  The agreements in question foreclose Plaintiff's claims.  Although the agreements cited in the Complaint—the Servicing Agreement and Trust Agreement—assign limited (and irrelevant) fiduciary roles to two of the Merrill Defendants, these contracts allocate none of the Merrill Defendants fiduciary control over the investment selection and other decisions at the heart of Plaintiff's claims.  With the key contractual agreements blocking Plaintiff's claims, Plaintiff's Opposition leans heavily on the theory that the Merrill Defendants acted as "de facto" fiduciaries.  Specifically, the Opposition contends that the Merrill Defendants essentially controlled or influenced Wal-Mart's investment selection process.  But the Complaint provides no support for these allegations.

Plaintiff's attempts to rehabilitate his claims for non-fiduciary liability fare no better.  As to his federal common law claim for unjust enrichment, Plaintiff ignores Supreme Court precedent against the recognition of such claims where, as here, they would interfere with ERISA's statutory enforcement scheme.  Plaintiff likewise fails to confront the allegations in his own Complaint that render his equitable restitution claim under ERISA § 502(a)(3) untenable.

Accordingly, for the reasons set forth below and in the Suggestions of Law in Support of the Merrill Lynch Defendants' Motion to Dismiss Amended Complaint ("Suggestions or Sugg."), Plaintiff's claims against the Merrill Defendants should be dismissed in their entirety.

## II.   ARGUMENT

### A.   Counts VI, VII And VIII Should Be Dismissed Because the Merrill Defendants Have No Fiduciary Status Relevant to the Asserted Claims

Plaintiff's Complaint alleges that the Merrill Defendants assumed relevant fiduciary status by virtue of a Servicing Agreement between Wal-Mart and ML Pierce, which Plaintiff contends gave the Merrill Defendants effective control over the Wal-Mart fiduciaries' selection of Plan investment options.  *See, e.g.,* Compl. (Dkt. # 107) ¶ 82.  The Merrill Defendants have explained that this theory misconstrues the terms of that agreement and ignores established law.  Sugg. (Dkt. # 157) at 13-17.  Moreover, the Servicing Agreement cannot serve as a basis of fiduciary status for Defendants ML & Co. and ML Trust, who are not parties to that Agreement.  *Id.* at 7-13.

Faced with these infirmities in his original theory, Plaintiff now argues in his Opposition that the Merrill Defendants' fiduciary roles are not limited by the terms of the Servicing Agreement or other formal agreements between the Merrill Defendants and Wal-Mart or the Plan.  Plaintiff contends that the Merrill Defendants became "*de facto* fiduciaries" by controlling the investment selection process in practice and by providing "investment advice" to the Wal-Mart fiduciaries.  Opp. (Dkt. # 178) at 8, 10-11, 16-17.  These newly-embraced theories, however, are unsupported by the factual allegations in Plaintiff's Complaint.

The Complaint nowhere alleges that the Merrill Defendants provided "investment advice" to Plan fiduciaries.  The term appears only once in the Complaint, as part of a block quote of definition of "fiduciary" under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  Compl. ¶ 60.  Nor does the Complaint assert facts sufficient to support that conclusion.  For purposes of ERISA, "investment advice" is a technical term, defined under Department of Labor ("DOL") regulations.  29 C.F.R. § 2510.3-21.  As the DOL recently recognized in its proposal to modify

that definition, a service provider may be deemed to provide "investment advice" under the current regulation only if the provider (1) has discretionary authority or control over the plan's purchase of property or (2) meets every element of a "five-part test." Definition of the Term "Fiduciary", 75 Fed. Reg. 65263, 65270 (Oct. 22, 2010).[1] Plaintiff ignores this regulation and fails to cite any allegations indicating its requirements were met here.

Although the Complaint does make the conclusory assertion that "Merrill Lynch" was a "*de facto*" fiduciary (Compl. ¶ 87), Plaintiff's factual allegations of fiduciary status are consistently and expressly based on the terms of the Merrill Defendants' formal agreements. *See, e.g.,* Compl. ¶ 82 ("The Servicing Agreement establishes Merrill Lynch's fiduciary role specifically with respect to the selection and management of Plan Investment Options."). Indeed, the only factual allegations in the section of the Complaint concerning "Merrill Lynch's Fiduciary Status" that are not plainly premised on the Servicing or Trust Agreement's terms are those in paragraph 86, which alleges that "Merrill Lynch" failed to accurately disclose its fees for Plan services. And Plaintiff has said he "is not alleging that the nondisclosure *created* fiduciary status." Opp. at 15 (emphasis in original).[2] The Complaint, moreover, does not allege that the relationships between the Merrill Defendants and the Plan varied from the agreements' terms.

