IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| JEREMY BRADEN, individually and on behalf of all others similarly situated, | ) ) | Case No. 6:08-cv-3109-GAF |
| | ) | |
| Plaintiff, | ) | Hon. Gary A. Fenner |
| | ) | |
| v. | ) | CLASS ACTION |
| | ) | |
| WAL-MART STORES, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S SUGGESTIONS IN SUPPORT OF PLAINTIFF'S UNOPPOSED[1] MOTION FOR AN ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT, CONDITIONALLY CERTIFYING SETTLEMENT CLASS, DIRECTING DISTRIBUTION OF CLASS NOTICE, APPOINTING CLASS COUNSEL AND CLASS REPRESENTATIVE, AND SETTING HEARING FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

---

[1] No Party to this litigation opposes the filing of this Motion. Plaintiff has conferred with all Defendants in this matter, as defined *infra* note 2, and obtained their consent to file this motion as one that is unopposed.

# Table of Contents

I.   BACKGROUND ................................................................................................ 2

    A.   Procedural History ............................................................................... 2

    B.   Discovery. ............................................................................................. 5

    C.   Settlement Negotiations. ...................................................................... 5

II.  MATERIAL TERMS OF PROPOSED SETTLEMENT .................................. 6

    A.   Terms of the Settlement. ...................................................................... 6

    B.   Class Notice. ......................................................................................... 8

    C.   Plaintiff's Incentive Award and Attorneys' Fees and Expenses ......... 9

III. PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT ........... 9

    A.   The Law Favors and Encourages Settlements in Class Actions. ........ 10

    B.   Preliminary Approval is Appropriate Under the Applicable Legal
        Standard. ............................................................................................. 11

        1.   The merits of the plaintiff's case, weighed against the terms
            of the settlement. ...................................................................... 12

        2.   The defendant's financial condition ......................................... 16

        3.   The complexity and expense of further litigation. ................... 16

        4.   The amount of opposition to the settlement ............................. 17

IV. CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS
    AND APPOINTMENT OF CLASS REPRESENTATIVE ............................ 17

    A.   Plaintiff Satisfies All Prerequisites for Class Certification ................ 18

        1.   Numerosity ............................................................................... 18

        2.   Commonality ............................................................................ 18

        3.   Typicality. ................................................................................ 20

        4.   Adequacy of Representation. ................................................... 21

    B.   The Settlement Class May Properly Be Certified Under Rule
        23(b)(1). .............................................................................................. 23

V.     DISTRIBUTION AND FORM OF NOTICE TO THE SETTLEMENT
       CLASS ........................................................................................................................... 25

VI.    APPOINTMENT OF CLASS COUNSEL ..................................................................... 27

VII.   ESTABLISHMENT OF A FINAL APPROVAL AND FAIRNESS
       HEARING....................................................................................................................... 28

## Table of Authorities

### Federal Cases

*Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525 (8th Cir. 1996) .................................... 20

*Alvidres v. Countrywide Fin. Corp.*, No. 07-5810, 2008 WL 1766927 (C.D. Cal. Apr. 16, 2008) ...................................................................................................... 19

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ............................................ 22

*Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305 (7th Cir. 1980) .................................... 11

*Cohn v. Nelson*, 375 F. Supp. 2d 844 (E.D. Mo. 2005) ............................................. 11

*DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171 (8th Cir. 1995) ......................... 11, 19, 25

*Donaldson v. Pillsbury Co.*, 554 F.2d 825 (8th Cir. 1977) .......................................... 20

*Doran v. Mo. Dep't of Soc. Servs.*, 251 F.R.D. 401 (W.D. Mo. 2008) ....................... 20

*E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395 (1977) ......................... 20

*George v. Kraft Foods Global, Inc. ("George I")*, 251 F.R.D. 338 (N.D. Ill. 2008) ..... 20, 21, 24

*George v. Kraft Foods Global, Inc. ("George II")*, 641 F.3d 786 (7th Cir. 2011) ................... 13

*Grunin v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir. 1975) ........................... 9, 11

*Hopkins v. Kan. Teachers Cmty. Credit Union*, 265 F.R.D. 483 (W.D. Mo. 2010) .................. 20

*In re Aquila ERISA Litig. ("Aquila I")*, 237 F.R.D. 202 (W.D. Mo. 2006) ....................... passim

*In re Aquila ERISA Litig. ("Aquila II")*, No. 04-0865, 2007 WL 4244994 (W.D. Mo. Nov. 29, 2007) ........................................................................................... 26

*In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694 (E.D. Mo. 2002) ................... 15

*In re Charter Commc'ns, Inc., Sec. Litig.*, No. 02-1186, 2005 WL 4045741 (E.D. Mo. June 30, 2005) ........................................................................................... 11

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 228 F.R.D. 541 (S.D. Tex. 2005) ...................................................................................................................... 16

*In re IKON Office Solutions, Inc.*, 209 F.R.D. 94 (E.D. Pa. 2002) ............................. 16

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ............................... 15

*In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585 (3d Cir. 2009) ................... 23

iii

*In re Tex. Prison Litig.*, 191 F.R.D. 164 (W.D. Mo. 1999) ........................................................ 9

*In re Wal-Mart Wage & Hour Emp't Practices Litig.*, MDL No. 1735, No. 06-225, slip op. at 5-7 (D. Nev. June 9, 2009) .......................................................... 27

*In re Wireless Tel. Fed. Cost Recovery Fees Litig. ("Wireless I")*, No. 03-md-015, 2004 WL 3671053 (W.D. Mo. Apr. 20, 2004) .......................................... passim

*In re Wireless Tel. Fed. Cost Recovery Fees Litig. ("Wireless II")*, 396 F.3d 922 (8th Cir. 2005) ...................................................................................... 1, 11

*Jones v. Novastar Fin., Inc.*, 257 F.R.D. 181 (W.D. Mo. 2009) .............................. 21, 22, 23, 24

*Justine Realty Co. v. Amer. Nat'l Can Co.*, 976 F.2d 385 (8th Cir. 1992) .................................. 10

*Kanawi v. Bechtel Corp.*, 254 F.R.D. 102 (N.D. Cal. 2008) ................................................ 20, 24

*Kane v. United Indep. Union Welfare Fund*, No. 97-1505, 1998 WL 78985 (E.D. Pa. Feb. 24, 1998) ....................................................................................... 24

*LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248 (2008) ....................................... 21, 24

*Liles v. Del Campo*, 350 F.3d 742 (8th Cir. 2003) ....................................................................... 10

*Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist.*, 921 F.2d 1371 (8th Cir. 1990) ........................................................................................ 10, 16

*Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985) ..................................................... 17, 25

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950).......................................... 25

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615 (9th Cir. 1982).................................................................................................. 15

*Paxton v. Union Nat'l Bank*, 688 F.2d 552 (8th Cir. 1982)........................................... 18, 19, 22

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) ........................................... 10, 25, 27

*Reynolds v. Nat'l Football League*, 584 F.2d 280 (8th Cir. 1978) ........................................... 25

*Roth v. Sawyer-Cleator Lumber Co.*, 61 F.3d 599 (8th Cir. 1995)........................................... 17

*Stewart v. M.D.F., Inc.*, 83 F.3d 247 (8th Cir. 1996).................................................................. 10

*Taylor v. United Techs. Corp. ("Taylor I")*, No. 06-1494, 2007 WL 2302284 (D. Conn. Aug. 9, 2007)....................................................................................... 12

*Taylor v. United Techs. Corp. ("Taylor II")*, No. 06-1494, 2008 WL 2333120 (D. Conn. June 3, 2008) ................................................................................ 20, 21, 24

iv

*Taylor v. United Techs. Corp.* (*"Taylor III"*), No. 06-1494, 2009 WL 535779 (D. Conn. Mar. 3, 2009) ................................................................................................ 13

*Tibble v. Edison Int'l* (*"Tibble I"*), No. 07-5359, 2009 WL 6764541 (C.D. Cal. June 30, 2009) ........................................................................................................ 20, 21

*Tibble v. Edison Int'l* (*"Tibble II"*), 639 F. Supp. 2d 1074 (C.D. Cal. 2009) ........................... 13

*Tibble v. Edison Int'l* (*"Tibble III"*), No. 07-5359, 2010 WL 2757153 (C.D. Cal. July 8, 2010) ................................................................................................................ 13

*Tibble v. Edison Int'l* (*"Tibble IV"*), No. 07-5359, 2010 WL 3239443 (C.D. Cal. Aug. 9, 2010) ................................................................................................................ 13

*Tussey v. ABB, Inc.* (*"Tussey I"*), No. 06-4305, 2007 WL 4289694 (W.D. Mo. Dec. 3, 2007) ...................................................................................................... passim

*Tussey v. ABB, Inc.* (*"Tussey II"*), No. 06-4305, 2008 WL 379666 (W.D. Mo. Feb. 11, 2008) ............................................................................................................ 12

*Van Horn v. Trickey*, 840 F.2d 604 (8th Cir. 1988) ................................................................ 11

*W. Wash. Laborers-Emp'rs Pension Trust v. Panera Bread Co.*, No. 08-00120, 2011 WL 720060 (E.D. Mo. Feb. 22, 2011) ...................................................... 10

*White v. Martin*, No. 02-4154, 2002 WL 32596017 (W.D. Mo. Oct. 3, 2002) ........................ 22

