**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| JEREMY BRADEN, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 6:08-cv-3109-GAF |
| v. | ) ) | CLASS ACTION |
| WAL-MART STORES, INC., et al., | ) ) ) ) | |
| Defendants. | ) | |

## CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement ("Settlement Agreement") is entered into by and between Jeremy Braden ("Named Plaintiff") for himself and on behalf of the Settlement Class and the Plan, the Walmart Defendants, and the Merrill Lynch Defendants. Capitalized terms used herein shall have the meanings set forth in Section 1 below.

### RECITALS

WHEREAS, on March 27, 2008, Named Plaintiff filed an initial complaint asserting claims for relief against certain of the Walmart Defendants under the Employee Retirement Income Security Act (ERISA), which was dismissed with prejudice by this Court and, after appeal to the United States Court of Appeals for the Eighth Circuit, was reinstated in its entirety following reversal of the dismissal of all claims and remand for further proceedings, and a remand issued on January 14, 2010;

WHEREAS, the defendants named in the initial complaint answered that complaint on March 15, 2010, denying the material allegations, wrongdoing, and liability, and asserting certain affirmative defenses;

WHEREAS, on July 21, 2010, Named Plaintiff filed an Amended Complaint against the Walmart Defendants and the Merrill Lynch Defendants, which named additional Walmart

defendants and named for the first time the Merrill Lynch Defendants and asserted six additional claims;

WHEREAS, the Complaint alleges that all or some of the Walmart Defendants violated ERISA by failing to prudently and loyally manage the assets of the Wal-Mart Stores, Inc. Profit Sharing and 401(k) Plan ("Plan") by offering investment options that caused the Plan to incur excessive fees and expenses and that provided inferior returns; failing to properly monitor the Plan's fiduciaries; failing to provide Plan participants with complete and accurate information regarding fees and expenses; breaching their duties of loyalty to the Plan; breaching their duties and responsibilities as co-fiduciaries, and engaging in prohibited transactions with the Plan trustee and recordkeeper (collectively, the Merrill Lynch Defendants);

WHEREAS, the Complaint alleges that all or some of the Merrill Lynch Defendants violated ERISA by failing to prudently and loyally manage the assets of the Plan by offering investment options that caused the Plan to incur excessive fees and expenses and that provided inferior returns; engaging in prohibited transactions in violation of ERISA; failing to provide Plan participants with complete and accurate information regarding fees and expenses; breaching their duties and responsibilities as co-fiduciaries; engaging in conduct under ERISA that unjustly enriched the Merrill Lynch Defendants; and knowingly participating in fiduciary breaches by certain Defendants;

WHEREAS, the Merrill Lynch Defendants and the Walmart Defendants moved in separate motions to dismiss the Complaint on October 1, 2010, which motions are presently pending before the Court;

WHEREAS, the parties, through their counsel, have conducted extensive, arms' length negotiations concerning a possible compromise and settlement of the Action, including mediation in multiple sessions before the Honorable Layn R. Phillips;

WHEREAS, as a result of their factual investigation and legal research concerning their claims, Named Plaintiff and his Counsel have concluded that the terms of this Settlement are fair, reasonable, and adequate to Named Plaintiff and the Settlement Class, and in their best interests, and have agreed to settle the Action on the terms set forth herein after considering (i) the substantial benefits that Named Plaintiff and members of the Settlement Class will receive from the Settlement; (ii) the risks, difficulties, and delays involved with complex litigation such as this, including prosecution through trials and appeals; (iii) the specific risks inherent in complex actions under ERISA, including problems of proof and the variety of defenses potentially available to Defendants; and (iv) the desirability of permitting the Settlement to be consummated as provided herein;

WHEREAS, Defendants deny the material allegations of the Complaint; deny any wrongdoing or liability whatsoever; believe that they acted at all times reasonably and prudently and in compliance with ERISA with respect to the Plan, their participants and beneficiaries, and the Settlement Class; have asserted defenses and would assert certain other defenses if this Settlement is not consummated; are not opposing the Court's certification of

the Settlement Class contemplated by this Settlement Agreement solely for purposes of effectuating the Settlement; and are entering into the Settlement solely to avoid the cost, disruption, and uncertainty of litigation;

WHEREAS, the Insurer has agreed to provide certain funds for this Settlement under the Insurance Policy;

WHEREAS, the Parties desire to promptly and fully resolve and settle with finality all of the Released Claims against Defendants asserted by Named Plaintiff for himself and on behalf of the Settlement Class and the Plan, on the terms set forth herein and subject to the approval of the Court;

NOW, THEREFORE, the Parties, in consideration of the promises, covenants and agreements herein described, and for other good and valuable consideration, acknowledged by each of them to be satisfactory and adequate, and without any admission or concession as to any matter of fact or law, and intending to be legally bound, do hereby agree as follows:

## 1. **DEFINITIONS**

As used in this Settlement Agreement, capitalized terms and phrases not otherwise defined have the meanings provided below:

1.1.    "Action" shall mean the action captioned *Braden v. Wal-Mart Stores, Inc. et al,* Case No. 6:08-cv-3109-GAF, pending in the United States District Court for the Western District of Missouri, Southern Division, and any and all cases now or hereafter consolidated therewith.

1.2.    "Affiliate" shall mean any entity which owns or controls, is owned or controlled by, or is under common ownership or control with, a Person.  For purposes of this definition, "control" shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities or otherwise.

1.3.    "Agreement Execution Date" shall mean the date on which this Settlement Agreement is fully executed, as provided in Section 12.14 below.

1.4.    "Class Exemption" shall mean Prohibited Transaction Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31, 2003, by the United States Department of Labor, 68 Fed. Reg. 75,632, as amended June 15, 2010, 75 Fed. Reg. 33830.

1.5.    "Class Notice" shall mean the form of notice appended as Exhibit A to the form of Preliminary Approval Order attached hereto as Exhibit 1.

1.6.    "Class Notice Amount" is Thirty-Thousand Dollars ($30,000), and is comprised of two equal parts, the Walmart Class Notice Advance Amount of Fifteen Thousand Dollars

($15,000), and the Merrill Lynch Class Notice Advance Amount of Fifteen Thousand Dollars ($15,000). The Class Notice Amount is part of the Settlement Amount.

1.7.    "Company" shall mean Wal-Mart Stores, Inc., ("Walmart"), a Delaware corporation, each of its Affiliates, and each of its predecessors and Successors-In-Interest.

1.8.    "Complaint" shall mean the Amended Complaint for Violations of the Employee Retirement Income Security Act (ERISA), filed July 21, 2010 (Dkt. No. 107) in the above-captioned proceeding.

1.9.    "Court" shall mean the United States District Court for the Western District of Missouri, Southern Division.

1.10.   "Defendants" shall mean Walmart Defendants and Merrill Lynch Defendants, collectively.

1.11.   "Effective Date of Settlement" shall mean the first date on which the Final Order is still in effect and has become Final in accordance with Section 1.14.

1.12.   "ERISA" shall mean the Employee Retirement Income Security Act of 1974, as amended, including all regulations promulgated and case law thereunder.

1.13.   "Fairness Hearing" shall have the meaning set forth in Section 2.3.5.

1.14.   "Final" shall mean, with respect to any judicial ruling or order, that the period for any appeals, petitions, motions for reconsideration, rehearing or certiorari or any other proceedings for review ("Review Proceeding") has expired without the initiation of a Review Proceeding, or, if a Review Proceeding has been timely initiated, that there has occurred a full and final disposition of any such Review Proceeding without a reversal or modification, including the exhaustion of proceedings in any remand and/or subsequent appeal after remand. Notwithstanding any other provision hereof, the Final Order shall be deemed Final without regard to whether (i) the Court has entered an order regarding the Plan of Allocation or an award of legal fees and expenses; (ii) any order referred to in (i) above, if entered, has become Final; or (iii) any order referred to in (i) is reversed or modified on appeal.

1.15.   "Final Order" shall have the meaning set forth in Section 2.6.

1.16.   "Final Approval Motion" shall mean Plaintiff's motion for final approval of the Settlement prior to the Fairness Hearing, along with Plaintiff's Application for Attorneys' Fees and Expenses and for Compensation to Named Plaintiff, as set forth in Sections 11.1 and 11.2.

1.17.   "Financial Institution" shall have the meaning set forth in Section 7.3.

1.18.   "Independent Fiduciary" shall mean a fiduciary of the Plan selected and retained at the Company's expense that has no "relationship to" or "interest in" (as those terms are used

in the Class Exemption) any of the Parties.

1.19. "Insurance Policy" shall mean Executive and Organization Liability Insurance Policy Number: 110-65-20, providing fiduciary and employee benefits liability insurance to Walmart Defendants.

1.20. "Insurer" shall mean National Union Fire Insurance Co. of Pittsburgh, PA issuing the Insurance Policy identified in Section 1.19.

1.21. "Investment Option" or "Plan Investment Option" shall mean all mutual funds, separately managed accounts, collective trusts, Company stock, and all other investment vehicles that have been available at any time or are available to members of the Settlement Class pursuant to the terms of the Plan.

1.22. "Merrill Lynch Defendants" shall mean Merrill Lynch, Pierce, Fenner & Smith Incorporated, Merrill Lynch Trust Company of America, and Merrill Lynch & Co., Inc.

1.23. "Merrill Lynch" shall mean Merrill Lynch Defendants, each of their Affiliates, predecessors and Successors-In-Interest.

1.24. "Merrill Lynch Trust Company of America" shall mean the Merrill Lynch Trust Company of America, and its Successors-In-Interest.

1.25. "Trust" shall mean the Wal-Mart Stores, Inc. Profit Sharing Plan Trust established between Defendant Merrill Lynch Trust Company, FSB and Wal-Mart Stores, Inc. on August 1, 2003, and all amendments thereto.

1.26. "Named Plaintiff" shall mean Jeremy Braden.

1.27. "Net Proceeds" shall have the meaning set forth in Section 8.2.

1.28. "Parties" shall mean Named Plaintiff, Walmart Defendants, and Merrill Lynch Defendants, collectively.

1.29. "Person" shall mean an individual, partnership, corporation, governmental entity or any other form of legal entity or organization.

1.30. "Plaintiffs" shall mean Named Plaintiff and each member of the Settlement Class.

1.31. "Plaintiff's Counsel" shall mean Keller Rohrback L.L.P, Aleshire Robb P.C., and Edward H. Siedle.

1.32. The "Plan" shall mean the Wal-Mart Stores, Inc. Profit Sharing and 401(k) Plan and all predecessor and successor plans, individually and collectively, and any trust created

under such Plan.

1.33. "Plan of Allocation" shall mean the Plan of Allocation approved by the Court as described in Section 8.2.

1.34. "Preliminary Approval Order" shall have the meaning set forth in Section 2.3.1.

1.35. "Preliminary Motion" shall have the meaning set forth in Section 2.3.1.

1.36. "Released Claims" shall have the meaning set forth in Section 3.1.

1.37. "Released Parties" shall have the meaning set forth in Section 3.1.

1.38. "Releasees" shall mean the Released Parties, the Named Plaintiff and the members of the Settlement Class.

1.39. "Releases" shall mean the releases set forth in Sections 3.1, 3.2, 3.3 and 3.4.

1.40. "Representatives" shall mean attorneys, agents, directors, officers, and employees.

1.41. "Retirement Plans Committee" shall mean the committee established by Article 9.1 of the Wal-Mart Stores, Inc. Profit Sharing and 401(k) Plan.

1.42. "Settlement" shall mean the settlement to be consummated under this Settlement Agreement pursuant to the Final Order.

1.43. "Settlement Agreement" means this Class Action Settlement Agreement, including all exhibits hereto.

1.44. "Settlement Class" shall mean (a) all Persons, except Defendants, who are or were participants in the Wal-Mart Stores, Inc. Profit Sharing and 401(k) Plan, or the predecessors or successors thereto, who have held assets in the Plan Investment Options at any time between July 1, 1997 to the Agreement Execution Date, inclusive, and (b) as to each Person within the scope of subsection (a) of this Section 1.44, his, her, or its beneficiaries, alternate payees, Representatives and Successors in Interest.

1.45. "Settlement Amount" shall have the meaning set forth in Section 7.1.

1.46. "Successor-In-Interest" shall mean: a Person's estate, legal representatives, heirs, successors or assigns, including successors or assigns that result from corporate mergers or other structural changes.

1.47. "Summary Notice" shall mean the form of notice appended as Exhibit B to the form of Preliminary Approval Order attached hereto as Exhibit 1.

- 6 -

1.48.　"Walmart Defendants" shall mean Wal-Mart Stores, Inc. and the following Persons named as defendants in the Complaint:  James W. Breyer, John A. Cooper, Jr., Stanley C. Gault, Frederick S. Humphries, Dawn G. Lepore, Elizabeth A. (Betsy) Sanders, Donald G. Soderquist, Jose H. Villarreal,  Stephen R. Hunter, Debbie Davis Campbell, Jeff Amos, Bill Ayers, Terri Bertschy, Elizabeth Branigan-Evans, Fred Disch, Larry Duff, Sam Dunn, Don Etheredge, Robin Forbis, Sharon Garmon, Erin Gonzalez (misidentified and named in duplication as Erin Weitzel), Rob Hey, Greg Johnston, David McBride, Phyllis Morey, Cliff Parker, Arvetta Powell, Charles Ratcliff, Dave Reiff, David Scogin, Donna Spradlin, J.P. Suarez, Jenifer Terrell, Kevin Turner, Jeremy Wilson, and Jimmy Wright.

1.49.　"Unconditional" shall have the meaning set forth in Article 2.

2.　<u>CONDITIONS TO THE EFFECTIVENESS OF THE SETTLEMENT</u>

This Settlement shall be Unconditional when each of the following conditions in Sections 2.1 through 2.7 has been satisfied or waived.  The Parties will use their good faith best efforts to cause each of the conditions to occur within the times indicated.

2.1.　<u>Condition #1:  Class Certification for Purposes of Settlement</u>.  The Court shall certify the Settlement Class and no other as a non-opt out class for settlement purposes pursuant to Rule 23(a)(1)-(4), 23(b)(1) and 23(e) of the Federal Rules of Civil Procedure, with Named Plaintiff as the named Class Representative and Plaintiff's Counsel as counsel for the Named Plaintiff.  The Parties agree to a certification of the Class solely for settlement purposes only on the terms set forth in this Settlement Agreement.  The Parties further agree that if the Settlement does not become Unconditional, then no Settlement Class will be deemed to have been certified by, or as a result of, this Settlement Agreement, and the Action and the claims asserted by the Named Plaintiff and the Settlement Class will for all purposes with respect to the Parties revert to their status as of the day immediately before the Agreement Execution Date.  In such event, Defendants will not be deemed to have consented to the certification of any class, the agreements and stipulations in this Settlement Agreement concerning class definition, class period, or class certification shall not be used as evidence or argument to support class certification, class definition, any class period, or for any other purpose, and Defendants will retain all rights to oppose class certification, including certification of a class identical to that provided for in this Settlement Agreement.

2.2.　<u>Condition #2:  Release by the Independent Fiduciary and Plan and Approval of Payment by Plan.</u>

2.2.1. Walmart Defendants shall, within ten (10) days of the Agreement Execution Date, retain at the Company's expense, an Independent Fiduciary for the Plan, for the purposes of (a) reviewing the fairness of the Settlement Agreement to the Plan and (b) authorizing the Retirement Plans Committee to execute payment of funds from the Wal-Mart Stores, Inc. Profit Sharing and 401(k) Plan's forfeiture suspense account as set forth in Section 7.3.1.

2.2.2. Defendants and Plaintiff's Counsel on behalf of the Named Plaintiff will comply with reasonable requests for information made by the Independent Fiduciary for the purpose of reviewing this Settlement Agreement.

2.2.3. At least twenty (20) days before the Fairness Hearing is held, the Plan, acting by and through the Independent Fiduciary engaged for the specific purpose of reviewing this Settlement Agreement, and the Independent Fiduciary, in its capacity as a fiduciary of the Plan, shall have agreed in writing, in consideration of the terms herein: (a) to grant, effective upon the entry of the Final Order by the Court, releases of the Releasees, which such releases (i) shall release the same claims as the Releases set forth in Article 3 below, and (ii) shall be determined by the Independent Fiduciary to meet the requirements of the Class Exemption; and (b) to authorize the Retirement Plans Committee to execute payment of funds from the Wal-Mart Stores, Inc. Profit Sharing and 401(k) Plan's forfeiture suspense account as set forth in Section 7.3.1. The Independent Fiduciary shall have no authority to renegotiate or seek to alter any of the terms of the Settlement as set forth in this Settlement Agreement.

2.2.4. If the Independent Fiduciary fails to timely grant the releases prescribed in Section 2.2.3 above or authorize the transfer of funds as set forth in Section 7.3.1, the Settlement shall terminate and become null and void, and the provisions of Section 10.2 shall apply, unless the Parties agree to extend the deadline for the grant of such releases.