Plaintiff's Opposition repeats the same dynamic. Despite Plaintiff's repeated claims that the Merrill Defendants were "*de facto*" fiduciaries, Plaintiff's descriptions of the Merrill Defendants' alleged fiduciary status continually revert to the Servicing Agreement's terms. *See, e.g.,* Opp. at 2-3, 9-10, 11, 13. Because the Plaintiff himself premises the Merrill Defendants'

---

[1]  The DOL describes the "five-part test" as requiring that the service provider "(1) renders advice as to the purchase, sale, or value of securities or other property, (2) on a regular basis, (3) pursuant to a mutual agreement, arrangement or understanding, written or otherwise, between such person and the plan or a plan fiduciary, that (4) the advice will serve as a primary basis for investment decisions with respect to plan assets, and that (5) the advice will be individualized based on the particular needs of the plan[.]"  75 Fed. Reg. at 65270.
[2]  *See also* Compl. ¶¶ 81 (citing Trust Agreement); 83 (citing Servicing Agreement); 84 (referring back to contractual rights under Servicing Agreement), 85 (same).

Case 6:08-cv-03109-GAF   Document 190   Filed 01/28/11   Page 8 of 22

alleged fiduciary status on the terms of the relevant Plan agreements, the Court may properly examine those agreements to determine the viability of Plaintiff's fiduciary duty claims—as other courts have done in dismissing similar claims.  *See Hecker v. Deere & Co.*, 556 F.3d 575, 583-84 (7th Cir. 2009); *Renfro v. Unisys Corp.,* No. 07-2098, 2010 WL 1688540, at *4-5 (E.D. Pa. Apr. 26, 2010); *Columbia Air Services, Inc. v. Fidelity Mgmt. Trust Co.,* No. 07-11344-GAO, 2008 WL 4457861, at *3, 5 (D. Mass. Sept. 30, 2008).  And that analysis compels dismissal of Plaintiff's fiduciary duty claims against each of the Merrill Defendants.

1.  **ML & Co. Is Not An ERISA Fiduciary**

Plaintiff's fiduciary duty claims against ML & Co. fail because the Complaint asserts no facts to show that ML & Co. is a Plan fiduciary.  Sugg. at 7-9.  Plaintiff's Opposition confirms this omission.

The Opposition references only one allegation in that Complaint as supporting ML & Co.'s supposed fiduciary status—an assertion in paragraph 42 that the Servicing Agreement between Wal-Mart and Defendant ML Pierce allows ML Pierce to assign its duties to other ML & Co. subsidiaries or affiliates.  Opp. at 18-19.  But the Complaint does not allege that ML Pierce ever utilized that provision.  Nor does the provision authorize ML Pierce to assign any duties—fiduciary or otherwise—to ML & Co. itself.  It only authorizes assignment to ML & Co.'s subsidiaries and affiliates, and being the corporate parent of a plan's fiduciary does not render the parent a fiduciary.  *See, e.g., Kannapien v. Quaker Oats Co.*, 433 F. Supp. 2d 895, 906-07 (N.D. Ill. 2006).  Finally, neither the Servicing Agreement nor, for that matter, the Trust Agreement assigns to *any* Merrill Lynch entities fiduciary duties relevant to Plaintiff's claims. Sugg. at 13-17.  As such, Plaintiff's professed confusion as to which entities performed which duties under those agreements is immaterial to ML & Co.'s alleged fiduciary status.

-4-

Beyond pointing to that one inconsequential allegation, Plaintiff's only argument is that because Plaintiff "has not determined the full extent of ML & Co.'s involvement in the facts of this case," "ML & Co. should not be dismissed." Opp. at 18. This is, of course, nonsense. It is Plaintiff's obligation to plead facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation omitted). In the case of a fiduciary breach claim, this inherently requires pleading facts sufficient to show the defendant's "status as a plan fiduciary." *Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 512 (7th Cir. 2009). Other courts have dismissed the same types of fiduciary breach claims that Plaintiff asserts here precisely because plaintiffs' allegations failed to meet that requirement.[3] Plaintiff is not entitled to proceed farther on his claims against ML & Co. by essentially pleading nothing.[4]

## 2. ML Trust Is Not a Fiduciary With Respect to the Conduct Challenged in the Complaint

Plaintiff's fiduciary duty claims also fail against ML Trust. While ML Trust's role as the Plan's directed trustee makes it a fiduciary for some purposes, that limited fiduciary role does not involve any of the conduct challenged in the Complaint. Sugg. at 9-13.

Plaintiff's Opposition does not really contest this proposition. Although Plaintiff stresses the noncontroversial point that directed trustee is a fiduciary role, he makes no effort to tie ML Trust's assigned responsibilities under the Trust Agreement to any of the investment decisions or related conduct that Plaintiff contends constituted breaches of fiduciary duty. Rather, Plaintiff argues that, regardless of ML Trust's formal authority, ML Trust may have become a *de facto*

---

[3] *See Hecker*, 556 F.3d at 583-84; *Renfro*, 2010 WL 1688540, at *4-5; *Columbia Air*, 2008 WL 4457861, at *2-4.