*Yost v. First Horizon Nat'l Corp.*, No. 08-2293, 2011 WL 2182262 (W.D. Tenn. June 3, 2011) ...................................................................................................... passim

## Federal Statutes

ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A) ........................................................................ 3, 7

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) ............................................................................ 6

ERISA § 409(a), 29 U.S.C. § 1109(a) ................................................................................ 17, 21

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) .................................................................. 17, 21, 25

## Federal Rules

Fed. R. Civ. P. 23(a) ...................................................................................................... 18, 20, 21

Fed. R. Civ. P. 23(b) ...................................................................................................... 17, 23, 24

Fed. R. Civ. P. 23(e) ........................................................................................................ 9, 25, 27

Fed. R. Civ. P. 23(g) .............................................................................................................. 27

**Federal Regulations**

Fiduciary Requirements for Disclosure in Participant-Directed Individual Account
Plans, Final Rule, 75 Fed. Reg. 64910 (Oct. 20, 2010) .......................................................... 7

**Other Authorities**

2 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 4.8 (4th ed.
2002) ................................................................................................................................ 24

ANNOTATED MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 Author's
Comments (2011) .............................................................................................................. 10

Fed. R. Civ. P. 23(b)(1)(B) advisory committee's notes (1966 amendment) ............................ 23

Transcript of Summ. J. Argument, *Tussey v. ABB*, No. 06-4305 (W.D. Mo. Dec.
7, 2009) ............................................................................................................................. 12

COMES NOW Plaintiff Jeremy Braden (hereinafter referred to as "Braden" or "Class Plaintiff") and the Class of individuals he seeks to represent ("Class Members"), by and through his counsel of record, and moves this Court for an Order (1) preliminarily approving the proposed Settlement between the Class Plaintiff and Defendants;[2] (2) conditionally certifying the Settlement Class; (3) directing distribution of notice to the Settlement Class; (4) appointing Class Counsel and Class Representative; and (5) establishing a date for a final Fairness Hearing for approval of class certification and the Settlement and consideration of Class Counsel's applications for an award of attorneys' fees, reimbursement of expenses, and a case contribution award to Class Plaintiff.

The proposed Settlement, consisting of injunctive relief targeting the conduct alleged in this case, as well as a cash payment of $13,500,000, provides substantial benefits to members of the Class and resolves all claims asserted by Plaintiff. Plaintiff submits that the Settlement represents an excellent result for Class Members and is fair, reasonable, and adequate under the governing standards for evaluating class action settlements in this Circuit. *See, e.g., In re Wireless Tel. Fed. Cost Recovery Fees Litig.* ("*Wireless II*"), 396 F.3d 922, 934 (8th Cir. 2005). All prerequisites for preliminary approval of the Settlement and class certification have been met and Plaintiff respectfully requests that his motion be granted, for the reasons set forth herein.

---

[2] Defendants James W. Breyer, John A. Cooper, Jr., Stanley C. Gault, Frederick S. Humphries, Dawn G. Lepore, Elizabeth A. (Betsy) Sanders, Donald G. Soderquist, and Jose H. Villarreal are referred to collectively as the "Compensation Committee Defendants." Defendants Stephen R. Hunter, Debbie Davis Campbell, and John or Jane Doe 1 are referred to collectively as the "VP Retirement Plan Defendants." Defendants Jeff Amos, Bill Ayers, Terry Bertschy, Elizabeth Branigan-Evans, Debbie Davis Campbell, Fred Disch, Larry Duff, Sam Dunn, Don Etheredge, Robin Forbis, Sharon Garmon, Erin Gonzalez (misidentified and named in duplication as Erin Weitzel), Rob Hey, Stephen R. Hunter, Greg Johnston, David McBride, Phyllis Morey, Cliff Parker, Arvetta Powell, Charles Rateliff, Dave Reiff, David Scogin, Donna Spradlin, J.P. Suarez, Jenifer Terrell, Kevin Turner, Jeremy Wilson, Jimmy Wright, and John or Jane Does 2-5 are referred to collectively as the "Retirement Plans Committee Defendants." Wal-Mart and the Compensation Committee Defendants, the VP Retirement Plan Defendants, and the Retirement Plans Committee Defendants are referred to collectively as "Wal-Mart" or the "Wal-Mart Defendants." Merrill Lynch, Pierce, Fenner & Smith Inc., Merrill Lynch Trust Company of America, and Merrill Lynch & Co. Inc., are collectively referred to as "Merrill Lynch." The Wal-Mart Defendants and Merrill Lynch Defendants are collectively referred to as "Defendants."

# I.    BACKGROUND

## A.    Procedural History

The Court is familiar with the case as a result of the extensive briefing the parties previously have submitted.  Wal-Mart Stores, Inc. sponsors the Wal-Mart 401(k) and Profit Sharing Plan (the "Plan") for the benefit of its employees.  The Wal-Mart 401(k) Plan has over one million participants and holds nearly thirteen billion dollars of Wal-Mart employees' retirement savings, making it one of the largest 401(k) plans in the United States.  *See* 2009 Form 5500, attached hereto as Exhibit B to the Declaration of Derek W. Loeser ("Loeser Decl.").

In the operative complaint—Braden's Amended Complaint for Violations of the Employee Retirement Income Security Act (ERISA) ("AC") (Dkt. No. 107)—Braden alleges that Defendants violated ERISA by failing to act solely in the interest of Plan participants and beneficiaries, and to exercise the required skill, care, prudence, and diligence in administering the Plan and the Plan's assets.  Plaintiff alleges that through a tainted selection process, Wal-Mart, the Plan's Trustee Merrill Lynch Trust Company of America, and the Plan's Recordkeeper Merrill Lynch, Pierce, Fenner & Smith, Incorporated ("Merrill Lynch"), chose to offer only retail off-the-shelf funds rather than lower-fee institutional class funds, most of which charged 12b-1 fees, and all of which paid revenue sharing to Merrill Lynch.  Moreover, Braden alleges that, during the Class Period, Merrill Lynch collected millions of dollars in undisclosed fees, unbeknownst to Wal-Mart or Plan participants.  AC ¶¶ 129-138.

Many of the investment options offered in the Wal-Mart Plan have changed during the pendency of this lawsuit, although the parties vigorously dispute the reasons for those changes.[3] When this Action was initiated in March of 2008, *see* Complaint (Dkt. No. 2), the Plan included seven of the mutual funds that Braden alleges were unduly expensive and from which Merrill

---

[3] While Plaintiff asserts that the pendency of the lawsuit hastened such changes, Defendants disagree and maintain that this process began before the litigation commenced.

Lynch was allegedly collecting undisclosed fees during the Class Period.[4]  Over time those funds have been replaced with funds that charge lower investment management fees.  *See* Loeser Decl. Ex. C (Wal-Mart Profit Sharing and 401(k) Plan Fees, as of June 30, 2008) (reflecting elimination of Ariel and MFS); *id.* Ex. D (Wal-Mart Profit Sharing and 401(k) Plan Fees, as of August 7, 2009) (reflecting elimination of remaining five funds); & *id.* Ex. E (Introducing an easy way to save for your future—*myRetirement Funds*).  In addition, the Wal-Mart Defendants have replaced the Plan's preexisting asset allocation program with other investment choices.  *See* Loeser Decl. Ex. E.  The parties vigorously dispute whether fees associated with any of the prior investment options were excessive and whether the changes made relate in any way to the pending litigation.  Notwithstanding these disagreements, as a result of these changes, and other changes that have been implemented by the Retirement Plans Committee in recent years, the Wal-Mart Plan now provides participants with investment options that, overall, carry lower fees than those in the Plan at the time the lawsuit began.  Moreover, the Settlement achieved by Braden here provides that for a period of two years commencing on the Effective Date of Settlement the Retirement Plans Committee will continue its ongoing process to remove from the Plan's Investment Options, and shall not add as Investment Options, funds that are retail mutual funds, funds that pay 12b-1 fees, and funds that provide revenue sharing, per-position or per-participant sub-transfer agent fees, or other fees, to any party in interest as defined in ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A), including the Plan's trustee and recordkeeper.  The Plan currently offers two index funds, and under the Settlement, the Retirement Plans Committee will also consider, where and when appropriate, adding low-cost, passively managed investment vehicles to the Investment Options.

   During the more than three years that have elapsed since the initiation of this case, the parties have vigorously litigated.  Following remand of this case from the Eighth Circuit Court of Appeals in January of 2010, the parties began discovery, re-engaged in class certification

---

[4] These funds were: (1) AIM International Fund, (2) American Europacific Growth Fund, (3) Ariel Fund, (4) Davis New York Venture Fund, (5) Franklin Small-Mid-Cap Growth Fund, (6) MFS Growth Stock Fund, and (7) PIMCO Total Return Fund.

briefing, and, as discussed below, began exploring options for resolving the case through mediation. In early 2010, Braden propounded multiple sets of discovery requests, responded to the Wal-Mart Defendants' requests, and sent multiple third-party subpoenas to fund companies whose mutual funds were Investment Options in the Plan during the Class Period. On April 21, 2010, Braden filed his Renewed Motion to Certify Class (Dkt. Nos. 83-86). In June of 2010, the parties prepared for and attended a mediation session with the Honorable Layn R. Phillips. The case did not resolve, and the parties resumed discovery.