2.3. <u>Condition #3: Court Approval</u>. The Settlement shall have been approved by the Court in accordance with the following steps.

2.3.1. <u>Motion for Preliminary Approval of Settlement and of Notices</u>. Within twenty-one (21) days after the Agreement Execution Date, Named Plaintiff will file a motion ("Preliminary Motion") with the Court for an order in the form annexed hereto as Exhibit 1, including the exhibits thereto (the "Preliminary Approval Order"). Named Plaintiff shall give Defendants at least seven (7) days to review the Preliminary Motion before filing.

2.3.2. <u>Issuance of Class Notice</u>. Subject to the requirements of the Preliminary Approval Order, Named Plaintiff shall cause the Class Notice to be disseminated. The Class Notice will be made as follows: (a) by publishing the Summary Notice by publication in USA Today and by release on BusinessWire; (b) by publishing the notice on www.Walmartbenefits.com; and (c) by publishing the notice in the portion of www.benefits.ml.com exclusively available to participants in the Plan. The Class Notice shall conform to the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Local Civil Rules of the Western District of Missouri and any other applicable law. The Parties will seek to set the Fairness Hearing for a date promptly after the filing of the Preliminary Motion, but in no event shall the Fairness Hearing be set less than 90 days after the last date on which the appropriate Federal official and the appropriate State officials are served with the notice under CAFA as described in Section 2.3.3.

2.3.3. <u>Issuance of Notice under CAFA</u>. Walmart Defendants and Merrill Lynch Defendants shall prepare and provide the notices required of each of them by CAFA, including the notices to the United States Department of Justice and to the Attorneys General

of all states in which members of the Settlement Class reside, as specified by 28 U.S.C. § 1715, within two (2) business days of filing the Preliminary Motion.

2.3.4.  Request by Court or Named Plaintiff for Information.  If the Court deems it necessary for Defendants to supply information in their possession as part of the Court's review of the Settlement Agreement, Defendants agree to reasonably expedite provision of such information as directed by the Court.  If Named Plaintiff reasonably deems it necessary for Defendants to supply information in their possession in order to respond to any timely filed objection, Defendants agree to reasonably expedite provision of such information, which Named Plaintiff shall treat as confidential, subject to the Protective Order in this Action (Dkt. No. 75), to be used only for purposes of obtaining approval of the Settlement Agreement, and to be returned promptly to Defendants upon Final approval or disapproval of the Settlement Agreement.

2.3.5.  The Fairness Hearing.  The Court will conduct a hearing, to be scheduled no sooner than 90 days after the last date on which the appropriate Federal official and the appropriate State officials are served with the notice under CAFA as described in Section 2.3.3, at which it will consider whether the Settlement is fair, reasonable, and adequate ("Fairness Hearing").  On or after the Fairness Hearing the Court will determine: (i) whether to enter judgment finally approving the Settlement and dismissing the Action (which judgment is referred to herein as the "Final Order") and (ii) what legal fees and expenses should be awarded to Plaintiff's Counsel and what compensation should be awarded to Named Plaintiff as contemplated by Article 11 of this Settlement Agreement.  The Parties agree to support entry of the Final Order as contemplated by clause (i) of this Section 2.3.5; however, Defendants agree not to take any position, and are not required to take any position, with respect to the matters described in clause (ii) of this Section 2.3.5 (provided that nothing contained herein shall prohibit the Independent Fiduciary from taking a position with respect to such matters), nor will any of the Defendants enter into any agreement that restricts the application or disposition of the Settlement Fund.  The Parties covenant and agree that they will take all reasonable steps and reasonably cooperate with one another in obtaining the Final Order as contemplated hereby at the Fairness Hearing and will not do anything inconsistent with obtaining the Final Order.

2.4.  Condition #4:  Funding of Cash Amount.  Defendants and Insurer responsible for the Cash Amount shall have caused deposits to be made to fully fund the Cash Amount in the Settlement Fund Account in accordance with Section 7.3.

2.5.  Condition #5: Resolution of Regulatory Issues (If Any).  If the United States Department of Labor or any other regulatory or administrative body commences an action or other proceeding against any of Defendants regarding any subject matter of the Action then that Defendant may terminate this Settlement Agreement by written notice given pursuant to Section 12.10 at any time up to fifteen (15) days before the Fairness Hearing.  If any Defendant timely gives such notice, the Settlement Agreement shall become null and void on the tenth (10th) day after delivery of such notice unless, prior to the Fairness Hearing, the Defendant that delivered such notice waives this provision by written notice given pursuant to Section 12.10. If the Settlement Agreement is terminated pursuant to this Section 2.5, and if the Court

determines as a result that supplemental notice should be given to members of the Settlement Class, then the cost of such notice shall be the responsibility of the Party terminating the Settlement Agreement.

2.6.     Condition #6: Finality of Final Order.   The Final Order is the Order or Judgment entered by the Court approving the Settlement Agreement, attached hereto as Exhibit 2, and has become Final in accordance with Section 1.14 above.

2.7.     Condition #7: Dismissal of Claims.   Upon the entry of the Final Order, the Action and all claims asserted therein shall be dismissed with prejudice as against Defendants.

3.   RELEASES

3.1.     Released Claims.   Effective upon the entry of the Final Order and except as set forth in Section 3.4.1, 3.4.3, and 3.4.4 below, Named Plaintiff, on behalf of himself and as Class Representative, the Plan, and the Settlement Class shall be deemed to have, and by operation of the Final Order shall have fully, finally, and forever released, relinquished, and discharged all Defendants, Defendants' Affiliates, and any person or entity that at any time served as a named or functional fiduciary or a trustee of the Plan, as well as any representative of any Defendant, Affiliate of a Defendant, or any such person or entity, including, but not limited to, their attorneys, agents, directors, officers, and employees, and the Insurer (the "Released Parties") from, and shall forever be enjoined from prosecution of all of the Released Parties for, any and all actual or potential claims, actions, causes of action, demands, obligations, liabilities, attorneys' fees, and costs through the date of execution of the Settlement Agreement whether arising under local, state, or federal law, whether by statute, contract, common law, equity, or otherwise, whether brought in an individual, representative, or any other capacity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated that have been, could have been, or could be brought (a) by Named Plaintiff; (b) by or on behalf of the Plan; and/or (c) by or on behalf of any member of the Settlement Class, and that arise out of or are related in any way to the acts, omissions, facts, matters, transactions, or occurrences that have been alleged or referred to in the Action, including but not limited to, any actual or potential claims, actions, causes of action, demands, obligations, liabilities, attorneys' fees, and costs based on: (1) breach of fiduciary duties to the Plan, to Named Plaintiff, to the Settlement Class, and to the other participants and beneficiaries of the Plan in connection with fees, expenses, and the selection and retention of Investment Options relating to the Plan; (2) failure to provide complete and accurate information to the Plan's fiduciaries or the Plan's participants and beneficiaries regarding Plan-related fees and expenses and the process for selecting Investment Options; (3) failure to appoint, remove and/or adequately monitor the Plan's fiduciaries; (4) violation of duties related to the selection and retention of Investment Options relating to the Plan; (5) knowing of a breach of fiduciary duty and participating or enabling the breach of fiduciary duty, or knowing of the breach and failing to remedy it; (6) engaging in prohibited transactions in violation of ERISA**;** (7) unjust enrichment; (8) claims that would be barred by principles of res judicata had the claims asserted in the Action been fully litigated and resulted in a final judgment or order; and (9) claims that pertain to the allocation of the

Settlement Fund to the Plan or any participant or beneficiary of the Plan pursuant to the Plan of Allocation (collectively, "Released Claims").

3.2.    Releases of Named Plaintiff, the Plan and the Settlement Class.   Except as set forth in Section 3.4.1 and 3.4.4 below, Defendants shall be deemed to have, and by operation of the Final Order shall have, fully, finally, and forever released, relinquished, and discharged from, and shall forever be enjoined from prosecution of Named Plaintiff, the Plan and the Settlement Class for, any and all actual or potential claims, actions, causes of action, demands, obligations, liabilities, attorneys' fees, or costs, whether arising under local, state, or federal law, whether by statute, contract, common law, or equity, whether brought in an individual, representative, or any other capacity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated that have been, could have been, or could be brought by Defendants and arise out of or are related in any way to the acts, omissions, facts, matters, transactions, or occurrences that have been alleged or referred to in the Action, or the method and manner of the distribution of the Settlement Fund or Plan of Allocation (collectively "Defendants' Released Claims"). Notwithstanding the foregoing description of Defendants' Released Claims, nothing in this Settlement Agreement shall preclude Merrill Lynch from asserting claims it may otherwise have for timely payment for services rendered in connection with the Plan, including in accordance with Section 8.2, or from pursuing any remedies that would otherwise be available for a failure to provide prompt and adequate payment for such services.

3.3.    Reciprocal Releases among Walmart Defendants.  Each Walmart Defendant absolutely and unconditionally releases and forever discharges each and every other Person who is a Walmart Defendant from any and all claims relating to the Released Claims, including any and all claims for contribution or indemnification for such claims other than as required in this Settlement Agreement.  The foregoing notwithstanding, nothing in this Settlement Agreement shall be construed as a release or waiver by any Walmart Defendant of any claim, right, or defense against another Walmart Defendant that is unrelated to the Action or defense of this Action.

3.4.    Scope of Releases.

3.4.1.            The releases set forth in Sections 3.1, 3.2, and 3.3 (the "Releases") are not intended to include the release of any rights or duties arising out of this Settlement Agreement, including the express warranties and covenants in this Settlement Agreement.

3.4.2.            The Parties intend and agree that the Releases granted in this Article 3 shall be effective as a bar to any and all currently unsuspected, unknown, or partially known claims within the scope of their express terms and provisions.  Accordingly, Named Plaintiff hereby expressly waives, on his own behalf and on behalf of all members of the Settlement Class and on behalf of the Plan, and Defendants hereby expressly waive, any and all rights and benefits respectively conferred upon them by the provisions of Section 1542 of the California Civil Code and all similar provisions of the statutory or common laws of any other State, Territory, or other jurisdiction.   Section 1542 reads in pertinent part:

"A general release does not extend to claims that the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

Named Plaintiff, on his own behalf and on behalf of all members of the Settlement Class and on behalf of the Plan, and Defendants each hereby acknowledge that the foregoing waiver of the provisions of Section 1542 of the California Civil Code and all similar provisions of the statutory or common law of any other State, Territory, or other jurisdiction was separately bargained for and that neither Named Plaintiff, on the one hand, nor Defendants, on the other, would enter into this Settlement Agreement unless it included a broad release of unknown claims. Named Plaintiff, on his own behalf and on behalf of all members of the Settlement Class and on behalf of the Plan, and Defendants each expressly agree that all release provisions in this Settlement Agreement shall be given full force and effect in accordance with each and all of their express terms and provisions, including those terms and provisions relating to unknown, unsuspected, and future claims, demands, and causes of action. Named Plaintiff assumes for himself, and on behalf of the Settlement Class and on behalf of the Plan, and Defendants assume for themselves, the risk of his, her or its respective subsequent discovery or understanding of any matter, fact, or law, that if now known or understood, would in any respect have affected his, her, or its entering into this Settlement Agreement.

3.4.3.        Claims Not Released Against Walmart Defendants. Notwithstanding the foregoing releases, nothing in this Settlement Agreement shall release, bar, waive, or otherwise affect claims asserted against Walmart Defendants in *Alexander-Jones, et al. v. Wal-Mart Stores, Inc., et al.*, Case No. 3:10-CV-03005 CRB (N.D. Cal.); provided, however, that this Section 3.4.3 shall not be construed to permit Named Plaintiff, any member of the Settlement Class, or the Plan to recover more than one hundred percent of his, her, its or their losses under ERISA. The Parties agree that the question of the extent, if any, to which the Settlement Amount (or any portion thereof allocated to members of the Settlement Class pursuant to the Plan of Allocation) constitutes a reduction in the amount of any claim asserted by or on behalf of any person in *Alexander-Jones, et al. v. Wal-Mart Stores, Inc., et al.*, is to be determined in that case, and the Parties reserve all rights with respect to positions they may take on that question in that case. The settlement and dismissal of the Action shall also not release, bar or waive (i) any ERISA section 502(a)(1)(B) claim for vested benefits by any participant or beneficiary of the Plan where such claims are unrelated to any matter asserted in this Action, or (ii) any ERISA claims that the Plan fiduciaries acted imprudently in offering Walmart stock as an Investment Option.

3.4.4.        Claims Not Released Among Defendants and Plan Relating to Services Merrill Lynch Provided to the Plan: Notwithstanding the foregoing, the settlement and dismissal of the Action shall not release, bar or waive any potential claims or defenses between Walmart Defendants, and/or the Plan, on the one hand, and Merrill Lynch Defendants, on the other hand, arising out of or relating to Merrill Lynch Defendants' provision of services to the Plan, except to the extent that such claims and defenses are encompassed in the releases set forth in Sections 3.1 and 3.2 above.

4. <u>COVENANTS</u>

The Parties covenant and agree as follows:

4.1.    <u>Covenants Not to Sue</u>.

4.1.1.      Named Plaintiff covenants and agrees on his own behalf, and on behalf of the Settlement Class and on behalf of the Plan: (i) not to commence or assert against any Released Party any action or claim based on or arising from any Released Claim; and (ii) that the foregoing covenants and agreements shall be a complete defense to any such claims against any of the respective Released Parties.

4.1.2.      Defendants covenant and agree (i) not to assert against Plaintiff any claim released under Section 3.2, (ii) not to assert against any other Defendant any claim released under Section 3.2; and (iii) that the foregoing covenants and agreements shall be a complete defense to any such claims against any of the respective Plaintiff or Defendants.

4.2.    <u>Taxation of Settlement Fund</u>. Named Plaintiff acknowledges on his own behalf, and on behalf of the Settlement Class that the Released Parties and Insurer have no responsibility for any taxes due on funds once deposited in the Settlement Fund Account or that Named Plaintiff or Plaintiff's Counsel receive from the Settlement Fund, should any be awarded pursuant to Article 11 hereof. Nothing herein shall constitute an admission or representation that any taxes will or will not be due on the Settlement Fund.

4.3.    <u>Cooperation</u>. Defendants shall reasonably cooperate with Plaintiff's Counsel by enabling the posting of the Class Notice and Summary Class Notice on www.Walmartbenefits.com and www.benefits.ml.com, as provided under Section 2.3.2.

5. <u>REPRESENTATIONS AND WARRANTIES</u>

5.1.    <u>Named Plaintiff's Representations and Warranties</u>.

5.1.1.      Named Plaintiff represents and warrants that he has not assigned or otherwise transferred any interest in any Released Claims against any Released Party, and further covenants that he will not assign or otherwise transfer any interest in any Released Claims.

5.1.2.      Pursuant to Articles 3 and 4, Named Plaintiff represents and warrants that he shall have no surviving claim or cause of action against any of the Released Parties with respect to the Released Claims.

5.2.    <u>Parties' Representations and Warranties</u>. The Parties, and each of them, represent and warrant:

5.2.1.      That they are voluntarily entering into this Settlement Agreement as a result of arm's length negotiations among their counsel, with the assistance and

recommendation of the mediator, Judge Layn R. Phillips; that in executing this Settlement Agreement they are relying solely upon their own judgment, belief and knowledge, and the advice and recommendations of their own independently selected counsel, concerning the nature, extent and duration of their rights and claims hereunder and regarding all matters which relate in any way to the subject matter hereof; and that, except as provided herein, they have not been influenced to any extent whatsoever in executing this Settlement Agreement by any representations, statements or omissions pertaining to any of the foregoing matters by any party or by any Person representing any party to this Settlement Agreement. Each of the Parties assumes the risk of mistake as to facts or law; and

5.2.2.                    That they have carefully read the contents of this Settlement Agreement, and this Settlement Agreement is signed freely by each Person executing this Settlement Agreement on behalf of each of the Parties. The Parties and each of them further represent and warrant to each other that he, she, or it has made such investigation of the facts pertaining to the Settlement, this Settlement Agreement and all of the matters pertaining thereto, as he, she, or it deems necessary.

5.3.    Counsel Signatories:  Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Settlement Agreement on behalf of his or her respective clients, subject to Court approval. It is agreed that because the Settlement Class is so numerous, it is impossible or impractical to have each member of the Settlement Class execute this Settlement. The Class Notice will provide the Settlement Class with a summary of this Settlement and will advise the Settlement Class of the binding nature of the Releases. The Class Notice will have the same force and effect as if this Settlement were executed by each member of the Settlement Class.