[4] In an attempt to avoid dismissal, Plaintiff goes beyond the proper Rule 12(b)(6) record to argue that the Merrill Defendants have "obfuscate[d]" their respective roles in their initial disclosures and other discovery responses served since the current Complaint. Opp. at 12. If Plaintiff is dissatisfied with the Merrill Defendants' discovery responses, the Federal and Local Rules provide Plaintiff avenues for raising those concerns. Those concerns with *post-Complaint* discovery, however, do not explain or excuse Plaintiff's failure to plead facts plausibly demonstrating the Merrill Defendants' fiduciary status.

fiduciary through its actions. Opp. at 8, 16-17. But, as already discussed (*supra* at 3-4), that theory is unsupported by any factual allegations.

Plaintiff also attempts to rebut the Merrill Defendants' argument (with respect to Count VIII) that ML Trust had no fiduciary obligation to disclose fee and expense information to Plan participants. But his arguments are unavailing. Plaintiff's statement that "materiality is a fact and context sensitive inquiry" (Opp. at 18) misses the point entirely. Materiality is only one element of an ERISA nondisclosure claim. To state a claim against ML Trust, Plaintiff must also allege facts sufficient to show that ML Trust ***knew or should have known*** that material information was being withheld. *See* Sugg. at 12-13. And it is there that the Complaint falls short. Although Plaintiff's Opposition asserts that "he has alleged that the ML Defendants knew or should have known that participant communications failed to disclose a multitude of material facts" (Opp. at 18), Plaintiff cites no allegations to support that assertion.[5]

Finally, Plaintiff complains that he "cannot determine from the face of the Plan Fee documents *which* Merrill Lynch entity prepared them[.]" Opp. at 18. But this contention does nothing to preserve his nondisclosure claim against ML Trust. The Complaint itself identifies the Servicing Agreement between Wal-Mart and ML Pierce (***not*** ML Trust) as the basis for Plaintiff's contention that "Merrill Lynch" was responsible for participant communications. (Compl. ¶ 148.) And, in any event, the participant communication duties assigned to ML Pierce under that agreement were not fiduciary in nature. *See* Sugg. at 16; *see also infra* at 9-10.

---

[5] As discussed in the Merrill Defendants' initial Suggestions (Sugg. at 13 n.12), Plaintiff does allege that "Merrill Lynch" concealed the amount of its income from Wal-Mart and thereby knew that participants were not receiving complete and accurate information. Compl. ¶ 152. The allegation, however, is facially implausible given Plaintiff's position that the Trust Agreement prevented Wal-Mart from disclosing the contents ML Trust's fee reports to plan participants. Compl. ¶¶ 146-47. Contrary to Plaintiff's characterizations (Opp. at 18), this is not an argument that the relevant Trust Agreement provision "somehow insulates Merrill Lynch from the impact on participant communications of its unlawful concealment of fees to Wal-Mart[.]" Rather, it is the logical point that, if the contents of the fee reports could not be shared with Plan participants anyway (as Plaintiff claims), then there would be no reason to infer that errors in those reports would have any impact on participant communications.

### 3. ML Pierce Is Not a Fiduciary With Respect to the Conduct Challenged in the Complaint

Plaintiff's fiduciary duty claims against ML Pierce fail because ML Pierce's limited fiduciary role relating to the Plan's purchases of Wal-Mart stock has nothing to do with claims in this case. Sugg. at 13.

To try to avoid this conclusion, Plaintiff relies on a provision in the Service Agreement that does not purport to give ML Pierce any fiduciary authority. Under that term, ML Pierce has the right to amend or modify the list of "alliance" fund families from which the Wal-Mart fiduciaries could select Plan investment options while maintaining a lower per participant charge. Hickey Decl., (Dkt. # 157-1) Ex. C (1997 Servicing Agmt. at Attachment C (WAL059258-59)).

Plaintiff incorrectly attempts to equate that part of the Service Agreement to provisions addressed in other cases and in DOL guidance that gave service providers the unilateral right to alter the range of funds made available to a plan *at all.* Opp. at 8-9. But the analogy does not hold. Unlike the contracts discussed in those authorities, the Servicing Agreement provision does *not* allow ML Pierce to reduce the range of funds from which the Wal-Mart fiduciaries can select the Plan's investment options. *See* Sugg. at 13-15. It merely allows ML Pierce to modify the list of fund families that have "alliance" status; the Wal-Mart fiduciaries are not restricted to that list in selecting the Plan's investment options. Rather, the Servicing Agreement recognizes that Wal-Mart's Retirement Plans Committee's ability to choose investment options "outside the fund families with which Merrill Lynch has or can establish an alliance relationship[.]" Hickey Decl., Ex. I (July 29, 2003 Am. to Servicing Agmt. at WAL050740). Thus, the Servicing Agreement does not give ML Pierce discretionary authority or control over the selection of the Plan's investment options, as would be necessary to confer fiduciary status.