On July 21, 2010, Braden amended his complaint to allege six new claims against a new set of defendants—the Merrill Lynch Defendants (Dkt. No. 107). Plaintiff also expanded the Class Period and supplemented his allegations against the Wal-Mart Defendants with information gathered in discovery. On October 1, 2010, both the Wal-Mart Defendants and the Merrill Lynch Defendants moved to dismiss the Amended Complaint (Dkt. Nos. 156-159). The motions to dismiss Braden's Amended Complaint are fully briefed,[5] and the Court's consideration thereof has been stayed as a result of the parties' efforts to settle the case. Briefing remains incomplete on Plaintiff's Renewed Motion to Certify Class, and prior to Braden's filing of his Amended Complaint, the parties had been preparing for Plaintiff Jeremy Braden's deposition. Pursuant to this Court's August 4, 2010 Order, Braden is to file a Second Renewed Motion to Certify Class thirty days following the Court's resolution of the pending motions to dismiss (Dkt. No. 112).

On the parties' joint motions, the case has been stayed by Orders of this Court since March 10, 2011 (Dkt. Nos. 198, 200, 202, 204, 206, 210, 212, 214, 216, 218, 220, 222, and 224, and subsequently on September 9, 2011, by conversation with the Court that it would abstain from ruling on the pending motions to dismiss, in anticipation of Plaintiff's filing of the instant

---

[5] On December 22, 2010, Braden filed his Opposition to Merrill Lynch's Motion to Dismiss (Dkt. Nos. 178-179), and on January 28, 2011, the Merrill Lynch Defendants filed their Reply (Dkt. No. 190). On February 4, 2011, Braden filed his Opposition to the Wal-Mart Defendants' Second Motion to Dismiss (Dkt. Nos. 191-193), and on March 4, 2011, the Wal-Mart Defendants filed their Reply (Dkt. No. 195).

motion).  In the interim, Braden and Defendants achieved substantial progress in settlement negotiations, and now have settled all of the claims in this litigation on a classwide basis (the "Settlement").

**B.    Discovery.**

Throughout the course of this litigation, the parties produced and reviewed over 550,000 pages of documents, prepared for seven depositions, and took six depositions (three of Wal-Mart employees and three of Merrill Lynch employees).  Additionally, Plaintiff's Counsel inspected over 100,000 pages of documents produced pursuant to third-party subpoenas to the funds offered in the Plan.  In prosecuting Class Members' claims and reaching this Settlement, Plaintiff's Counsel vigorously investigated Class Members' claims under relevant law and the potential defenses thereto, evaluated Class Members' damages, consulted with experts, and propounded and responded to dozens of discovery requests.  The parties worked cooperatively to negotiate search terms for Electronically Stored Information and resolved numerous discovery-related issues without once having to bring such disputes to the Court for resolution.

**C.    Settlement Negotiations.**

Lead Counsel, Defendants' counsel, and Defendants' representatives met and conferred throughout the latter half of 2010 and early 2011 to determine whether the matter could be settled.  Beginning in June of 2010, the parties engaged in extensive arm's-length settlement negotiations, both telephonically and in person.  The settlement negotiations included in-person mediations in June and November of 2010 before the Honorable Layn R. Phillips, a retired U.S. District Court Judge and experienced mediator.  The parties thereafter continued settlement negotiations, facilitated by a stay of the case in March 2011.  After responding to three Mediator's Proposals to settle the case and extensively negotiating the injunctive relief provided for in the Settlement, the resulting Settlement Agreement, *see* Loeser Decl. Ex. A, incorporated herein by reference, was negotiated and signed through the parties' hard-fought efforts, and it represents the parties' diligent work to resolve numerous outstanding issues relating to the Settlement.  The parties reached this Settlement fully informed of the facts and law relevant to

the litigation, including review of relevant documents and evidence, consultation with experts, and review of the evolving case law pertaining to Plaintiff's claims.

## II.  MATERIAL TERMS OF PROPOSED SETTLEMENT

### A.  Terms of the Settlement.

Under the proposed Settlement, set forth in more detail in the Settlement Agreement ("SA"), attached to the Loeser Declaration as Exhibit A, Defendants will provide significant monetary and non-monetary benefits to members of the "Settlement Class," who include:

> (a) all Persons, except Defendants, who are or were participants in the Wal-Mart Stores, Inc. Profit Sharing and 401(k) Plan, or the predecessors or successors thereto, who have held assets in the Plan Investment Options at any time between July 1, 1997 to the Agreement Execution Date, inclusive, and (b) as to each Person within the scope of subsection (a) of [Settlement Agreement] Section 1.44, his, her, or its beneficiaries, alternate payees, Representatives and Successors in Interest.

SA ¶ 1.44.

First, the Settlement provides Class Members with significant non-monetary relief. Pursuant to the Settlement Agreement, for a two-year period beginning on the Effective Date of Settlement, the Settlement will provide the following categories of relief:

**(1)  Fund Selection / Management.**

a.  **Consultant / Advisor.**  The Retirement Plans Committee, to further its goal to offer Investment Options with fees that are reasonable, shall: (a) continue to retain a consultant or independent advisor who is not otherwise affiliated with the Company and who has acknowledged in writing fiduciary status with the Plan within the meaning of ERISA section 3(21)(A), to provide independent advice and recommendations on selection and monitoring of Plan Investment Options; and (b) review the consultant or independent advisor for conflicts of interest on an annual basis.  *See* SA ¶ 9.1.

b.  **Participant Education.**  The Retirement Plans Committee shall continue to make available web-based investment education resources, including a retirement planning calculator, to participants of the Plan that are the same as, or comparable to, those provided to participants on www.Walmartbenefits.com and www.benefits.ml.com, as of the date on which this Settlement Agreement is fully executed.  Such resources shall continue to be made available to participants on

www.Walmartbenefits.com and on www.benefits.ml.com. Merrill
Lynch agrees to make such resources available on
www.benefits.ml.com. The Retirement Plans Committee will continue
to explore enhancements to its web-based participant investment
education program, including enhancements intended to make
Retirement Education and Tools more accessible on
www.Walmartbenefits.com. *See* SA ¶ 9.2.

c. **Elimination of Plan Investment Options**. The Retirement Plans
Committee shall continue its ongoing process to remove from the
Plan's Investment Options, and shall not add as Investment Options,
funds that are retail mutual funds, funds that pay 12b-1 fees, and funds
that provide revenue sharing, per-position or per-participant sub-
transfer agent fees, or other fees, to any party in interest as defined in
ERISA § 3(14), including the Plan's trustee or recordkeeper. *See* SA
¶ 9.3.

d. **Index Funds.** The Plan offers two index funds—the Barclays Russell
1000 Index Trust and the Barclays Russell 2000 Index Trust—on its
core menu. The Retirement Plans Committee will consider, where and
when appropriate, adding other low-cost, passively managed
investment vehicles to the Plan Investment Options. *See* SA ¶ 9.3.

**(2)** **Disclosures.**

a. The Retirement Plans Committee shall comply with the Fiduciary
Requirements for Disclosure in Participant-Directed Individual
Account Plans, Final Rule, 75 Fed. Reg. 64910 at 64939 (Oct. 20,
2010), which shall include posting information about the Plan's
Investment Options in the format set forth in the Model Comparative
Chart, "Appendix to §2550.404a-5," 75 Fed. Reg. at 64942, on
www.benefits.ml.com and shall (i) include posting an active link in the
Comparative Chart to http://www/dol.gov/ebsa/publications/401k
employee.html or (ii) if such link is not feasible, include posting an
active link to http://www.dol.gov/ebsa/publications/401k
employee.html in proximity to the online version of the Comparative
Chart on www.benefits.ml.com. Merrill Lynch agrees to the
placements of such links on www.benefits.ml.com. *See* SA ¶ 9.4.

b. The Retirement Plans Committee shall post a link on
www.benefits.ml.com to the SEC Cost Calculator found at
http://www.sec.gov/investor/tools/mfcc/get-started.htm, with such link
located in proximity to the online version of the Comparative Chart
and with guidance to participants on how to complete the SEC Cost
Calculator for the Plan Investment Options. Merrill Lynch agrees to
the placement of this link on www.benefits.ml.com. *See* SA ¶ 9.4.

Second, pursuant to the Settlement Agreement, SA ¶ 7.1, Defendants will pay a total of $13,500,000, the "Settlement Amount," less the Class Notice Amount previously deposited, into an interest-bearing account no later than five (5) business days after the Effective Date of Settlement, for the benefit of the Plan's participants and beneficiaries, which shall be deposited into the Settlement Fund Account. SA ¶¶ 7.3, 7.3.1. The Settlement Fund and any interest earned thereon constitutes the Settlement Fund. SA ¶ 7.3. The Settlement Fund shall be used to pay for (a) Class Notice, (b) Class Plaintiff case contribution award, (c) attorneys' fees and expenses, (d) taxes, with (e) the remainder to be paid to the Plan for use according to the terms of the Settlement, as discussed in more detail *infra* III.B.1. SA ¶¶ 7.3.3, 8.1, 8.2, 11.1, 11.2.