6. NO ADMISSION OF LIABILITY

The Parties understand and agree that this Settlement Agreement embodies a compromise settlement of disputed claims, and that nothing in this Settlement Agreement, including the furnishing of consideration for this Settlement Agreement, shall be deemed to constitute any finding of fiduciary status under ERISA or wrongdoing by any of the Defendants, or give rise to any inference of fiduciary status under ERISA or wrongdoing or admission of wrongdoing or liability in this or any other proceeding. This Settlement Agreement and the payments made hereunder are made in compromise of disputed claims and are not admissions of any liability of any kind, whether legal or factual. Defendants expressly deny any liability or wrongdoing with respect to the matters alleged in the Complaint. Neither the fact nor the terms of this Settlement Agreement shall be offered or received in evidence in any action or proceeding for any purpose, except (i) in an action or proceeding arising under this Settlement Agreement or arising out of or relating to the Preliminary Approval Order or the Final Order, or (ii) in an action or proceeding where the Releases provided pursuant to this Settlement Agreement may serve as a bar to recovery.

## 7. THE SETTLEMENT AMOUNT AND SETTLEMENT FUND ACCOUNT

7.1.    The Settlement Amount.  In consideration of, and expressly in exchange for, all of the promises and agreements set forth in this Settlement Agreement, the Settlement Amount shall consist of the following amounts contributed by the Persons so named:  by Walmart Defendants and/or Insurer, the sum of Three Million, Five Hundred Thousand Dollars ($3,500,000) ("Company and/or Insurer Cash Amount"); and by Merrill Lynch, the sum of Ten Million Dollars ($10,000,000) ("Merrill Lynch Cash Amount") (collectively the "Settlement Amount").   The Merrill Lynch Cash Amount is, as of the Agreement Execution Date, held by the Wal-Mart Stores, Inc. Profit Sharing and 401(k) Plan's forfeiture suspense account. The Settlement Amount will be made available for settlement purposes pursuant to Sections 7.3.1 and 7.3.2.

7.2.    Sole Monetary Contribution.  The Settlement Amount shall constitute a non-recourse settlement amount, and it shall be the full and sole monetary contribution made by or on behalf of Defendants in connection with the Settlement effected between Named Plaintiff and Defendants under this Settlement Agreement.  In no circumstance shall anyone other than the Company, Merrill Lynch, and Insurer have any personal obligation to fund any or all of the Settlement Amount.  The Settlement Amount specifically covers any claims for costs and attorneys' fees by Named Plaintiff, on his behalf or on behalf of the Settlement Class, any costs or expenses of the Class Notice, and any compensation to Named Plaintiff.  Except as set forth in Section 8.2 below or as otherwise specified in this Settlement Agreement, the Parties shall bear their own costs and expenses (including attorneys' fees) in connection with effectuating the Settlement and securing all necessary court orders and approvals with respect thereto.

7.3.    Settlement Fund Account:  Before entry of the Preliminary Approval Order, Plaintiff's Counsel shall establish at a financial institution acceptable to counsel for Defendants and Insurer, and to be approved by the Court in the Preliminary Approval Order ("Financial Institution"), a settlement fund account ("Settlement Fund Account") which is an interest-bearing account and considered a common fund created as a result of the Action.  Plaintiff's Counsel shall promptly provide to Insurer and Defendants written notification of the date of establishment of the Settlement Fund Account, Financial Institution name, address, ABA number, account number, account name, taxpayer identification number, and any additional information needed to deposit the Cash Amount into the Settlement Fund Account.  Plaintiff's Counsel shall direct the Financial Institution to make distributions by wire transfer or check from the Settlement Fund only in strict accordance with the Settlement Agreement and Court Orders.  No other disbursements may be authorized by Plaintiff's Counsel.

7.3.1.                    The Settlement Fund Account shall be funded as follows. No later than (10) days after entry of the Preliminary Order the Company shall deposit the Walmart Class Notice Advance Amount into the Settlement Fund Account, and the Plan, upon written direction from the Merrill Lynch Defendants, shall deposit the Merrill Lynch Class Notice Advance Amount from the Wal-Mart Stores, Inc. Profit Sharing and 401(k) Plan's forfeiture suspense account into the Settlement Fund Account.  The Parties agree that the Class Notice Amount is part of the Settlement Amount, that the Walmart Class Notice Advance

Amount is part of the Walmart Cash Amount, and the Merrill Lynch Class Notice Advance Amount is part of the Merrill Lynch Cash Amount. The cost and expenses of Class Notice shall be paid by Plaintiff's Counsel from the Settlement Fund Account. The remainder of the Settlement Fund Account shall be funded as follows. No later than twenty (20) days after entry of the Final Order the Company shall cause the Insurer to deposit its portion of the Company and/or Insurer Cash Amount into an account with a third-party escrow agent ("Escrowed Funds"). No later than five (5) business days after the Effective Date of Settlement: (a) upon the direction of the Insurer, the Company shall cause the Escrowed Funds of the Insurer (less interest thereon) to be disbursed and deposited into the Settlement Fund Account; (b) pursuant to written authorization of the Plan's Independent Fiduciary and pursuant to written direction of Merrill Lynch Defendants, the Retirement Plans Committee shall cause the Merrill Lynch Cash Amount, as defined in Section 7.1, less the Merrill Lynch Class Notice Advance Amount, to be paid from the Wal-Mart Stores, Inc. Profit Sharing and 401(k) Plan's forfeiture suspense account and deposited in the Settlement Account; and (c) the Company shall deposit the remainder of the Company and/or Insurer Cash Amount, less the Walmart Class Notice Advance Amount, into the Settlement Fund Account.

        7.3.2.        Should any transfer into the Settlement Fund Account fail to occur in accordance with the terms of Section 7.3.1, Plaintiff shall have the right either to compel transfer by filing a motion with the Court in this Action or to terminate the Settlement. Termination shall render the Settlement null and void, with the Parties and the Plan reserving all rights and returning to their respective positions on the day immediately before the Agreement Execution Date, including with respect to class certification. If the Independent Fiduciary fails to take the actions set forth in Section 2.2, if the Court fails to finally approve the Settlement, or if the Settlement terminates or fails for any reason, all of the money held in the Settlement Fund Account, together with interest earned thereon, shall be returned promptly to the Parties in proportion to their contributions, and the Parties will return to their respective positions on the day immediately before the Agreement Execution Date. The only deductions from the amounts returned from the Settlement Fund Account shall be any costs incurred in connection with the administration of the Settlement Fund, including but not limited to taxes, accounting, or fees associated with establishing and maintaining the Settlement Fund Account, with such deductions allocated to the Company, Insurer, and Merrill Lynch on a basis consistent with their obligations to make contributions to the Cash Amount. Under no circumstances shall the Insurer or Defendants be responsible for any payments, costs or fees whatsoever under this paragraph or the Settlement beyond their respective obligations to cause the Cash Amount to be deposited in the Settlement Fund Account as specified in Sections 7.3.1 and 2.2 above.

        7.3.3.        The Settlement Fund shall be structured and managed to qualify as a Qualified Settlement Fund under Section 468B of the Internal Revenue Code and provide reports to Plaintiff's Counsel for tax purposes. It is intended that the Settlement Fund be structured and administered to preserve, to the maximum degree possible, the tax benefits associated with ERISA-qualified plans. The Parties shall not take a position in any filing or before any tax authority inconsistent with such treatment. All taxes on the income of the Qualified Settlement Fund and tax-related expenses incurred in connection with the taxation of the Qualified Settlement Fund shall be the responsibility of Plaintiff and shall be paid out of

the Qualified Settlement Fund. Plaintiff's Counsel shall have signature authority over the Settlement Fund Account, and shall direct the Financial Institution to pay from the Settlement Fund the reasonable cost of administering the Settlement Fund without further order of the Court, which expenses shall include (i) expenses associated with the preparation and filing of all tax reports and tax returns required to be filed by the Settlement Fund; (ii) payment of any taxes owed by the Settlement Fund; (iii) expenses associated with the preparation and issuance of any required Forms 1099 associated with payments from the Settlement Fund; (iv) fees charged and expenses incurred by the Financial Institution associated with administration of the Settlement Fund; and (v) expenses incurred by Plaintiff's Counsel in preparing notice and any supplemental notice to the Settlement Class. Plaintiff's Counsel may instruct the Financial Institution to reserve any portion of the Settlement Fund for the purpose of satisfying future or contingent expenses or obligations, including expenses of Settlement Fund administration or any disbursement provided under the terms of this Settlement Agreement. Defendants take no position, directly or indirectly, with respect to such matters. The Parties acknowledge and agree that Defendants shall have no authority, control, or liability in connection with the design, management, administration, investment, maintenance, or control of the Settlement Fund, or for any expenses the Settlement Fund may incur or for any taxes that may be payable by the Settlement Fund or for any distributee therefrom.

8. <u>PAYMENTS FROM THE SETTLEMENT FUND</u>

     8.1. <u>Expenses of Class Notice</u>. Plaintiff's Counsel may direct the Financial Institution in writing, with notice to Defendants, to disburse from the Settlement Fund an amount for the payment of reasonable costs of the Class Notice from the Class Notice Amount.

     8.2. <u>Disbursements from the</u> <u>Settlement Fund</u>. Except as provided in Section 7.3.1, Section 8.1 or in Article 11, no distribution of any part or all of the Settlement Fund shall be paid from the Settlement Fund until the Financial Institution has received (a) a joint notice signed by Plaintiff's Counsel and Defendants' Counsel (to be signed on the next business day following the Effective Date of Settlement, or as soon as practicable thereafter) that directs the Financial Institution to disburse the Net Proceeds to the Trust for the Plan for distribution by the Plan's trustees in accordance with the Plan of Allocation, or (b) a Court order directing that the Settlement Fund be disbursed and designating the appropriate recipient. The Plan of Allocation shall be prepared by Plaintiff's Counsel and submitted to the Court for approval in connection with Final approval of the Settlement, and shall provide for the allocation of the Settlement Fund net of the disbursements called for in Sections 7.3.3, 8.1, 11.1 and 11.2 ("Net Proceeds"). Defendants shall have no responsibility for structuring the content of the Plan of Allocation, but will have the right to review it for feasibility and cost of implementation before presentation to the Court. The Plan of Allocation will specify how the Net Proceeds will be used to offset future Plan expenses and administration fees on a Plan-wide basis, and how such payments will reduce the amount of such fees that otherwise would be charged to then existing individual Plan participant accounts. Fees already charged to individual participant accounts before the date upon which future Plan expenses and fees are paid from the Net Proceeds will not be reduced. Plaintiff shall have no responsibility for or liability with respect to distribution of the Net Proceeds once they have been provided to the Plan's trustees. Costs of implementation of the Plan of Allocation shall be paid from the Net Proceeds. The Parties

contemplate that the Plan of Allocation shall not require Merrill Lynch to perform any additional trustee, recordkeeping or other administrative services for the Plan or its participants beyond those encompassed by, and compensated pursuant to, Merrill Lynch's existing arrangements with Walmart and the Plan. If the Plan of Allocation requires such additional services, Merrill Lynch shall be entitled to reasonable compensation for performing such additional services. Such additional services shall be performed by Merrill Lynch only after approval by an authorized Plan fiduciary of both the services to be performed and the terms of Merrill Lynch's compensation for those services. Other than as stated in this Section 8.2 Defendants and their counsel shall not be reimbursed for any work they do to facilitate the Plan of Allocation. Nothing herein shall constitute approval or disapproval of the Plan of Allocation by Defendants, and Defendants shall have no responsibility or liability for the Plan of Allocation and shall take no position for or against the Plan of Allocation.

9.  <u>NON-MONETARY CONSIDERATION FOR SETTLEMENT</u>

    9.1.    For a period of two years commencing on the Effective Date of Settlement the Retirement Plans Committee of the Plan, to further its goal to offer Investment Options with fees that are reasonable, shall: (a) continue to retain a consultant or independent advisor who is not otherwise affiliated with the Company and who has acknowledged in writing fiduciary status with the Plan within the meaning of ERISA section 3(21)(A), to provide independent advice and recommendations on selection and monitoring of Investment Options; and (b) review the consultant or independent advisor for conflicts of interest on an annual basis.

    9.2.    For a period of two years commencing on the Effective Date of Settlement the Retirement Plans Committee shall continue to make available web-based investment education resources, including a retirement planning calculator, to participants of the Plan that are the same as, or comparable to, those provided to participants on www.Walmartbenefits.com and www.benefits.ml.com, as of the date on which this Settlement Agreement is fully executed. Such resources shall continue to be made available to participants on www.Walmartbenefits.com and on www.benefits.ml.com. Merrill Lynch agrees to make such resources available on www.benefits.ml.com, as consistent with the terms of Merrill Lynch, Pierce, Fenner & Smith Incorporated's retention as the Plan's recordkeeper. The Retirement Plans Committee will continue to explore enhancements to its web-based participant investment education program, including enhancements intended to make Retirement Education and Tools more accessible on www.Walmartbenefits.com.

    9.3.    For a period of two years commencing on the Effective Date of Settlement the Retirement Plans Committee shall continue its ongoing process to remove from the Plan's Investment Options, and shall not add as Investment Options, funds that are retail mutual funds, funds that pay 12b-1 fees, and funds that provide revenue sharing, per-position or per-participant sub-transfer agent fees, or other fees, to any party in interest as defined in ERISA § 3(14)(A), including the Plan's trustee or recordkeeper. As of the date on which this Settlement Agreement is fully executed, the Plan offers two index funds—the Barclays Russell 1000 Index Trust and the Barclays Russell 2000 Index Trust—on its core menu. The Retirement Plans Committee will consider, where and when appropriate, adding other low cost, passively-managed investment vehicles to the Investment Options.

9.4.    For a period of two years commencing on the Effective Date of Settlement the Retirement Plans Committee shall (a) comply with the Fiduciary Requirements for Disclosure in Participant-Directed Individual Account Plans, Final Rule, 75 Fed. Reg. 64910 at 64939 (October 20, 2010), which shall include posting information about the Plan's Investment Options in the format set forth in the Model Comparative Chart, "Appendix to §2550.404a-5," 75 Fed. Reg. at 64942, on www.benefits.ml.com and shall (i) include posting an active link in the Comparative Chart to http://www.dol.gov/ebsa/publications/401k employee.html or (ii) if such link is not feasible, include posting an active link to http://www.dol.gov/ebsa/publications/401k employee.html in proximity to the online version of the Comparative Chart on www.benefits.ml.com, and (b) include a link on www.benefits.ml.com to the SEC Cost Calculator found at http://www.sec.gov/investor/tools/mfcc/get-started.htm, with such link located in proximity to the online version of the Comparative Chart and with guidance to participants on how to complete the SEC Cost Calculator for the Investment Options. Merrill Lynch agrees to the placements of such links on www.benefits.ml.com, as consistent with the terms of Merrill Lynch, Pierce, Fenner & Smith Incorporated's retention as the Plan's recordkeeper.

9.5.    Other than as specifically provided in this Section 9, Walmart Defendants and the Retirement Plans Committee shall maintain full authority to terminate, modify, and amend the Plan and shall maintain full control over the administration of the Plan, including selection of investment options, record keepers, consultants, and independent advisors.

10. TERMINATION OF THE SETTLEMENT AGREEMENT

10.1.    Termination. Automatic termination of this Settlement Agreement, thereby making the Settlement Agreement null and void, will occur under the following circumstances:

10.1.1.                If the Court declines to approve the Settlement and if such order declining approval has become Final, then this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the date that any such order becomes Final.

10.1.2.                If the Court issues an order modifying the Settlement Agreement, and if, within thirty-one (31) days after the date of any such ruling, or, within thirty-one (31) days after the date of the Court's order following a motion for reconsideration of any such ruling, whichever is later, the Parties have not agreed in writing to proceed with all or part of the Settlement Agreement as modified by the Court or the Parties, then provided that no appeal is then pending from either such ruling, this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the thirty-first (31st) day after issuance of the order referenced in this Section 10.1.2.

10.1.3.                If the Eighth Circuit reverses the Court's order approving the Settlement, and if within thirty-one (31) days after the date of any such ruling the Parties have not agreed in writing to proceed with all or part of the Settlement Agreement as modified

- 19 -

by the Court or by the Parties then, provided that no appeal is then pending from such ruling this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the thirty-first (31st) day after issuance of the order referenced in this Section 10.1.3.

10.1.4.     If the Supreme Court of the United States reverses an Eighth Circuit order approving the Settlement, and if within thirty-one (31) days after the date of any such ruling the Parties have not agreed in writing to proceed with all or part of the Settlement Agreement as modified by the Court or by the Parties then this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the thirty-first (31st) day after issuance of the order referenced in this Section 10.1.4.

10.1.5.     If any or all of the conditions of Article 2 of this Settlement Agreement are not fully satisfied or waived in accordance with their terms and on the timetables set forth in that Article, then this Settlement Agreement shall terminate, and thereupon become null and void.