Likewise, the Servicing Agreement's terms are not analogous to the circumstances presented in *Charters v. John Hancock Life Ins. Co.,* 583 F. Supp. 2d 189 (D. Mass. 2008). In *Charters,* the defendant service provider had a contractual right to substitute investment funds within sub-accounts the service provider offered a plan. The defendant argued that that right did not make it a fiduciary because the plan's trustee, Charters, could reject any substitutions by transferring the plan's assets to different sub-accounts or by terminating the defendant's contract. *Id.* at 198. In rejecting this argument, the court emphasized that Charters could not take those measures without incurring transaction fees:

> If Charters sought to reject a substitution and maintain his investment in the replaced fund, his only option was to terminate the Contract and select a different service provider offering that fund. In exercising that right, Charters would be subject to a termination fee of up to 2% of the assets with Hancock by the Plan . . . . Charters would also be subject to administrative charges for transferring assets to another sub-account.

*Id.* at 199. The court held that because of these "built-in penalties," the plan's trustee did not have a "meaningful opportunity to reject substitutions" and that the defendant's ability to substitute investments therefore rendered it a fiduciary. *Id.* In contrast, the Servicing Agreement gives the Wal-Mart fiduciaries an unfettered right to terminate the agreement "with or without cause" on 120 days' notice **without** financial penalty. *See, e.g.,* Hickey Decl., Ex. C (1997 Servicing Agmt., Section 5(b) (WMHOp-401026-011-00000254). The Servicing Agreement thus provides the Wal-Mart fiduciaries the very "meaningful opportunity to reject" changes that the court found lacking in *Charters.* If anything, *Charters* cuts against Plaintiff's position.

Plaintiff also cites to *Haddock v. Nationwide Fin. Servs. Inc.,* 262 F.R.D. 97, 108 (D. Conn. 2009) and the summary judgment ruling in Tr. of Teleconference, *Tussey v. ABB, Inc.,* No. 06-4305 (W.D. Mo. Dec. 7, 2009) ("*Tussey* Tr."),[6] to argue that a contractual right to veto or

---

[6] The *Tussey* transcript is attached as Exhibit C to the Declaration of Gretchen Obrist. Dkt. # (179-3).

remove investment options gives rise to fiduciary status, even if it is never exercised. Opp. at 8-9. Neither of those courts, however, addressed a key distinction within the definition of fiduciary under ERISA § 3(21)(A). The *Tussey* court, in particular, invoked ERISA § 3(21)(A)(iii), which provides that an entity is a fiduciary if it **possesses** "discretionary responsibility in the administration of such plan[.]" But that provision applies only to plan "administration." A different subsection, § 3(21)(A)(i), applies to the "management and disposition of plan assets." Under that subsection, an entity is a fiduciary only to the extent it **exercises** discretionary authority. 29 U.S.C. § 1002(21)(A)(i); *see also Zang v. Paychex, Inc.,* No. 08-CV-60461, 2010 WL 30219109, *11 (W.D.N.Y. Aug. 2, 2010) (recognizing distinction in holding defendant was not a fiduciary); *Chao v. Unique Mfg. Co.,* 649 F. Supp. 2d 827, 833 (N.D. Ill. 2009) ("A person who has authority over a plan's assets, but never exercises it, … is not a fiduciary.") Matters of investment selection fall within the latter category.[7] In any event, Plaintiff's argument is inconsequential because the Servicing Agreement's terms—whether effected or not—do not give ML Pierce the discretionary control necessary to confer relevant fiduciary status.[8]

Finally, Plaintiff's effort to respond to the argument that ML Pierce does not have fiduciary responsibility for Plan communications falls well short of the mark. Sugg. at 16; Opp. at 16. Plaintiff strains to distinguish the Eighth Court's decision in *Kerns v. Benefit Trust Life*

---

[7]  *See Finkel v. Romanowicz*, 577 F.3d 79, 86 (2d Cir. 2009) (ERISA § 3(21)(A)(i) "refers to the common transactions in dealing with a pool of assets: selecting investments, exchanging one instrument or asset for another, and so on" (quotation and alteration omitted)); *accord Johnson v. Georgia-Pacific Corp.*, 19 F.3d 1184, 1189 (7th Cir. 1994). By contrast, the plan administration functions involve ongoing plan operational issues affecting participants and their benefits, such as participant communications and claims determinations. *See, e.g.*, *Varity Corp. v. Howe*, 516 U.S. 489, 502 (1996) (employer exercised "administrative power" when it conveyed information about the likely future of plan benefits); *Chaganti v. Ceridian Benefits Servs.*, 208 F. App'x 541, 547 (9th Cir. 2006) (In order to "qualify as a fiduciary, a plan administrator must have the discretion to interpret provisions of the plan document and to make final decisions, even in the face of dispute, as to eligibility and benefits.").