Class Counsel have determined that application of the net Settlement Fund to pay Plan expenses is the best and most economical use of the cash portion of the Settlement, particularly given the nature of Braden's claims—that small dollar amounts of additional fees cause compounded losses in savings *over time*. While the present value of any given participant's claimed losses due to the conduct alleged in the Amended Complaint are relatively small in terms of dollars, their effect on *future* retirement savings is what Braden has undertaken to redress. Thus, given the enormous cost and expense of attempting to locate all Class Members (including approximately two million former Plan participants) and then mailing separate, often small, payments to them, Plan-wide use of the cash portion of the Settlement to offset the cost of administering the Plan puts that money to its best and most efficient use. The Settlement Fund targets the very purpose of this case—to reduce Plan expenses and increase future savings.

**B.      Class Notice.**

The Settlement Agreement provides for notice to Class Members by publishing notice on websites utilized by Plan participants in managing their retirement accounts— www.Walmartbenefits.com and www.benefits.ml.com, as well as by publishing the Summary Notice *USA Today* and on BusinessWire. SA ¶¶ 1.5, 2.3.2 & SA Exs. 1.A & 1.B. The notices, attached and incorporated into the Settlement Agreement as Exhibits 1.A and 1.B, describe the material terms of the proposed Settlement. The notices also clearly describe straightforward

procedures by which Class Members may object to Final approval of the Settlement or attend the Fairness Hearing.  If the Court grants Final approval of the proposed Settlement after Class Members are notified and the time period for objections expires, all Class Member claims against Defendants as set forth in the Settlement Agreement, SA Art. 3, will be deemed released.

**C.      Plaintiff's Incentive Award and Attorneys' Fees and Expenses.**

Pursuant to the Settlement Agreement, Class Counsel will apply for a case contribution award for Class Plaintiff for his active and essential role in prosecuting the case over the past three years, including retaining counsel, reviewing all of the pleadings and briefs in the case, appearing in court, participating in discovery, providing information to counsel, engaging in extensive settlement negotiations and providing key input in the mediation process, and approving the proposed Settlement.  SA ¶ 11.2.  Class Counsel will also file a motion with the Court for an award of attorneys' fees and expenses incurred in connection with the prosecution and successful resolution of this Action and representing payment of all attorneys' fees and expenses from inception through administration of the Settlement.  SA ¶ 11.1.  Class Plaintiff's case contribution award and Class Counsel's award of attorneys' fees and expenses will be paid out of the Settlement Fund.  SA ¶ 11.3.  Defendants will take no position on the application for either award.  SA ¶¶ 11.1, 11.2.

### III.   PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT

Class Plaintiff presents this Settlement for review under Fed. R. Civ. P. 23(e), which requires court approval of a class action settlement.  *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975) ("Under Rule 23(e), the district court acts as a fiduciary which must serve as a guardian of the rights of absent class members."); *see also In re Wireless Tel. Fed. Cost Recovery Fees Litig. (*"*Wireless I*"*)*, No. 03-md-015, 2004 WL 3671053, at *8 (W.D. Mo. Apr. 20, 2004); *In re Tex. Prison Litig.*, 191 F.R.D. 164, 172 (W.D. Mo. 1999).  Rule 23(e) further requires the court to issue notice in a reasonable manner to class members who would be bound by the settlement and find, following a hearing, that the settlement is fair, reasonable, and adequate.  *Id.*; *see also Tex. Prison Litig.*, 191 F.R.D. at 172.

A court's approval of a proposed class action settlement involves two steps: (1) a preliminary approval hearing at which the court makes a preliminary determination as to the fairness of the settlement, approves notice to the class, and sets a final hearing date; and (2) a final hearing at which the court determines whether the settlement is fair, reasonable, and adequate and should receive final approval. ANNOTATED MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 author's cmts. (2011) ("The two-step process for evaluation of proposed settlements has been widely embraced by the trial and appellate [] courts." (citations omitted)); *see, e.g.*, *Liles v. Del Campo*, 350 F.3d 742, 745 (8th Cir. 2003) (employing two-step process); *Wireless I*, 2004 WL 3671053, at *3 (same); *W. Wash. Laborers-Emp'rs Pension Trust v. Panera Bread Co.*, No. 08-00120, 2011 WL 720060, at *1-2 (E.D. Mo. Feb. 22, 2011) (same). For the reasons discussed below, preliminary approval is appropriate at this time.

**A.      The Law Favors and Encourages Settlements in Class Actions.**

The "law strongly favors settlements" and "[c]ourts should hospitably receive them." *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist.*, 921 F.2d 1371, 1383 (8th Cir. 1990); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors agreements, and courts should approach them with a presumption in their favor." (quoting *Little Rock Sch. Dist.*, 921 F.2d at 1388)); *Wireless I*, 2004 WL 3671053, at *8 ("The policy in favor of settlement is so strong that such agreements are 'presumptively valid.'" (quoting *Little Rock Sch. Dist.*, 921 F.2d at 1391)). The Eighth Circuit has recognized that the "'judicial policy favoring settlement . . . rests on the opportunity to conserve judicial resources, not expend them further.'" *Stewart v. M.D.F., Inc.*, 83 F.3d 247, 252 (8th Cir. 1996) (citing *Justine Realty Co. v. Amer. Nat'l Can Co.*, 976 F.2d 385, 391 (8th Cir. 1992)). Accordingly, in evaluating a settlement in light of this policy, "judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Petrovic*, 200 F.3d at 1148-49 (citation omitted).

The judicial policy favoring settlements is particularly strong "in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal

litigation." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (internal citations and quotations omitted); *Wireless I*, 2004 WL 3671053, at *11 ("It is the surety of settlement that makes it a favored policy in dispute resolution as compared to unknown dangers and unforeseen hazards of litigation." (citation omitted)); *In re Charter Commc'ns, Inc., Sec. Litig.*, No. 02-1186, 2005 WL 4045741, at *4 (E.D. Mo. June 30, 2005) ("In the class action context in particular, there is an overriding public interest in favor of settlement" in that it "minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." (quoting *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980)) (citation and internal quotation marks omitted)).

The Eighth Circuit "recognize[s] that a class action settlement is a private contract negotiated between the parties," and that "Rule 23(e) requires the court to intrude on that private consensual agreement merely to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *Wireless II*, 396 F.3d at 934 (internal citation omitted). As set forth below, the Settlement here meets these requirements.

## B. Preliminary Approval is Appropriate Under the Applicable Legal Standard.

The standard for reviewing the proposed settlement of a class action is whether it is "fair, reasonable, and adequate." *Wireless II*, 396 F.3d at 932. The Eighth Circuit has identified four factors that courts should consider in deciding whether to approve a proposed class action settlement: "(1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement." *Id.* (citing *Grunin*, 513 F.2d at 124; *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988)). "The views of the parties to the settlement must also be considered." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995).

Braden's claims have been competently and diligently litigated by counsel knowledgeable and experienced in ERISA breach of fiduciary cases and complex class action litigation. Moreover, the Settlement represents considerable, hard-fought, arm's-length

negotiation by the parties and their counsel based on their investigation of applicable claims and defenses after conducting extensive discovery. The Settlement was obtained with the well-informed consent and active participation of Class Plaintiff. The parties have agreed that Class Counsel's compensation will be funded from the Settlement Fund, as approved by the Court, and thus will be fair. While Defendants explicitly deny any wrongdoing or liability, the parties believe that the Settlement is "fair, reasonable, and adequate" under the circumstances of this case, and the Eighth Circuit's four-factor test is easily met. Accordingly, weighing the relief the Settlement provides to the Settlement Class against these considerations, Braden respectfully requests that the Court preliminarily approve the Settlement, as set forth below.

### 1. The merits of the plaintiff's case, weighed against the terms of the settlement.

Braden alleges that Defendants' breaches of fiduciary duty caused significant losses to the Plan, a reduction in Plan participants' retirement savings, and excessive compensation to the Plan's trustee and recordkeeper, Merrill Lynch. His claims have a solid basis in ERISA fiduciary law, and in the event he were to prevail, Braden would recover on behalf of the Plan losses caused to the Plan by breaches of fiduciary duty. Defendants, of course, dispute Braden's claims and have argued that he and the Class he seeks to represent should recover nothing. Case law to date in excessive fee and prohibited transaction cases is mixed, with Plaintiffs often overcoming motions to dismiss, *see, e.g.*, *Tussey v. ABB, Inc. ("Tussey II")*, No. 06-4305, 2008 WL 379666 (W.D. Mo. Feb. 11, 2008) (denying motion to dismiss); *Taylor v. United Techs. Corp. ("Taylor I")*, No. 06-1494, 2007 WL 2302284 (D. Conn. Aug. 9, 2007) (same), but facing mixed results on summary judgment and at trial. *Compare* Transcript of Summ. J. Argument at 3, *Tussey v. ABB*, No. 06-4305 (W.D. Mo. Dec. 7, 2009), *see* Loeser Decl. Ex. F, (finding ABB defendants were "fiduciaries with respect to the selection of the plan's investment options . . . even though ABB is the settlor of the plan"); *id.* at 11 (finding lack of information about fees precludes fiduciary from assessing reasonableness); *id.* at 13 (finding market rates not a defense); *id.* at 18 (finding factual issues preclude summary judgment on question of whether indirect transfers involve "plan assets"); *Tibble v. Edison Int'l ("Tibble II")*, 639 F. Supp. 2d 1074, 1122

(C.D. Cal. 2009) (granting in part and denying in part summary judgment); *Tibble v. Edison Int'l ("Tibble III")*, No. 07-5359, 2010 WL 2757153, at \* 26 (C.D. Cal. July 8, 2010) (findings of fact and conclusions of law holding that fiduciaries should have asked for fee waivers and failure to do so caused participants to pay "wholly unnecessary fees"); *George v. Kraft Foods Global, Inc. ("George II")*, 641 F.3d 786, 796-97, 800 (7th Cir. 2011) (reversing summary judgment on two fiduciary breach claims because of issues of fact regarding timing of fiduciary decisionmaking and because "a trier of fact could reasonably conclude that defendants did not satisfy their duty to ensure that Hewitt's fees were reasonable"), *with Tibble III*, 2010 WL 2757153; *see also Tibble v. Edison Int'l ("Tibble IV")*, No. 07-5359, 2010 WL 3239443, at \*1 (C.D. Cal. Aug. 9, 2010) (only $371,000 in damages despite breach finding with respect to four funds); *Taylor v. United Techs. Corp. ("Taylor III")*, No. 06-1494, 2009 WL 535779, at \*10 (D. Conn. Mar. 3, 2009) (granting summary judgment and finding fees not unreasonable and that revenue sharing payments were immaterial to participant decisionmaking), *summarily aff'd*, No. 09-1343, 2009 WL 4255159 (2d Cir. Dec. 1, 2009).