10.2.  Consequences of Termination of the Settlement Agreement.  If the Settlement Agreement is terminated and rendered null and void for any reason specified in Section 10.1, the following shall occur:

10.2.1.     Plaintiff's Counsel shall within ten (10) days after the date of termination of the Settlement Agreement notify the Financial Institution in writing to return to the Company, Insurer, and Merrill Lynch the amounts contributed by each of them to the Settlement Fund, with all net income earned thereon, minus the expenses charged by the Financial Institution, and any expense of the Settlement Fund disbursed or owed pursuant to Articles 7 or 8, directing the Financial Institution to effect such return within ten (10) days. Deductions for amounts disbursed or owed as provided in this Section 10.2.1 shall be made in proportion to the respective contributions to the Cash Amount made by the Company, the Insurer, and Merrill Lynch.

10.2.2.     The Action shall for all purposes with respect to the Parties revert to its status as of the day immediately before the Agreement Execution Date, including a lifting of any stay of the Action.

10.2.3.     All provisions of this Settlement Agreement shall be null and void except as otherwise provided herein.  Neither the fact nor the terms of this Settlement Agreement shall be offered or received in evidence in any action or proceeding for any purpose, except as provided by Section 6.

11. ATTORNEYS' FEES AND EXPENSES

11.1.  Application for Attorneys' Fees and Expenses.  Plaintiff's Counsel may apply to the Court for an award to Plaintiff's Counsel of attorneys' fees in an amount not to exceed thirty percent (30%) of the Settlement Fund, and for reimbursement of costs and expenses, to be paid from the Settlement Fund.  Defendants will not take any position on Plaintiff's Counsel's application for fees, costs, or reimbursement of expenses.  Defendants do not agree

or concede that the amount of attorneys' fees, costs and expenses that may be sought by Plaintiff's Counsel is appropriate or reasonable, but simply take no position; moreover, nothing in this Settlement Agreement shall be construed otherwise. The Parties acknowledge and agree that Defendants shall have no authority, control, or liability in connection with Plaintiff's Counsel's attorneys' fees, costs, and expenses. Plaintiff's Counsel shall be entitled to receive attorneys' fees and expenses from the Settlement Fund to the extent awarded by the Court, and payable as set forth in Section 11.3 herein.

      11.2. <u>Application for Compensation to Named Plaintiff</u>: Plaintiff's Counsel may apply to the Court for an award to Named Plaintiff in an amount not to exceed Twenty Thousand Dollars ($20,000.00) for compensation to Named Plaintiff, payable solely from the Settlement Fund, and the Named Plaintiff shall be entitled to receive such compensation from the Settlement Fund to the extent awarded by the Court, and payable as set forth in Section 11.3 herein. Defendants will not take any position on the amount to be requested as an award to Named Plaintiff.

      11.3. <u>Disbursement of Attorneys' Fees and Expenses and Named Plaintiff Compensation</u>. Upon the later of (i) entry of an order by the Court awarding payment of attorneys' fees and expenses from the Settlement Fund and/or payment of Named Plaintiff's compensation from the Settlement Fund, and (ii) the Effective Date of Settlement, Plaintiff's Counsel may instruct the Financial Institution in writing to disburse such payments from the Settlement Fund, which the Financial Institution shall implement within one (1) business day of receipt and clearing of deposits of all funds pursuant to Section 7.3.1. If at the time of any disbursement from the Settlement Fund pursuant to Article 8.2 there shall be a pending Application for Attorneys' Fees and Expenses or for Compensation to Named Plaintiff, there shall be reserved in the Settlement Fund an amount equal to the amount of the pending application, until such time as the Court shall rule upon such application and such ruling shall become Final.

## 12. <u>MISCELLANEOUS PROVISIONS</u>.

      12.1. <u>Confidentiality</u>: The negotiations and terms of this Settlement will remain strictly confidential and shall not be revealed to anyone other than the Parties, their accountants and advisors, counsel, the Independent Fiduciary, their retained consultants, Judge Layn R. Phillips or another mediator or arbitrator agreed to by the Parties. Notwithstanding the provisions of this subsection, the following is permitted:

      12.1.1.       Walmart and Merrill Lynch may disclose the terms of the Settlement in filings that they are required to make, including filings with the Securities and Exchange Commission, such as 10-Q and 10-K filings.

      12.1.2.       Merrill Lynch may respond to inquiries from its retirement plan services clients or prospective retirement plan services clients concerning the Settlement by providing or summarizing information contained in the Settlement Agreement, Preliminary or Final Approval papers or Class Notice, stating that Merrill Lynch continues to provide

services to the Plan, and asserting its position that it settled the Action amicably in order to resolve potential disputes or concerns involving a valued client.

          12.1.3.          Upon the filing of Named Plaintiff's Preliminary Motion with the Court, Plaintiff's Counsel may announce the fact of Settlement and post the Complaint, Settlement Agreement, Preliminary and Final Approval papers, and Class Notice on the website referenced in the Class Notice and may disclose the terms of the Settlement in the filings made as part of the Preliminary Motion. Unless mutually agreed in writing by the parties, Plaintiff's Counsel will not post any documents or information regarding the Action on their website other than the Complaint, Settlement Agreement, Preliminary and Final Approval Papers, and Class Notice.

          12.1.4.          Following Named Plaintiff's filing of the Preliminary Motion and subject to this Section 12.1, the Parties and their Counsel may make public statements of the matters disclosed in the Settlement Agreement, Preliminary and Final Approval papers, and Class Notice, may respond to inquiries from members of the Settlement Class by describing the terms of this Settlement Agreement to them, and may respond to other inquiries by referring to documentation on the website referenced in the Class Notice and documentation made available on www.Walmartbenefits.com or www.benefits.ml.com. Except as otherwise provided in this Section, Parties and their Counsel may not make any other public statements or provide any further information regarding the Action.

          12.1.5.          The Parties may disclose the terms of the Settlement to the extent necessary to comply with a court order, validly-served subpoena, or valid discovery request made in the course of ongoing litigation or arbitration.

          12.1.6.          Nothing in this Agreement shall prohibit or restrict the Parties from responding to any inquiry by, reporting information to, or providing testimony before any self-regulatory organization or regulatory or governmental agency having jurisdiction over the matter.

     12.2.   <u>Return of Materials</u>. Except for attorney notes, pleadings, non-confidential transcripts, and other court submissions and exhibits thereto, each Party that received material designated as Confidential under the Protective Order in this Action (Dkt. No. 75), including confidential material contained in formal and informal discovery, and information provided for purposes of settlement, and all other confidential material, from an another Party in the course of litigating this Action shall, within sixty (60) days after the Effective Date of Settlement, at the producing Party's option either (i) return all such materials in its custody or control, including in the possession of consultants of the receiving Party, to the producing Party or (ii) certify that all such materials in its custody or control, including in the possession of consultants of the receiving Party, have been destroyed; provided that if a producing Party requests the physical return of its materials, that Party shall reimburse the receiving Party for its reasonable costs of assembling and shipping such materials.

     12.3.   <u>Severability</u>. The provisions of this Settlement Agreement are not severable.

12.4.    Amendment.  Before entry of the Final Order, the Settlement Agreement may be modified or amended only by written agreement signed by or on behalf of all Parties. Following entry of the Final Order, the Settlement Agreement may be modified or amended only by written agreement signed on behalf of all Parties, and approved by the Court.

12.5.    Waiver.  The provisions of this Settlement Agreement may be waived only by an instrument in writing executed by the waiving party.  The waiver by any party of any breach of this Settlement Agreement shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Settlement Agreement.

12.6.    Construction.  None of the Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

12.7.    Principles of Interpretation.  The following principles of interpretation apply to this Settlement Agreement.

12.7.1.              Headings.  The headings of this Settlement Agreement are for reference purposes only and do not affect in any way the meaning or interpretation of this Settlement Agreement.

12.7.2.              Singular and Plural.  Definitions apply to the singular and plural forms of each term defined.

12.7.3.              Gender.  Definitions apply to the masculine, feminine, and neuter genders of each term defined.

12.7.4.              References to a Person.  References to a Person are also to the Person's permitted successors and assigns.

12.8.    Further Assurances.  Each of the Parties agrees, without further consideration and as part of finalizing the Settlement hereunder, that they will in good faith execute and deliver such other documents and take such other actions as may be necessary to consummate and effectuate the subject matter and purpose of this Settlement Agreement.

12.9.    Survival.  All representations, warranties and covenants set forth in this Settlement Agreement shall be deemed continuing and shall survive the Effective Date of Settlement and the termination or expiration of this Settlement Agreement with the exception of the covenants not to sue set forth in Section 4.1, which shall not survive the termination of this Settlement Agreement.

12.10.   Notices.  Any notice, demand or other communication under this Settlement Agreement (other than the Class Notice, or other notices given at the direction of the Court) shall be in writing and shall be deemed duly given upon receipt if it is addressed to each of the intended recipients as set forth below and personally delivered, sent by registered or certified

mail (postage prepaid), sent by confirmed facsimile, or delivered by reputable express overnight courier:

IF TO NAMED PLAINTIFF:
Lynn Lincoln Sarko
KELLER ROHRBACK L.L.P
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Fax: (206) 623-3384

IF TO WALMART DEFENDANTS:
Paul J. Ondrasik
STEPTOE & JOHNSON LLP
1330 Connecticut Ave., NW
Washington, DC 20036
Fax: (202) 429-3902

and

Ross Higman
WAL-MART STORES, INC.
702 S.W. Eighth Street
Bentonville, AR 72716-0215
Fax: (479) 277-5991

IF TO MERRILL LYNCH DEFENDANTS:
Robert Eccles
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
Fax: (202) 383-5414

Any Party may change the address at which it is to receive notice by written notice delivered to the other Parties in the manner described above.

12.11.  Entire Agreement.  This Settlement Agreement contains the entire agreement between Plaintiff, on the one hand, and Defendants, on the other, to resolve the Action and supersedes all prior or contemporaneous agreements, understandings, representations, and statements, on the subject of the Action.

12.12.  Counterparts.  This Settlement Agreement may be executed by exchange of faxed or electronically transmitted (.pdf) executed signature pages, and any signature transmitted by facsimile or .pdf for the purpose of executing this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement.  This Settlement Agreement may be executed in two or more counterparts, each of which shall be deemed to be

- 24 -

an original, but all of which, taken together, shall constitute one and the same instrument.

12.13. <u>Binding Effect</u>. This Settlement Agreement binds and inures to the benefit of the Parties hereto, and their respective assigns, heirs, administrators, executors, trustees, and successors.

12.14. <u>Agreement Execution Date</u>. The date on which the final signature is affixed below shall be the Agreement Execution Date.

12.15. <u>Arbitration Among the Parties.</u> The Parties agree to binding, non-appealable arbitration before an arbitrator mutually agreed upon by the Parties to resolve any disagreements over the implementation of the terms of the Settlement Agreement or any other documents necessary to effectuate the Settlement. Unless otherwise ordered by the arbitrator the Parties will share the costs of arbitration equally, and all Parties will bear their own arbitration-related attorneys' fees.

12.16. <u>Continuing Jurisdiction:</u> Subject to the arbitration provisions in Section 12.15 the Court retains exclusive jurisdiction over all matters relating to the implementation and enforcement of the Settlement Agreement.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement on the dates set forth below.

**FOR NAMED PLAINTIFF**:

Dated: 12/2/11                    By: _____

Lynn Lincoln Sarko (*pro hac vice*)
Michael Woerner (*pro hac vice*)
Derek W. Loeser (*pro hac vice*)
Gretchen Freeman Cappio (*pro hac vice*)
Gretchen S. Obrist (*pro hac vice*)
KELLER ROHRBACK L.L.P
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: (206) 623-1900
Fax: (206) 623-3384
lsarko@kellerrohrback.com
mwoerner@kellerrohrback.com
dloeser@kellerrohrback.com
gcappio@kellerrohrback.com
gobrist@kellerrohrback.com

Gregory W. Aleshire, MOBAR #38691
William R. Robb, MOBAR #43322
ALESHIRE ROBB P.C.
2847 S. Ingram Mill Rd., Suite A-I 02
Springfield, MO 65804
Telephone: (417) 869-3737
Fax: (417) 869-5678
arslaw@arslaw.com

Edward H. Siedle (*pro hac vice)*
Edward H. Siedle Law Offices
79 Island Dr., South
Ocean Ridge, FL 33435
Telephone:  (561) 202-0919
esiedle@aol.com

**FOR DEFENDANTS**:

Dated: 12/2/2011          By: _____

Paul J. Ondrasik (*pro hac vice*)
Morgan D. Hodgson (*pro hac vice*)
Eric G. Serron (*pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Ave., NW
Washington, DC 20036
Telephone: (202) 429-3000
Fax: (202) 429-3902
pondrasik@steptoe.com
mhodgson@steptoe.com
eserron@steptoe.com

William C. Martucci, MO #28237
Katherine R. Sinatra, MO #51181
SHOOK, HARDY & BACON, LLP
555 Grand Boulevard
Kansas City, MO 64108
Telephone: (816) 474-6550
Fax: (816)-421-5547
wmartucci@shb.com
ksinatra@shb.com

*Counsel for Defendants Wal-Mart Stores,
Inc., James W. Breyer, John A. Cooper, Jr.,
Stanley C. Gault, Frederick S. Humphries,
Dawn G. Lepore, Elizabeth A. (Betsy)*

*Sanders, Donald G. Soderquist, Jose H.*
*Villarreal, Stephen R. Hunter, Debbie Davis*
*Campbell, Jeff Amos, Bill Ayers, Terri*
*Bertschy, Elizabeth Branigan-Evans, Fred*
*Disch, Larry Duff, Sam Dunn, Don*
*Etheredge, Robin Forbis, Sharon Garmon,*
*Erin Gonzalez, Rob Hey, Greg Johnston,*
*David McBride, Phyllis Morey, Cliff Parker,*
*Arvetta Powell, Charles Rateliff, Dave Reiff,*
*David Scogin, Donna Spradlin, J.P. Suarez,*
*Jenifer Terrell, Kevin Turner, Jeremy Wilson,*
*Jimmy Wright*

Dated: __12/2/11__     By: _____

Robert N. Eccles (*pro hac vice*)
Shannon M. Barrett (*pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
Telephone: (202) 383-5300
Fax: (202) 383-5414
beccles@omm.com
sbarrett@omm.com

Richard N. Bien, MO #31398
LATHROP & GAGE L.C.
2345 Grand Boulevard, Suite 2800
Kansas City, Missouri 64108-2684
Telephone: (816) 292-2000
Fax: (816) 292-2001
rbien@lathropgage.com

*Counsel for Defendants Merrill Lynch,*
*Pierce, Fenner & Smith Incorporated,*
*Merrill Lynch Trust Company of America,*
*Merrill Lynch & Co., Inc.*

EXHIBITS TO THE SETTLEMENT AGREEMENT

Exhibit 1:     Preliminary Approval Order
              Exhibit A to the Preliminary Approval Order: Class Notice
              Exhibit B to the Preliminary Approval Order: Summary Notice

Exhibit 2:     Final Order

-27-

**EXHIBIT 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| JEREMY BRADEN, individually and on behalf of all others similarly situated, | ) ) ) | Case No. 6:08-cv-3109-GAF |
| | ) | |
| Plaintiff, | ) | Hon. Gary A. Fenner |
| | ) | |
| v. | ) | CLASS ACTION |
| | ) | |
| WAL-MART STORES, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**[PROPOSED] ORDER PRELIMINARILY APPROVING CLASS ACTION
SETTLEMENT, CONDITIONALLY CERTIFYING SETTLEMENT CLASS,
DIRECTING DISTRIBUTION OF CLASS NOTICE, APPOINTING CLASS
COUNSEL AND CLASS REPRESENTATIVE, AND SETTING HEARING FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT**

In this case, Class Plaintiff Jeremy Braden, on behalf of himself and all others similarly

situated (the "Class"), asserts claims for alleged violations of the Employee Retirement Income

Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA") against the Wal-Mart

Defendants and Merrill Lynch Defendants,[1] as well as a claim for unjust enrichment and a non-

---

[1] Defendants James W. Breyer, John A. Cooper, Jr., Stanley C. Gault, Frederick S. Humphries,
Dawn G. Lepore, Elizabeth A. (Betsy) Sanders, Donald G. Soderquist, and Jose H. Villarreal
are referred to collectively as the "Compensation Committee Defendants." Defendants Stephen
R. Hunter, Debbie Davis Campbell, and John or Jane Doe 1 are referred to collectively as the
"VP Retirement Plan Defendants." Defendants Jeff Amos, Bill Ayers, Terry Bertschy,
Elizabeth Branigan-Evans, Debbie Davis Campbell, Fred Disch, Larry Duff, Sam Dunn, Don
Etheredge, Robin Forbis, Sharon Garmon, Erin Gonzalez (misidentified and named in
duplication as Erin Weitzel), Rob Hey, Stephen R. Hunter, Greg Johnston, David McBride,
Phyllis Morey, Cliff Parker, Arvetta Powell, Charles Rateliff, Dave Reiff, David Scogin, Donna
Spradlin, J.P. Suarez, Jenifer Terrell, Kevin Turner, Jeremy Wilson, Jimmy Wright, and John
or Jane Does 2-5 are referred to collectively as the "Retirement Plans Committee Defendants."
Wal-Mart and the Compensation Committee Defendants, the VP Retirement Plan Defendants,
and the Retirement Plans Committee Defendants are referred to collectively as "Wal-Mart" or
the "Wal-Mart Defendants." Merrill Lynch, Pierce, Fenner & Smith Inc., Merrill Lynch Trust
Company of America, and Merrill Lynch & Co. Inc., are collectively referred to as "Merrill
Lynch." The Wal-Mart Defendants and Merrill Lynch Defendants are collectively referred to
as "Defendants."

fiduciary claim for knowing participation in a fiduciary breach against the Merrill Lynch Defendants, with respect to the Wal-Mart 401(k) Plan (the "Plan"). The Settlement[2] now before the Court was achieved by extensive arm's-length negotiations between parties, and resolves all claims of the Class against Defendants arising out of this Action, as defined in the Settlement Agreement, Section 3. Defendants deny any and all liability or wrongdoing alleged against them in this Action. Class Plaintiff maintains that his claims have merit and that the Court would certify a class in this Action. Notice of the proposed Settlement has been or will be served on the appropriate state and federal officials in accordance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

Presented to the Court for preliminary approval is the Settlement of this Action against Defendants. The terms of the Settlement are set out in the Settlement Agreement, dated December 2, 2011 (the "Settlement Agreement"), executed by Class Counsel and Defendants' counsel. The Court has considered the proposed Settlement in view of the pleadings, record, complexity of the issues in this case, the parties' extensive arm's-length settlement negotiations, and the risks and costs of further litigation, and the Court is preliminarily satisfied that the Settlement is fair, reasonable, and adequate, such that it is appropriate to consider whether to certify a class for settlement purposes, whether the Settlement is sufficient to warrant issuance of notice to Class members, and whether the proposed notices adequately inform Class members of the material terms of the Settlement and their rights relating thereto.