[8]  Plaintiff also argues that, "While negotiating terms of retention is not a fiduciary act, Merrill Lynch's conflicted negotiation of its own compensation is." Opp. at 15 n. 16. But the terms of the Merrill Defendants' compensation, including their right to receive fees from the Plan's investment options, were part of the terms of their respective engagements. Nor is Plaintiff's argument supported by the DOL commentary he cites. That commentary merely opines generally that a service provider's discretion over its Plan compensation could constitute a fiduciary act. Lastly, the argument is wholly untethered to any allegations in Plaintiff's Complaint.

*Ins. Co.,* 992 F.2d 214, 218 (8th Cir. 1993), but wholly ignores the DOL regulation on which the

*Kerns* court relied. That regulation—which has been repeatedly applied by other courts[9]—

clearly states that a person who prepares plan communications "within a framework of policies,

interpretations, rules, practices and procedures made by other persons is not a fiduciary," 29

C.F.R. § 2509.75-8 D-2. Plaintiff offers no reason for the regulation not to apply here.

4. **Plaintiff's Argument That The Merrill Defendants "Influenced Other Fiduciaries" Has No Bearing on Fiduciary Status**

The Opposition's final section concerning fiduciary status relies on *Leimkuehler v.*

*American United Life Ins. Co.,* No. 10-333, 2010 WL 4291128 (S.D. Ind. Oct. 22, 2010), to

argue that the Merrill Defendants "influenced" other fiduciaries. But *Leimkuehler* was not a

fiduciary status case. The *Leimkuehler* court expressly premised its analysis on the fact that the

defendant did not dispute its fiduciary status and distinguished the Seventh Circuit's decision in

*Hecker* on that basis. *Id.* at *8. The *Hecker* court, in contrast, directly held that a directed

trustee's alleged influence over the selection of plan investment options was insufficient to

render the trustee a fiduciary for that purpose. *See* 575 F.3d at 584 ("Many people help develop

and manage benefit plans . . . but despite the influence of these professionals we do not consider

them to be Plan fiduciaries."). Plaintiff's reliance on *Leimkuehler* is thus misplaced.

B. <u>**Count IX Should Be Dismissed Because Plaintiff Has Failed to State a Plausible Claim Against the Merrill Defendants for Co-Fiduciary Liability**</u>

As with Plaintiff's general fiduciary duty claims, Plaintiff's arguments regarding his co-

fiduciary claim fall short of the mark. As to the Merrill Defendants' point that liability under

ERISA § 405, 29 U.S.C. § 1105, requires a meaningful connection between a defendant's

fiduciary role and the alleged breach of a co-fiduciary, Sugg. at 17-18, Plaintiff merely cites

---

[9] *See, e.g., Livick v. The Gillette Co.,* 524 F.3d 24, 29 (8th Cir. 2008); *Walsh v. Principal Life Ins. Co.,* 266 F.R.D. 232, 244 (S.D. Iowa Mar. 24, 2010); *Marks v. Independence Blue Cross,* 71 F. Supp. 2d 432, 435 (E.D. Pa. 1999).

contrary authorities, including dicta in *Silverman v. Mut. Ben. Life Ins. Co.*, 138 F.3d 98, 106-07 (2d Cir. 1998), which **denied** co-fiduciary liability. But Plaintiff fails to address the logic of the cases cited by the Merrill Defendants, which explain that Plaintiff's interpretation of ERISA § 405 would eviscerate the concept of limited fiduciaries established under ERISA's other provisions. *See, e.g.*, *DiFelice v. US Airways, Inc.*, 397 F. Supp. 2d 735, 757 (E.D. Va. 2005) (explaining that the limits placed on a directed trustee's duties under ERISA § 403(a) "would have little effect if the directed trustee's co-trustee liability was not similarly limited").

And Plaintiff misconstrues entirely the Merrill Defendants' separate point regarding the element of actual knowledge, Sugg. at 18-19. Contrary to Plaintiff's assertion, the Merrill Defendants do not argue that Plaintiff must "prove" actual knowledge at the pleading stage. Opp. at 21. To survive dismissal, however, Plaintiff must plead a plausible basis to infer the Merrill Defendants had actual knowledge of breaches by the Wal-Mart Defendants.[10] Plaintiff's allegations that the Merrill Defendants knew the Plan's investment options were imprudent and knew the fees that they received from those options, Opp. at 21, do not suffice in this regard. As the Merrill Defendants have previously explained, Sugg. at 18-20, for the Merrill Defendants to have had actual knowledge that the Wal-Mart Defendants committed a breach, the Merrill Defendants would had to have had sufficient knowledge of the Wal-Mart fiduciaries' decision-making process to deem that process inadequate under ERISA's fiduciary standards. Nothing in Plaintiff's Complaint supports that level of knowledge.