With regard to the terms of the Settlement, Braden notes that in cases of this type, there are two categories of alleged loss—those that have occurred already, and those that will continue to occur and have a compounding effect over time, with the latter generally being much larger than the former. The Settlement addresses both types of loss. First, the Settlement obtains a cash payment of $13.5 million which will be provided to the Plan to offset reasonable Plan expenses on a going-forward basis. *See* SA ¶¶ 1.33, 7.1. This is a significant portion of the total potential recovery of losses to date.

While the parties vigorously dispute the amount, if any, of excessive fees paid by the Plan and Plan participants to date, by Plaintiff's analysis, the following range of damages are potentially recoverable if Plaintiff were to prevail in this Action on a classwide basis:

| Class Period | Damages |
|---|---|
| 1997-2009 | $97.5 million |
| 2002-2009 | $89.7 million |
| 2002-2009 and including only funds selected after 2002 | $29.6 million |

Defendants vigorously dispute that there were ever excessive fees paid in any amount and dispute Plaintiff's calculations set forth above. In addition, these numbers are far from definite, and subject to challenge in a variety of ways. For example, Defendants may prevail on all of their statute of limitations challenges to Plaintiff's case, thus drastically reducing the amount of damages and the number of funds at issue. In that event, the Plan's recoverable losses would decline steeply, from $97.5 million to $29.6 million. Moreover, Plaintiff's calculated range does not take into account any discount for the risk of not establishing liability.[6]

Thus, the Settlement Amount of $13.5 million represents between approximately 14% and 46% of the potentially provable losses to the Plan due to excessive fees during the period of 1997-2009 ($29.6 million to $97.5 million). In addition, and as noted *supra*, Plaintiff has alleged that Wal-Mart discovered that Merrill Lynch collected $10-20 million in undisclosed fees between 2002 and 2009, unbeknownst to Wal-Mart, the Plan, or its participants. *See* AC ¶ 135. The Settlement Amount of $13.5 million falls squarely within the range of allegedly undisclosed

---

[6] In this regard, Plaintiff anticipates that Defendants would advance several arguments either to establish no liability or to reduce or eliminate damages. Specifically, Defendants can be expected to dispute (a) that they were fiduciaries with respect to the Plan or had any fiduciary role with respect to the fiduciary breaches alleged; (b) that they knew or should have known that the Plan Investment Options became an imprudent investment during the Class Period, or, if they did become imprudent, it was later in the Class Period; (c) that they imprudently selected and/or monitored Plan Investment Options and Plan service providers or engaged in prohibited transactions; and (d) that their disclosures were inadequate. Additionally, should Defendants succeed in advancing their own damages theories and/or establishing their defenses, recovery could be further reduced or eliminated based on various circumstances and determinations such as: (a) the possibility of findings that fees charged by and the expense ratios of any of the challenged Plan Investment Options were reasonable; (b) reductions in fees charged to the Plan over time, causing the Plan's losses to decrease accordingly; (c) the use by the Court of a different measure of calculating losses, such as using different benchmark alternative index funds to assess losses during the Class Period; (d) limitations on the scope of damages by successful statue of limitations challenges; and (e) a finding that losses for unjust enrichment are unavailable or are substantially reduced by negative findings related to the causal relationship between nondisclosure by Merrill Lynch of its alleged overcompensation and inclusion of particular Investment Options in the Plan. Braden, of course, vigorously disputes such damages theories, and would resist any effort to decrease his recovery in this case. Nonetheless, he recognizes that Defendants can be expected to advance these and other arguments if the case proceeds without a settlement.

fees collected by Merrill Lynch during the Class Period.  *See id.*

Therefore, the Settlement Amount represents a range of recovery that is appropriate given the wide range of potential damages outcomes at trial (as well as the possibility of summary judgment or a verdict in favor of Defendants that would result in zero recovery) and the uncertainty of the Plans' actual losses.  *See, e.g.*, *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 701-02 (E.D. Mo. 2002) (approving settlement comprising one-tenth of plaintiffs' potential recovery and collecting cases approving settlements comprising 2-8% of desired or potential recovery (citations omitted)); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (approving settlement with all defendants that comprised one-sixth of plaintiffs' potential recovery); *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982) ("[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." (citations and internal quotations omitted)).

Second, the Settlement seeks to reduce expenses on a going-forward basis through important injunctive relief.  Specifically, the Settlement provides injunctive relief for a two-year period beginning on the Effective Date of Settlement in this case (*i.e.,* when it becomes Final, *see* SA ¶¶ 1.11, 1.14), including the continuation of Defendants' retention of an outside consultant/independent advisor, who will acknowledge status as a Plan fiduciary, to advise on fund options and associated fees; substantial improvement to participant education; Defendants' agreement to continue the removal of any Plan Investment Options charging the types of fees challenged by this lawsuit; evaluation of whether to add additional index funds that are low-cost and passively managed as core Plan Investment Options; and enhancements of disclosures and retirement planning tools, SA ¶¶ 9.1-9.4.  *See also* Section II.A *supra* (Settlement terms).

The combination of a monetary payment together with injunctive relief that seeks to improve the management and administration of the Plan and the selection of Plan assets provides for important and meaningful relief.

In short, considering (a) the present and time value of money, (b) the expenses of complex and lengthy litigation, particularly in light of the significant fact and expert discovery

and litigation of class certification yet to be completed here, (c) the risk that he may not sustain all claims challenged by the pending motions to dismiss, (d) the risk that the Settlement Class would not succeed in proving liability against the Defendants, and (e) the range of possible recovery at trial, as related to the parties' disagreement as to the Class Period and available damages, Braden believes that the Settlement is reasonable.

Finally, given the rapidly changing and evolving nature of ERISA excessive-fee law—evidenced in part by the dismissal, appeal, and ultimate reinstatement of Plaintiff's case—Braden believes the probability of lengthy litigation in the absence of a settlement is high and that the Settlement is reasonable at this time. As Judge Harmon aptly put it when approving one of the settlements in the *Enron ERISA Litigation*: "The settlement at this point would save great expense" and provide to Plaintiffs "a bird in the hand." *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 228 F.R.D. 541, 566 (S.D. Tex. 2005); *see also Little Rock Sch. Dist.*, 921 F.2d at 1383 ("As a practical matter, a remedy that everyone agrees to is a lot more likely to succeed than one to which the defendants must be dragged kicking and screaming."). Accordingly, the Settlement is reasonable in light of the circumstances of the case.

**2.    The defendant's financial condition.**

Lead Counsel do not believe this factor is relevant to this case.

**3.    The complexity and expense of further litigation.**

ERISA breach of fiduciary duty cases are notorious for their complexity and expense. *See, e.g.*, *Enron*, 228 F.R.D. at 565 (finding that the "complexity, expense and likely duration of the litigation . . . are self-evident and exceptional"); *In re IKON Office Solutions, Inc.*, 209 F.R.D. 94, 104-07 (E.D. Pa. 2002) (finding that the complexity and duration of litigation of breach of fiduciary duty claims, as well as the expense of litigation and risks of establishing liability and damages, weighed heavily in favor of settlement).

This case is no exception. Plaintiff's claims raise numerous complex legal and factual issues under ERISA. The facts and circumstances underlying the claims in the Amended Complaint are complicated and would be undeniably time-consuming to litigate further to trial.

The expense of this litigation is reflected by the parties' extensive briefing before this Court and the Eighth Circuit Court of Appeals, multiple rounds of mediation, substantial document discovery, and lengthy settlement negotiations. Despite all this, considerable discovery, including expert discovery, remains to be conducted, and the parties have not yet finished class certification briefing, all of which must be completed before summary judgment or trial. Thus, this Settlement conserves significant judicial resources, reduces the expense associated with the remaining work required to prepare the case for trial, and provides immediate resolution to Plaintiff and the Settlement Class.

### 4. The amount of opposition to the settlement.

Braden has been well-informed of the settlement negotiations with Defendants throughout the negotiation process. Notice regarding the Settlement has not yet been distributed. In the event any objections are received after notice is issued, they will be addressed by Lead Counsel in connection with the final approval process.