Upon reviewing Class Plaintiff's Unopposed Motion for an Order Preliminarily Approving Class Action Settlement, Conditionally Certifying Settlement Class, Directing Distribution of Class Notice, Appointing Class Counsel and Class Representative, and Setting Hearing for Final Approval of Class Action Settlement, dated December 2, 2011, IT IS HEREBY ORDERED THAT:

---

[2] Capitalized terms not otherwise defined in this Order shall have the same meaning ascribed to them in the Settlement Agreement, attached as Exhibit A to the Declaration of Derek W. Loeser submitted in support hereof.

1.      This Court has jurisdiction over the subject matter of this Action pursuant to 18 U.S.C. § 1332(d), and jurisdiction over the Class members described in paragraph 4 below.

2.      The Court preliminarily finds that the proposed Settlement should be approved as (a) fair, reasonable, and adequate; (b) the product of serious, informed, arm's-length, and non-collusive negotiations; (c) having no obvious deficiencies; (d) not improperly granting preferential treatment to the Class Representative or segments of the Class; (e) falling within the range of possible approval; and (f) warranting notice to Class members of a formal final approval hearing ("Fairness Hearing") at which evidence may be presented in support of and in opposition to the proposed Settlement.  The parties are authorized and directed to take all actions that may be required prior to final approval of the Settlement by the Court, as set forth in the Settlement Agreement.

3.      For purposes of the proposed Settlement only, the Court preliminarily finds that the Class defined in paragraph 4 below satisfies the requirements of the United States Constitution, the Federal Rules of Civil Procedure, and any other applicable law, in that:

        a.      The Class is cohesive and well-defined;

        b.      The Class members are ascertainable from records kept with respect to the Plan, and Class members are so numerous that their joinder before the Court would be impracticable;

        c.      Based on allegations in the Complaint, there are one or more questions of fact and/or law common to the Class;

        d.      Based on allegations in the Complaint that the Defendants' alleged conduct affected Class members in a uniform manner, the claims of Class Plaintiff are typical of the claims of the Class;

        e.      Class Plaintiff will fairly and adequately protect the interests of the Class in that (i) the interests of Class Plaintiff and the nature of his alleged claims are consistent with those of the Class members; (ii) there appear to be no conflicts between or among Class Plaintiff and the Class; and (iii) Class Plaintiff and the Class members are represented by qualified,

reputable counsel who are experienced in preparing and prosecuting large, complicated ERISA class actions; and

f.  The prosecution of separate actions by individual members of the Class would create risk of (i) inconsistent or varying adjudications as to individual Class members that would establish incompatible standards of conduct for the parties opposing the claims asserted in this Action; and/or (ii) adjudications as to individual Class members that would, as a practical matter, be dispositive of the interests of the other Class members not parties to the adjudications, or substantially impair or impede the ability of those persons to protect their interests.

4.  For purposes of the proposed Settlement only, and based on the findings set out in paragraph 3 above, the Court preliminarily certifies the following class (the "Class") under Fed. R. Civ. P. 23(b)(1)(A) and (B), as set forth in the Settlement Agreement, ¶ 1.44:

> (a) all Persons, except Defendants, who are or were participants in the Wal-Mart Stores, Inc. Profit Sharing and 401(k) Plan, or the predecessors or successors thereto, who have held assets in the Plan Investment Options at any time between July 1, 1997 to the Agreement Execution Date, inclusive, and (b) as to each Person within the scope of subsection (a) of [Settlement Agreement] Section 1.44, his, her, or its beneficiaries, alternate payees, Representatives and Successors in Interest.

5.  For purposes of the proposed Settlement only, Class Plaintiff is designated Class Representative, and the Court conditionally approves and appoints the law firm of Keller Rohrback L.L.P. to serve as Lead Counsel and the law firm of Aleshire Robb P.C. to serve as Liaison Counsel (collectively "Class Counsel"). Lead Counsel has the authority to designate and associate additional Plaintiff's counsel, to delegate to such counsel work to assist in the prosecution of this litigation, and to include such work that is approved by Lead Counsel in Plaintiff's Application for Attorneys' Fees and Expenses, as set forth in the Settlement Agreement ¶ 11.1.

6.  Lead Counsel has established a Settlement Fund Account at Wells Fargo Bank, which is an interest-bearing account and considered a common fund created as a result of this action, pursuant to paragraph 7.3 of the Settlement Agreement. The Court finds that Lead

Counsel has satisfied this provision and approves the use of this account for the Settlement Fund Account.

7.      Plaintiff has presented to the Court proposed forms of Class Notice and a Summary Notice, which are attached to the Settlement Agreement as Exhibits 1.A and 1.B, respectively. The Court finds that the form and substance of the Class Notice and the Summary Notice satisfy the requirements of due process and the Federal Rules of Civil Procedure.  The Court directs the parties to disseminate the Class Notice and the Summary Notice as proposed in the Settlement Agreement, ¶ 2.3.2, and that non-substantive changes may be made to the Class Notice and the Summary Notice by agreement of the parties without further order of the Court.

a.      The Class Notice shall be published on www.Walmartbenefits.com and www.benefits.ml.com pursuant to the Settlement Agreement, ¶ 2.3.2, within thirty (30) days after this Preliminary Approval Order is entered and not less than fifty-five (55) days before the Fairness Hearing.  Summary Notice shall be published in *USA Today* and on BusinessWire pursuant to the Settlement Agreement, ¶ 2.3.2, within thirty (30) days after this Preliminary Approval Order is entered and not less than fifty-five (55) days before the Fairness Hearing.

b.      The parties shall file with the Court a proof of timely compliance with the foregoing publication requirements, as well as a declaration attesting to the mailing of the notices pursuant to the Class Action Fairness Act of 2005, no later than **February 29, 2012** (which is seven (7) days before the Fairness Hearing).

c.      The parties shall reasonably cooperate with one another to accomplish the requirements of this paragraph, as provided in the Settlement Agreement, ¶ 2.3.5. The costs and expenses of preparing and disseminating the notice shall be paid from the Settlement Fund, pursuant to the Settlement Agreement, ¶ 8.1.

8.      Class Counsel shall file their Final Approval Motion, including their request for approval of the Plan of Allocation, petition for attorneys' fees and reimbursement of expenses, and petition for Class Plaintiff's compensation, no later than **February 3, 2012**.  Class Counsel shall post their Final Approval Motion, including their request for approval of the Plan of

Allocation, petition for attorneys' fees and reimbursement of expenses, and petition for Class Plaintiff's compensation on their website no later than **February 3, 2012**.

9.     A Fairness Hearing is scheduled for **Wednesday, March 7, 2012, at 9:00 a.m.**, before United States District Court Judge Gary A. Fenner, at the Charles Evans Whittaker Courthouse, 400 East 9th Street, Courtroom 8A, Kansas City, Missouri 64106, which is no earlier than ninety (90) days after the last date on which the appropriate Federal official and the appropriate State officials are served with the notice under CAFA as described in Section 2.3.3 of the Settlement Agreement and no earlier than fifty-five (55) days after the deadline for publication of the Class Notice and Summary Notice, as described above in paragraph 7, to determine, among other things:

a.     whether the Settlement should be approved by the Court as fair, reasonable, and adequate;

b.     whether the proposed Class satisfies Fed. R. Civ. P. 23(a) and (b) and therefore should be certified for purposes of Settlement;

c.     whether this Action should be dismissed with prejudice;

d.     whether the Class Notice and Summary Notice and the means of disseminating the same pursuant to the Settlement Agreement (i) are appropriate and reasonable and constitute due, adequate, and sufficient notice to all persons entitled to notice; and (ii) meet all applicable requirements of the Federal Rules of Civil Procedure, and any other applicable law;

e.     whether the application for attorneys' fees and expenses filed by Class Counsel should be approved;

f.     whether the application for a case contribution award for Class Plaintiff should be approved;

g.     whether the Court should enforce the Settlement Agreement in all other respects; and

h.     such other matters as the Court deems appropriate.

10.     The Court will consider comments and/or objections to the Settlement, the Plan of Allocation, the award of attorneys' fees and reimbursement of expenses, and the Class Plaintiff case contribution award if they are served pursuant to LR 7.0(d), no later than **February 17, 2012** (which is fourteen (14) days after Plaintiff's Final Approval Motion is due) upon each of the following:

| Class Counsel: | The Wal-Mart Defendants' Counsel: | The Merrill Lynch Defendants' Counsel: |
|---|---|---|
| Keller Rohrback L.L.P.<br>Attn: Lynn Lincoln Sarko<br>1201 Third Avenue, Ste 3200<br>Seattle, Washington  98109<br><br>Facsimile:  (206) 623-3384 | Steptoe & Johnson LLP<br>Attn: Paul J. Ondrasik<br>1330 Connecticut Ave., NW<br>Washington, DC 20036<br><br>Facsimile:  (202) 429-3902<br><br>and<br><br>Ross Higman<br>WAL-MART STORES, INC.<br>702 S.W. Eighth Street<br>Bentonville, AR 72716-0215<br><br>Facsimile: (479) 277-5991 | O'Melveny & Myers LLP<br>Attn: Robert Eccles<br>1625 Eye Street, N.W.<br>Washington, D.C. 20006<br><br>Facsimile:  (202) 346-4444 |

and the objector has filed the objections, papers, and briefs, showing due proof of service upon counsel identified above, with the Clerk of the Court.  Comments or objections must be postmarked pursuant to LR 7.0(d), by **February 17, 2012** (which is no later than fourteen (14) days after Plaintiff's Final Approval Motion is due), and shall indicate the name of the case, the objector's name and contact information, a statement of the objections and a summary of reasons for so objecting, copies of any documents upon which the objection is based, and a statement of whether the objector or the objector's lawyer will ask to speak at the Fairness Hearing.

11.     The Court will consider replies in support of Plaintiff's Final Approval Motion, including approval of the Plan of Allocation, Class Counsel's attorneys' fees and costs, and Class Plaintiff compensation, if they are filed and served in the same manner set forth in paragraph 10

above, pursuant to LR 7.0(e), no later than **March 2, 2012** (which is fourteen (14) days after Class members must comment upon or object to the proposed Settlement).

12.     Attendance at the Fairness Hearing is not necessary.  However, persons wishing to be heard orally in opposition to the approval of the Settlement, the Plan of Allocation, the award of attorneys' fees and reimbursement of expenses, or the case contribution award to the Class Plaintiff are required to state in their objection, pursuant to paragraph 10 above, their intention to speak or have a lawyer speak at the Fairness Hearing on their behalf and identify any witnesses they may call to testify and exhibits they intend to introduce into evidence.  Any lawyer who intends to speak on behalf of an objector at the Fairness Hearing shall enter a written notice of appearance of counsel with the Clerk of the Court no later than **February 17, 2012** (which is fourteen (14) days after Plaintiff's Final Approval Motion is due).  All properly submitted objections shall be considered by the Court.

13.     Any Class Member or other person who does not timely file and serve a written objection complying with the terms of paragraphs 10 and 12 above, shall be deemed to have waived, and shall be forever foreclosed from raising any objection to the Settlement, the Plan of Allocation, the award of attorneys' fees and reimbursement of expenses, or the case contribution award to the Class Plaintiff, and any untimely objection shall be barred.

14.     The parties shall promptly furnish each other with copies of any and all objections and notices of intention to appear at the Fairness Hearing that come into their possession.

15.     This Order shall become null and void, and shall be without prejudice to the rights of the parties, all of whom shall be restored to their respective positions existing as of December 1, 2011 (pursuant to the provisions of the Settlement Agreement, Section 10), if the Settlement is terminated under the terms of the Settlement Agreement.  In such event, paragraphs 10.2.1-10.2.3 of the Settlement Agreement shall govern the rights of the settling parties.

16.     Under no circumstances shall this Order be construed, deemed, or used as an admission, concession, or declaration by or against any of the Defendants of any fault, wrongdoing, breach, or liability.  Nor shall the Order be construed, deemed, or used as an

admission, concession, or declaration by or against Class Plaintiff or the Class that their claims lack merit or that the relief requested in this action is inappropriate, improper, or unavailable, or as a waiver by any party of any defenses or claims he, she, or it may have.

17.     The Court retains exclusive jurisdiction over this action to consider all further matters arising out of or connected with the proposed Settlement.

IT IS SO ORDERED.

_____
Gary A. Fenner, Judge
United States District Court

DATED: _____, 2011

**EXHIBIT 1.A**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | |
|---|---|
| JEREMY BRADEN, individually and on behalf of ) | |
| all others similarly situated, ) | |
| Plaintiff, ) | Case No. 6:08-cv-3109-GAF |
| v. ) | Hon. Gary A. Fenner |
| WAL-MART STORES, INC., et al., ) | CLASS ACTION |
| Defendants. ) | |

## NOTICE OF PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENT

**TO:** **ALL PERSONS, EXCEPT DEFENDANTS, WHO ARE OR WERE PARTICIPANTS IN THE WAL-MART STORES, INC. PROFIT SHARING AND 401(K) PLAN (THE "PLAN") OR THE PREDECESSORS OR SUCCESSORS THERETO, WHO HAVE HELD ASSETS IN THE PLAN INVESTMENT OPTIONS AT ANY TIME BETWEEN JULY 1, 1997 AND DECEMBER 2, 2011, INCLUSIVE, AS WELL AS THEIR BENEFICIARIES, ALTERNATE PAYEES, REPRESENTATIVES AND SUCCESSORS IN INTEREST.**

### PLEASE READ THIS NOTICE CAREFULLY.
### A FEDERAL COURT AUTHORIZED THIS NOTICE.
### THIS IS NOT A SOLICITATION FROM A LAWYER.
### YOU HAVE NOT BEEN SUED.

The *Court* has preliminarily approved a proposed settlement (the "*Settlement*") of a class action lawsuit brought under the Employee Retirement Income Security Act ("ERISA") against Wal-Mart Stores, Inc. ("*Wal-Mart*") and certain of its officers, directors, and employees with responsibilities related to the Wal-Mart Stores, Inc. Profit Sharing and 401(k) Plan (the "*Plan*"), and against Merrill Lynch, Pierce, Fenner & Smith Inc., Merrill Lynch Trust Company of America, and Merrill Lynch & Co. Inc. ("*Merrill Lynch*"), entities which provide services to the *Plan*, including recordkeeping and trustee services. This lawsuit alleges that certain fees and expenses charged to the *Plan* and to certain individual *Plan* accounts by mutual fund companies and collected by *Merrill Lynch* were excessive in light of the size of the *Plan* and that these excessive fees were charged without properly disclosing them to Wal-Mart, the *Plan*, or *Plan* participants. As described below, in accordance with the *Plan of Allocation* to be approved by the *Court*, the *Settlement* will provide for payment directly to the *Plan* to be used by the *Plan* to pay certain *Plan* expenses and administration fees, which will reduce the amount of fees that otherwise would be charged to individual *Plan* accounts in the future. In addition, for a two-year period, the *Settlement* provides for the *Retirement Plans Committee*'s continued offering of low-

cost investment options, as well as new information about fees and improvements to participant education about saving for retirement.