Likewise inadequate is Plaintiff's assertion in his Opposition that the Merrill Defendants authored participant communications containing "inaccuracies." Opp. at 22. The factual

---

[10] Plaintiff asserts that actual knowledge is not required for co-fiduciary liability under ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2). The Merrill Defendants have not argued otherwise but have explicitly limited their "actual knowledge" argument to Plaintiff's claims under ERISA §§ 405(a)(1) and (3). Plaintiff's claim under § 405(a)(2) fails for the separate reason that Plaintiff has not adequately alleged that the Merrill Defendants breached their own fiduciary duties—a necessary precondition to liability under that provision. Sugg. at 18.

allegations in the Complaint are not that participant communications drafted by the Merrill Defendants were ***inaccurate*** but that they were ***incomplete***. Compl. ¶ 150. But for the Merrill Defendants to have actual knowledge of a breach by the Wal-Mart fiduciaries, the Merrill Defendants would have had to have assessed the entirety of information provided by Wal-Mart to Plan participants against ERISA's fiduciary standards. The Merrill Defendants had no duty to conduct such a detailed inquiry, and there is no allegation that they did so. Sugg. at 19.

C. **Count X Should Be Dismissed Because ERISA Does Not Authorize Plaintiff's "Common Law" Unjust Enrichment Claim**

Plaintiff argues as to Count X that if he cannot state a statutory claim under ERISA, he should be allowed to bring an action for "unjust enrichment" under federal common law. Opp. at 22-23. That is not how ERISA works. ERISA's "carefully crafted and detailed enforcement scheme provides 'strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.'" *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 254 (1993) (noting the Court's "unwillingness to infer causes of action in the ERISA context"). The Supreme Court has thus warned courts against tamper[ing] with ERISA's carefully created "enforcement scheme" by creating remedies "not specifically authorized in the text." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002). "[F]ederal courts may adopt a common law principle under ERISA 'only if necessary to fill in interstitially or otherwise effectuate the statutory pattern enacted in the large by Congress.'" *Travelers Cas. & Sur. Co. of Am. v. IADA Servs.*, 497 F.3d 862, 865 (8th Cir. 2007) (quotation omitted).

The cases cited by Plaintiff do not conflict with these restrictions. One of the cases relied on the Supreme Court's admonition to ***deny*** the federal common law claim. *Travelers Cas.*, 497 F.3d at 865. Another did not address the existence of a common law claim at all, but merely used federal common law to supply a rule of interpretation where the statute did not provide one.

*Mohamed v. Kerr*, 53 F.3d 911, 913 (8th Cir. 1995). The only cases cited by Plaintiff that did recognize federal common law claims involved the same scenario—employers asserting claims against plans based on the overpayment of plan contributions. *See, e.g., Young Am., Inc. v. Union Central Life Ins. Co.*, 101 F.3d 546, 548 (8th Cir. 1996). ERISA's statutory scheme does not remotely cover an employer's rights against a plan in such circumstances. 29 U.S.C. § 1132.

The same cannot be said for Plaintiff's unjust enrichment claim here. ERISA, in fact, has two enforcement provisions that govern the conduct alleged as the basis for Count X. ERISA § 502(a)(2) authorizes claims to recover unjustly obtained profits, but limits such claims to those against breaching fiduciaries. ERISA § 502(a)(3), in turn, authorizes claims against non-fiduciaries for ill-gotten gains but limits the remedies for such claims to equitable relief. *See Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 254 (2000). The express limitations Congress placed on these claims are not unintentional "gaps" in ERISA's enforcement scheme that must be filled by federal common law but are the clear boundaries on relief Congress chose to provide. Plaintiff's inability to fit his claims within those boundaries does not, therefore, entitle him to a judicially-constructed cause of action.[11]

**D.    Count XI Should Be Dismissed Because It Seeks Relief That Is Unavailable Under ERISA § 502(a)(3)**

Plaintiff's Count XI claim for equitable relief under ERISA § 502(a)(3) fails because he does not seek "appropriate equitable relief." Although Plaintiff purports to assert a claim for equitable restitution, he cannot meet that remedy's requirements that the assets sought be both specifically identifiable and traceable to plan assets. *See Great-West*, 534 U.S. at 213 (restitution

---

[11]   *See, e.g., Provident Life & Acc. Ins. Co. v. Cohen*, 423 F.3d 413, 424-25 (4th Cir. 2005) (rejecting unjust enrichment claim because "we find it particularly inappropriate to afford [plaintiff] a federal common law remedy where Congress purposefully chose to exclude such a remedy under the governing statute."); *Kolbe & Kolbe Health and Welfare Ben. Plan v. Med. College of WI., Inc.*, 690 F. Supp. 2d 778, 784 (W.D. Wis. 2010) ("[B]ecause ERISA provides plaintiffs with an appropriate remedy (albeit one not available to them), their federal common law claim of unjust enrichment . . . will be dismissed[.]").