Thus, taken together, the Eighth Circuit's factors for assessing the fairness of the Settlement support preliminary approval of the Settlement.

### IV. CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS AND APPOINTMENT OF CLASS REPRESENTATIVE

Pursuant to ¶ 2.1 of the Settlement Agreement, the parties have stipulated to a Rule 23(b)(1) Settlement Class for purposes of the Settlement. Accordingly, Class Plaintiff sets forth the legal and factual basis for certification of the Settlement Class pursuant to Fed. R. Civ. P. 23(b)(1).[7] Defendants will not oppose certification of the Settlement Class solely for purposes of

---

[7] Under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), any participant in or beneficiary of a plan may sue for breach of fiduciary duties, which action is, by statutory definition, brought "in a representative capacity on behalf of the plan as a whole." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985); *see also* ERISA § 409(a), 29 U.S.C. § 1109(a) (liability for breach of fiduciary duty is "to the plan"); ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) (authorizing plan participant to sue for breach of fiduciary duty under § 409(a)). Accordingly, a judicial consensus has emerged that breach of fiduciary duty actions involving pension plans (including 401(k) plans) are uniquely suited to class treatment. *See, e.g.*, *Roth v. Sawyer-Cleator Lumber Co.*, 61 F.3d 599, 605 (8th Cir. 1995) (fiduciary breaches give rise to plan-

settlement or appointment of Class Plaintiff as Class Representative. *See* SA ¶ 2.1.[8]

**A. Plaintiff Satisfies All Prerequisites for Class Certification.**

To be certified as a class action, the proposed Settlement Class must meet the four requirements of Fed. R. Civ. P. 23(a): numerosity, commonality, typicality, and adequacy. *See, e.g.*, *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir. 1982).

**1. Numerosity.**

Fed. R. Civ. P. 23(a)(1) requires that the class be so numerous that joinder of all class members is "impracticable," the "most obvious" relevant factor being "the number of persons in the proposed class." *Paxton*, 688 F.2d at 559. *See Tussey v. ABB, Inc. ("Tussey I")*, No. 06-4305, 2007 WL 4289694, at *4 (W.D. Mo. Dec. 3, 2007) (certifying ERISA excessive fee class of over 12,000 participants); *In re Aquila ERISA Litig. ("Aquila I")*, 237 F.R.D. 202, 209 (W.D. Mo. 2006) (certifying class of approximately 7,000 participants in ERISA breach of fiduciary duty case); *see also Yost v. First Horizon Nat'l Corp.*, No. 08-2293, 2011 WL 2182262, at *7 (W.D. Tenn. June 3, 2011) (certifying ERISA excessive fee class of over 15,000 participants). As of January 31, 2010, the Plan had 1,183,804 participants, Wal-Mart Stores, Inc., Annual Return/Report of Employee Benefit Plan (Form 5500) (Nov. 15, 2010), at 2, Loeser Decl. Ex. B, making it one of the largest 401(k) plans in the United States. Thus, joinder of all parties is clearly "impracticable" under Rule 23(a)(1).

**2. Commonality.**

Fed. R. Civ. P. 23(a)(2) requires that there be "questions of law or fact common to the

---

wide claims for relief); *Tussey v. ABB, Inc. ("Tussey I")*, No. 06-4305, 2007 WL 4289694, at *8 (W.D. Mo. Dec. 3, 2007) (ERISA breach of fiduciary duty cases "present an especially appropriate instance" for a Rule 23(b)(1) class (collecting cases holding that "ERISA's distinctive 'representative capacity' and remedial provisions" that seek recovery on behalf of the plan render "ERISA litigation of this nature [] a paradigmatic example of a (b)(1) class")); *Aquila I*, 237 F.R.D. at 210 ("The claims in this case are brought on behalf of the Plan, and to the extent that losses may be recovered from Defendants, such recovery would be on behalf of the Plan.").

[8] Defendants would have opposed class certification had the case proceeded, but solely for the purposes of effectuating the Settlement, they do not oppose certification of the Settlement Class or appointment of Plaintiff as Class Representative.

class." A single significant common issue is sufficient. *Paxton*, 688 F.2d at 561; *see also DeBoer*, 64 F.3d at 1174; *Aquila I*, 237 F.R.D. at 209 ("[C]ommonality requires the existence of only one common issue of law or fact."). Commonality "is satisfied when the legal question 'linking the class members is substantially related to the resolution of the litigation.'" *DeBoer*, 64 F.3d at 1174 (quoting *Paxton*, 688 F.2d at 561); *Tussey I*, 2007 WL 4289694, at *4 (same).

By their very nature, ERISA actions often present common questions of law and fact where, as here "all claims and all alleged injuries arise from the very same alleged conduct by the same Defendants—*i.e.*, all putative Plaintiff's claims 'stem from the same source.'" *Alvidres v. Countrywide Fin. Corp.*, No. 07-5810, 2008 WL 1766927, at *2 (C.D. Cal. Apr. 16, 2008). Therefore, ERISA cases are frequently certified as class actions. *See, e.g.*, *Tussey I*, 2007 WL 4289694, at *6 (finding commonality in ERISA excessive fee case); *see also Aquila I*, 237 F.R.D. at 207-09 & n.5 (finding commonality in ERISA breach of fiduciary duty case) (collecting cases).

In this case, there are several common questions with respect to each member of the proposed Settlement Class, including:

(1) whether Defendants breached their fiduciary duties to Plaintiff and Settlement Class members by failing to act prudently, loyally, and solely in the interests of the Plan's participants and beneficiaries;

(2) whether Defendants failed to provide complete and accurate information to Plan participants regarding the Plan Investment Options and the nature of all expenses associated with those investments; and

(3) whether the Settlement Class members suffered losses and, if so, the proper measure of such loss.

AC ¶ 296; *see also* Suggestions of Law in Support of Plaintiff's Renewed Motion For Class Certification at 12-14 (Dkt. No. 84) (listing common questions). Because these questions concern the common issues of fiduciary responsibilities owed to the Plan and the Plan's participants, and thus focus on the conduct of Defendants, not Plaintiff, they are sufficient to

satisfy the commonality requirement of Rule 23(a)(2).  *Tussey I*, 2007 WL 4289694, at *6.[9]

### 3. Typicality.

Rule 23(a)(3)'s typicality requirement examines whether the proposed class representative has the same interests and seeks a remedy for the same injuries as other class members.  *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977); *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977).  "Under Rule 23(a)(3), 'typicality' means 'that there are other members of the class who have the same or similar grievances as the plaintiff.'" *Hopkins v. Kan. Teachers Cmty. Credit Union*, 265 F.R.D. 483, 487 (W.D. Mo. 2010) (quoting *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996)); *Tussey I*, 2007 WL 4289694, at *7; *Doran v. Mo. Dep't of Soc. Servs.*, 251 F.R.D. 401, 405 (W.D. Mo. 2008).

All of the putative class members' claims need not be identical.  However, typicality does require that the proposed class representative's claims are capable of being "determined with reference to the defendants' actions, not with respect to individualized defenses it might raise against particular members."  *Tussey I*, 2007 WL 4289694, at *7.  Thus, the typicality requirement is satisfied where the claims of the proposed class representative and the proposed class are "based on the same legal theory."  *Aquila I*, 237 F.R.D. at 209.

Courts have found that excessive fee and other ERISA cases easily meet the typicality standard because, in short, "[n]one of the facts or legal claims are unique to the named Plaintiff[]."  *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 110 (N.D. Cal. 2008); *see also Tussey I*, 2007 WL 4289694, at *7 (finding typicality where, pursuant to ERISA, the suit was filed and recovery was sought on behalf of the plan); *Aquila I*, 237 F.R.D. at 209 (same in an ERISA

---

[9] *See also First Horizon*, 2011 WL 2182262, at *7 (finding commonality in ERISA excessive fee case); *Tibble v. Edison Int'l* ("*Tibble I*"), No. 07-5359, 2009 WL 6764541, at *2-3 (C.D. Cal. June 30, 2009) (same and noting that "the primary focus . . . is on the actions of Defendants, not . . . the Plaintiffs"); *George v. Kraft Foods Global, Inc. ("George I")*, 251 F.R.D. 338, 347-48 (N.D. Ill. 2008) (same); *Taylor v. United Techs. Corp. ("Taylor II")*, No. 06-1494, 2008 WL 2333120, at *3 (D. Conn. June 3, 2008) (same, where defendants did not contest commonality).

breach of fiduciary duty case).[10]  Moreover, ERISA's unique standing and remedial provisions, under which a participant who sues for breach of a fiduciary's duties is entitled to obtain plan-wide relief, make it inevitable that Braden's claims are typical.  *See* ERISA § 409(a), 29 U.S.C. § 1109(a) (liability for breach of fiduciary duty is "to the plan"); ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) (authorizing plan participant to sue for breach of fiduciary duty under § 409(a)); *see also Jones v. Novastar Fin., Inc.*, 257 F.R.D. 181, 190 (W.D. Mo. 2009) (rejecting notion that *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248 (2008), discussed *infra* note 15, undercuts typicality and instead finding that *LaRue* expanded the relief available under § 502(a)(2)).