As described in Section 15 below, the *Court* has scheduled a hearing on the *Final* approval of the *Settlement* and for approval of the *Class Plaintiff's* petition for attorneys' fees and expenses and compensation to the *Class Plaintiff* for **Wednesday, March 7, 2012, at 9:00 a.m.**, before United States District Court Judge Gary A. Fenner. The hearing will be held at the Charles Evans Whittaker Courthouse, 400 East 9th Street, Courtroom 8A, Kansas City, Missouri 64106.

Any objections to the *Settlement*, or to the petition for attorneys' fees and expenses and/or any award to the *Class Plaintiff*, must be served in writing on *Class Counsel* and *Defendants' Counsel*, identified in Section 14 of this *Class Notice*. The procedure for objecting is described below.

This *Class Notice* contains summary information about the *Settlement*. The terms and conditions of the *Settlement* are fully set forth in the *Settlement Agreement* dated December 2, 2011. Capitalized and italicized terms used in this *Class Notice* but not defined in this *Class Notice* have the meanings assigned to them in the *Settlement Agreement*. Copies of the *Settlement Agreement* are available at www.WalMartERISASettlement.com, or from *Class Counsel*: Lynn Lincoln Sarko, Keller Rohrback L.L.P., 1201 Third Avenue, Suite 3200, Seattle, WA 98101. *Class Counsel* has established a toll-free number, (800) 233-8509, if you have questions or comments. *Class Counsel* may also be contacted via email at walmarterisasettlement@kellerrohrback.com.

**Please do not contact the *Court*. Its personnel will not be able to answer your questions.**

**PLEASE READ THIS NOTICE CAREFULLY AND COMPLETELY. IF YOU ARE A MEMBER OF THE CLASS TO WHOM THIS NOTICE IS ADDRESSED, THE SETTLEMENT WILL AFFECT YOUR RIGHTS. YOU ARE NOT BEING SUED IN THIS MATTER. YOU DO NOT HAVE TO APPEAR IN COURT, AND YOU DO NOT HAVE TO HIRE AN ATTORNEY IN THIS CASE. IF YOU ARE IN FAVOR OF THE SETTLEMENT, YOU NEED NOT DO ANYTHING. IF YOU DISAPPROVE, YOU MAY OBJECT TO THE SETTLEMENT PURSUANT TO THE PROCEDURES DESCRIBED BELOW.**

| YOUR LEGAL RIGHTS AND OPTIONS UNDER THE SETTLEMENT | |
|---|---|
| **YOU CAN DO NOTHING.** | If the *Settlement* is approved by the *Court*, and if you are a member of the *Settlement Class* and have a *Plan* account when the *Net Proceeds* of the *Settlement Fund* are used to pay *Plan* expenses or administration fees under the *Plan of Allocation*, the *Net Proceeds* will pay for certain *Plan* expenses or administration fees that otherwise would be charged to individual *Plan* accounts in the future. If you have a *Plan* account when the *Settlement* takes effect, you will also be eligible for other benefits provided to you under the *Settlement* without having to file a claim or take any other action. |
| **NO ACTION IS NECESSARY TO BE ENTITLED TO BENEFIT FROM THE PAYMENT OF CERTAIN PLAN EXPENSES OR ADMINISTRATION FEES THROUGH THE** *PLAN OF ALLOCATION*. | If you are a *Plan* participant, as set forth above, any reduction of certain *Plan* expenses or administration fees that otherwise would be chargeable to your account in the future will be paid out of the *Settlement Fund* (up to the value of the *Net Proceeds* of the *Settlement Fund*) according to the *Plan of Allocation*. However, you are <u>not</u> entitled to any reduction in the amount of fees already charged to your individual *Plan* account. In addition, if you no longer have a *Plan* account on the date on which *Plan* expenses are paid using funds from the *Net Proceeds* of the *Settlement Fund*, you are <u>not</u> entitled to any reduction in the amount of fees already charged to your former individual *Plan* account. |
| **NO ACTION IS NECESSARY TO BE ENTITLED TO THE CHANGES TO THE** *PLAN*, **INCLUDING THE NEW WAYS WAL-MART WILL INFORM PARTICIPANTS ABOUT FEES AND PROVIDE RESOURCES TO HELP PLAN FOR RETIREMENT SAVINGS.** | If the *Settlement* is approved by the *Court* and you are a member of the *Settlement Class* with a *Plan* account, you will be entitled to all of the "*Non-Monetary Considerations*" provided by the *Settlement*. That means that you will receive all of the benefits of the improvements the *Retirement Plans Committee* continues to make to the *Plan* so that low-cost investment options continue to be available. You will also receive new information about fees to help make them more understandable and you will benefit from improvements to participant education about saving for retirement. If you no longer have a *Plan* account on the *Effective Date of Settlement*, you will not receive these benefits. |
| **YOU CAN OBJECT (NO LATER THAN <u>FEBRUARY 17, 2012</u>).** | If you wish to object to any part of the *Settlement*, you may (as discussed below) write to the *Court* and counsel about why you object to the *Settlement*. |
| **YOU CAN GO TO A HEARING ON <u>MARCH 7, 2012</u>.** | If you submit a written objection to the *Settlement* to the *Court* and counsel before the *Court*-approved deadline, you may (but do not have to) attend the **March 7, 2012** hearing ("*Fairness Hearing*") about the *Settlement* and present your objections to the *Court*. You may attend the hearing even if you do not file a written objection, but you may not be permitted to address the *Court* at the hearing if you do not notify the *Court* and counsel of your intention to appear at the hearing by **February 17, 2012**, as described below. |

These rights and options—**and the deadlines to exercise them**—are explained in this *Class Notice*.

The *Court* in charge of this case still has to decide whether to approve the *Settlement*. The *Settlement* will be made *Final* only if the *Court* approves the *Settlement* and that approval is upheld in the event of any appeals. Information concerning how the *Settlement* will affect your *Plan* account is not available because that amount will be based on (a) the amount of *Plan* expenses or administration fees following the *Effective Date of Settlement*; (b) whether you have an individual *Plan* account at the time that *Plan* expenses or administration fees would otherwise be charged to individual *Plan* accounts but which will be paid by the *Net Proceeds* of the *Settlement Fund*; and (c) the *Plan of Allocation*.

Further information regarding the litigation, the *Settlement*, and this *Class Notice* can be obtained by contacting *Class Counsel*: Lynn Lincoln Sarko, Keller Rohrback L.L.P., 1201 Third Avenue, Suite 3200, Seattle, WA 98101. *Class Counsel* has established a toll-free number, (800) 233-8509, if you have questions or comments. *Class Counsel* may also be contacted via email at walmarterisasettlement@kellerrohrback.com.

| WHAT THIS NOTICE CONTAINS |
|---|

SUMMARY OF SETTLEMENT ................................................................................6

BASIC INFORMATION.......................................................................................7

1.   Why Should I Read This *Class Notice*?.........................................................7

2.   What Is The *Action* About? .........................................................................7

3.   What Are The Damages Alleged In This Case?............................................9

4.   Why Is This Case A Class Action?................................................................9

5.   Why Is There A *Settlement*?.........................................................................9

6.   How Do I Know Whether I Am Part Of The *Settlement*?...........................9

THE SETTLEMENT BENEFITS........................................................................10

7.   What Does The *Settlement* Provide? ..........................................................10

8.   How Will The *Settlement* Reduce Fees Charged To My *Plan* Account? .........11

9.   When Would The *Net Proceeds* Be Used By The *Plan* To Pay For *Plan* Expenses
      Or Fees That Otherwise Would Be Charged To My *Plan* Account?....................11

10.  When And How Will I Receive The *Non-Monetary Considerations* Of The
      *Settlement*? ..................................................................................................12

11.  Can I Get Out Of The *Settlement*? .............................................................13

THE LAWYERS REPRESENTING YOU .........................................................13

12.  Do I Have A Lawyer In The Case? ..............................................................13

13.  How Will The Lawyers Be Paid?.................................................................14

14.  How Do I Tell The *Court* If I Don't Like The *Settlement*?......................15

THE *COURT*'S *FAIRNESS HEARING* .........................................................16

15.  When And Where Will The *Court* Decide Whether To Approve The *Settlement*? ........16

16.  Do I Have To Come To The *Fairness Hearing*?.........................................16

17.  May I Speak At The *Fairness Hearing*? .....................................................16

IF YOU DO NOTHING .....................................................................................16

18.  What Happens If I Do Nothing At All? .......................................................16

GETTING MORE INFORMATION...................................................................17

19.  Are There More Details About The *Settlement*?........................................17

20.  How Do I Get More Information? ................................................................17

# SUMMARY OF SETTLEMENT

In this litigation (the "*Action*"), *Class Plaintiff* alleges that the *Defendants* breached fiduciary duties owed to the participants in and beneficiaries of the *Plan* under the Employee Retirement Income Security Act of 1974 ("*ERISA*"). Copies of the *Action*'s operative *Complaint* and other documents filed in the *Action* are available at www.WalMartERISASettlement.com or may be requested from *Class Counsel* by calling (800) 233-8509. During the course of the lawsuit, the *Retirement Plans Committee* continued to make significant changes to the *Plan*, including the selection of lower-cost investment options. A *Settlement Fund* has been created as a consequence of the *Settlement* of this *Action*. It will provide for payment directly to the *Plan* to be used by the *Plan* for payment of certain *Plan* expenses and administration fees, according to the *Plan of Allocation*. The *Settlement Fund* will be used to reduce the amount of fees that otherwise would be charged to individual *Plan* accounts in the future. The *Settlement* also provides for *Non-Monetary Considerations*. These include the *Retirement Plans Committee*'s continued improvements in the *Plan* so that low-cost investment options are—and continue to be—available, as well as new information about fees and continued improvements to participant education about saving for retirement.

### What is the Amount of the *Settlement*?

A *Settlement Fund* of $13,500,000 is being established in the *Action*, contributed by Merrill Lynch and by Wal-Mart and/or its insurer. The *Net Proceeds* of the *Settlement Fund*—which shall be the *Settlement Fund* plus interest earned thereon minus any taxes, *Court*-approved attorneys' fees and costs, *Class Plaintiff* compensation, notice, and other expenses—will be paid to the *Plan* and will be used by the *Plan* for payment of certain *Plan* expenses and administration fees, according to the *Plan of Allocation* to be approved by the *Court*. No portion of the *Net Proceeds* will be used to compensate former or current participants in the *Plan* for fees and expenses they may have paid in the past, because the effort to identify and provide payment to almost two million former participants, as well as the efforts to calculate amounts due to current participants, would be cost prohibitive and consume, at a minimum, a significant portion of the *Net Proceeds*.

# STATEMENT OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES SOUGHT IN THE ACTION

The attorneys' fees of *Class Counsel*, the costs of litigating the *Action* and of certain aspects of the administration of the *Settlement*, and any award to the *Class Plaintiff* will be taken from the *Settlement Fund*. *Class Counsel* will ask the *Court* for an order awarding attorneys' fees in an amount not to exceed 30% of the amount recovered in the *Settlement*, plus reimbursement of costs and expenses. The actual amount of attorneys' fees, costs, expenses, and any award to the *Class Plaintiff* will be determined by the *Court*.

### What Will the *Class Plaintiff* Get?

The *Class Plaintiff* in the *Action* (defined below) will share in benefits from the payment of certain *Plan* expenses and administration fees that otherwise would be charged to individual *Plan* accounts, according to the *Plan of Allocation*, as well as the *Settlement's Non-Monetary*

*Considerations*, on the same basis and to the same extent as all other members of the *Settlement Class*, except that, in addition, the *Class Plaintiff* may ask the *Court* for compensation of up to $20,000 for his effort and work in bringing this case and representing the interests of the *Settlement Class*, plus reimbursement of the reasonable costs and expenses directly relating to his representation of the *Settlement Class* during the course of this *Action*. Any compensation awarded to any *Class Plaintiff* by the *Court* will be payable from the proceeds of the *Settlement*.

## BASIC INFORMATION

### 1.    Why Should I Read This *Class Notice*?

You or someone in your family may be, are, or may have been a participant in, beneficiary of, or alternate payee of, the *Plan* during the *Class Period*.

The *Court* caused this *Class Notice* to be distributed because, if you fall within that group, you have a right to know about the *Settlement* and about all of the options available to you regarding the *Settlement* before the *Court* decides whether to approve the *Settlement*. If the *Court* approves the *Settlement*, and after any objections and appeals are resolved, the *Net Proceeds* will be paid directly to the *Plan* to be used by the *Plan* to pay certain *Plan* expenses and administration fees according to the *Plan of Allocation*.

The *Court* in charge of this case is the United States District Court for the Western District of Missouri. The person who brought this suit is called the "*Class Plaintiff*," and the people and entities he sued are called the "*Defendants*." The *Class Plaintiff* in the *Action* is Jeremy Braden. The *Defendants* in the *Action* include Wal-Mart Stores, Inc., James W. Breyer, John A. Cooper, Jr., Stanley C. Gault, Frederick S. Humphries, Dawn G. Lepore, Elizabeth A. (Betsy) Sanders, Donald G. Soderquist, Jose H. Villarreal, Stephen R. Hunter, Debbie Davis Campbell, Jeff Amos, Bill Ayers, Terri Bertschy, Elizabeth Branigan-Evans, Fred Disch, Larry Duff, Sam Dunn, Don Etheredge, Robin Forbis, Sharon Garmon, Erin Gonzalez (misidentified and named in duplication as Erin Weitzel), Rob Hey, Greg Johnston, David McBride, Phyllis Morey, Cliff Parker, Arvetta Powell, Charles Rateliff, Dave Reiff, David Scogin, Donna Spradlin, J.P. Suarez, Jenifer Terrell, Kevin Turner, Jeremy Wilson, and Jimmy Wright (the "*Wal-Mart Defendants*"). Also named as *Defendants* are Merrill Lynch, Pierce, Fenner & Smith Incorporated, Merrill Lynch Trust Company of America, and Merrill Lynch & Co., Inc. (the "*Merrill Lynch Defendants*").

The legal action that is the subject of this *Class Notice* and the *Settlement* is known as *Braden v. Wal-Mart Stores, Inc., et al.*, Case No. 6:08-cv-3109-GAF (W.D. Mo.) (the "*Action*").

### 2.    What Is The *Action* About?

In the *Action*, *Class Plaintiff* claims that the *Defendants* were fiduciaries of the *Plan* who violated fiduciary duties under ERISA, and he asserts causes of action for the losses he alleged were suffered by the *Plan* as a result of the alleged breaches of fiduciary duty by the *Defendants*.

The *Complaint* alleges that all or some of the *Wal-Mart Defendants* violated ERISA by failing to prudently and loyally manage the assets of the Wal-Mart Stores, Inc. Profit Sharing and

401(k) Plan ("*Plan*") by offering *Investment Options* that caused the *Plan* to incur excessive fees and expenses and that provided inferior returns; failing to properly monitor the *Plan's* fiduciaries; failing to provide *Plan* participants with complete and accurate information regarding fees and expenses; breaching their duties and responsibilities as co-fiduciaries; and engaging in prohibited transactions with the *Plan* trustee and recordkeeper, the *Merrill Lynch Defendants*.

The *Complaint* also alleges that all or some of the *Merrill Lynch Defendants* violated ERISA by failing to prudently and loyally manage the assets of the *Plan* by offering *Investment Options* that caused the *Plan* to incur excessive fees and expenses and that provided inferior returns; engaging in prohibited transactions in violation of ERISA; failing to provide *Plan* participants with complete and accurate information regarding fees and expenses; and breaching their duties and responsibilities as co-fiduciaries. The *Complaint* further alleges that the *Merrill Lynch Defendants* collected fees from the mutual fund companies without disclosing them to the *Wal-Mart Defendants* or to the *Plan*. The *Complaint* also alleges that some or all of the *Merrill Lynch Defendants* engaged in conduct that unjustly enriched the *Merrill Lynch Defendants* and that the *Merrill Lynch Defendants* knowingly participating in fiduciary breaches by certain other *Defendants*.

*Defendants* deny the material allegations of the *Complaint*; deny any wrongdoing or liability whatsoever; believe that they acted at all times reasonably and prudently and in compliance with ERISA with respect to the *Plan*, their participants, and beneficiaries, and the *Settlement Class*; have asserted defenses and would assert certain other defenses if this *Settlement* is not consummated; are not opposing the *Court*'s certification of the *Settlement Class* contemplated by the *Settlement Agreement* solely for purposes of effectuating the *Settlement*; and are entering into the *Settlement* solely to avoid the cost, disruption, and uncertainty of litigation.