Case 6:08-cv-03109-GAF   Document 190   Filed 01/28/11   Page 18 of 22

exists in equity only "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession."); *Harris Trust v. Solomon Smith Barney*, 530 U.S. 238, 251 (2000) (ERISA § 502(a)(3) (equitable restitution claim only applies against transferees of "ill-gotten trust assets").

Plaintiff's Opposition offers no response to the Merrill Defendants' argument that the assets he seeks are not specifically identifiable. Sugg. at 22. Plaintiff argues only that factual disputes exist as to the separate requirement that the monies sought be traceable to the Plan's assets. In doing so, however, Plaintiff fails to address the Merrill Defendants' argument that Plaintiff's own allegations preclude a finding of traceability. *See* Sugg. at 22-23. Moreover, the factual disputes Plaintiff suggests make no sense. Going outside the Complaint's allegations, Plaintiff contends that Wal-Mart has been "amassing money" and that "[t]his is but one means of tracing Merrill Lynch's ill-gotten gains." Opp. at 24 n. 20. But any monies that **Wal-Mart** is amassing are not "particular funds or property in the [Merrill Defendants'] possession", *Great-West*, 534 U.S. at 213, and so cannot be the proper focus of equitable restitution.[12]

Plaintiff also selectively tries to distinguish two of the cases cited in the Merrill Defendants' initial discussion. The distinctions Plaintiff tries to draw, however, are superficial. Plaintiff contends, for example, that *Knieriem v. Group Health Plan, Inc.*, 434 F.3d 1058 (8th Cir. 2006) is distinguishable because the plaintiff acknowledged seeking monetary damages. But, while the plaintiff admitted seeking a monetary recovery, he argued that the monetary relief

---

[12]  Plaintiff also wrongly argues that a factual issue exists as to whether revenue sharing payments Merrill Defendants received from the Plan's mutual fund investment options constituted "plan assets." Opp. at 25 n.21. As the Seventh Circuit explained in affirming the Rule 12 dismissal in *Hecker*, ERISA itself provides that mutual fund assets are not plan assets. 556 F.3d at 584 (citing ERISA § 401(b)(1), 29 U.S.C. § 1101(b)(1)). And "[o]nce the fees are collected from the mutual fund's assets and transferred to [plan service providers], they become [the service provider's] assets—again, not the assets of the Plans."). The DOL has likewise taken the legal position that revenue sharing payments from mutual funds are not plan assets. *See Brief Of The Secretary of Labor, Elaine L. Chao, As Amicus Curiae In Support Of Plaintiffs-Appellants*, *Hecker v. Deere & Co.*, No. 07-3605 (7th Cir. April 2, 2008), at 22 ("The Secretary does not believe that [the 'revenue sharing' allegation], even if proven, would establish the fiduciary status of Fidelity Research, because the sums paid do not constitute plan assets.").

he sought fell within the equitable remedy of restitution—precisely what Plaintiff argues here. *Id.* at 1060-61. Moreover, the Merrill Defendants do not cite the cases at issue for their specific results but for the legal principles they espouse. (The Merrill Defendants cite *Calhoon v. TWA, Inc.*, 400 F.3d 593 (8th Cir. 2005), for the same legal principle as *Great-West,* which Plaintiff does not try to distinguish.) Plaintiff does not explain why those principles do not apply here.

Finally, Plaintiff asserts that he is seeking "a constructive trust and an accounting." (Opp. at 25.) The Complaint, however, does not request such remedies and, even if it did, Plaintiff's claim would still fail because those remedies are subject to the same requirements of specific identification and traceability as equitable restitution. *See Knieriem*, 434 F.3d at 1063-63.[13]

## III.  <u>CONCLUSION</u>

For the foregoing reasons, the Merrill Defendants respectfully request that the Court dismiss all claims asserted against them in Plaintiff's Amended Complaint for Violations of the Employee Retirement Income Security Act (ERISA).