Here, Braden's claims are typical of those of the proposed Settlement Class.  He is an employee of Wal-Mart, a participant in the Plan during the Class Period, and had part of his individual Plan investment portfolio invested in the challenged Plan Investment Options.  His claims stem from Defendants' alleged fiduciary breaches and therefore are the same as the claims of each member of the Settlement Class.  Indeed, as discussed *supra* Section IV.A.2, each Settlement Class member possesses and can assert the same legal arguments to prove the Defendants' liability.  Therefore, Braden's claims are typical of those of other Settlement Class members for purposes of Rule 23(a)(3).

### 4.    Adequacy of Representation.

Fed. R. Civ. P. 23(a)(4)'s adequacy of representation requirement entails a two-pronged inquiry: "whether[] (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class

---

[10] *Accord First Horizon*, 2011 WL 2182262, at *7 (finding typicality in ERISA excessive fee case where claims were on behalf of the plan, recovery would flow to the plan, and focus of inquiry was defendants' conduct); *George I*, 251 F.R.D. at 348 (finding typicality in ERISA excessive fee case where the "alleged conduct by defendants, uniform as to all participants, [] is the gravamen of plaintiffs' claims [] that forms the basis for the [plan-wide] relief they seek"); *Tibble I*, 2009 WL 6764541, at *4 (finding typicality in ERISA excessive fee case where complaint alleged that defendants "owed the same fiduciary duty to each Plan participant, and that each breach was a breach to each member of the class"); *Taylor II*, 2008 WL 2333120, at *4 (finding typicality in ERISA excessive fee case where defendants' conduct toward the plan as a whole affected all participants).

through qualified counsel." *Paxton*, 688 F.2d at 562-63.

Braden has no interests antagonistic to those of the absent class members or a unique relationship with any of the Defendants. Declaration of Jeremy Braden ("Braden Decl.") ¶ 5. He and the Settlement Class share the common goal of "procuring declaratory and injunctive relief." *Paxton*, 688 F.2d at 563. Like the rest of the Settlement Class members, he has an incentive to maximize the Plan's recovery, which he has sought to do through this litigation. *See Jones*, 257 F.R.D. at 192.[11]

Here, the proposed Class Representative is a Wal-Mart employee who participated in the Plan during the Class Period. Braden Decl. ¶ 3; AC ¶ 28. Indeed, his claims are identical to the claims of each Settlement Class Member, and he (or any other plaintiff or representative) would have to prove Defendants' liability on the basis of common facts underlying those claims. *Aquila I*, 237 F.R.D. at 209. Braden's interests are thus fully aligned with the interests of other Plan participants.[12]

Additionally, Braden has retained counsel with significant experience in federal ERISA class actions. Braden Decl. ¶ 11; Loeser Decl. ¶ 16; *White v. Martin*, No. 02-4154, 2002 WL 32596017, at *10 (W.D. Mo. Oct. 3, 2002) ("[Absent] proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to vigorously prosecute the class action."); *see also infra* Part VI. In short, the requirements of Rule 23(a)(4) are easily met. The proposed Class Representative, therefore, satisfies each element of Rule 23(a).

---

[11] This is particularly true for claims under ERISA § 502(a)(2). *See, e.g.*, *Aquila I*, 237 F.R.D. at 210 ("The claims in this case are brought on behalf of the Plan, and to the extent that losses may be recovered from Defendants, such recovery would be on behalf of the Plan."); *First Horizon*, 2011 WL 2182262, at *10 (same in ERISA excessive fee case).

[12] Braden's significant involvement in the litigation of this case demonstrates his commitment to the interests of the Class. Indeed, throughout this litigation, Braden has acted to protect the interests of the Class. Braden Decl. ¶¶ 6-13. He has developed an understanding of his claims that enabled him to participate meaningfully in all aspects of the litigation, including most recently in contributing creatively to resolving the case. Braden Decl. ¶ 13. For purposes of an ERISA case, "[c]lass representatives need not have special understanding of the factual or legal issues in their cases." *Jones*, 257 F.R.D. at 192 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). A minimal understanding is enough. *Id.* (citation omitted). Braden exceeds this requirement. Braden Decl. ¶ 13.

**B.    The Settlement Class May Properly Be Certified Under Rule 23(b)(1).**

In addition to satisfying all of the criteria of Rule 23(a), a party seeking class certification

must also satisfy one of the requirements of Rule 23(b).  A class may be certified if:

> (1)    prosecuting separate actions by or against individual class members would
> create a risk of:
>
> > (A)    inconsistent or varying adjudications with respect to individual
> > class members that would establish incompatible standards of
> > conduct for the party opposing the class, or
> >
> > (B)    adjudications with respect to individual class members that, as a
> > practical matter, would be dispositive of the interests of the other
> > members not parties to the individual adjudications or would
> > substantially impair or impede their ability to protect their
> > interests.

Fed. R. Civ. P. 23(b)(1).

Rule 23(b)(1)(A) "attempts to avoid possible prejudice to Defendants," while Rule

23(b)(1)(B) "attempts to avoid possible prejudice to class members."  *Jones*, 257 F.R.D. at 193.

Certifications under both sections of Rule 23(b)(1) are common in ERISA breach of fiduciary

cases because the "central questions concerning whether the fiduciaries breached their duties to

the Plan are not individual" matters.  *Jones*, 257 F.R.D. at 194.[13]  *See also* Fed. R. Civ. P.

23(b)(1)(B) advisory committee's notes (1966 amendment) (stating that certification under

23(b)(1) is appropriate in cases charging breach of trust by a fiduciary to a large class of

beneficiaries); Loeser Decl. Ex. G (listing ERISA cases certified under Rule 23(b)(1)).

ERISA actions are, by nature, representative.  Indeed, "ERISA's distinctive

'representative capacity' and remedial provisions" that seek recovery on behalf of the plan

render "ERISA litigation of this nature [] a paradigmatic example of a (b)(1) class."  *Tussey I*,

---

[13] *See also In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604-05 (3d Cir. 2009)
(holding that the derivative nature of ERISA § 502(a)(2) claims makes them "paradigmatic
examples of claims appropriate for certification as a Rule 23(b)(1) class" and finding that Rule
23(b)(1)(B) was "clearly satisfied" in light of the fact that the plaintiff's claims were "based on
defendants' conduct, not, as defendants urge, on unique facts and individual relationships")
(citing, *inter alia*, *Jones*, 257 F.R.D. 181).

2007 WL 4289694, at *8 (collecting cases).[14]

Given the unique "group-based" relief ERISA offers for violations of fiduciary duties owed to participants in covered benefit plans, this Action is a textbook case for class treatment under Rule 23(b)(1). The failure to certify a class in this case involving over one million current participants could result in many of those participants "[p]ursuing separate actions [that] would risk inconsistent conclusions concerning liability, remedies, and Defendants' standards of conduct," *Jones*, 257 F.R.D. at 194, or "leave future plaintiffs without relief," *Tussey I*, 2007 WL 4289694, at *8.

Here, the Settlement Class satisfies the requirements of Rule 23(b)(1)(A), in addition to Rule 23(b)(1)(B). *See* 2 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 4.8 (4th ed. 2002) ("A common occurrence is that a proposed class that qualifies under subdivision (b)(1)(A) will also qualify under subdivision (b)(1)(B) . . . ."). *See, e.g.*, *Jones*, 257 F.R.D. at 194 (finding in an ERISA breach of fiduciary duty case that "[c]lass certification is appropriate under both subsections of Rule 23(b)(1)"); *Tussey I*, 2007 WL 4289694, at *8 (same in an excessive fee case); *Taylor II*, 2008 WL 2333120, at *6 (same); *First Horizon*, 2011 WL 2182262, at *13-14 (same); *George I*, 251 F.R.D. at 351-52 (same).[15]

---

[14] Most courts have accepted this reasoning in certifying classes in ERISA cases alleging a breach of defendants' fiduciary obligations. As one court explained, (1) the "relief granted by a court to remedy of a breach of fiduciary duty 'inures to the benefit of the plan as a whole' rather than to the individual plaintiffs" and (2) the "action to remedy breaches of fiduciary duty [may be brought] only in a representative capacity, [and thus] affects all participants and beneficiaries, albeit indirectly." *Kane v. United Indep. Union Welfare Fund*, No. 97-1505, 1998 WL 78985, at *9 (E.D. Pa. Feb. 24, 1998) (internal citations omitted).

[15] While *LaRue* held that a claim by one participant to redress a breach that affected only his or her plan account was nonetheless a viable claim on behalf of the plan pursuant to § 502(a)(2), 552 U.S. at 256, that case does not undermine the applicability of Rule 23(b)(1) to ERISA fiduciary breach claims like those at issue here. Because the breaches affected all Plan participants who each may bring the same § 502(a)(2) claims against the same Defendant fiduciaries for the same fiduciary misconduct that caused the Plan to suffer precisely the same Plan losses, there would be the obvious risk of inconsistent or varying adjudications that, absent class certification, would cause precisely the inconsistent and unfair results that Rule 23(b)(1) seeks to avoid. *See Jones*, 257 F.R.D. at 189-90 (quoting ERISA excessive fee case, *Kanawi*, 254 F.R.D. at 108-09, at length, noting that *LaRue* expanded, rather than foreclosed claims on behalf of the plan and that *LaRue* did not involve a class action); *First Horizon*, 2011 WL

Finally, although certification of the proposed Settlement Class is also appropriate under the other subdivisions of Rule 23(b), as the cases cited herein clearly demonstrate, the Court should certify such a Class under Rule 23(b)(1). *See, e.g.*, *Reynolds v. Nat'l Football League*, 584 F.2d 280, 284 (8th Cir. 1978) ("When the choice exists between [23](b)(1) and [23](b)(3), certification, generally it is proper to proceed under (b)(1) exclusively in order to avoid inconsistent adjudication or a compromise of class interest.").[16]

For the foregoing reasons, certification of the Settlement Class under Rule 23(b)(1) is appropriate.