*Class Counsel* have conducted an extensive investigation of the *Wal-Mart Defendants* and the *Merrill Lynch Defendants* and of the alleged losses suffered by the *Plan* as a result of the alleged breaches of fiduciary duty and other unlawful conduct alleged in the *Action*. In addition, through that investigation and through discovery of additional information in the *Action*, *Class Counsel* have obtained extensive documents, including *Plan* governing documents and materials, communications with *Plan* participants, internal *Company* documents regarding the *Plan*, SEC filings, press releases, public statements, news articles, and other publications and other documents.

The *Settlement* is the product of extensive negotiations between the *Class Counsel* and *Defendants' Counsel*. All of the parties to the *Settlement* have taken into account the uncertainty and risks inherent in any litigation, particularly in a complex case such as this, and have concluded that it is desirable that the *Action* be fully and finally settled on the terms and conditions set forth in the *Settlement Agreement*.

### 3. What Are The Damages Alleged In This Case?

In this *Action*, *Class Plaintiff* claims damages due to alleged excessive fees associated with the *Plan Investment Options* and *Merrill Lynch's* failure to disclose certain fees to *Wal-Mart*. *Class Plaintiff* claims that such fees caused relatively small reductions in each participant's retirement savings account on a year-to-year basis but that, over time, caused or could have caused large decreases in long-term retirement savings for participants. The *Defendants* dispute *Class Plaintiff's* claims and that participants' retirement savings were or would have been adversely affected. Due to changes in the *Plan*, and the *Non-Monetary Considerations* described below, the fees associated with *Plan Investment Options* are and will continue to be lower than when this *Action* was filed. In addition, the *Net Proceeds* will be used to pay certain *Plan* expenses and administration fees that otherwise would be charged to individual *Plan* accounts.

### 4. Why Is This Case A Class Action?

In a class action, one or more plaintiffs—here, the *Class Plaintiff*—sue on behalf of people who have similar claims—here, the *Settlement Class* members. One court resolves the issues for all class members. The *Court* has preliminarily decided that this case meets the criteria for class action treatment. U.S. District Judge Gary A. Fenner is presiding over this case.

### 5. Why Is There A *Settlement*?

The *Court* has not reached any final decisions regarding *Class Plaintiff's* claims against the *Defendants*. Instead, the *Class Plaintiff* and the *Defendants* have agreed to the *Settlement*. In reaching the *Settlement*, they have avoided the cost, time, and uncertainty of a trial. The *Class Plaintiff* and *Class Counsel* believe that the *Settlement* is best for all *Settlement Class* members.

### 6. How Do I Know Whether I Am Part Of The *Settlement*?

The proceeds of the *Settlement* will be paid to the *Plan* to be used by the *Plan* to pay certain *Plan* expenses and administration fees that otherwise would be charged to individual *Plan* accounts, according to the *Plan of Allocation*. The *Settlement* also provides for *Non-Monetary Considerations*. These include the continued availability of low-cost investment options, as well as new information about fees and improvements to participant education about saving for retirement. You are a member of the *Settlement Class* if you fall within the following definition:

> (a) all *Persons*, except *Defendants* who are or were participants in, or beneficiaries of, the Wal-Mart Stores, Inc. Profit Sharing and 401(k) Plan, or the predecessors or successors thereto, who have held assets in the *Plan Investment Options* at any time between July 1, 1997 to the *Agreement Execution Date*, inclusive, and (b) as to each *Person* within the scope of subsection (a) of [*Settlement Agreement*] Section 1.44, his, her, or its beneficiaries, alternate payees, *Representatives* and *Successors in Interest*.

# THE SETTLEMENT BENEFITS

| 7. | **What Does The *Settlement* Provide?** |
|---|---|

A *Settlement Fund* of $13,500,000 is being established in this *Action*, contributed by Merrill Lynch and by Wal-Mart and/or its insurer.

The amount of *Net Proceeds* remaining in *Settlement Fund* the will be paid directly to the *Plan* to be used by the *Plan* for payment of certain *Plan* expenses and administration fees, according to the *Plan of Allocation*. The *Settlement* will reduce expenses or fees that otherwise would be charged to individual *Plan* accounts existing at the time that the *Net Proceeds* in the *Settlement Fund* are applied to pay for certain *Plan* expenses or administrative fees. If you do not have a *Plan* account at that time, you will not benefit from the *Net Proceeds*.

The type of relief provided by the *Settlement*—reducing certain *Plan* expenses and administration fees that otherwise would be charged to individual *Plan* accounts, instead of distributing cash to each *Settlement Class* member—has been preliminarily approved by the *Court* based on certain factors present in this litigation. Specifically, because of the relatively small losses alleged to have been experienced by each *Settlement Class* member during the *Settlement Class* Period, and the number of persons who have participated in the *Plan*, it would be cost prohibitive to distribute the *Net Proceeds* directly to each *Settlement Class* member. Instead, it has been determined that the best use of the *Net Proceeds* is the payment of the *Settlement Fund* to the *Plan* to be used for certain *Plan* expenses and administration fees that otherwise would be charged to individual *Plan* accounts, according to the *Plan of Allocation*.

In addition, the *Settlement Agreement* requires *Defendants* to provide several *Non-Monetary Considerations* to the *Settlement Class*. The *Non-Monetary Considerations* are available to all *Settlement Class* members who have an individual *Plan* account on the *Effective Date of Settlement*. These benefits will be available for a two-year period beginning on the *Effective Date of Settlement*. The *Non-Monetary Considerations* include that the *Retirement Plans Committee* will continue to retain a consultant or independent advisor to provide independent advice and recommendations on selection and monitoring of *Investment Options*, enhance available web-based investment education resources, and continue its ongoing process to remove from the *Plans' Investment Options*—and not add as new *Investment Options*—funds that are retail mutual funds, funds that pay 12b-1 fees, and funds that provide revenue sharing, per-position, or per-participant sub-transfer agent fees, or other fees to any party in interest as defined in ERISA § 3(14)(A), including the *Plan*'s trustee or recordkeeper. The *Retirement Plans Committee* will also continue to consider adding other low-cost, passively managed investment options to the *Plan*'s investment lineup. In addition, the *Plan* will provide new disclosures about fees that are designed to be easier to understand and will provide resources to *Plan* participants to help them plan for retirement and understand the impact of fees on long-term savings. The *Non-Monetary Considerations* will only apply to those who have individual *Plan* accounts on the *Effective Date of Settlement* and are fully set forth in Section 10 below.

All *Settlement Class* members and anyone claiming through them are deemed to fully release the *Released Parties* from *Released Claims*. The *Released Parties* include the *Defendants* and their officers, directors, employees, attorneys, and agents. The *Released Claims*

include all claims which were or could have been asserted in the *Action*. This means that *Settlement Class* members will not have the right to sue the *Released Parties* for anything related to breaches of fiduciary duty described in the *Complaint*, or to other alleged misconduct during the Class Period, which is July 1, 1997 through December 2, 2011, inclusive, arising out of or relating to the allegations in the *Complaint*.

The above description of the operation of the *Settlement* is only a summary. The governing provisions are fully set forth in the *Settlement Agreement* (including its exhibits), copies of which may be obtained at www.WalMartERISASettlement.com or by calling *Class Counsel* at (800) 233-8509 or emailing *Class Counsel* at walmarterisasettlement@kellerrohrback.com.

| **8.** | **How Will The *Settlement* Reduce Fees Charged To My *Plan* Account?** |

The *Net Proceeds* will be paid directly to the *Plan* and used by the *Plan* for payment of certain *Plan* expenses and administration fees that otherwise would be charged to individual *Plan* accounts, according to the *Plan of Allocation* to be approved by the Court. You do not need to file a claim. If you have questions regarding the *Settlement*, you can contact *Class Counsel* listed in Section 19 below.

| **9.** | **When Would The *Net Proceeds* Be Used By The *Plan* To Pay For *Plan* Expenses Or Fees That Otherwise Would Be Charged To My *Plan* Account?** |

Use of the *Net Proceeds* by the *Plan* for payment of certain *Plan* expenses and administration fees that otherwise would be charged to individual *Plan* accounts is conditioned on several matters, including the *Court's* approval of the *Settlement* and the *Plan of Allocation* and such approval becoming *Final* and no longer subject to any appeals to any court. Any appeal of the *Final* approval may take several years. If the *Settlement* is approved by the *Court*, and there are no appeals from such approval, it is reasonably anticipated that the *Net Proceeds* will be paid directly to the *Plan* during calendar year 2012, with payments of certain *Plan* expenses or administration fees that reduce the amount of fees otherwise charged to then-existing individual *Plan* accounts reflected after that time.

If you have additional questions regarding the timing of payment of the *Net Proceeds* to the *Plan*, you can contact *Class Counsel* listed in Section 19 below. Information about the effect of payment of certain *Plan* expenses or administration fees on fees otherwise chargeable to individual *Plan* accounts is not available because those amounts will be based on (a) the amount of *Plan* expenses or administration fees following the *Effective Date of Settlement*; (b) whether you have an individual *Plan* account at the time that *Plan* expenses or administration fees would otherwise be charged to individual *Plan* accounts but which will be paid by the *Net Proceeds* of the *Settlement Fund*; and (c) the *Plan of Allocation*.

**There will be no reduction of fees or allocation to individual *Plan* accounts under the *Settlement* if the *Settlement Agreement* is terminated.**

The *Settlement Agreement* may be terminated on several grounds, including if (1) the *Court* does not approve or materially modifies the *Settlement* or (2) either as modified by the

Court or as a result of reversal or modification on appeal, the *Court's Final Order* in the case does not satisfy certain terms of the *Settlement*. Should the *Settlement Agreement* be terminated, the *Settlement* will be terminated and the *Action* will proceed as if the *Settlement Agreement* had not been entered into. If you have questions regarding the *Settlement*, you can contact *Class Counsel* listed in Section 19 below.

| 10. | When And How Will I Receive The *Non-Monetary Considerations* Of The *Settlement*? |
|---|---|

The *Settlement*'s *Non-Monetary Considerations* are available to all *Settlement Class* members who have an individual *Plan* account existing on the *Effective Date of Settlement*. These benefits will be in place for a two-year period beginning on the *Effective Date of Settlement*. You do <u>not</u> need to file a claim to receive these benefits.

Many of the *Non-Monetary Considerations* will automatically benefit you if you are eligible to receive them:

- The *Retirement Plans Committee*, to further its goal to offer *Investment Options* with fees that are reasonable, shall: (a) continue to retain a consultant or independent advisor who is not otherwise affiliated with the Company and who has acknowledged in writing fiduciary status with the *Plan* within the meaning of ERISA § 3(21)(A), to provide independent advice and recommendations on selection and monitoring of *Plan Investment Options*; and (b) review the consultant or independent advisor for conflicts of interest on an annual basis.

- The *Retirement Plans Committee* shall continue its ongoing process to remove from the *Plan's Investment Options*, and shall not add as *Plan Investment Options*, funds that are retail mutual funds, funds that pay 12b-1 fees, and funds that provide revenue sharing, per-position or per-participant sub-transfer agent fees, or other fees to any party in interest as defined in ERISA § 3(14), including the *Plan's* trustee or recordkeeper.

- The *Plan* offers two index funds—the Barclays Russell 1000 Index Trust and the Barclays Russell 2000 Index Trust—on its core menu. The *Retirement Plans Committee* will consider, where and when appropriate, adding other low-cost, passively managed investment vehicles to the *Plan Investment Options*.

Other *Non-Monetary Considerations* will benefit you if you are eligible to receive them and you choose to use them when they become available. These benefits include:

- The *Retirement Plans Committee* shall continue to make available web-based investment education resources, including a retirement planning calculator, to participants of the *Plan* that are the same as, or comparable to, those provided to participants on www.Walmartbenefits.com and www.benefits.ml.com, as of the date on which the *Settlement Agreement* is fully executed. Such resources shall continue to be made available to participants on www.Walmartbenefits.com and on www.benefits.ml.com. Merrill Lynch agrees to make such resources available

on www.benefits.ml.com. The *Retirement Plans Committee* will continue to explore enhancements to its web-based participant investment education program, including enhancements intended to make Retirement Education and Tools more accessible on www.Walmartbenefits.com.

- The *Retirement Plans Committee* shall comply with the Fiduciary Requirements for Disclosure in Participant-Directed Individual Account Plans, Final Rule, 75 Fed. Reg. 64910 at 64939 (Oct. 20, 2010), which shall include posting information about the *Plan Investment Options* in the format set forth in the Model Comparative Chart, "Appendix to §2550.404a-5," 75 Fed. Reg. at 64942, on www.benefits.ml.com and shall (i) include posting an active link in the Comparative Chart to information about the impact of fees on retirement savings made available by the Department of Labor at http://www.dol.gov/ebsa/publications/401k_employee.html or (ii) if such link is not feasible, include posting an active link to http://www.dol.gov/ebsa/publications/401k_employee.html in proximity to the online version of the Comparative Chart on www.benefits.ml.com. Merrill Lynch agrees to the placements of such links on www.benefits.ml.com.

- To help participants calculate the impact of fees on their retirement savings, the *Retirement Plans Committee* shall include a link on www.benefits.ml.com to the SEC Cost Calculator found at http://www.sec.gov/investor/tools/mfcc/get-started.htm, with such link located in proximity to the online version of the Comparative Chart and with guidance to participants on how to complete the SEC Cost Calculator for the *Plan Investment Options*. Merrill Lynch agrees to the placement of this link on www.benefits.ml.com.

| 11. | **Can I Get Out Of The *Settlement*?** |
|-----|----------------------------------------|

You do not have the right to exclude yourself from the *Settlement*. The *Action* was conditionally certified under Federal Rule of Civil Procedure 23(b)(1) as a non "opt-out" class action because the *Court* determined the requirements of that Rule were satisfied. Thus, it is not possible for any participants or beneficiaries to exclude themselves from the benefits of the *Settlement*. As a *Settlement Class* member, you will be bound by any judgments or orders that are entered in the *Action* for all claims that were or could have been asserted in the *Action* or are otherwise included in the release under the *Settlement*.

Although you cannot opt out of the *Settlement*, you can object to the *Settlement* and ask the *Court* not to approve it. *See* Sections 14 and 17 below.

## THE LAWYERS REPRESENTING YOU

| 12. | **Do I Have A Lawyer In The Case?** |
|-----|-------------------------------------|

The *Court* has appointed the law firm Keller Rohrback L.L.P. as *Lead Counsel* in the *Action*. Together with the law firm of Aleshire Robb, P.C. (*Liaison Counsel*), Keller Rohrback

L.L.P. is *Class Counsel*.  If you want to be represented by your own lawyer, you may hire one at your own expense.

## 13.     How Will The Lawyers Be Paid?

*Class Counsel* will file a petition for the award of attorneys' fees and expenses.  This petition will be considered at the *Fairness Hearing*.  *Defendants* take no position regarding the amount of attorneys' fees, costs, and expenses that may be sought by *Plaintiff's Counsel*.  *Class Counsel* has agreed to limit application for an award of attorneys' fees to not more than 30% of the *Settlement Fund*.

In addition, the *Class Plaintiff* in the *Action* will share in the reduced amount of fees that otherwise would be charged to individual *Plan* accounts, according to the *Plan of Allocation*, on the same basis and to the same extent as all other members of the *Settlement Class*, except that, in addition, the *Class Plaintiff* may apply to the *Court* for compensation of up to $20,000 for his effort and work in bringing this case and representing the interests of the *Settlement Class*.  Any compensation awarded to the *Class Plaintiff* by the *Court* will be payable from the proceeds of the *Settlement*.  *Defendants* take no position regarding the amount of compensation awarded to the *Class Plaintiff*.