---

[13]  Plaintiff incorrectly asserts that the Merrill Defendants do not seek dismissal of Plaintiff's § 502(a)(3) claim against them "as fiduciaries." Opp. at 23 n. 19. Plaintiff is wrong. The Merrill Defendants have sought dismissal of Count XI in its entirety. Sugg. at 23. The Merrill Defendants focused their analysis of Count XI primarily on non-fiduciary liability because the Complaint itself purports to assert liability "[t]o the extent that any of the Merrill Lynch Defendants is found not to have been a fiduciary or to have acted in a fiduciary capacity with respect to the conduct alleged to have violated ERISA[.]" Compl. ¶ 273. To the extent Count X may nonetheless be read to seek liability against the Merrill Defendants as alleged fiduciaries, the count is invalid for the same reason as Plaintiff's other fiduciary breach claims—the Merrill Defendants have no relevant fiduciary liability. Further, the arguments the Merrill Defendants have offered concerning the limited relief available under ERISA § 502(a)(3) are not limited to claims against non-fiduciaries. *See Calhoon* 400 F.3d at 598 ("The Calhoons attempt to distinguish *Great-West* by pointing out that their claim is against a fiduciary, while *Great-West* involved a suit against a non-fiduciary. *Great-West's* broadly phrased reasoning forecloses such an argument[.]").

Dated: January 28, 2011

Respectfully submitted,

By: /s/ Shannon M. Barrett

Richard N. Bien, MO #31398
LATHROP & GAGE L.C.
2345 Grand Boulevard, Suite 2800
Kansas City, Missouri 64108-2684
Tel.: (816) 292-2000
Facsimile: (816) 292-2001

Robert N. Eccles  (*pro hac vice*)
Gary S. Tell (*pro hac vice*)
Shannon M. Barrett (*pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C.  20006
Tel.: (202) 383-5300
Facsimile: (202) 383-5414

*Counsel for Defendants Merrill Lynch, Pierce, Fenner & Smith Incorporated, Merrill Lynch Trust Company of America, Merrill Lynch & Co., Inc.*

-16-

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of January, 2011, the foregoing was filed and service made by the Court's Electronic Case Filing (ECF) system to:

| | |
|---|---|
| **KELLER ROHRBACK L.L.P.**<br>Lynn Lincoln Sarko, WSBA #16569<br>Michael Woerner, WSBA #15452<br>Derek W. Loeser, WSBA #24274<br>Gretchen Freeman Cappio, WSBA #29576<br>Gretchen S. Obrist, WSBA #37071<br>1201 Third Avenue, Suite 3200<br>Seattle, WA 98101-3052<br>Telephone: (206) 623-1900<br>Facsimile: (206) 623-3384<br>lsarko@kellerrohrback.com<br>mwoerner@kellerrohrback.com<br>dloeser@kellerrohrback.com<br>gcappio@kellerrohrback.com<br>gobrist@kellerrohrback.com<br><br>**ALESHIRE ROBB P.C.**<br>Gregory W. Aleshire, MOBAR #38691<br>William R. Robb, MOBAR #43322<br>2847 S. Ingram Mill Rd., Suite A-102<br>Springfield, Missouri 65804<br>Telephone: (417) 869-3737<br>Facsimile: (417) 869-5678<br>arslaw@arslaw.com<br><br>*Attorneys for Plaintiff* | **SHOOK, HARDY & BACON, LLP**<br>William C. Martucci, #28237<br>Kristen A. Page, KS #20605<br>Katherine R. Sinatra, MO #51181<br>Grand Boulevard<br>Kansas City, MO 64108<br>Telephone: 816-474-6550<br>Facsimile: 816-421-5547<br>wmartucci@shb.com<br>kpage@shb.com<br>ksinatra@shb.com<br><br>**STEPTOE & JOHNSON, LLP**<br>Paul J. Ondrasik, Jr. (*pro hac vice*)<br>Eric G. Serron (*pro hac vice*)<br>Morgan D. Hodgson (*pro hac vice*)<br>1330 Connecticut Avenue, NW<br>Washington, DC 20036<br>Telephone: (202) 429-3000<br>Facsimile: (202) 429-3902<br>pondrasik@steptoe.com<br>eserron@steptoe.com<br>mhodgson@steptoe.com<br><br>*Attorneys for Wal-Mart Stores, Inc., James W. Breyer, John A. Cooper, Jr., Stanley C. Gault, Frederick S. Humphries, Dawn G. Lepore, Elizabeth A. (Betsy) Sanders, Donald G. Soderquist, Jose H. Villarreal, Stephen R. Hunter, Debbie Davis Campbell, Jeff Amos, Bill Ayers, Terri Bertschy, Elizabeth Branigan-Evans, Fred Disch, Larry Duff, Sam Dunn, Don Etheredge, Robin Forbis, Sharon Garmon, Erin Weitzel Gonzalez, Rob Hey, Greg Johnston, David McBride, Phyliss Morey, Cliff Parker, Arvetta Powell, Charles Ratcliff, Dave Reiff, David Scogin, Donna Spradlin, J.P. Suarez, Jenifer Terrell, Kevin Turner, Jeremy Wilson, and Jimmy Wright* |

<u>/s/ Shannon M. Barrett</u>