## V.    DISTRIBUTION AND FORM OF NOTICE TO THE SETTLEMENT CLASS

Rule 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the [settlement]." While "[t]here is no one 'right way' to provide notice as contemplated under Rule 23(e)," *Wireless I*, 2004 WL 3671053, at *8, it must be made "as directed by the district court" and be "reasonable enough to satisfy due process," *DeBoer*, 64 F.3d at 1176. Notice to class members that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" satisfies due process. *Petrovic*, 200 F.3d at 1153 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Courts have recognized that the nature of an ERISA class action brought on behalf of a plan pursuant to ERISA § 502(a)(2) precludes an "opt-out" option. *See Aquila I*, 257 F.R.D. at 208 (an action brought by a plan participant under ERISA § 502(a)(2) is brought in a representative capacity on behalf of the plan and solely for relief to the plan as a whole (citing *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140-42 (1985))). This means that Settlement Class members are eligible to benefit from the Settlement regardless of their actual notice.

---

2182262, at *13 (recognizing in ERISA excessive fee case that "most courts continue to certify § 502(a)(2) class actions under Rule 23(b)(1)(B), even after the Supreme Court's holding in *LaRue*").

[16] As demonstrated in Exhibit G to the Loeser Declaration, many courts have certified ERISA class actions under Rule 23(b)(1).

Nonetheless, courts typically require that as many absent class members in ERISA breach of fiduciary duty actions as may be identified through reasonable means receive sufficient notice to satisfy due process, as well as the opportunity to object to the proposed settlement. *See, e.g.*, *In re Aquila ERISA Litig. ("Aquila II")*, No. 04-0865, 2007 WL 4244994, at *1 (W.D. Mo. Nov. 29, 2007) (in ERISA breach of fiduciary duty, requiring notice to the class to "fully inform[] Class members of their rights with respect to the Settlement, including the right to object to the Settlement" and satisfy due process and Rule 23); *Wireless I*, 2004 WL 3671053, at *8 (same).

Here, the Settlement Agreement provides for notice to Settlement Class members by publishing the Class Notice on websites utilized by Plan participants in managing their retirement accounts—www.Walmartbenefits.com and www.benefits.ml.com, and by publishing the Summary Notice in *USA Today* and on BusinessWire. SA ¶¶ 1.5, 2.3.2 & SA Exs. 1.A & 1.B. The notices, attached and incorporated into the Settlement Agreement as Exhibits 1.A and 1.B, describe the material terms of the proposed Settlement. Lead Counsel will also create and administer a website to provide current information to Settlement Class members. The Class Notice that will be posted on websites utilized by Plan participants in managing their retirement accounts provides detailed information about the Settlement, including: (1) a comprehensive summary of its terms; (2) detailed information about the Released Claims, and (3) Class Counsel's intent to request attorneys' fees, reimbursement of expenses, and a case contribution award for Class Plaintiff. The Class Notice provides information abut the Fairness Hearing date, Settlement Class members' rights to object (and deadlines and procedures for objecting), and the procedure to receive additional information. The Class Notice further provides potential Settlement Class members with contact information for Lead Counsel via a toll-free number, an e-mail address, and a website to receive further information. The Summary Notice summarizes the above information for purposes of publication through media designed to obtain wide distribution. These notices are intended to fully inform Settlement Class members of the lawsuit, the proposed Settlement, and the information they need to make informed decisions about their rights. Although the proposed Settlement Class does not allow for Settlement Class members

opting out, the Plan and its participants will benefit from the Settlement regardless of actual notice to Settlement Class members.

While Braden does not propose mailing notice to Settlement Class members, the form and method of the notice of proposed here, which has been agreed to by the parties, still satisfies all due process considerations and meets the requirements of Fed. R. Civ. P. 23(e)(1). *See Petrovic*, 200 F.3d at 1153 (notice that "unquestionably alerted the recipients that they were members of a pending class action, that a settlement had been proposed, and that they had the right to state their objections at a fairness hearing" satisfied due process). Moreover, the publication-based notices proposed here are similar to notice successfully used in other class settlements of this magnitude, where mailing paper notices to the last known address of members of the class would create an enormous administrative expense that would deplete the settlement fund available to benefit the class. *See, e.g.*, *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, MDL No. 1735, No. 06-225, slip op. at 5-7 (D. Nev. June 9, 2009) (notice in wage and hour case where notice was given to 23(b)(1) settlement class numbering over 3.2 million by publishing a summary notice on a national basis in *USA Today* and BusinessWire, and on websites agreed to by the parties found to "meet the requirements of Fed. R. Civ. P. 23 and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all members of the class"). Accordingly, Class Plaintiff respectfully requests that the Court approve the proposed form of Class Notice and Summary Notice and direct that parties proceed as set forth above, pursuant to the Settlement Agreement.

## VI.    APPOINTMENT OF CLASS COUNSEL

Fed. R. Civ. P. 23(g) requires a court certifying a case as a class action to appoint class counsel. Class Plaintiff respectfully requests that Court appoint his counsel as counsel for the Settlement Class. Specifically, Plaintiff requests that Keller Rohrback L.L.P. be appointed as Lead Counsel for the Settlement Class and that Aleshire Robb, P.C. be appointed as Liaison Counsel. As discussed above, Lead Counsel are well-experienced in handling class actions, other complex litigation, and ERISA claims action, and have invested extensive efforts in

prosecuting this case. *See* Loeser Decl. ¶ 16. Lead Counsel will continue to vigorously prosecute Settlement Class member claims.

## VII. ESTABLISHMENT OF A FINAL APPROVAL AND FAIRNESS HEARING

Class Plaintiff respectfully requests that this Court approve a schedule to, among other things, notify Settlement Class members of the proposed Settlement, provide Settlement Class members an opportunity to object to the proposed Settlement, and set a date for the Fairness Hearing to consider (a) whether the Settlement Class satisfies Rule 23 and may be certified for purposes of the Settlement; (b) any Settlement Class member objections to the Settlement; (c) whether the Settlement is fair, reasonable, and adequate; (d) Class Counsel's application for an award of attorneys' fees and reimbursement of expenses; (e) Class Counsel's application for a case contribution award to Class Plaintiff; and (f) whether the Court will enter an order granting Final approval to the Settlement and Final judgment in this case and dismissal with prejudice. The parties propose that the Fairness Hearing, upon which the events including those described above depend, occur at **9:00 a.m. on Wednesday, March 7, 2012**. The parties' proposed schedule of events related to Final approval is incorporated herein by reference and attached as Appendix 1.

WHEREFORE, for the reasons stated herein, Class Plaintiff respectfully moves this Court for an Order (1) preliminarily approving the proposed Settlement between the Parties; (2) conditionally certifying the Settlement Class; (3) directing distribution of notice to the Settlement Class; (4) appointing Class Counsel and Class Representative; and (5) setting a Fairness Hearing for approval of class certification and the Settlement and consideration of Class Counsel's applications for an award of attorneys' fees, reimbursement of expenses, and a case contribution award to Class Plaintiff, as well as for such other relief the Court deems proper. The Proposed Order agreed to by the Parties is attached as Ex. 1 to the Settlement Agreement. *See* Loeser Decl. Ex. A.

RESPECTFULLY SUBMITTED this 2nd day of December, 2011.

KELLER ROHRBACK L.L.P.

/s/ Lynn Lincoln Sarko
Lynn Lincoln Sarko (*pro hac vice*)
Michael Woerner (*pro hac vice*)
Derek W. Loeser (*pro hac vice*)
Gretchen Freeman Cappio (*pro hac vice*)
Gretchen S. Obrist (*pro hac vice*)
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Phone: (206) 623-1900
Fax: (206) 623-3384
lsarko@kellerrohrback.com
mwoerner@kellerrohrback.com
dloeser@kellerrohrback.com
gcappio@kellerrohrback.com
gobrist@kellerrohrback.com

ALESHIRE ROBB P.C.
Gregory W. Aleshire, MO #38691
William R. Robb, MO #43322
2847 S. Ingram Mill Rd., Suite A-102
Springfield, MO 65804
Phone: (417) 869-3737
Fax: (417) 869-5678
arslaw@arslaw.com

Edward H. Siedle (*pro hac vice*)
Edward H. Siedle Law Offices
79 Island Dr., South
Ocean Ridge, FL 33435
Telephone:  (561) 202-0919
esiedle@aol.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 2, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following: Paul Ondrasik, Morgan D. Hodgson, Eric Serron, Katherine R. Sinatra, William C. Martucci, Richard N. Bien, James Moloney, Robyn L. Anderson, Shannon Barrett, Kristen A. Page, William R. Robb, Edward H. Siedle and Robert N. Eccles.

There are no non CM/ECF participants.

DATED this 2nd day of December, 2011.

/s/ Lynn Lincoln Sarko
Lynn Lincoln Sarko