## 14. How Do I Tell The *Court* If I Don't Like The *Settlement*?

If you are a *Settlement Class* member, you can tell the *Court* that you do not agree with the *Settlement* or some part of it, including the attorneys' fees and expenses the attorneys intend to seek or the request for compensation to the *Class Plaintiff*. To object, you must send a letter or other written filing saying that you object to the *Settlement* in *Braden v. Wal-Mart Stores, Inc., et al.*, Case No. 6:08-cv-3109-GAF. Be sure to include your name, address, telephone number, signature, and a full explanation of all reasons you object to the *Settlement*. Your written objection must be filed with the *Court* by **February 17, 2012**. The *Court's* address to receive objections is Clerk of the Court, U.S. District Court, Western District of Missouri, 222 N. John Q. Hammons Parkway, Springfield, Missouri 65806. NOTE: **This is <u>not</u> the same address as the location of the *Fairness Hearing*.** Your written objection must also be mailed to all of the counsel listed below, and must be postmarked no later than **February 17, 2012**:

| PLAINTIFF'S LEAD COUNSEL | DEFENDANTS' COUNSEL |
|---|---|
| Keller Rohrback L.L.P.<br>Attn: Lynn Lincoln Sarko<br>1201 Third Avenue, Ste 3200<br>Seattle, Washington 98109<br><br>Facsimile: (206) 623-3384<br><br>*Class Counsel* | Steptoe & Johnson LLP<br>Attn: Paul J. Ondrasik<br>1330 Connecticut Ave., NW<br>Washington, DC 20036<br><br>Facsimile: (202) 429-3902<br><br>and<br><br>Ross Higman<br>WAL-MART STORES, INC.<br>702 S.W. Eighth Street<br>Bentonville, AR 72716-0215<br><br>Facsimile: (479) 277-5991<br><br>*Counsel for the Walmart Defendants*<br><br><br>O'Melveny & Myers LLP<br>Attn: Robert Eccles<br>1625 Eye Street, N.W.<br>Washington, D.C. 20006<br><br>Facsimile: (202) 346-4444<br><br>*Counsel for the Merrill Lynch Defendants* |

## THE *COURT*'S *FAIRNESS HEARING*

The *Court* will hold a *Fairness Hearing* to decide whether to approve the *Settlement* as fair, reasonable, and adequate. You may attend the *Fairness Hearing*, and you may ask to speak, but you do not have to attend.

| 15. | When And Where Will The *Court* Decide Whether To Approve The *Settlement*? |
|---|---|

The *Court* will hold a *Fairness Hearing* at **9:00 a.m. on Wednesday, March 7, 2012**, at the Charles Evans Whittaker Courthouse, 400 East 9th Street, Courtroom 8A, Kansas City, Missouri 64106 (Judge Gary A. Fenner).

IF YOU DO NOT WISH TO OBJECT TO THE PROPOSED SETTLEMENT, THE APPLICATION FOR ATTORNEYS' FEES AND EXPENSES, THE APPLICATION FOR CLASS PLAINTIFF AWARD, OR THE *PLAN OF ALLOCATION*, YOU NEED NOT ATTEND THE *FAIRNESS HEARING*.

At that hearing, the *Court* will consider whether the *Settlement* is fair, reasonable, and adequate. If there are objections, the *Court* will consider them. After the *Fairness Hearing*, the *Court* will decide whether to approve the *Settlement*. The *Court* will also rule on the petition for *Class Counsel's* attorneys' fees, costs, expenses, and any case contribution award to the *Class Plaintiff*.

| 16. | Do I Have To Come To The *Fairness Hearing*? |
|---|---|

No. *Class Counsel* will answer questions the *Court* might have, but you are welcome to come at your own expense. If you send an objection, you do not have to come to *Court* to talk about it. As long as your objection is postmarked by **February 17, 2012**, it will be before the *Court* when the *Court* considers whether to approve the *Settlement* as fair, reasonable, and adequate. You also may pay your own lawyer to attend the *Fairness Hearing*, but such attendance is not necessary.

| 17. | May I Speak At The *Fairness Hearing*? |
|---|---|

If you are a *Settlement Class* member, you may ask the *Court* for permission to speak at the *Fairness Hearing*. To do so, you must send a letter or other paper called a "Notice of Intention to Appear at Fairness Hearing in *Braden v. Wal-Mart Stores, Inc., et al.*, Case No. 6:08-cv-3109-GAF." Be sure to include your name, address, telephone number, and your signature. Your Notice of Intention to Appear must be mailed to the attorneys and filed with the Clerk of the Court, at the addresses listed in Section 14, **and must be postmarked no later than February 17, 2012**.

### IF YOU DO NOTHING

| 18. | What Happens If I Do Nothing At All? |
|---|---|

- 16 -

If you do nothing and you are a *Settlement Class* member, you will participate in the *Settlement* of the *Action* as described above in this *Class Notice* if the *Settlement* is approved.

## GETTING MORE INFORMATION

| 19. | Are There More Details About The *Settlement*? |
|---|---|

This *Class Notice* summarizes the proposed *Settlement*. The complete *Settlement* is set forth in the *Settlement Agreement*. You may obtain a copy of the *Settlement Agreement* at www.WalMartERISASettlement.com, by calling *Class Counsel* at (800) 233-8509, by emailing *Class Counsel* at walmarterisasettlement@kellerrohrback.com, or by writing to *Class Counsel* at Lynn Lincoln Sarko, Keller Rohrback L.L.P., 1201 Third Avenue, Suite 3200, Seattle, WA 98101.

| 20. | How Do I Get More Information? |
|---|---|

If you have general questions regarding the *Settlement*, you can contact *Class Counsel* listed in Section 19 above or review the information contained at www.WalMartERISASettlement.com.

**EXHIBIT 1.B**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| JEREMY BRADEN, individually and on behalf of all others similarly situated, | ) Case No. 6:08-cv-3109-GAF |
| Plaintiff, | ) Hon. Gary A. Fenner |
| v. | ) CLASS ACTION |
| WAL-MART STORES, INC., et al., | ) |
| Defendants. | ) |

## LEGAL NOTICE

**TO:  ALL PERSONS, EXCEPT DEFENDANTS, WHO ARE OR WERE PARTICIPANTS IN THE WAL-MART STORES, INC. PROFIT SHARING AND 401(K) PLAN (THE "PLAN") OR THE PREDECESSORS OR SUCCESSORS THERETO, WHO HAVE HELD ASSETS IN THE PLAN INVESTMENT OPTIONS AT ANY TIME BETWEEN JULY 1, 1997 AND DECEMBER 2, 2011, INCLUSIVE, AS WELL AS THEIR BENEFICIARIES, ALTERNATE PAYEES, REPRESENTATIVES AND SUCCESSORS IN INTEREST.**

**PLEASE READ THIS NOTICE CAREFULLY.
A FEDERAL COURT AUTHORIZED THIS NOTICE.
THIS IS NOT A SOLICITATION FROM A LAWYER.
YOU HAVE NOT BEEN SUED.**

A Settlement has been preliminarily approved by a federal court in Missouri in a class action lawsuit against Wal-Mart Stores, Inc. and certain of its current and former directors and officers ("Wal-Mart") and Merrill Lynch, Pierce, Fenner & Smith Inc., Merrill Lynch Trust Company of America, and Merrill Lynch & Co. Inc. ("Merrill Lynch") (collectively, "Defendants"), alleging breaches of fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), in connection with the Plan.  In particular, this lawsuit alleges that certain fees and expenses charged to the Plan and to certain individual Plan participant accounts by mutual fund companies and collected by Merrill Lynch were excessive in light of the size of the Plan and that these excessive fees were charged without properly disclosing them to Wal-Mart, the Plan, or Plan participants. Defendants deny any liability in the Action.  Both sides agreed to the Settlement to avoid the cost and risk of further litigation and/or to provide a recovery to the members of the Settlement Class.  The terms of the Settlement are contained in the Class Action Settlement Agreement ("Agreement"), dated December 2, 2011, a copy of which is available at www.WalMartERISASettlement.com, or by contacting Class Counsel at the toll-free number or email address identified below.  All capitalized terms not otherwise defined in this Legal Notice shall have the meaning provided in the Agreement.

First, the proposed Settlement provides for a payment of $13.5 million, paid by Merrill Lynch and by Wal-Mart and/or its insurer, to settle all claims against Defendants.  The Settlement proceeds, minus Court-approved fees and expenses described in the Agreement (which include attorneys' fees and litigation expenses, a case contribution award to the Named Plaintiff who brought the lawsuit, and taxes and other costs related to the Settlement) will be paid directly to the Plan to be used by the Plan to pay Plan expenses and administration fees, which will reduce fees that otherwise would be charged to individual Plan accounts in the future, according to the Court-approved Plan of Allocation.  Second, the Settlement provides for the Retirement Plans Committee's continued offering of low-cost investment options, as well as new information about fees and improvements to participant education about saving for retirement.

If you qualify and the Settlement is approved, you will be entitled to benefit from the payment of Plan expenses and administration fees through the Plan of Allocation, as well as certain Non-Monetary Considerations described in the Agreement. Information concerning how this will affect your Plan account is not available because that amount will be based on (a) the amount of Plan expenses or administration fees following the Effective Date of Settlement; (b) whether you have an individual Plan account at the time that Plan expenses or administration fees would otherwise be charged to individual Plan accounts but which will be paid by the Net Proceeds of the Settlement Fund; and (c) the Plan of Allocation. You do not need to submit a claim or take any other action. Fees previously charged to your Plan account are not eligible for reduction under the Settlement.

**You do not have the right to exclude yourself from the Settlement in this case, but you do have the right to object in writing to the Court, no later than February 17, 2012.** You will be bound by any judgments or orders that are entered in this Action, and if the Settlement is approved, you will be deemed to have released all Defendants from all claims that were or could have been asserted in this case, other than your right to obtain the relief provided to you, if any, by the Settlement.

The United States District Court for the Western District of Missouri, Southern Division, authorized this Notice.

**THE DISTRICT COURT WILL HOLD A HEARING AT <u>9:00 A.M. ON WEDNESDAY, MARCH 7, 2012</u>, TO DECIDE WHETHER TO APPROVE THE SETTLEMENT AND A REQUEST BY CLASS COUNSEL FOR ATTORNEYS' FEES, FOR OTHER LITIGATION EXPENSES, AND FOR A CASE CONTRIBUTION AWARD TO THE NAMED PLAINTIFF.**

**ADDITIONAL INFORMATION ABOUT THE SETTLEMENT, INCLUDING INFORMATION ABOUT HOW TO OBJECT TO THE SETTLEMENT, IS AVAILABLE AT <u>WWW.WALMARTERISASETTLEMENT.COM</u>. IN ADDITION, THE LAWYERS FOR THE PLAINTIFF HAVE ESTABLISHED A TOLL-FREE NUMBER, (800) 233-8509, AND EMAIL ADDRESS, WALMARTERISASETTLEMENT@KELLERROHRBACK.COM, TO ANSWER QUESTIONS ABOUT THE SETTLEMENT.**

Please direct questions to Class Counsel, and not to the District Court or Wal-Mart or Merrill Lynch.

DATED: _____, 2011.

**EXHIBIT 2**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

JEREMY BRADEN, individually and on behalf )
of all others similarly situated,                              )         Case No. 6:08-cv-3109-GAF
                                                                            )
                                              Plaintiff,         )         Hon. Gary A. Fenner
                                                                            )
        v.                                                           )         CLASS ACTION
                                                                            )
WAL-MART STORES, INC., et al.,                       )
                                                                            )
                                           Defendants.        )
_____)

## [PROPOSED] FINAL ORDER AND JUDGMENT

        This Action involves claims for alleged violations of the Employee Retirement Income

Security Act of 1974, as amended, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"), with respect to the

Wal-Mart Stores, Inc. Profit Sharing and 401(k) Plan (the "Plan").

        This matter came before the Court for a hearing pursuant to the Preliminary Approval

Order of this Court entered on _____, 2011, on the application of Plaintiff for final approval

of the Settlement set forth in the Class Action Settlement Agreement ("Settlement Agreement"),

executed on December 2, 2011, and filed with the Court on December 2, 2011.[1]

        Before the Court are:  (1) Plaintiff's Final Approval Motion; and (2) Plaintiff's

Application for Attorneys' Fees and Expenses and Compensation to Named Plaintiff.

        The Court has received declarations attesting to the distribution of the Class Notice and

Summary Notice via www.Walmartbenefits.com and www.benefits.ml.com, as well as in *USA

Today* and on BusinessWire, in accordance with the Preliminary Approval Order.  The Court

also has received a declaration attesting to the mailing of the notices pursuant to the Class Action

Fairness Act of 2005.

_____

[1] All capitalized terms used in this Final Order and Judgment and not defined herein shall have
the meanings assigned to them in the Settlement Agreement. Class Counsel means Keller
Rohrback L.L.P. and Aleshire Robb P.C.

Due and adequate notice has been given to the Settlement Class as required in the Preliminary Approval Order, and the Court has considered all papers filed and proceedings in this case, and is otherwise fully informed in the premises. IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

1.      This Court has jurisdiction over the subject matter of this Action and over all Parties to the Action, including all members of the Settlement Class.

2.      On _____, the Summary Notice was distributed via *USA Today* and BusinessWire, and on _____ the Class Notice was posted on www.Walmartbenefits.com and www.benefits.ml.com in accordance with the Preliminary Approval Order. Information regarding the Settlement was also made available on www.WalMartERISASettlement.com.

3.      The Class Notice and Summary Notice fully informed Settlement Class members of their rights with respect to the Settlement, including the right to object to the Settlement, Class Counsel's application for an award of attorneys' fees, reimbursement of expenses, and for the payment of the case contribution award to Class Plaintiff, all from the Settlement Fund.

4.      The notice provided to the Settlement Class met the statutory requirements for notice under the circumstances and fully satisfied the requirements of Federal Rule of Civil Procedure 23 and due process.

5.      Defendants have complied fully with the notice provisions of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

6.      For settlement purposes the Court certifies the Action as a non-opt-out class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(1)(A) and (B) with the Settlement Class defined as follows:

> (a) all Persons, except Defendants, who are or were participants in the Wal-Mart Stores, Inc. Profit Sharing and 401(k) Plan, or the predecessors or successors thereto, who have held assets in the Plan Investment Options at any time between July 1, 1997 to the Agreement Execution Date, inclusive, and (b) as to each Person within the scope of subsection (a) of [Settlement Agreement] Section 1.44, his, her, or its beneficiaries, alternate payees, Representatives and Successors in Interest.

7.     This Action and all claims asserted in it, as well as all of the Released Claims, are dismissed with prejudice as to Class Plaintiff, the Settlement Class, and the Plan, and as against the Released Parties.  The Parties are to bear their own costs, except as otherwise provided in the Settlement Agreement or in this Order.

8.     The Court finds that the Settlement is fair, reasonable, and adequate as to each member of the Settlement Class.   The Plan of Allocation is approved as fair and reasonable.  Any modification or change in the Plan of Allocation that may hereafter be approved shall in no way disturb or affect this Judgment and shall be considered separate from this Judgment.  The Settlement is finally approved in all respects.

9.     By operation of this Judgment and effective upon entry of this Final Order: (a) Class Plaintiff, the Plan, and each member of the Settlement Class have absolutely and unconditionally released and forever discharged the Released Parties from the Released Claims as specified in the Settlement Agreement; (b) Defendants have absolutely and unconditionally released and forever discharged Class Plaintiff, the Plan, and the Settlement Class from Defendants' Released Claims as specified in the Settlement Agreement..

10.    Class Counsel are hereby awarded attorneys' fees in the amount of $_____, which the Court finds to be fair and reasonable, and $_____ in reimbursement of Class Counsel's reasonable expenses incurred in prosecuting the Action.  The attorneys' fees and expenses so awarded shall be paid exclusively out of the Settlement Fund pursuant to the terms of the Settlement Agreement without additional contribution or payment by Defendants.

11.    Named Plaintiff is hereby awarded a Case Contribution Award in the amount of $_____, to be paid exclusively out of the Settlement Fund pursuant to the terms of the Settlement Agreement without additional contribution or payment by Defendants.

12.    In making this award of attorneys' fees and reimbursement of expenses to Class Counsel, and the Case Contribution Award to Named Plaintiff, the Court has considered and found that:

a)     The Settlement Fund will benefit the Plan and thousands of Settlement Class members who have Plan accounts;

b)     The Settlement has resulted in significant injunctive relief that will inure to the benefit of Plan participants;

c)     Class Counsel have conducted the litigation and achieved the Settlement with skill, perseverance, and diligent advocacy;

d)     The Action involves complex factual and legal issues prosecuted over more than three years and, in the absence of a settlement, would involve further lengthy proceedings with uncertain resolution of the complex factual and legal issues;

e)     Without the Settlement, there would remain a significant risk that Class Plaintiff and the Settlement Class could have recovered less or nothing from Defendants;

f)     The amount of attorneys' fees awarded and expenses reimbursed from the Settlement Fund are consistent with awards in similar cases; and

g)     Class Plaintiff rendered valuable service to the Plan and to the Settlement Class by undertaking this Action.

13.     Without affecting the finality of this Judgment in any way, and subject to the arbitration provisions, as applicable, of the Settlement Agreement, this Court hereby retains continuing jurisdiction over: (a) implementation and enforcement of the Settlement Agreement and (b) hearing and determining applications for attorneys' fees, costs, interest, and reimbursement of expenses in the Action.

14.     This Final Order and Judgment shall not be considered or used as an admission, concession, or declaration by or against Releasees of any fault, wrongdoing, breach, or liability, and this Court makes no such finding or determination.

15.     In the event that the Settlement does not become Final in accordance with the terms of the Settlement Agreement, then this Judgment shall be rendered null and void and shall be vacated *nunc pro tunc*, and the Action shall proceed in accordance with the Settlement Agreement.

16.     Final Judgment shall be entered herein approving the Settlement of this Action.

IT IS SO ORDERED.

_____
Gary A. Fenner, Judge
United States District Court

DATED: _____, 2012